# ATTACHMENT 5
# Declaration of Jennifer T. Pena

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                              )<br>              Plaintiff,                        )<br>                                                              )<br>              v.                                       )<br>                                                              )<br>GREG ABBOTT, in his capacity as GOVERNOR )<br>OF THE STATE OF TEXAS, and THE STATE OF )<br>TEXAS,                                              )<br>                                                              )<br>              Defendants.                    )<br>                                                              ) | Civil Action No. 1:23-cv-00853 |

### DECLARATION OF JENNIFER T. PENA IN SUPPORT OF
### THE UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION

I, Jennifer T. Pena, do declare as follows:

1. I am the Chief Legal Counsel for the United States Section of the International Boundary and Water Commission (USIBWC) where I am responsible for legal matters involving the Agency.

2. Based on my personal knowledge, as well as information provided to me in the course of my official duties, I declare as follows:

**USIBWC's role on the U.S-Mexico Border**

3. The International Boundary and Water Commission (IBWC) was established to implement treaties between the United States and Mexico. The USIBWC is the United States Section of the IBWC, and Mexico also has a Section of the IBWC

(MXIBWC). The two sections work in concert to implement treaty requirements and resolve differences that arise during implementation.

4. The USIBWC is a federal agency when acting on matters within its sole purview and the IBWC is an international organization when the two sections act in concert.

5. The IBWC's predecessor entity, the International Boundary Commission (IBC), was established by the Convention of 1889 between the United States and Mexico. The IBC was tasked with carrying out the principles of the U.S.-Mexico Treaty of 1884, including delineating the international boundary.

6. In 1944, the IBC became the IBWC through a 1944 Treaty between the United States and Mexico called the "Utilization of Waters of the Colorado and Tijuana and of the Rio Grande." In the 1944 Treaty, the United States and Mexico agreed (among other things) how to allocate the waters of the bi-national rivers in the Treaty title, including the Rio Grande.

7. In 1970, the United States and Mexico entered another treaty called the "Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary." With respect to each of those rivers, the United States and Mexico agreed that the international boundary will be the middle of the channel occupied by the normal flow of the river.[1] However, because river channels can shift over time or during large flood events, the countries agreed in the 1970 Treaty to take measures to stabilize and prevent shifts in the Colorado River and Rio Grande.

8. To "reduce to a minimum the shifting of the channels of the Rio Grande[,]" Article IV of the 1970 Treaty provides that, both in the main channel of the river and on adjacent lands, each country "shall prohibit the construction of works in its territory

---

[1] The IBWC conducts surveys of the international boundary in the Rio Grande and delineates the boundary line.

which, in the judgment of the Commission, may cause deflection or obstruction of the normal flow of the river or of its flood flows."

9. In accordance with the 1970 Treaty, the United States and Mexican Sections of the IBWC monitor construction activities along the Rio Grande floodplain and land boundary.

10. Proponents of projects within the Rio Grande floodplain submit detailed hydraulic modeling showing any possible deflection. If the modeling shows a deflection or obstruction could impact the boundary line or exacerbate flooding risks, USIBWC works with the project proponent to modify the proposal to mitigate the problematic impacts.

11. Both the Mexico and the United States Sections review the modeling, and the United States Section seeks concurrence from Mexico about whether a particular project is acceptable under the 1970 Treaty.

**Texas's Buoy System**

12. I am familiar with the floating barrier that Texas has placed in the Rio Grande. The barrier has been the subject of a series of correspondence from the Mexican section of the IBWC. Its continued presence in the river is causing injury to the relationship between the two sections and is interfering with the ability of the IBWC to fulfill its mission.

13. On or around July 8, 2023, Demetrius Gaines—the Assistant Area Operations Manager at USIBWC's Amistad Field Office—emailed me pictures depicting buoys and equipment being staged near Eagle Pass, Texas.

14. On or around July 11, 2023, and July 18, 2023, Robert Moore—Assistant Chief Counsel, U.S. Customs & Border Protection in Del Rio, Texas—emailed me photographs depicting Texas personnel in military-style uniforms installing a buoy system in the Rio Grande River channel. I emailed these photos to Mario Gomez, Area Operations Manager at USIBWC's Amistad Field Office.

15. The email with the July 11, 2023, photos said that the photos were taken on July 10, 2023. The email with the July 18, 2023, photos said that the photos were taken on July 17, 2023.

16. On July 14, 2023, MXIBWC reported the installation of a buoy barrier in the Rio Grande. MXIBWC said that construction equipment was in the channel, including a crane boat with a winch, backhoe, speedboat and other equipment and personnel used to assemble, drag and anchor the buoys within the Rio Grande channel. The MXIBWC objected to the placement of the buoys and requested intervention of the United States Section to remove the buoys.

17. On July 14, 2023, MXIBWC reported that, as a result of the floating barriers in Eagle Pass, Mexico was canceling a July 24, 2023, meeting concerning water releases to the United States from the Rio Conchos river in Mexico. The meeting was to be between Chihuahua State governmental officials, the USIBWC Commissioner, the MXIBWC Commissioner, and a Commissioner of the Texas Commission on Environmental Quality (TCEQ).

18. On July 14, 2023, during a meeting with TCEQ and IBWC to discuss delivery by Mexico to the United States of water of the Rio Grande, the MXIBWC informed the other participants that while Mexico still deemed cooperation over the Rio Grande important, Mexico is concerned about unilateral activities undertaken by the State of Texas that impede the spirit of cooperation necessary to find innovative and mutually beneficial solutions. The MXIBWC team further stated that they are especially concerned about actions subject to the IBWC's jurisdiction that are being undertaken without permission or authorization, directly impacting the IBWC's authority. MXIBWC said that these actions could affect cooperation between the two countries going forward.

19. On July 18, 2023, at 11:06 a.m. (Mountain), USIBWC received an email from Rogelio Vargas who identified himself as a Captain with the Texas Army National Guard.

20. In the email, Captain Vargas asked what the "legal limitations" are "to perform earthwork along the river's edge of the Rio Grande River in Eagle Pass, Texas" and requested that USIBWC contact him via phone to discuss the matter.

21. USIBWC contacted Captain Vargas via telephone to inform him of the hydraulic modeling required for all projects in the flood plain as well as the permit requirements for proposals on USIBWC-controlled land. In addition, USIBWC passed along contact information for the U.S. Army Corps of Engineers because they also have requirements that apply to work in the river.

22. USIBWC summarized the information provided to Captain Vargas in a follow-up email that was sent to him on July 18, 2023, at 3:26 pm (Mountain) and in a later email requested the latitude and longitude of the proposed work. As of July 25, 2023, Captain Vargas has not responded.

23. To my knowledge, the July 18, 2023, communication is the first and only communication from Texas that the USIBWC has received requesting information on legal limitations on construction in or near the Rio Grande River.

**Harms to USIBWC**

24. The USIBWC's mission includes implementing the United States Government's responsibilities under various treaties between the United States and Mexico.

25. The United States and Mexico agreed in 2020 to seek to reach agreement by December 2023 on a new mechanism to improve the predictability and reliability of Rio Grande water delivery from Mexico to the United States. Discussions intended to lead towards this new agreement are at a sensitive stage. By causing Mexico to rethink and limit its cooperation with the United States, Texas's floating barrier

interferes with the IBWC's ability to implement its core mission of implementation of the 1944 Water Treaty for deliveries of water on the Rio Grande.

26. The 1848 Treaty, art. VII, requires that the entirety of the Rio Grande from New Mexico to the Gulf of Mexico, where it forms an international border, remain "free and common to the vessels and citizens of both countries; and neither shall, without the consent of the other, construct any work that may impede or interrupt, in whole or in part, the exercise of this right." Texas's placement of a buoy barrier system without consulting with USIBWC interferes with the USIBWC's implementation of the Treaty of 1848.

27. As explained above in Paragraphs 9 through 11 above, the USIBWC monitors construction activities in accordance with the 1970 Treaty. For the IBWC to determine whether construction works will or will not obstruct or deflect the normal or flood flows of the Rio Grande, the IBWC needs to review hydraulic modeling of the proposed project.

28. Texas's placement of the buoy system in the Rio Grande without submitting hydraulic modeling has interfered with the IBWC's ability to determine the extent of obstruction and deflection the buoy system will create to the normal and flood flows of the Rio Grande, and thus interferes with USIBWC's implementation of its treaty authorities.

29. Article 2 of the 1944 Treaty states that "the Commission and its personnel may freely carry out their observations, studies, and field work in the territory of either country." Texas's buoy system—as actually constructed and as proposed—interferes with IBWC personnel's ability to freely cross the Rio Grande near Eagle Pass when engaged on official business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 25, 2023

*/s/ Jennifer T. Peña*

Jennifer T. Pena
USIBWC
4191 N. Mesa
El Paso, TX 79902