# ATTACHMENT 7
# Declaration of Hillary Quam

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | |
| v. ) | |
| ) | |
| GREG ABBOTT, in his capacity as GOVERNOR ) | |
| OF THE STATE OF TEXAS, and THE STATE OF ) | |
| TEXAS, ) | |
| ) | |
| Defendants. ) | |

### Declaration of Hillary Quam

I, Hillary Quam, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration:

1.  I am currently the U.S.-Mexico Border Coordinator at the U.S. Department of State and have held this position since March 2022 and previously from August 2016 until December 2018. I am also the acting Director of the Office of Mexican Affairs. Between my two terms as Border Coordinator, I was the Director of the State Department's Western Hemisphere Affairs Migration Working Group from January 2019 until March 2021 and then served as the Special Advisor for the Western Hemisphere in the Office of the Vice President from March 2021 until February 2022. I have also served as the Mexico Director in the Office of the Secretary of Defense.

2.  In my current position, I serve as the Department's primary expert and advisor for policies, issues, negotiations, initiatives, and programs related to the U.S.-Mexico border

region. Additionally, as part of my responsibilities I provide policy guidance to U.S. interagency and stakeholder groups involved with the U.S.-Mexico border region.

3. I am familiar with the floating barrier that the State of Texas has placed in the Rio Grande near the Camino Real International Bridge, Eagle Pass, Texas. The construction and presence of this barrier has become the subject of diplomatic concern between Mexico and the United States. If the barrier is not removed expeditiously, its presence will have an adverse impact on U.S. foreign policy, including our relationship with the government of Mexico.

4. The U.S.-Mexico relationship is one of the most important, dynamic, and economically impactful partnerships in the world. Our countries enjoy a unique shared history, heritage, and culture. Over 40 million U.S. citizens of Mexican heritage live in the United States and millions of Americans live in and travel to Mexico every year. The United States works closely with the Mexican government on a wide range of issues, from economic competitiveness to security, from rule of law to human rights, from labor rights to educational and cultural opportunities. As set forth in a Joint Statement on October 8, 2021, the United States and Mexico are two nations with an enduring partnership based on sovereignty, mutual respect, and the extraordinary bond of family and friendship.

5. The United States and Mexico have ongoing dialogues at senior political levels to address mutually important issues. The focus of the High-Level Economic Dialogue that will next take place in September in Washington includes strengthening supply chains, promoting sustainable economic and social development, and investing in our people. The High-Level Security Dialogue that should next meet in October implements priority

actions under the U.S.-Mexico Bicentennial Framework for Security, Public Health, and Safe Communities such as countering the trafficking of fentanyl and other synthetic drugs as well as illegal firearms trafficking.

6. Among the most important and sensitive bilateral issues are humane migration management and border infrastructure. Mexico is an essential partner for the United States in the implementation of the Root Causes Strategy and the Collaborative Migration Management Strategy set forth in Executive Order 14010, 86 Fed. Reg. 8267.  In a March 1, 2021, U.S.-Mexico Joint Declaration, Presidents Biden and López Obrador committed to immigration policies that recognize the dignity of migrants and the imperative of orderly, safe, and regular migration. They further committed to collaborate on a joint effort to address the root causes of regional migration, improve migration management, and develop legal pathways for migration.  They also directed the Secretariat of Foreign Relations and the Department of State, respectively, to engage with the governments of the northern Central American countries, as well as with civil society and private sectors, through policies that promote equitable and sustainable economic development, combat corruption, and improve law enforcement cooperation against transnational criminal smuggling networks.

7. Through a series of bilateral treaties dating back to 1848, the United States and Mexico have defined and regulated their common boundary.  Where the State of Texas is on the U.S. side of the border, the boundary between the two countries is the Rio Grande.  More specifically, the international boundary is the middle of the channel occupied by the normal flow of the river.  See Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary, Nov. 23,

3

1970 (the "1970 Treaty"), Article II.A.  The treaties define the two countries' rights and responsibilities with respect to use of the river and its water as well as construction in and along the river.

8.  On a number of different occasions beginning in late June, 2023, and continuing through the date of this declaration, the Government of Mexico has protested to the United States the deployment of a floating barrier within the Rio Grande.  Mexico has raised several different concerns regarding the deployment.

9.  In particular, Mexico has protested the installation of the floating barrier in the river, asserting that it causes obstruction and deflection of the river as well as possible runoff into Mexican territory.  Mexico has also protested that the installations have not been reviewed or approved by the bilateral International Boundary and Water Commission. Mexico asserts these actions are in contravention of the provisions of the 1970 Treaty.

10. Mexico has also raised humanitarian concerns with respect to the floating barrier. Mexico is concerned that individuals swimming in the river may get caught in the floating barrier and risk injury or even death.  Such an injury, were it to occur, could quickly rise to a significant international incident.

11. Mexico has raised its concerns at the highest diplomatic levels.  Mexico has made it clear to the United States that it expects the United States to take action to obtain the prompt removal of the floating barriers and any other structures that would cause obstruction of the Rio Grande.

12. As set forth above, the United States has an extensive, multi-faceted agenda to address with Mexico.  The ability of the United States to implement these policy goals depends

largely on maintenance of a cooperative bilateral relationship based on mutual respect for each other's sovereignty.

13. I have been informed that, absent expedited action by this court, the normal expectation would be that it would require several months to resolve this case on the merits.  Based on the approach to the issue taken by the Government of Mexico, and on my experience in 19 years in interacting with the Government of Mexico on these types of issues, I am confident that the presence of the floating barrier in the Rio Grande for any extended period of time, and certainly that length of time, would become a major irritant in U.S.-Mexico relations and damage U.S. foreign policy.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 24th day of July, 2023, in Washington, D.C.

Hillary Quam