**United States District Court**
**Western District of Texas**
**Austin Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  *Plaintiff*,<br><br>    v.<br><br>GREG ABBOTT, in his capacity as Governor of the State of Texas, and THE STATE OF TEXAS,<br><br>  *Defendants*. | No. 1:23-cv-00853-DII |
| EPI'S CANOE & KAYAK TEAM, LLC AND JESSIE FUENTES,<br><br>  *Plaintiffs*,<br><br>    v.<br><br>STATE OF TEXAS, *et al.*,<br><br>  *Defendants*. | No. 1:23-cv-00836-DII |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION**

# EXHIBIT B

United States District Court

Western District of Texas

Austin Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>GREG ABBOTT, in his capacity as Governor of the State of Texas, and the STATE OF TEXAS,<br><br>  Defendants. | No. 1:23-cv-00853 - DII |

# DECLARATION OF VICTOR ESCALON
## IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1. My name is Victor Escalon. I am the Regional Director for the Texas Department of Public Safety ("DPS") with responsibility for the operations of DPS in South Texas, and specifically in Maverick County, Texas, where the floating buoys that are the subject of this action are currently located.

2. I have responsibility for DPS operations in a total of twenty-seven counties of South Texas. These counties range along the Rio Grande River near Brownsville, Texas, to the area including Del Rio, Texas. I have served in this position for approximately four years. I have served with the DPS for a total of

approximately twenty-nine years. I began working on Operation Lone Star in March of 2021 and continue to work in that capacity.

3. I am familiar with the conditions and uses of the approximately 70-mile segment of the Rio Grande River in Maverick County, Texas. To my knowledge, there is not now, and there has not been in the time I have served in the DPS, any substantial lawful commercial navigation of the Rio Grande River at or near this segment, including at or near the current site of the floating buoys that are the subject of this action. I am unaware of any use of this segment of the Rio Grande River for any commercial activity or transportation of lawful goods. I also do not call a single occasion when I observed a presence from the U.S. Coast Guard in that area of the Rio Grande.

4. I have been told by DPS personnel that recreational kayaks or canoes are occasionally but rarely seen in the area of the floating buoys, but I have not seen any. I have been told that they are more visible around the 4th of July. In my experience and based on intelligence and reports I have received, the majority of the use of the River in Maverick County is for (a) unlawful smuggling of drugs and weapons; unlawful human trafficking; and unlawful migration from the Mexican side of the River to the United States side of the River and (b) law enforcement activities that seek to counteract unlawful activities. Mexican drug cartels are and have been active in this area. Accordingly, the area where the floating buoys are currently located is within the Maverick County portion of the Border Security Disaster Area designated by Texas Governor Greg Abbott from 2021 to the present. The floating buoys are part of Texas' response to the border security disaster, and control ingress to a portion of the Border Security Disaster Area.

5. I am also familiar with the floating buoys that are currently in the Rio Grande River in Maverick County, Texas. The plans to place these floating buoys at that location were publicly announced by the Governor of Texas on June 8, 2023. The floating buoys were placed at their current site in mid-July 2023.

6. The floating buoys at their current site are entirely within Texas and entirely within the Maverick County segment of the Rio Grande. Both Maverick County, Texas and the State of Texas include the land under the Rio Grande River to the international boundary between the United States and Mexico, which I understand to be the mid-point of the Rio Grande River. Thus, the floating buoys at their current site effectively control and direct ingress in a portion of Maverick County, Texas to lawful U. S. Customs and Border Patrol points of entry. Surveillance of the floating buoys is maintained by DPS or Texas National Guard personnel at all hours of the day, each day. There are no spikes, concertina wire, or razor wire on the buoys.

7. The floating buoys are not affixed to the riverbed of the Rio Grande River in any way. They are connected to removable concrete blocks that currently are at rest on the bottom of the River, but not embedded, driven into, or structurally attached to the riverbed. No excavation was conducted to deploy the floating buoys or concrete blocks. Machinery can be used to lift and move the concrete blocks at any time. For these reasons, I do not regard the floating buoys and related items as a "structure" in the ordinary sense of that term. There is steel mesh under the floating buoys to prevent diving or swimming under them, but the steel mesh also is not embedded or structurally attached to the riverbed. The steel mesh is generally parallel to the river's flow at its current site, and does not block or catch substantial amounts of debris, or other materials floating down the River.

8. The floating buoys are attached to each other and are aligned parallel with the flow of the Rio Grande River at their current site. Based on my observations, the floating buoys, the steel mesh, and the concrete blocks do not substantially interfere with or alter the flow of water down the Rio Grande River. The buoys rise and fall with the flow of the river. Because the floating buoys extend for only about one thousand feet or less than 0.2 miles; and because there is little if any commercial navigation of the Rio Grande River in Maverick County, the floating buoys at their current site do not substantially interfere with the navigable capacity of the Rio Grande River or the navigation of the Rio Grande

River. No lawful traffic should move from bank to bank across the River at this point; there is no legitimate reason for lateral traffic here.

9. At the current site of the floating buoys on the Rio Grande River, the width of the river from bank to bank is approximately 200 feet. The diameter of the floating buoys is approximately four feet. As a result, any vessel going up or down the River at the current site of the floating buoys can easily navigate past them on either the United States or Mexico side of the River. The buoys occupy a de minimis portion of the width stream. To the extent the River is capable of any navigation in this segment, as a practical matter, the River at that site is open to navigation up and down the river by all.

10. At the site of the floating buoys, I estimate that the Rio Grande River is generally four feet or less in depth under current conditions. In some areas near the current site of the floating buoys, the river is no more than ankle or knee deep for an adult and there are many small islands and sandbars in the River. I have not seen the River flood here. Its depth rises and falls only slightly. The only watercraft I have ever seen operate in this segment of the river are law enforcement boats incapable of bearing the weight of commercial goods or small recreational craft like a kayak or canoe. Larger vessels would not be able to operate due to the shallow conditions of the stream and frequent presence of sand bars and islands.

11. The surrounding land use on the United States side of the Rio Grande River at the point where the floating buoys are located is rural or industrial, with no real ranching and few landowners actively using this segment. At one time there was a caliche mining pit in the area, but its operations have ceased.

12. The floating buoys are currently under constant 24-hour surveillance by members of Operation Lone Star. Since the installation of the buoys, I have not seen a single person attempt to climb over the buoys, nor have I seen anyone injured or killed due to their interaction with the buoys. Further, no other member of Operation Lone Star has reported to me that anyone has attempted to climb over the buoys and no injuries or deaths have been reported to me that occurred while

using the buoys. I believe the buoys provide a safe means of redirecting the flow of unlawful immigration to lawful points of entry without impeding the flow of the river or watercraft.

13. In addition, I have observed the level of unlawful activity at the Rio Grande River and in Maverick County, Texas. Based on my observations the level of unlawful activity in that area is currently at an extremely high level. This area is one of the most active hotspots for criminal activities such as drug and weapons smuggling and human trafficking along the entire length of the Rio Grande River in the area for which I have responsibility. In my judgment, the value of the floating buoys at their current site is far greater than any possible effect they could have on the lawful navigation in the Rio Grande River. And I believe they are very useful tools to direct migrants intending to unlawfully cross at that point to a port of entry.

14. The buoys are designed for temporary use and are able to be moved to other locations as necessary. Although the buoys are temporarily located and movable, the cost to remove the buoys is estimated at $300,000.

I hereby declare under penalty of perjury, pursuant to 28 U. S. C. § 1746, that the foregoing is true and correct to the best of my knowledge and information.
Signed this __9th__ day of August 2023.

*Victor Escalon*
_____

Victor Escalon

Texas Department of Public Safety