United States District Court
Western District of Texas
Austin Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> GREG ABBOTT, in his capacity as Governor of the State of Texas, and THE STATE OF TEXAS, <br><br> *Defendants*. | No. 1:23-cv-00853-DII |
| EPI'S CANOE & KAYAK TEAM, LLC AND JESSIE FUENTES, <br><br> *Plaintiffs*, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> *Defendants*. | No. 1:23-cv-00836-DII |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION**

# EXHIBIT C

United States District Court

Western District of Texas

Austin Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG ABBOTT, in his capacity as Governor of the State of Texas, and the STATE OF TEXAS,<br><br>Defendants. | No. 1:23-cv-00853 - DII |

## DECLARATION OF LOREN FLOSSMAN
## IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1. My name is Loren Flossman. I am the Project Manager with Cochrane USA with responsibility for the manufacture and subsequent deployment of the floating buoys in the segment of the Rio Grande River in Maverick County, Texas, that are the subject of this action. In my role as Project Manager at Cochrane USA, I supervised the completion of the design, manufacture, assembly, and deployment of the floating buoys.

2. Prior to my work at Cochrane USA, I was employed by U.S. Customs and Border Protection in the from July 2007 to December 2022, in the U. S. Border Patrol HQ as Director of the Infrastructure Portfolio and CBP's Designated Acquisition Manager for the S8B Barrier Program. My responsibilities with U.S. Customs and Border Patrol included environmental compliance; real estate

acquisition, design, and construction of the CPB Border Barrier along the southwest border . Through my career and current employment, I am familiar and have firsthand experience with the floating buoy system at issue.

3.      Through my employment at the U.S. Customs and Border Patrol, I first became familiar with the design and testing of the floating buoy system, which was originally contracted for by the U.S. Customs and Border Patrol in 2020. An Army Corps of Engineers permit was to my knowledge never considered by U.S. Customs and Border Patrol to deploy the buoy system at that time. The contract for the floating buoys associated with U.S. Customs and Border Patrol was ultimately cancelled in January 2021 as a result of the Presidential Proclamation directing DHS to cease all Border Barrier Construction. However, U.S. Customs and Border Patrol agents tested the same system at the U. S. Border Patrol Academy in Artesia, New Mexico. The three day testing proved the floating buoys' efficacy and demonstrated no additional danger to agents or migrants. CBP viewed the floating buoys as a tool that would save lives by reducing drownings.

4.      The subject system was designed to be a mechanism to save lives and direct migrants to appropriate U. S. Customs and Border Patrol points of entry while deterring unlawful, dangerous crossings; drug smuggling; human trafficking; and terrorist infiltration. The floating buoy system has been used in other countries, such as Nigeria and South Africa.

5.      The buoy system cannot fairly be characterized as, and is not sold, marketed, or referred to, as a "boom". It is not meant for containment and is not permanent. Rather, the floating buoy system may be moved or removed at any time. The buoy system is comprised of multiple interconnected buoys which can be extended to any length and customized and relocated according to their application. Its design is temporary in nature and allows for it to be picked up and redeployed at other points as needed.

6. The 1,000-feet long floating buoy system at issue is tethered via chains to concrete blocks which were placed on the bed of the Rio Grande River. Each buoy is approximately four feet in diameter. The anchoring system consists of concrete blocks tha are not attached in any way to the riverbed. No excavation or building occurred in the river when they were installed. After being staged on land, the floating buoys were deployed into the river group-by-group in prefabricated sets of three—each group of three attached in place within the river are attached to the concrete blocks via chain hinge. Track Hoe loaders were used to neatly place the buoys and concrete blocks in the river. Track Hoe loaders were used because their buckets can easily lift, carry, and place the system segments. The buoys were located using GPS coordinates to ensure they are placed within the United States half of the Rio Grande.

7. Deployment of such a floating buoy system may take less than a week. The deployment of this system started on July 10, 2023 and deployed with the initial concrete anchors on July 14, 2023. Dismantling or movement of an entire floating buoy system may occur in a matter of several weeks. Removal typically takes longer than deployment due to the inherent tamper resistant nature of the design.

8. Stainless steel mesh fastened directly under the buoys acts as anti-dive net, extending two feet down into the water, and runs about 50 percent of the length of the buoy system. Currently the anti-dive net touches the riverbed. However, when the river depth increases the anti-dive net rises off the bed. The anti-dive net is made of line wires and cross wires with a gauge of +/- 3mm. This design allows water to freely pass through it. Currently the subject system is being monitored daily in the event there is any debris collection and to allow any necessary cleaning may occur. No vacuum is created by the system.

9. The subject floating buoy system tolerates and is meant to withstand at least a 100-year flood. The system is designed with heavy concrete blocks placed systematically on the bed of the Rio Grande River to prevent movement about the river. The design of chains, which are 12-meters in length, allows the floating buoys

to rise and fall with the elevation of the water while maintaining the same position on top of the river.

10. Ultimately, the floating buoy system as designed and deployed in no way impedes existing lawful uses of the Rio Grande River, to the extent any lawful use of this river segment exists, which I have not seen in my time at this location. The floating buoy system as deployed does not interfere with the travel of watercraft up and down the river. Moreover, the design and positioning of the buoy system allows for the free flow of water through this segment of the Rio Grande River. Accordingly, the floating buoys do not substantially interfere with the navigable capacity of the Rio Grande River. Thus, in my judgment, the harm to the public interest in law enforcement from removal of the floating buoys at their current location would greatly outweigh any harm to any lawful navigation of the River.

I hereby declare under penalty of perjury, pursuant to 28 U. S. C. § 1746, that the foregoing is true and correct to the best of my knowledge and information.

Signed this __9__ day of August 2023.

*Loren Flossman*

Loren Flossman