United States District Court
Western District of Texas
Austin Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  *Plaintiff*,<br><br>    v.<br><br>GREG ABBOTT, in his capacity as Governor of the State of Texas, and THE STATE OF TEXAS,<br><br>  *Defendants*. | No. 1:23-cv-00853-DII |
| EPI'S CANOE & KAYAK TEAM, LLC AND JESSIE FUENTES,<br><br>  *Plaintiffs*,<br><br>    v.<br><br>STATE OF TEXAS, *et al.*,<br><br>  *Defendants*. | No. 1:23-cv-00836-DII |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION**

# EXHIBIT M

respondents, including through the use of automated collection techniques or other forms of information technology.

**Proposed Project: National Survey of Substance Abuse Treatment Services (N–SSATS) (OMB No. 0930–0106)—Extension**

The Substance Abuse and Mental Health Services Administration (SAMHSA) is requesting an extension of the National Survey of Substance Abuse Treatment (N–SSATS) data collection (OMB No. 0930–0106), which expires on September 30, 2020. N–SSATS provides both national and state-level data on the numbers and types of patients treated and the characteristics of facilities providing substance abuse treatment services. It is conducted under the authority of Section 505 of the Public Health Service Act (42 U.S.C. 290aa–4) to meet the specific mandates for annual information about public and private substance abuse treatment providers and the clients they serve.

This request includes:
- Collection of N–SSATS, which is an annual survey of substance abuse treatment facilities; and
- Updating of the Inventory of Behavioral Health Services (I–BHS) which is the facility universe for the N–SSATS. I–BHS is also the facility universe for the annual survey of mental health treatment facilities, the National Mental Health Services Survey (N–MHSS). The I–BHS includes all substance abuse treatment and mental health treatment facilities known to SAMHSA. (The N–MHSS data collection is covered under OMB No. 0930–0119.)

The information in I–BHS and N–SSATS is needed to assess the nature and extent of these resources, to identify gaps in services, and to provide a database for treatment referrals. Both I–BHS and N–SSATS are components of the Behavioral Health Services Information System (BHSIS).

The request for OMB approval will include a request to update the I–BHS facility listing on a continuous basis and to conduct the N–SSATS and the between cycle N–SSATS (N–SSATS BC) in 2021, 2022, and 2023. The N–SSATS BC is a procedure for collecting services data from newly identified facilities between main cycles of the survey and will be used to improve the listing of treatment facilities in the online Behavioral Health Treatment Services Locator.

Estimated annual burden for the BHSIS activities is shown below:

| Type of respondent and activity | Number of respondents | Responses per respondent | Total responses | Hours per response | Total burden hours |
|---|---|---|---|---|---|
| **States** | | | | | |
| I–BHS Online [1] | 56 | 75 | 4,200 | 0.08 | 336 |
| State Subtotal | 56 | ........................ | 4,200 | ........................ | 336 |
| **Facilities** | | | | | |
| I–BHS application [2] | 800 | 1 | 800 | 0.08 | 64 |
| Augmentation screener | 1,300 | 1 | 1,300 | 0.08 | 104 |
| N–SSATS questionnaire | 17,000 | 1 | 17,000 | 0.67 | 11,333 |
| N–SSATS BC | 1,000 | 1 | 1,000 | 0.58 | 580 |
| Facility Subtotal | 20,100 | ........................ | 20,100 | ........................ | 12,081 |
| Total | 20,156 | ........................ | 24,300 | ........................ | 12,417 |

[1] States use the I–BHS Online system to submit information on newly licensed/approved facilities and on changes in facility name, address, status, etc.
[2] New facilities complete and submit the online I–BHS application form in order to get listed on the Inventory.

Send comments to Carlos Graham, SAMHSA Reports Clearance Officer, 5600 Fisher Lane, Room 15E57A, Rockville, MD 20852 OR email him a copy at *carlos.graham@samhsa.hhs.gov*. Written comments should be received by May 15, 2020.

**Carlos Graham,**
*Social Science Analyst.*
[FR Doc. 2020–05274 Filed 3–13–20; 8:45 am]
**BILLING CODE 4162–20–P**

**DEPARTMENT OF HOMELAND SECURITY**

**Office of the Secretary**

**Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended**

**AGENCY:** Office of the Secretary, Department of Homeland Security.

**ACTION:** Notice of determination.

**SUMMARY:** The Acting Secretary of Homeland Security has determined, pursuant to law, that it is necessary to waive certain laws, regulations, and other legal requirements in order to ensure the expeditious construction of barriers and roads in the vicinity of the international land border in Val Verde County, Texas, and Maverick County, Texas.

**DATES:** This determination takes effect on March 16, 2020.

**SUPPLEMENTARY INFORMATION:** Important mission requirements of the Department of Homeland Security ("DHS") include border security and the detection and prevention of illegal entry into the United States. Border security is critical to the nation's national security. Recognizing the critical importance of border security, Congress has mandated DHS to achieve and maintain operational control of the international land border. Secure Fence Act of 2006, Public Law 109–367, section 2, 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. 1701 note). Congress defined "operational control" as the prevention of all unlawful entries into the United States, including entries by terrorists, other

unlawful aliens, instruments of terrorism, narcotics, and other contraband. *Id.* Consistent with that mandate from Congress, the President's Executive Order on Border Security and Immigration Enforcement Improvements directed executive departments and agencies to deploy all lawful means to secure the southern border. Executive Order 13767, section 1. In order to achieve that end, the President directed, among other things, that I take immediate steps to prevent all unlawful entries into the United States, including the immediate construction of physical infrastructure to prevent illegal entry. Executive Order 13767, section 4(a).

Congress has provided to the Secretary of Homeland Security a number of authorities necessary to carry out DHS's border security mission. One of those authorities is found at section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended (''IIRIRA''). Public Law 104–208, Div. C, 110 Stat. 3009–546, 3009–554 (Sept. 30, 1996) (8 U.S.C 1103 note), as amended by the REAL ID Act of 2005, Public Law 109–13, Div. B, 119 Stat. 231, 302, 306 (May 11, 2005) (8 U.S.C. 1103 note), as amended by the Secure Fence Act of 2006, Public Law 109–367, section 3, 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. 1103 note), as amended by the Department of Homeland Security Appropriations Act, 2008, Public Law 110–161, Div. E, Title V, section 564, 121 Stat. 2090 (Dec. 26, 2007). In section 102(a) of IIRIRA, Congress provided that the Secretary of Homeland Security shall take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States. In section 102(b) of IIRIRA, Congress mandated the installation of additional fencing, barriers, roads, lighting, cameras, and sensors on the southwest border. Finally, in section 102(c) of IIRIRA, Congress granted to the Secretary of Homeland Security the authority to waive all legal requirements that I, in my sole discretion, determine necessary to ensure the expeditious construction of barriers and roads authorized by section 102 of IIRIRA.

## Determination and Waiver

### Section 1

The United States Border Patrol's Del Rio Sector is an area of high illegal entry. In fiscal year 2019, the United States Border Patrol (''Border Patrol'') apprehended over 57,000 illegal aliens attempting to enter the United States between border crossings in the Del Rio Sector. Also in fiscal year 2019, there were over 146 drug-related events between border crossings in the Del Rio Sector, through which Border Patrol seized over 40 pounds of marijuana, over 15 pounds of cocaine, over 24 pounds of heroin, and over 195 pounds of methamphetamine. Additionally, Val Verde County, Texas, and Maverick County, Texas, which are located in the Del Rio Sector, have been identified as a High Intensity Drug Trafficking Area by the Office of National Drug Control Policy.

Due to the high levels of illegal entry of people and drugs within the Del Rio Sector, I must use my authority under section 102 of IIRIRA to install additional physical barriers and roads in the Del Rio Sector. Therefore, DHS will take immediate action to replace existing pedestrian fencing in the Del Rio Sector. The segments within which such construction will occur are referred to herein as the ''project areas'' and are more specifically described in Section 2 below.

The current pedestrian barrier in the Del Rio Sector does not provide the level of impedance necessary to effectively secure the border. Transnational criminal organizations frequently defeat and exploit the existing fencing for narcotics and human smuggling due to its inferior design and dilapidated condition. Construction of new fencing with a more operational effective design will allow Border Patrol to secure the border more effectively. Within the project areas roads will also be constructed or improved and lighting will be installed.

To support DHS's action under section 102 of IIRIRA, I requested that the Secretary of Defense, pursuant to 10 U.S.C. 284(b)(7), assist by constructing fence, roads, and lighting within the Del Rio Sector in order to block drug smuggling corridors across the international boundary between the United States and Mexico. The Secretary of Defense has concluded that the support requested satisfies the statutory requirements of 10 U.S.C. 284(b)(7) and that the Department of Defense will provide such support in the project areas described in Section 2 below.

### Section 2

I determine that the following areas in the vicinity of the United States border, located in the State of Texas within the United States Border Patrol's Del Rio Sector, are areas of high illegal entry (the ''project areas''):

• Starting approximately two and one-half (2.5) miles north and west of the Del Rio Port of Entry and extending south and east for approximately three and one-half (3.5) miles; and

• Starting approximately one-half (0.5) mile south of the Eagle Pass II Port of Entry and extending north for approximately three (3) miles.

There is presently an acute and immediate need to construct physical barriers and roads in the vicinity of the border of the United States in order to prevent unlawful entries into the United States in the project areas pursuant to sections 102(a) and 102(b) of IIRIRA. In order to ensure the expeditious construction of the barriers and roads in the project areas, I have determined that it is necessary that I exercise the authority that is vested in me by section 102(c) of IIRIRA.

Accordingly, pursuant to section 102(c) of IIRIRA, I hereby waive in their entirety, with respect to the construction of physical barriers and roads (including, but not limited to, accessing the project areas, creating and using staging areas, the conduct of earthwork, excavation, fill, and site preparation, and installation and upkeep of physical barriers, roads, supporting elements, drainage, erosion controls, safety features, lighting, cameras, and sensors) in the project areas, all of the following statutes, including all federal, state, or other laws, regulations, and legal requirements of, deriving from, or related to the subject of, the following statutes, as amended:

The National Environmental Policy Act (Pub. L. 91–190, 83 Stat. 852 (Jan. 1, 1970) (42 U.S.C. 4321 *et seq.*)); the Endangered Species Act (Pub. L. 93–205, 87 Stat. 884 (Dec. 28, 1973) (16 U.S.C. 1531 *et seq.*)); the Federal Water Pollution Control Act (commonly referred to as the Clean Water Act (33 U.S.C. 1251 *et seq.*)); the National Historic Preservation Act (Pub. L. 89–665, 80 Stat. 915 (Oct. 15, 1966), as amended, repealed, or replaced by Pub. L. 113–287, 128 Stat. 3094 (Dec. 19, 2014) (formerly codified at 16 U.S.C. 470 *et seq.*, now codified at 54 U.S.C. 100101 note and 54 U.S.C. 300101 *et seq.*)); the Migratory Bird Treaty Act (16 U.S.C. 703 *et seq.*); the Migratory Bird Conservation Act (16 U.S.C. 715 *et seq.*); the Clean Air Act (42 U.S.C. 7401 *et seq.*); the Archeological Resources Protection Act (Pub. L. 96–95, 93 Stat. 721 (Oct. 31, 1979) (16 U.S.C. 470aa *et seq.*)); the Paleontological Resources Preservation Act (16 U.S.C. 470aaa *et seq.*); the Federal Cave Resources Protection Act of 1988 (16 U.S.C. 4301 *et seq.*); the Safe Drinking Water Act (42

U.S.C. 300f *et seq.*); the Noise Control Act (42 U.S.C. 4901 *et seq.*); the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act (42 U.S.C. 6901 *et seq.*); the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. 9601 *et seq.*); the Archaeological and Historic Preservation Act (Pub. L. 86–523, 74 Stat. 220 (June 27, 1960) as amended, repealed, or replaced by Pub. L. 113–287, 128 Stat. 3094 (Dec. 19, 2014) (formerly codified at 16 U.S.C. 469 *et seq.,* now codified at 54 U.S.C. 312502 *et seq.*)); the Antiquities Act (formerly codified at 16 U.S.C. 431 *et seq.,* now codified at 54 U.S.C. 320301 *et seq.*); the Historic Sites, Buildings, and Antiquities Act (formerly codified at 16 U.S.C. 461 *et seq.,* now codified at 54 U.S.C. 3201–320303 & 320101–320106); the Farmland Protection Policy Act (7 U.S.C. 4201 *et seq.*); National Fish and Wildlife Act of 1956 (Pub. L. 84–1024 (16 U.S.C. 742a, *et seq.*)); the Fish and Wildlife Coordination Act (Pub. L. 73–121, 48 Stat. 401 (March 10, 1934) (16 U.S.C. 661 *et seq.*)); the National Trails System Act (16 U.S.C. 1241 *et seq.*); the Wild Horse and Burro Act (16 U.S.C. 1331 *et seq.*); the Administrative Procedure Act (5 U.S.C. 551 *et seq.*); the Rivers and Harbors Act of 1899 (33 U.S.C. 403); the Wild and Scenic Rivers Act (Pub. L. 90–542 (16 U.S.C. 1281 *et seq.*)); the Eagle Protection Act (16 U.S.C. 668 *et seq.*); the Native American Graves Protection and Repatriation Act (25 U.S.C. 3001 *et seq.*); and the American Indian Religious Freedom Act (42 U.S.C. 1996).

This waiver does not revoke or supersede any other waiver determination made pursuant to section 102(c) of IIRIRA. Such waivers shall remain in full force and effect in accordance with their terms. I reserve the authority to execute further waivers from time to time as I may determine to be necessary under section 102 of IIRIRA.

Dated: March 11, 2020.

**Chad F. Wolf,**

*Acting Secretary of Homeland Security.*

[FR Doc. 2020–05347 Filed 3–13–20; 8:45 am]

**BILLING CODE 9111–14–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**[Docket No. DHS–2019–0047]**

**Privacy Act of 1974; System of Records**

**AGENCY:** Department of Homeland Security.

**ACTION:** Notice of new system of records.

**SUMMARY:** In accordance with the Privacy Act of 1974, the Department of Homeland Security (DHS) proposes to establish a new DHS system of records titled, ''Department of Homeland Security/ALL–043 Enterprise Biometric Administrative Records (EBAR) System of Records (SOR).'' This system of records allows the DHS to collect and maintain administrative and technical records associated with the enterprise biometric system known as the Automated Biometric Identification System (IDENT) and its successor information technology system, currently in development, called the Homeland Advanced Recognition Technology (HART).

Additionally, DHS is issuing a Notice of Proposed Rulemaking (NPRM) to exempt this system of records from certain provisions of the Privacy Act, elsewhere in the **Federal Register**. This newly established system will be included in the Department of Homeland Security's inventory of record systems.

**DATES:** Submit comments on or before April 10, 2020. This new system will be effective upon publication, with the exception of the routine uses, which will become effective April 10, 2020.

**ADDRESSES:** You may submit comments, identified by docket number DHS–2019–0047 by one of the following methods:

- *Federal e-Rulemaking Portal: http://www.regulations.gov.* Follow the instructions for submitting comments.
- *Fax:* 202–343–4010.
- *Mail:* Jonathan R. Cantor, Acting Chief Privacy Officer, Privacy Office, Department of Homeland Security, Washington, DC 20528–0655.

*Instructions:* All submissions received must include the agency name and docket number DHS–2019–0047. All comments received will be posted without change to *http://www.regulations.gov,* including any personal information provided.

*Docket:* For access to the docket to read background documents or comments received, go to *http://www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** For general questions and for privacy issues, please contact: Jonathan R. Cantor, *privacy@hq.dhs.gov,* (202) 343–1717, Acting Chief Privacy Officer, Privacy Office, Department of Homeland Security, Washington, DC 20528–0655.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

In 2007, DHS published the DHS/US–VISIT–001 DHS Automated Biometric Identification System (IDENT), 72 FR 31080 (June 5, 2007) system of records notice (SORN). The IDENT SORN covered biometric holdings for the entire Department. Since then, the Department's Privacy Act framework and technology for enterprise biometrics has evolved as the Department has matured. DHS Component SORNs now cover the collection, maintenance, and use of the biometrics records collected directly by each Component. The Department, however, still published a SORN to cover biometrics first collected and received from non-DHS entities, DHS/ALL–041 External Biometric Records (EBR) SORN, 83 FR 17829 (April 24, 2018), which governs the maintenance and use of biometrics and associated biographic information received from non-DHS entities. DHS is establishing DHS/ALL–043 Enterprise Biometric Administrative Records (EBAR) to cover the administrative and technical records associated with the enterprise biometric system, known as the Automated Biometric Identification System (IDENT) and its successor information technology system, currently in development, called the Homeland Advanced Recognition Technology (HART). Together, the EBAR SORN, EBR SORN, and the underlying Component SORNs will replace the IDENT and Technical Reconciliation Analysis Classification System (TRACS) SORNs. DHS will rescind the IDENT and TRACS SORNs by publishing a *notice of rescindment* in the **Federal Register**, following publication of this SORN.

The Office of Biometric Identity Management (OBIM) maintains the Department's primary repository of biometric information held by DHS in connection with varied missions and functions, including law enforcement; national security; immigration screening; border enforcement; intelligence; national defense; background investigations relating to national security positions; and credentialing consistent with applicable DHS authorities.

The primary repository, currently IDENT and its successor information technology (IT) system, HART, is a centralized and dynamic DHS-wide biometric database that also contains limited biographic and encounter history information needed to place the biometric information in proper context. The information is collected by, on behalf of, in support of, or in cooperation with DHS and its components and may contain personally identifiable information collected by Federal, State, local, tribal, foreign, or international agencies, consistent with