**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>GREG ABBOTT, in his capacity as Governor of the State of Texas, and THE STATE OF TEXAS,<br><br>          Defendants. | Civil Action No. 1:23-cv-00853-DAE |

**MEMORANDUM OF LAW OF IMMIGRATION REFORM LAW INSTITUTE
AS *AMICUS CURIAE* IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

MATT A. CRAPO*
CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(202) 232-5590
mcrapo@irli.org

* Pending *pro hac vice* admission

Counsel for *Amicus Curiae*
Immigration Reform Law Institute

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.      The Rivers and Harbors Act Should be Read Narrowly to Avoid Constitutional Issues ...................................................................................................................... 3

II.     Texas's Exercise of Its Retained, Sovereign Prerogative to Repel an Invasion is Nonjusticiable ........................................................................................................ 4

III.   General Regulations Established by Congress Cannot Constrain Texas's Constitutional Power to Repel an Invasion ............................................................ 8

CONCLUSION ................................................................................................................. 10

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Arizona v. United States,*
567 U.S. 387 (2012) ................................................................................................ 6

*Baker v. Carr,*
369 U.S. 186 (1962) ............................................................................................. 4, 5

*California v. United States,*
104 F.3d 1086 (9th Cir. 1997) .............................................................................. 5

*Chiles v. United States,*
874 F. Supp. 1334 (S.D. Fla. 1994), *aff'd* 69 F.3d 1094 (11th Cir. 1995) ............ 5

*Colo. ex rel. Suthers v. Gonzales,*
558 F. Supp. 2d 1158 (D. Colo. 2007) ................................................................. 5

*Fourco Glass Co. v. Transmirra Products Corp.,*
353 U.S. 222 (1957) ............................................................................................. 9

*Lichter v. United States,*
334 U.S. 742 (1948) .......................................................................................... 6, 7

*New Jersey v. United States,*
91 F.3d 463 (3d Cir. 1996) .................................................................................. 5

*Morton v. Mancari,*
417 U.S. 535 (1974) ......................................................................................... 9, 10

*Padavan v. United States,*
82 F.3d 23 (2d. Cir. 1996) ................................................................................... 5

*Posadas de Puerto Rico Assocs. v. Tourism Co.,*
478 U.S. 328 (1986) ............................................................................................. 7

*United States v. Borden Co.,*
308 U.S. 188 (1939) ........................................................................................... 10

*United States v. Estate of Romani*,
523 U.S. 517 (1998) .................................................................................................. 9

*Young v. Hawaii*,
992 F.3d 765 (9th Cir. 2021) ................................................................................... 3

## CONSTITUTION

U.S. CONST. art. I, § 10, cl. 3 ("Section 10") ........................................................ 1, 3, 5, 6

U.S. CONST. art. IV, § 4 ................................................................................................. 3, 5

U.S. CONST. art. VI, cl. 2 ................................................................................................... 9

## STATUTE

Rivers and Harbors Act, § 10,
33 U.S.C. § 403 .......................................................................................................... 8

## MISCELLANEOUS

9 Nicolay and Hay, Works of Abraham Lincoln (1894) ................................................... 6

C. Hughes, War Powers Under the Constitution (Sept. 5, 1917) ....................................... 7

**INTRODUCTION**

This case arises in the context of the federal government's ongoing abdication of its duty to protect States from invasion and to execute the nation's immigration laws faithfully. Since January 20, 2021, the federal government has terminated effective immigration enforcement policies such as the Migrant Protection Protocols (colloquially known as the "Remain in Mexico policy") and all border wall construction projects. The federal government's abdication of its responsibility to secure the border and protect the country from invasion has resulted an estimated 5.5 million illegal aliens' crossing the border since inauguration day in 2021. *See* FAIR Analysis: 5.5 Million Illegal Aliens Have Crossed our Borders Since Biden Took Office—How is Secretary Mayorkas Still Employed?, available at: https://www.fairus.org/press-releases/border-security/fair-analysis-55-million-illegal-aliens-have-crossed-our-borders (last visited Aug. 9, 2023).

In response to this unprecedented border crisis, on July 7, 2022, Governor Abbott issued Executive Order GA-41, in which he invoked the State of Texas's inherent right, as recognized by Article I, § 10, of the United States Constitution, to "secure the State of Texas and repel the illegal immigration that funds the cartels."[1] Governor Abbott authorized State officials "to respond to this illegal immigration by apprehending

---

[1] Executive Order No. GA-41, relating to returning illegal immigrants to the border, is available at: https://gov.texas.gov/uploads/files/press/EO-GA-41.pdf (last visited Aug. 9, 2023). Two months later, on September 21, 2022, Governor Abbott issued Executive Order No. GA-42, in which he designated certain Mexican drug cartels as foreign terrorist organizations. Available at: https://gov.texas.gov/uploads/files/press/EO-GA-42_Mexican_cartels_foreign_terrorist_orgs_IMAGE_09-21-2022.pdf (last visited Aug. 9, 2023).

immigrants who cross the border between ports of entry or commit other violations of federal law, and to return those illegal immigrants to the border at a port of entry." Exec. Order GA-41 at 2. More recently, Governor Abbott announced plans to deploy "marine floating barriers" in the Rio Grande to "mak[e] it more difficult to cross the Rio Grande and reach the Texas side of the southern border." Press Release, "Governor Abbott Signs Sweeping Package Of Border Security Legislation" (June 8, 2023), available at: https://gov.texas.gov/news/post/governor-abbott-signs-sweepingpackage-of-border-security-legislation (last visited Aug. 9, 2023); *see also* ECF Doc. 5 at 7.[2] One such marine floating barrier has been constructed in the Rio Grande "roughly two miles downstream of the International Bridge II in Eagle Pass," Texas. ECF Doc. 5 at 8-9.

The federal government now seeks a preliminary injunction directing the State of Texas to remove the existing barrier and prohibiting the construction of any new floating barriers. ECF Doc. 5. The Court should deny Plaintiff's request because Article 1, § 10, cl. 3, of the Constitution explicitly recognizes that Texas retains its inherent authority to exercise war powers in the event of an invasion, and in doing so is not subject to the control of Congress.

---

[2]  Page numbers cited herein refer to the page number reflected on the ECF header and not the internal page number of the document.

## ARGUMENT

**I.      The Rivers and Harbors Act Should be Read Narrowly to Avoid
Constitutional Issues.**

As Texas persuasively argues in its opposition to Plaintiff's motion for
preliminary injunction, the Rivers and Harbors Act ("RHA") should be read narrowly to
avoid constitutional issues. ECF Doc. 26 at 24-27. One such constitutional issue is
whether a federal statute's requirement that a State receive federal authorization for a
project can impede or constrain a State's exercise of its retained war-making power under
article I, section 10, clause 3, of the Constitution ("Section 10"), which reads:

> *No State shall, without the Consent of Congress*, lay any Duty of Tonnage,
> keep Troops, or Ships of War in time of Peace, enter into any Agreement or
> Compact with another State, or with a foreign Power, or *engage in War,
> unless actually invaded*, or in such imminent Danger as will not admit of
> delay (emphasis added).

A corresponding constitutional provision, sometimes referred to as "the Invasion
Clause," requires the federal government to protect each state from invasion. U.S.
CONST. art. IV, § 4 ("The United States shall guarantee to every State in this Union a
Republican Form of Government, and shall protect each of them against Invasion").
These two constitutional provisions, read together with the reservation of state powers in
the Tenth Amendment, show that the people conferred upon the federal government the
primary responsibility to protect each State against invasion, but that the States *retained*
their respective sovereign prerogatives to "engage in war" if "actually invaded." Thus, at
the very least, if the federal government fails to protect a State from invasion, such State,
as recognized by Section 10, retains its inherent authority to engage in war. *See Young v.
Hawaii*, 992 F.3d 765, 815 (9th Cir. 2021) (citing the prohibition in Section 10 as

3

"corresponding[]" to the federal government's duty to defend against invasion), *vacated on other grounds by N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

The States' inherent power to engage in war in the event of an invasion, as recognized in Section 10, is not conditioned on the approval or acquiescence of the federal government. Indeed, Section 10 clearly states that States are not forbidden to engage in war (in the event of actual invasion) *without the consent of Congress*. Thus, Section 10 makes it clear that the States' retained authority to engage in war is not subject to any federal oversight or control. The Court should read Congress's Rivers and Harbors Act narrowly to avoid the constitutional question of whether the RHA can be read to impede the exercise of a State's war-making power under Section 10.

## II.     Texas's Exercise of Its Retained, Sovereign Prerogative to Repel an Invasion is Nonjusticiable.

The Court should also deny the request for a preliminary injunction because this case calls for the Court to resolve non-justiciable questions. In *Baker v. Carr*, the Supreme Court set forth the analysis that governs the political question doctrine, stating:

> It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. 186, 217 (1962). Under this standard, the Ninth Circuit has held that "to determine that the United States has been 'invaded' when the political branches have made no such determination would disregard the constitutional duties that are the specific responsibility of other branches of government, and would result in the Court making an ineffective non-judicial policy decision." *California v. United States*, 104 F.3d 1086, 1091 (9th Cir. 1997). Other courts have agreed that the question of whether an invasion has occurred within the meaning of the Invasion Clause is non-justiciable. *Padavan v. United States*, 82 F.3d 23, 28 (2d. Cir. 1996); *New Jersey v. United States*, 91 F.3d 463, 468-470 (3d Cir. 1996); *Chiles v. United States*, 874 F. Supp. 1334, 1342-1344 (S.D. Fla. 1994), *aff'd* 69 F.3d 1094, 1097 (11th Cir. 1995); *Colo. ex rel. Suthers v. Gonzales*, 558 F. Supp. 2d 1158, 1160-1162 (D. Colo. 2007). In short, by placing the responsibility to protect against invasion on the federal government, the Constitution commits the question of whether an invasion has occurred to the policy making (or political) branches of the federal government, not the judicial branch.

Just as Article IV, § 4, of the Constitution commits the question of whether an invasion has occurred to the political branches of the federal government, Section 10, at least within broad parameters not applicable here, commits the same question to the States. Section 10 recognizes that the States *retain* their inherent power to engage in war in the event of an actual invasion. And they do not retain it subject to the oversight of Congress or the federal government, but rather even without its consent.

By committing this power to the several States, the constitution commits the determination of an actual invasion (the triggering event) to the same authority that

exercises the power granted or retained. In *Lichter v. United States*, the Supreme Court quoted President Lincoln reflecting the power of Congress to pass a Conscription Act thusly:

> The Constitution gives Congress the power [to raise and support armies], but it does not prescribe the mode, or expressly declare who shall prescribe it. In such case Congress must prescribe the mode, or relinquish the power. There is no alternative . . . . The power is given fully, completely, unconditionally. It is not a power to raise armies if State authorities consent; nor if the men to compose the armies are entirely willing; but it is a power to raise and support armies given to Congress by the Constitution, without an "if."

334 U.S. 742, 756 n.4 (1948) (quoting 9 Nicolay and Hay, Works of Abraham Lincoln 75-77 (1894)). Likewise, there is no "if" in Section 10 pertaining to Congress or the federal government, no condition allowing Congress to control the States in exercising their war-making power; on the contrary, they may exercise it even over Congress's objection.

As Texas rightly points out, Governor Abbott, as the Governor of Texas, has the "power to determine whether Texas has been 'actually invaded.'" ECF Doc. 26 at 24. Here, Governor Abbott has "asserted Texas's 'sovereign interest in protecting [her] borders.'" ECF Doc. 3-1 at 2 (citing *Arizona v. United States*, 567 U.S. 387, 419 (2012) (Scalia, J., dissenting)). Governor Abbott has further invoked "Article I, § 10, Clause 3 of the U.S. Constitution, thereby enabling the State of Texas to protect its own territory against invasion by the Mexican drug cartels." *Id.* at 4. Because the Constitution, in Section 10, commits the question of whether an invasion has occurred to a political actor, the State of Texas, and because there are, at least within broad limits, no manageable

standards for the judiciary to apply, Governor Abbott's invocation of the State's inherent and retained authority to defend itself is nonjusticiable.

Similarly, whatever actions constitute a permissible exercise of the war power is also non-justiciable and is committed by the Constitution to any State that has been invaded. As the Supreme Court has recognized, "'[t]he power to wage war is the power to wage war successfully.'" *Lichter*, 334 U. S., at 780 (quoting address by C. Hughes, War Powers Under the Constitution (Sept. 5, 1917)). Though it is for an invaded State to decide, the greater power to "engage in War" granted in the Constitution would unquestionably include the lesser power to build a floating marine barrier to prevent invaders from entering the State. *See*, *e.g.*, *Posadas de Puerto Rico Assocs. v. Tourism Co.*, 478 U.S. 328, 345-46 (1986) (holding under this principle that the greater power to ban gambling casinos includes the lesser power to ban their advertising); *Lichter*, 334 U.S. at 778-79 ("[T]he exercise of broad discretion as to methods to be employed may be essential to an effective use of its war powers by Congress.").

In sum, Section 10 clearly reflects that the various States reserved and did not surrender their respective inherent sovereign prerogatives to engage in war in the event of an actual invasion. What constitutes an actual invasion is committed to the respective States by Section 10. Further, inherent war-making authority is expressly reserved even over the objection of the federal government ("without the consent of Congress"), and permissible war powers are similarly committed to the several States by Section 10. This Court should hold that both whether an invasion of Texas has occurred and whether

7

Texas has chosen an appropriate means to engage in war are non-justiciable political questions.

### III.    General Regulations Established by Congress Cannot Constrain Texas's Constitutional Power to Repel an Invasion.

The federal government asserts that by constructing the floating marine barrier in the Rio Grande without federal permission, Texas has violated the RHA. ECF Doc. 5 at 13-16. But to accept Plaintiff's claim that Texas violated the RHA's requirement of federal permission would be to write out the phrase "without the consent of Congress" from Section 10. Also, to the extent that Plaintiff may argue that the RHA preempts any authority the State of Texas retains over navigable waters, such arguments should be rejected.

As set forth above, upon their admission to the Union, the various States reserved their inherent authority to engage in war in the event of actual invasion regardless of whether Congress consented. That such war powers may be exercised by a State "without the consent of Congress" disposes of Plaintiff's statutory arguments and any preemption arguments based on the RHA. Insofar as the RHA requires Texas to receive federal permission for its barriers, RHA § 10, 33 U.S.C. § 403, that requirement is unconstitutional as applied to Texas's valid, chosen means of waging war. Far from needing federal consent under Section 10, Texas may employ this means even over the objection of Congress, let alone the Army Corps of Engineers.

Whether Texas is bound by Congress's rules and regulations, and whether the RHA preempts Texas's marine defenses, is also decidable by the more specific provision

over the more general rule. The RHA is a general law governing navigable waters such as the Rio Grande. In contrast, Section 10 deals with the specific circumstance of a State's exercising war powers in the event of an actual invasion. Ordinarily, specific terms prevail over general terms. "However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment." *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 228 (1957) (citations omitted). The same principle is used to resolve conflict between two statutes. *See*, *e.g.*, *United States v. Estate of Romani*, 523 U.S. 517, 532 (1998) (later, more specific statute governs); *see also Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) (a general statute will not be held to have repealed by implication a more specific one unless there is "clear intention otherwise").

It seems impossible for a statute to preempt a constitutional provision, since only laws "made in Pursuance" of the Constitution, along with the Constitution itself, are "the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. To the extent a federal statute conflicts with the Constitution, as would be necessary somehow to preempt it, it is not a constitutional statute and cannot preempt anything, let alone the constitutional provision with which it conflicts. Thus, States exercising their valid authority under Section 10 are not preempted by the RHA. Rather, as with statutes,

> [t]he courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. "When there are two acts upon the same subject, the rule is to give effect to both if possible."

*Morton v. Mancari*, 417 U.S. 535, 551 (1974) (quoting *United States v. Borden Co.*, 308 U.S. 188, 198 (1939)). The RHA and Section 10, both being the supreme law of the land, should both be given full effect, and that is accomplished by the displacement of the RHA in narrow situations where Section 10 is validly invoked.

In sum, even if Plaintiffs were to persuade the Court that Texas's actions conflict with the terms of the RHA, Texas retains the inherent authority to take those actions under Section 10, as long as the State deems those actions necessary to repel an actual invasion, without the federal consent required by the RHA. Because Texas validly invoked its retained inherent authority under Section 10, its chosen means of defense take precedence, and the federal government cannot show any likelihood of success on the merits that would justify a preliminary injunction.

## <u>CONCLUSION</u>

For the forgoing reasons, the Court should deny the request for a preliminary injunction.

Dated: August 14, 2023                    Respectfully submitted by,

                                        /s/ Matt Crapo
                                        MATT A. CRAPO*
                                        D.C. Bar No. 473355
                                        Immigration Reform Law Institute
                                        25 Massachusetts Ave., NW, Suite 335
                                        Washington, DC 20001
                                        (202) 232-5590
                                        mcrapo@irli.org

                                        * pending *pro hac vice* admission

                                        Counsel for *Amicus Curiae*
                                        Immigration Reform Law Institute

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2023, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

/s/ Matt Crapo