## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:23-cv-00853-DAE |
| | ) | |
| v. | ) | |
| | ) | |
| GREG ABBOTT, in his capacity as GOVERNOR OF THE STATE OF TEXAS, and THE STATE OF TEXAS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### FIRST AMENDED COMPLAINT

Plaintiff, the United States of America, through its undersigned counsel, by the authority of the Attorney General of the United States, files this First Amended Complaint and alleges as follows:

### NATURE OF THE ACTION

1.      The United States brings this civil enforcement action under sections 12 and 17 of the Rivers and Harbors Appropriation Act of 1899 ("RHA" or "Rivers and Harbors Act"), 33 U.S.C. §§ 406 and 413, and the Treaty of Peace, Friendship, Limits, and Settlement between the United States and the Republic of Mexico, February 2, 1848, 9 Stat. 922, 1848 WL 6374 (hereinafter, "1848 Treaty"), against Defendants Greg Abbott, in his official capacity as Governor of the State of Texas, and the State of Texas.

2.      As alleged below, Defendants have built structures in the Rio Grande, a navigable water of the United States, without the authorization of the U.S. Army Corps of Engineers ("Corps"), in violation of RHA section 10, 33 U.S.C. § 403.  These structures include a floating barrier and related infrastructure.

1

3.      As alleged below, Defendants' structures also constitute an unauthorized obstruction to the navigable capacity of waters of the United States in violation of RHA section 10, 33 U.S.C. § 403.

4.      As alleged below, Defendants' structures are prohibited by the 1848 Treaty, which prohibits the "construct[ion] [of] any work that may impede or interrupt, in whole or in part, the exercise of the right" to "navigation" without first obtaining "the consent of [Mexico]." 1848 Treaty art. VII, 1848 WL 6374, at *4.

5.      In this action, the United States seeks: (1) to enjoin the building of structures in navigable waters and the obstruction to the navigable capacity of the waters of the United States in violation of the RHA, 33 U.S.C. § 403; (2) to enjoin the building of structures in the Rio Grande in contradiction of the terms of the 1848 Treaty; and (3) to require Defendants, at their own expense and cost, to remove all structures and obstructions that they have unlawfully placed in the Rio Grande, including the floating barrier and all infrastructure related to the floating barrier as described in this First Amended Complaint.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction pursuant to 33 U.S.C. § 406 and 28 U.S.C. §§ 1331, 1345 and 1355.

7.      Venue is proper in the Western District of Texas, Austin Division, because Austin is the state capital and Defendant Greg Abbott is located in Austin, the unauthorized structures and obstruction exist in the Rio Grande in the vicinity of Eagle Pass, Texas, which lies within this District, and the events giving rise to the causes of action alleged below occurred in the Rio Grande in the vicinity of Eagle Pass, Texas, which lies within this District. The United States filed suit in the Western District of Texas, Austin Division, because it is the capital and where a Defendant

resides, and, at the time this action was filed, a related case, *Epi's Canoe & Kayak Team, LLC v. State of Texas*, No. 1:23-cv-00836-DII, was pending in the Austin Division.

## THE PARTIES

8.      Plaintiff is the United States of America.  Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519 and 33 U.S.C. § 413.

9.      Defendants are Greg Abbott, in his official capacity as Governor of the State of Texas, and the State of Texas.

10.     At all times relevant to the Complaint, Defendants caused and/or controlled the placement and/or construction activities that occurred or are occurring in the Rio Grande and are the subject of this complaint.

## CONSTITUTIONAL, STATUTORY, AND REGULATORY BACKGROUND

### I.      Rivers and Harbors Act

11.     RHA section 10, 33 U.S.C. § 403, prohibits the "creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States."  33 U.S.C. § 403.

12.     RHA section 10, 33 U.S.C. § 403, independently prohibits "build[ing] or commenc[ing] the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army."

13.     A Corps permit is required under RHA section 10, 33 U.S.C. § 403, for structures or work in or affecting navigable waters of the United States.  33 C.F.R. § 322.3(a).

14.     "Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce.  A determination of navigability, once made, applies laterally over the entire surface of the waterbody, and is not extinguished by later actions or events which impede or destroy navigable capacity."  33 C.F.R. § 329.4.

15.     A "structure" includes, but is not limited to, "any pier, boat dock, boat ramp, wharf, dolphin, weir, boom, breakwater, bulkhead, revetment, riprap, jetty, artificial island, artificial reef, permanent mooring structure, power transmission line, permanently moored floating vessel, piling, aid to navigation, or any other obstacle or obstruction."  33 C.F.R. § 322.2(b).

16.     RHA section 12, 33 U.S.C. § 406, provides that "the removal of any structures or parts of structures erected in violation of the provisions of [33 U.S.C. § 403 and other specified statutory sections] may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States."

**II.     <u>The 1848 Treaty</u>**

17.     The Supremacy Clause of the Constitution directs that: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

18.     The 1848 Treaty, known as the Treaty of Guadalupe Hidalgo, ended the Mexican-American War, with Mexico ceding certain of its territory to the United States in exchange for payment of millions of dollars.

19.     Article VII of the 1848 Treaty provides that navigation on the Rio Grande River "shall be free and common to the vessels and citizens of both countries; and neither shall, without the consent of the other, construct any work that may impede or interrupt, in whole or in part, the exercise of this right; not even for the purpose of favoring new methods of navigation."  1848 Treaty, art. VII, 1848 WL 6374, at *4.

20.     Accordingly, under the 1848 Treaty, the United States "shall" not construct anything in the Rio Grande that "may" impede or interrupt navigation on the Rio Grande River in any way without Mexico's consent.  This free-navigation requirement is binding and self-executing.

21.     At the time the 1848 Treaty was ratified, the term "navigation" was commonly understood to mean "[t]he act of navigating; the act of passing on water in ships or other vessels." 1828 Webster's Dictionary; *see also A Dictionary of the English Language* (1868) (similar); Oxford English Dictionary (1527-1860) ("a voyage; an expedition or journey by sea or water"); *Samuel Johnson's Dictionary* (1773) ("the act or practice of passing by water").

## GENERAL ALLEGATIONS

22.     The Rio Grande in the vicinity of Eagle Pass, Texas, is a navigable water of the United States.  *See* U.S. Army Corps of Engineers, Fort Worth District, Navigable Waters of the United States in the Fort Worth, Albuquerque, and Tulsa Districts Within the State of Texas at p. 1 (Dec. 20, 2011), Attachment 1[1]; U.S. Coast Guard, Memo from 8th District Commander re: Navigability Determination (Oct. 19, 1984), Attachment 2; Decl. of Capt. Brandy Parker Regarding Navigability Determination of the Rio Grande (July 24, 2023), Attachment 3.

---

[1] This document also is publicly available at: www.swf.usace.army.mil/Portals/47/docs/ regulatory/NavList2011.pdf.  As such, the Court may take judicial notice of it.  *See, e.g.*, *Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).

23.     Construction that may impede navigation on the Rio Grande, including in the vicinity of Eagle Pass, is governed by the 1848 Treaty.  1848 Treaty, art. VII, 1848 WL 6374, at *4.

24.     Beginning on or before July 10, 2023, and continuing through at least July 17, 2023, the Defendants, and/or persons acting on their behalf or at their direction, placed a floating barrier in the Rio Grande approximately two miles south of the Camino Real International Bridge, Eagle Pass, Texas (hereinafter the "Floating Barrier").  Declaration of Abraham Garcia ¶¶ 2-3 & Ex. 1-2 (July 24, 2023), Attachment 4.  The Floating Barrier appears to include associated infrastructure designed to anchor or fix it in place in the Rio Grande.  *Id.* Ex. 1.

25.     The Floating Barrier consists of a string of buoys each of which is between 4 and 6 feet in diameter.  According to a June 8, 2023, press statement by Governor Abbott, this string of buoys may stretch for at least 1,000 feet.[2]

26.     Defendants do not have authorization from the Corps pursuant to 33 U.S.C. § 403 or 33 C.F.R. § 322.3 for the Floating Barrier or for any associated infrastructure.

27.     Defendants did not seek authorization from the Corps prior to installing the Floating Barrier.

28.     Defendants did not obtain the consent of Mexico prior to installing the Floating Barrier.

29.     Governor Abbott stated publicly on June 8, 2023, that Texas may seek to build similar floating barriers within the Rio Grande along the United States-Mexico border in Texas in addition to the one then-contemplated, and now-constructed, in the vicinity of Eagle Pass, Texas.[3]

---

[2] *See* https://gov.texas.gov/news/post/governor-abbott-signs-sweeping-package-of-border-security-legislation.

[3] *See* https://gov.texas.gov/news/post/governor-abbott-signs-sweeping-package-of-border-security-legislation.

30.     Because Texas installed the Floating Barrier without seeking the Corps' authorization, the Corps and other relevant federal agencies were deprived of the opportunity to evaluate risks the barrier poses to public safety and the environment, mitigate those risks as necessary through the permitting process, and otherwise evaluate whether the project is in the public interest.

31.     Governor Abbott has stated publicly that the Floating Barrier is part of a broader effort called "Operation Lone Star."[4]  According to Governor Abbott, Operation Lone Star also includes the placement of concertina wire near the U.S.-Mexico border.[5]  With respect to the placement of concertina wire, Governor Abbott has stated: "We aren't asking for permission."[6]

32.     On July 20, 2023, United States Assistant Attorney General Todd Kim and United States Attorney Jaime Esparza wrote Governor Abbott and Texas Provisional Attorney General Angela Colmenero, giving the Texas officials notice that the Floating Barrier violates federal law and inviting the State in response to commit to expeditiously remove the Barrier and related structures.  On July 24, 2023, the Governor responded with a letter addressed to President Biden.  Attachment 5.  The Governor's letter acknowledges "the floating marine barriers we have deployed in the Rio Grande River in Eagle Pass" and states that "Texas will see you in court, Mr. President."  *Id.* at 1.

## COUNT 1:  VIOLATION OF THE RIVERS AND HARBORS ACT

33.     The United States repeats the allegations set forth in Paragraphs 1 through 16 and 22 through 32 of this Complaint.

---

[4] *See* https://gov.texas.gov/news/post/operation-lone-star-boosts-border-response-with-new-marine-barriers.

[5] *See id.*

[6] *See* https://twitter.com/GregAbbott_TX/status/1638306917939380224?t=BB0rNKcTgwyDn0j8qRiQKQ&s=19.

34.    The Floating Barrier, as constructed, installed, and placed by Defendants (and/or persons acting on their behalf or at their direction) wholly or partially in navigable waters of the United States, constitutes a "structure" within the meaning of RHA section 10, 33 U.S.C. § 403.

35.    The Floating Barrier, as constructed, installed, and placed by Defendants (and/or persons acting on their behalf or at their direction) wholly or partially in navigable waters of the United States, constitutes a "structure," as that term is defined in 33 C.F.R. § 322.2(b).

36.    The Floating Barrier is an obstruction to the navigable capacity of the Rio Grande, a navigable water of the United States.

37.    The Floating Barrier required authorization under RHA section 10, 33 U.S.C. § 403, and the Corps' implementing regulations at 33 C.F.R. Part 322, including 33 C.F.R. § 322.3(a), for its construction, installation, and placement in navigable waters of the United States.

38.    Defendants did not obtain a Corps permit or otherwise obtain the Corps' permission for the construction, installation, or placement of the Floating Barrier in the Rio Grande as required by RHA section 10, 33 U.S.C. § 403.

39.    The unauthorized construction, installation, and placement of the Floating Barrier structure in navigable waters of the United States violates RHA section 10, 33 U.S.C. § 403.

40.    The Floating Barrier's unauthorized obstruction to the navigable capacity of navigable waters of the United States violates RHA section 10, 33 U.S.C. § 403.

41.    Defendants have violated and continue to violate RHA section 10, 33 U.S.C. § 403, by: (a) the construction, installation, and placement of the Floating Barrier in the Rio Grande without a Corps permit; and (b) the creation of an unauthorized obstruction to the navigable capacity of navigable waters of the United States.

## COUNT 2:  PREEMPTION BY THE 1848 TREATY

42.     The United States repeats the allegations set forth in Paragraphs 1 through 10 and 17 through 32 of this Complaint.

43.     The 1848 Treaty requires that navigation on the Rio Grande "shall be free and common to the vessels and citizens of both countries; and neither shall, without the consent of the other, construct any work that may impede or interrupt, in whole or in part, the exercise of this right; not even for the purpose of favoring new methods of navigation."  1848 Treaty, art. VII, 1848 WL 6374, at *4.

44.     Pursuant to the Constitution, provisions of treaties are the "supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  The free-navigation requirement of the 1848 Treaty is self-executing and thus binding on Texas.

45.     The Floating Barrier constructed by Texas is "a work that may impede or interrupt, in whole or in part, the exercise" of the right of "the vessels and citizens of both countries" to navigate the river.  1848 Treaty, art. VII, 1848 WL 6374, at *4.  Texas's placement of the Floating Barrier in the Rio Grande, without the permission of Mexico, is inconsistent with the 1848 Treaty and is preempted.

## PRAYER FOR RELIEF

46.     WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

        a.     Enjoin Defendants from further constructing, installing, placing, or maintaining structures in waters of the United States, except in compliance with the RHA and all other applicable law;

b.    Enjoin Defendants from creating or maintaining obstructions in or affecting the navigable waters of the United States, except in compliance with the RHA and all other applicable law;

c.    Enjoin Defendants from constructing any work that may impede or interrupt, in whole or in part, navigation of the Rio Grande, except in compliance with the 1848 Treaty and all other applicable laws;

d.    Compel Defendants to promptly remove the Floating Barrier and any related unauthorized structures from waters of the United States pursuant to the RHA, 33 U.S.C. § 401 *et seq.*, and in accordance with all other requirements of law and consultation with the relevant authorities, including the Corps;

e.    Compel Defendants to promptly remove the unauthorized obstruction to the navigable capacity of navigable waters of the United States pursuant to the RHA 33 U.S.C. § 401 *et seq.*, and in accordance with all other requirements of law and consultation with the relevant authorities, including the Corps;

f.    Compel Defendants to promptly remove the unauthorized work in the Rio Grande that is impeding and/or interrupting navigation on the river pursuant to the 1848 Treaty;

g.    Award the United States its costs and disbursements; and

h.    Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

Dated: September 28, 2023                    By: _/s/ Andrew D. Knudsen_____
                                             BRIAN H. LYNK, D.C. Bar. No. 459525
                                             Senior Trial Counsel
                                             ANDREW KNUDSEN
                                             KIMERE J. KIMBALL
                                             Trial Attorneys
                                             Environmental Defense Section
                                             United States Department of Justice
                                             P.O. Box 7611
                                             Washington, DC 20044
                                             (202) 514-6187 (tel.)
                                             (202) 514-8865 (fax)
                                             brian.lynk@usdoj.gov
                                             andrew.knudsen@usdoj.gov
                                             kimere.kimball@usdoj.gov

                                             JAIME ESPARZA
                                             UNITED STATES ATTORNEY

                                             _/s/ James E. Dingivan_____
                                             JAMES E. DINGIVAN
                                             LANDON A. WADE
                                             Assistant United States Attorney
                                             Texas Bar No. 24094139 (Dingivan)
                                             Texas Bar No. 24098560 (Wade)
                                             United States Attorney's Office
                                             Western District of Texas
                                             601 N.W. Loop 410, Ste 600
                                             San Antonio, TX 78216
                                             (210) 384-7372 (tel.)
                                             (210) 384-7312 (fax)
                                             james.dingivan@usdoj.gov
                                             landon.wade@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on September 28, 2023, a copy of this filing was served on all counsel of record using this Court's electronic filing system.

/s/  *Andrew D. Knudsen*
Andrew D. Knudsen

# Attachment 1

# U.S. Army Corps of Engineers Navigable Waters List



**US Army Corps
of Engineers**
**Fort Worth District**

## Navigable Waters of the United States in the Fort Worth, Albuquerque, and Tulsa Districts Within the State of Texas
December 20, 2011



For purposes of Section 10 of the Rivers and Harbors Act of 1899, navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently being used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce (33 CFR 329.4). Navigable waters include lakes and other on-channel impoundments of navigable rivers. Under Section 10, the U.S. Army Corps of Engineers (USACE) regulates any work in or affecting navigable waters of the United States. The following waters are considered to be navigable waters of the United States and thus fall within the jurisdiction of the USACE in the Fort Worth, Albuquerque, and Tulsa districts. Navigable waters in the Galveston District are determined on a case-by-case basis and, therefore, are not included in this list. The USACE district(s) within which these navigable waters lie are indicated as:  SWF (Fort Worth District), SWT (Tulsa District), and SPA (Albuquerque District).

**Angelina River:** From Sam Rayburn Dam in Jasper County upstream to U.S. Highway 59 in Nacogdoches and Angelina counties and all USACE lands associated with B.A. Steinhagen Lake in Jasper and Tyler counties, Texas. [SWF]

**Big Cypress Bayou:** From the Texas-Louisiana state line in Marion County, Texas, upstream to Ellison Creek Reservoir in Morris County, Texas. [SWF]

**Brazos River:** From the point of intersection of Grimes, Waller, and Washington counties upstream to Whitney Dam in Hill and Bosque counties, Texas. [SWF]

**Colorado River:** From the Bastrop-Fayette county line upstream to Longhorn Dam in Travis County, Texas. [SWF]

**Neches River:** USACE lands associated with B.A. Steinhagen Lake in Jasper and Tyler counties, Texas. [SWF]

**Red River:** From the U.S. Highway 71 bridge at the Texas-Arkansas state line upstream to the Oklahoma-Arkansas state line and from Denison Dam on Lake Texoma upstream to Warrens Bend, approximately 7.25 miles north-northeast of Marysville, in Cooke County, Texas. [SWT]

**Rio Grande:** From the Zapata-Webb county line upstream to the point of intersection of the Texas-New Mexico state line and Mexico. [SWF, SPA]

**Sabine River:** From the point of intersection of the Sabine-Vernon parish line in Louisiana with Newton County, Texas upstream to the Sabine River-Big Sandy Creek confluence in Upshur County, Texas. [SWF]

**Sulphur River:** From the Texas-Arkansas state line upstream to Wright Patman Dam in Cass and Bowie counties, Texas. [SWF]

**Trinity River:** From the point of intersection of Houston, Madison, and Walker counties upstream to Riverside Drive in Fort Worth, Tarrant County, Texas. [SWF]

Attachment 2

U.S. Coast Guard Navigability
Determination

**U.S. Department of Transportation**

**United States Coast Guard**

COMMANDER
EIGHTH COAST GUARD DISTRICT
HALE BOGGS FEDERAL BLDG.

500 CAMP ST.
NEW ORLEANS, LA. 70130
STAFF SYMBOL:
PHONE:

(dl)
(504)589-6188

16731
OCT 1 9 1984

From:  Commander, Eighth Coast Guard District
To:    Commanding Officer, Marine Safety Office Corpus Christi,TX

Subj:  Navigability Determination, Rio Grande River, TX

Ref:   (a) Commanding Officer, MSO Corpus Christi ltr 16730 of 15
           December 83
       (b) COMDTINST 16210.1B

1.  From 1947 to 1975 the Rio Grande River was listed among the
navigable waters of the United States pursuant to treaties with
Mexico and for Coast Guard regulatory purposes.  This determination
covers the river "for the entire distance where it forms the
international boundary, to a point near El Paso, Texas" or from its
mouth at the Gulf of Mexico (mile 0.0 to mile 1247).  This finding
was published at 33 C.F.R. § 2.66-5 until 1976 when the practice of
publishing lists of waters determined to be navigable for Coast
Guard jurisdictional purposes was discontinued.

2.  Under the rule that, despite artificial or natural
obstructions, once a stream has been found to be of navigable use
it remains so, the designated stretch of the Rio Grande River
remains a navigable waterway of the United States.  See Economy
Light Co. v. U.S., 256 U.S. 113 (1921).  The vessel manning and
inspection laws of the United States apply to vessels operating on
it.  Obviously, whether a vessel is subject to those laws is a
function of its tonnage, cargo, route, etc.

3.  This represents the opinion of the Coast Guard only as to the
extent of its own jurisdiction, and does not address the juris-
diction of other agencies.

                              T. W. SNOOK
                              By direction

Copy to:  CCGD8 (obr)
          COMDT (G-M-TH-4/13)
          COMDT G-LMI

From: Commander, Eighth Coast Guard District
To:  Commanding Officer, Marine Safety Office Corpus Christi,TX

Subj:  Navigability Determination, Rio Grande River

Ref:  (a) Commanding Officer, MSO Corpus Christi ltr 16730 of 15
          December 83
      (b) COMDTINST 16210.1B


1.  On 29 August 1947, Commander, Eighth Coast Guard District,
determined that the Rio Grande River was part of the navigable
waters of the U.S. for Coast Guard regulatory purposes "for the
entire distance where it forms the international boundary, to a
point near El Paso, Texas." This finding was published at 33
C.F.R. { 2.66-5 until 1976 when the practice of publishing lists
of waters determined to be navigable for Coast Guard
jurisdictional purposes was discontinued.

2.  Under the rule that, despite artificial or natural
obstructions, once a stream has been found to be of navigable use
it remains so, the Rio Grande River from the Gulf of Mexico to El
Paso remains a navigable waterway of the United States.  See
Economy Light Co. v. U.S., 256 U.S. 113 (1921).  The vessel
manning and inspection laws of the United States apply to vessels
operating on it.  Obviously, whether a vessel is subject to those
laws is a function of its tonnage, cargo, route, etc.

3.  This represents only the opinion of the Coast Guard as to the
extent of its own jurisdiction, and does not address jurisdiction
of other agencies.


                                    Thomas W. Snook
                                    By direction


From:  Commander 8th Coast Guard District (dl)
To:  Commandant (G-MTH-4/13)

Attachment 3

U.S. Coast Guard
Authentication Declaration

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| GREG ABBOTT, in his capacity as GOVERNOR | ) | |
| OF THE STATE OF TEXAS, and THE STATE OF | ) | |
| TEXAS, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF CAPT BRANDY PARKER REGARDING NAVIGABILITY DETERMINATION OF THE RIO GRANDE RIVER

1.      My name is Brandy Parker.  I am either personally acquainted with the facts herein stated or have otherwise been made aware of them through the course of my duties, and declare as follows:

2.      I am employed by the United States Coast Guard within the Department of Homeland Security and am located in New Orleans, Louisiana.  I have served in the Coast Guard for 26 years.

3.      I am currently assigned as the Staff Judge Advocate in Coast Guard District 8 ("CGD8"), which is the Coast Guard area of responsibility that encompasses the Rio Grande River.  In this position, I am responsible for providing legal advice to the Commander, CGD8, managing a staff of attorneys in the performance of their duties, and maintaining records of navigability determinations.

4.      As part of my duties, I routinely review Coast Guard navigability determinations for waterways within the CGD8 area of responsibility.

5.      Navigable waters of the United States are defined in 33 C.F.R. § 2.36.  Navigability determinations of specific waterways are routinely made and reviewed by the Coast Guard in order to determine its jurisdiction.  *See* 33 C.F.R. § 2.40.  "Copies of these determinations are maintained

1

by the [Coast Guard] District Commander in whose district the waterway is located." *Id.*

6.      Exhibit A is a copy of the public record of the 1984 Rio Grande River navigability determination.   It is maintained in the district in which that river is located by the District Commander of CGD8.  This public record was made by the Coast Guard office—CGD8—with the legal authority to make such a determination.   These types of determinations are a regularly conducted activity of this office.  Upon review, the 1984 navigability determination is still in effect. Accordingly, the Rio Grande River remains navigable waters of the United States.

I hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and information.


Dated this 24 day of July 2023.

Brandy Parker, Captain
United States Coast Guard

2

EXHIBIT A

**U.S. Department
of Transportation**

**United States
Coast Guard**

COMMANDER
EIGHTH COAST GUARD DISTRICT
HALE BOGGS FEDERAL BLDG.

500 CAMP ST.
NEW ORLEANS, LA. 70130
STAFF SYMBOL:
PHONE:

(dl)
(504)589-6188

16731
OCT 19 1984

From:   Commander, Eighth Coast Guard District
To:     Commanding Officer, Marine Safety Office Corpus Christi,TX

Subj:   Navigability Determination, Rio Grande River, TX

Ref:    (a) Commanding Officer, MSO Corpus Christi ltr 16730 of 15
            December 83
        (b) COMDTINST 16210.1B

1.  From 1947 to 1975 the Rio Grande River was listed among the
navigable waters of the United States pursuant to treaties with
Mexico and for Coast Guard regulatory purposes.  This determination
covers the river "for the entire distance where it forms the
international boundary, to a point near El Paso, Texas" or from its
mouth at the Gulf of Mexico (mile 0.0 to mile 1247).  This finding
was published at 33 C.F.R. § 2.66-5 until 1976 when the practice of
publishing lists of waters determined to be navigable for Coast
Guard jurisdictional purposes was discontinued.

2.  Under the rule that, despite artificial or natural
obstructions, once a stream has been found to be of navigable use
it remains so, the designated stretch of the Rio Grande River
remains a navigable waterway of the United States.  See Economy
Light Co. v. U.S., 256 U.S. 113 (1921).  The vessel manning and
inspection laws of the United States apply to vessels operating on
it.  Obviously, whether a vessel is subject to those laws is a
function of its tonnage, cargo, route, etc.

3.  This represents the opinion of the Coast Guard only as to the
extent of its own jurisdiction, and does not address the juris-
diction of other agencies.

                                    T. W. SNOOK
                                    By direction

Copy to:   CCGD8 (obr)
           COMDT (G-M-TH-4/13)
           COMDT G-LMI

From: Commander, Eighth Coast Guard District
To:  Commanding Officer, Marine Safety Office Corpus Christi,TX

Subj:  Navigability Determination, Rio Grande River

Ref:  (a) Commanding Officer, MSO Corpus Christi ltr 16730 of 15
          December 83
      (b) COMDTINST 16210.1B


1.  On 29 August 1947, Commander, Eighth Coast Guard District,
determined that the Rio Grande River was part of the navigable
waters of the U.S. for Coast Guard regulatory purposes "for the
entire distance where it forms the international boundary, to a
point near El Paso, Texas." This finding was published at 33
C.F.R. { 2.66-5 until 1976 when the practice of publishing lists
of waters determined to be navigable for Coast Guard
jurisdictional purposes was discontinued.

2.  Under the rule that, despite artificial or natural
obstructions, once a stream has been found to be of navigable use
it remains so, the Rio Grande River from the Gulf of Mexico to El
Paso remains a navigable waterway of the United States.  See
Economy Light Co. v. U.S., 256 U.S. 113 (1921).  The vessel
manning and inspection laws of the United States apply to vessels
operating on it.  Obviously, whether a vessel is subject to those
laws is a function of its tonnage, cargo, route, etc.

3.  This represents only the opinion of the Coast Guard as to the
extent of its own jurisdiction, and does not address jurisdiction
of other agencies.


                                    Thomas W. Snook
                                    By direction


From:  Commander 8th Coast Guard District (dl)
To:  Commandant (G-MTH-4/13)

# Attachment 4

# U.S. Customs & Border Patrol Photo-Authentication Declaration

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | Civil Action No. |
| ) | |
| v.  ) | |
| ) | |
| GREG ABBOTT, in his capacity as GOVERNOR ) | |
| OF THE STATE OF TEXAS, and THE STATE OF ) | |
| TEXAS,  ) | |
| ) | |
| Defendants.  ) | |

## DECLARATION OF ABRAHAM GARCIA

1.      My name is Abraham Garcia.  I am currently a Supervisory Border Patrol Agent (SBPA) at the Eagle Pass North Station (EGT) in Eagle Pass, Texas. I have held this position since July 18, 2021.  As a SBPA, my duties involve supervising Border Patrol Agents (BPAs), as well as regular patrol of the area along the Rio Grande in and around Eagle Pass, Texas.

2.      On July 10, 2023, on or about 2:45 p.m. Central Time, I launched a United States Border Patrol (USBP) owned Small Unmanned Aircraft System (SUAS) from my position on the ground and proceeded to take three photographs of the buoy deployment at or near the Heavenly Farms in the vicinity of Texas Loop 480 in Eagle Pass, Texas. A true and accurate copy of those three photographs are attached as Exhibit 1.

3.      On July 17, 2023, at about 3:00 p.m. Central Time, I launched a USBP owned Small Unmanned Aircraft System (SUAS) from my position on the ground and proceeded to take three photographs of the buoy deployment to provide an update to my station leadership. These

photographs were taken at or near the Heavenly Farms in the vicinity of Texas Loop 480 in Eagle Pass, Texas. A true and accurate copy of those three photographs are attached as Exhibit 2.

I hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and information.

EXECUTED ON this 24th day of July 2023.

_____

Abraham Garcia
Supervisory Border Patrol Agent

EXHIBIT 1







EXHIBIT 2







# Attachment 5

# Letter from Governor Greg Abbott



GOVERNOR GREG ABBOTT

July 24, 2023

The Honorable Joseph R. Biden, Jr.
President of the United States
The White House
1600 Pennsylvania Avenue NW
Washington, D.C.  20500

Dear President Biden:

In a late-night letter sent to me last Thursday, your lawyers at the Department of Justice
threatened to sue the State of Texas over the floating marine barriers we have deployed in the
Rio Grande River in Eagle Pass.  Texas will see you in court, Mr. President.

In accordance with Article I, § 10, Clause 3 of the U.S. Constitution, I have asserted Texas's
"sovereign interest in protecting [her] borders."  *Arizona v. United States*, 567 U.S. 387, 419
(2012) (Scalia, J., dissenting).  I have done so in my role as the commander-in-chief of our
State's militia under Article IV, § 7 of the Texas Constitution.  *See Abbott v. Biden*, 70 F.4th 817,
845 (5th Cir. 2023) (Oldham, J.) (holding that "the *Constitution* forbids President Biden from
bypassing the States[ and] stepping into Governor Abbott's shoes").  Your ongoing violation of
Article IV, § 4 of the U.S. Constitution has left me no other choice.

All of these facts should be familiar, as they were laid out clearly in the three-page letter I sent to
you on November 16, 2022.  Then on January 8, 2023, I reiterated my point when I hand-
delivered another letter to you on the El Paso tarmac during a tour of the border disaster you
created:  "All of this is happening because you have violated your constitutional obligation to
defend the States against invasion through faithful execution of federal laws."  Instead of
belaboring our respective constitutional roles a third time, I am enclosing copies of my prior
letters.

With all that in mind, your lawyers' claim that Texas's floating marine barriers violate
Section 10 of the Rivers and Harbors Act misses the mark.  In that statute, Congress decreed that
"it shall not be lawful to build . . . any wharf, pier, dolphin, boom, weir, breakwater, bulkhead,
jetty, or other structures in any . . . water of the United States."  33 U.S.C. § 403.  To state the
obvious, that statute does not describe any action by the State of Texas.

But Texas's action is a side issue.  The fact is, if you would just enforce the immigration laws
Congress already has on the books, America would not be suffering from your record-breaking
level of illegal immigration.

The Honorable Joseph R. Biden, Jr.
July 24, 2023
Page 2

While I share the humanitarian concerns noted in your lawyers' letter, Mr. President, your finger points in the wrong direction.  Neither of us wants to see another death in the Rio Grande River. Yet your open-border policies encourage migrants to risk their lives by crossing illegally through the water, instead of safely and legally at a port of entry.  Nobody drowns on a bridge.

It has been under your watch that migrants have suffered an unprecedented crisis of inhumanity:

- Two years before Texas deployed the floating marine barriers, and a year before it deployed concertina wire, a United Nations agency declared that the border between the United States and Mexico is the deadliest land crossing in the world, with 728 migrant deaths recorded in 2021.

- Before Texas took the action about which you now complain, hundreds of migrants drowned in the Rio Grande River trying to cross the border illegally.

- Before Texas took the action about which you now complain, 53 migrants who illegally crossed the border died in the back of an 18-wheel tractor trailer near San Antonio.

- Before Texas took the action about which you now complain, thousands of Americans lost their lives to the fentanyl that pours across our border daily.

If you truly care about human life, you must begin enforcing federal immigration laws.  By doing so, you can help me stop migrants from wagering their lives in the waters of the Rio Grande River.  You can also help me save Texans, and indeed all Americans, from deadly drugs like fentanyl, cartel violence, and the horrors of human trafficking.

To end the risk that migrants will be harmed crossing the border illegally, you must fully enforce the laws of the United States that prohibit illegal immigration between ports of entry.  In the meantime, Texas will fully utilize its constitutional authority to deal with the crisis you have caused.

Sincerely,

Greg Abbott
Governor

GA:jsd

cc:   The Honorable Merrick B. Garland, U.S. Attorney General
      The Honorable Angela Colmenero, Provisional Attorney General of Texas
      The Honorable Jane Nelson, Secretary of State of Texas
      Colonel Steven C. McCraw, Director, Department of Public Safety
      Major General Thomas M. Suelzer, Adjutant General, Texas Military Department



GOVERNOR  GREG  ABBOTT

November 16, 2022


The Honorable Joseph R. Biden, Jr.
President of the United States
The White House
1600 Pennsylvania Avenue NW
Washington, D.C.  20500

Dear President Biden:

The U.S. Constitution won ratification by promising the States, in Article IV, § 4, that the federal government "shall protect each of them against Invasion."  By refusing to enforce the immigration laws enacted by Congress, including 8 U.S.C. § 1325(a)(1)'s criminal prohibition against aliens entering the United States between authorized ports of entry, your Administration has made clear that it will not honor that guarantee.  The federal government's failure has forced me to invoke Article I, § 10, Clause 3 of the U.S. Constitution, thereby enabling the State of Texas to protect its own territory against invasion by the Mexican drug cartels.

Your inaction has led to catastrophic consequences.  Under your watch, America is suffering the highest volume of illegal immigration in the history of our country.  This past year, more than 2 million immigrants tried to enter the country illegally, coming from more than 100 countries across the globe.  Worse yet, your failed border policies recently prompted a United Nations agency to declare that the border between the United States and Mexico is the deadliest land crossing in the world.

Texans are paying the price for your failure.  Ranches are being ripped apart, and homes are vulnerable to intrusion.  Our border communities are regularly disrupted by human traffickers and bailouts.  Deadly fentanyl is crossing the porous border to such a degree that it is now the leading cause of death for citizens between the ages of 18 and 45.

By opening our border to this record-breaking level of illegal immigration, you and your Administration are in violation of Article IV, § 4 of the U.S. Constitution.  Your sustained dereliction of duty compels Texas to invoke the powers reserved in Article I, § 10, Clause 3, which represents "an acknowledgement of the States' sovereign interest in protecting their borders."  *Arizona v. United States*, 567 U.S. 387, 419 (2012) (Scalia, J., dissenting).  Using that authority, Texas will escalate our efforts to repel and turn back any immigrant who seeks to enter our State at a border crossing that Congress has designated as illegal; to return to the border those who do cross illegally; and to arrest criminals who violate Texas law.

The Honorable Joseph R. Biden, Jr.
November 16, 2022
Page 2

Know this: Article I, § 10, Clause 3 is not just excess verbiage.  It reflects an understanding by our Founders, the authors of the Constitution, that some future President might abandon his obligation to safeguard the States from an extraordinary inflow of people who have no legal right of entry.  They foresaw your failures.  In the more than 240 years of our great nation, no Administration has done more than yours to place the States in "imminent Danger"—a direct result of your policy decisions and refusal to deliver on the Article IV, § 4 guarantee.  In the absence of action by your Administration to secure the border, every act by Texas officials is taken pursuant to the authority that the Founders recognized in Article I, § 10, Clause 3.

All of this can be avoided, of course, if you will simply enforce the laws that are already on the books.  Your Administration must end its catch-and-release policies, repel this unprecedented mass migration, and satisfy its constitutional obligation through faithful execution of the immigration laws enacted by Congress:

- You should aggressively prosecute the federal crimes of illegal entry and illegal reentry. *See* 8 U.S.C. § 1325, § 1326.

- You should comply with statutes mandating that various categories of aliens "shall" be detained.  *See, e.g.*, 8 U.S.C. § 1225(b)(1)(B)(ii) & (iii)(IV) (aliens claiming asylum); *id.* § 1225(b)(2)(A) (aliens applying for admission); *id.* § 1226(c)(1) (criminal aliens); *id.* § 1231(a)(2) (aliens ordered removed); *id.* § 1222(a) (aliens who may carry disease).

- You should stop paroling aliens *en masse* in violation of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which decrees that aliens applying for admission can be paroled into the United States "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).

- You should fully reinstate the Migrant Protection Protocols, such that aliens seeking admission remain in Mexico while proceedings unfold in the United States.  *See* 8 U.S.C. § 1225(b)(2)(C).

- You should immediately resume construction of the border wall in Texas, using the billions of dollars Congress has appropriated for that purpose.  *See* FY2021 DHS Appropriations Act § 210, Pub. L. 116-260, 134 Stat. 1182, 1456–57 (Dec. 27, 2020); FY2020 DHS Appropriations Act § 209, Pub. L. 116-93, 133 Stat. 2317, 2511–12 (Dec. 20, 2019).

Americans want an orderly immigration process that adheres to the laws enacted by the legislators they sent to Washington.  In the words of Judge Oldham, however, you have "supplant[ed] the rule of law with the rule of say-so" while "tell[ing] Congress to pound sand." *Texas v. Biden*, 20 F.4th 928, 982, 1004 (5th Cir. 2021); *cf.* U.S. Const. art. I, § 8, cl. 4 (empowering Congress "[t]o establish an uniform Rule of Naturalization").

The Honorable Joseph R. Biden, Jr.
November 16, 2022
Page 3

Before you took office, the United States enjoyed some of the lowest illegal-immigration figures it had seen in decades.  Your Administration gutted the policies that yielded those low numbers. You must reinstate the policies that you eliminated, or craft and implement new policies, in order to fulfill your constitutional duty to enforce federal immigration laws and protect the States against invasion.

Your silence in the face of our repeated pleas is deafening.  Your refusal to even visit the border for a firsthand look at the chaos you have caused is damning.  Two years of inaction on your part now leave Texas with no choice but to escalate our efforts to secure our State.  Your open-border policies, which have catalyzed an unprecedented crisis of illegal immigration, are the sole cause of Texas having to invoke our constitutional authority to defend ourselves.

Sincerely,

Greg Abbott
Governor of Texas

GA:jsd

cc:    The Honorable Merrick B. Garland, U.S. Attorney General
       The Honorable Alejandro Mayorkas, U.S. Secretary of Homeland Security



G O V E R N O R   G R E G   A B B O T T

**Via Hand-Delivery**
January 8, 2023

The Honorable Joseph R. Biden, Jr.
President of the United States

Dear President Biden:

Your visit to our southern border with Mexico today is $20 billion too little and two years too late. Moreover, your visit avoids the sites where mass illegal immigration occurs and sidesteps the thousands of angry Texas property owners whose lives have been destroyed by your border policies. Even the city you visit has been sanitized of the migrant camps which had overrun downtown El Paso because your Administration wants to shield you from the chaos that Texans experience on a daily basis. This chaos is the direct result of your failure to enforce the immigration laws that Congress enacted.

Under President Trump, the federal government achieved historically low levels of illegal immigration. Under your watch, by contrast, America is suffering the worst illegal immigration in the history of our country. Your open-border policies have emboldened the cartels, who grow wealthy by trafficking deadly fentanyl and even human beings. Texans are paying an especially high price for your failure, sometimes with their very lives, as local leaders from your own party will tell you if given the chance.

All of this is happening because you have violated your constitutional obligation to defend the States against invasion through faithful execution of federal laws. Halfway through your presidency, though, I can finally welcome you to the border. When you finish the photo-ops in a carefully stage-managed version of El Paso, you have a job to do:

- You must comply with the many statutes mandating that various categories of aliens "shall" be detained, and end the practice of unlawfully paroling aliens *en masse*.

- You must stop sandbagging the implementation of the Remain-in-Mexico policy and Title 42 expulsions, and fully enforce those measures as the federal courts have ordered you to do.

- You must aggressively prosecute illegal entry between ports of entry, and allow ICE to remove illegal immigrants in accordance with existing federal laws.

- You must immediately resume construction of the border wall in the State of Texas, using the billions of dollars Congress has appropriated for that purpose.

- You must designate the Mexican drug cartels as foreign terrorist organizations.

On behalf of all Americans, I implore you: Secure our border by enforcing Congress's immigration laws.

Sincerely,

*Greg Abbott*

Greg Abbott
Governor