IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>GREG ABBOTT, in his capacity as GOVERNOR OF THE STATE OF TEXAS, and THE STATE OF TEXAS,<br><br>*Defendants*. | Case No. 1:23-cv-00853-DAE |

**PLAINTIFF UNITED STATES' SUPPLEMENTAL BRIEF IN RESPONSE
TO DEFENDANTS' MOTION TO DISMISS**

JAIME ESPARZA
UNITED STATES ATTORNEY

LANDON A. WADE
  Assistant United States Attorney
  United States Attorney's Office
  Western District of Texas

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

BRIAN H. LYNK
  Senior Trial Counsel
BRYAN HARRISON
KIMERE J. KIMBALL
ANDREW D. KNUDSEN
   Trial Attorneys
   U.S. Department of Justice
   Environmental Defense Section

*Counsel for the United States of America*
(contact information on signature page)

Dated:  March 26, 2024

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.    Article VII of the 1848 Treaty is Self-Executing and Enforceable as Federal Law ............ 1

II.    The United States Has a Cause of Action in Equity to Enforce the Supremacy Clause ................................................................................................................................ 8

CONCLUSION ............................................................................................................................ 10

CERTIFICATE OF SERVICE ................................................................................................... 12

## TABLE OF AUTHORITIES

**U.S. CONSTITUTION**

U.S. Const. art. VI, cl. 2 ............................................................................................................8

**CASES**

*Al-Bihani v. Obama*,
  619 F.3d 1 (D.C. Cir. 2010) .................................................................................................2

*Am. Ins. Co. v. 356 Bales of Cotton*,
  26 U.S. 511 (1828) ..............................................................................................................2

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................................................................8

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) .........................................................................................................8, 9

*Asakura v. City of Seattle*,
  265 U.S. 332 (1924) ...............................................................................................1, 2, 4, 5

*Bacardi Corp. of Am. v. Domenech*,
  311 U.S. 150 (1940) ............................................................................................................2

*Barker v. Harvey*,
  181 U.S. 481 (1901) ............................................................................................................7

*Bell v. Hood*,
  327 U.S. 678 (1946) ............................................................................................................8

*Botiller v. Dominguez*,
  130 U.S. 238 (1889) .........................................................................................................6, 7

*British Caledonian Airways v. Bond*,
  665 F.2d 1153 (D.C. Cir. 1981) .......................................................................................3, 5

*Brzak v. United Nations*,
  597 F.3d 107 (2d Cir. 2010) ................................................................................................3

*Chew Heong v. United States*,
  112 U.S. 536 (1884) ............................................................................................................2

*Chirac v. Chirac*,
  15 U.S. 259 (1817) ..............................................................................................................2

*Clark v. Allen*,
  331 U.S. 503 (1947) ............................................................................................................ 2

*Comegys v. Vasse*,
  26 U.S. 193 (1828) .............................................................................................................. 2

*Cook v. United States*,
  288 U.S. 102 (1933) ............................................................................................................ 2

*Crown Castle Fiber, L.L.C. v. City of Pasadena, Tex.*,
  76 F.4th 425 (5th Cir. 2023) ............................................................................................... 9

*De Geofroy v. Riggs*,
  133 U.S. 258 (1890) ............................................................................................................ 2

*Diggs v. Richardson*,
  555 F.2d 848 (D.C. Cir. 1976) ............................................................................................ 4

*Doe v. Holder*,
  763 F.3d 251 (2d Cir. 2014) ........................................................................................ 4, 5, 7

*El Al Israel Airlines v. Tsui Yuan Tseng*,
  525 U.S. 155 (1999) ............................................................................................................ 2

*Factor v. Laubenheimer*,
  290 U.S. 276 (1933) ............................................................................................................ 2

*Fairfax's Devisee v. Hunter's Lessee*,
  11 U.S. 603 (1813) .............................................................................................................. 2

*Foster v. Neilson*,
  27 U.S. 253 (1829) .............................................................................................................. 1

*Frolova v. U.S.S.R.*,
  761 F.2d 370 (7th Cir. 1985) ........................................................................................... 4, 5

*Geo Grp., Inc. v. Newsom*,
  50 F.4th 745 (4th Cir. 2022) ............................................................................................... 8

*Georgia v. Brailsford*,
  3 U.S. 1 (1794) .................................................................................................................... 2

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ............................................................................................................ 8

*Hauenstein v. Lynham*,
   100 U.S. 483 (1879)..................................................................................................................2

*Head Money Cases*,
   112 U.S. 580 (1884)..................................................................................................................6

*Hopkirk v. Bell*,
   7 U.S. 454 (1806)......................................................................................................................2

*Hughes v. Edwards*,
   22 U.S. 489 (1824)....................................................................................................................2

*In re Alien Children Educ. Lit.*,
   501 F. Supp. 544 (S.D. Tex. 1980)............................................................................................4

*Johnson v. Browne*,
   205 U.S. 309 (1907)..................................................................................................................2

*Jordan v. Tashiro*,
   278 U.S. 123 (1928)..................................................................................................................2

*Kolovrat v. Oregon*,
   366 U.S. 187 (1961)..................................................................................................................2

*Lidas, Inc. v. United States*,
   238 F.3d 1076 (9th Cir. 2001)...................................................................................................3

*Maiorano v. Baltimore & Ohio R. Co.*,
   213 U.S. 268 (1909)..................................................................................................................2

*McKesson Corp. v. Islamic Rep. of Iran*,
   539 F.3d 485 (D.C. Cir. 2008) ..................................................................................................2

*Meade v. United States*,
   76 U.S. 691 (1869)....................................................................................................................2

*Medellin v. Texas*,
   552 U.S. 491 (2008)....................................................................................................1, 2, 3, 4, 6

*Newhall v. Sanger*,
   92 U.S. 761 (1875)....................................................................................................................7

*Nielsen v. Johnson*,
   279 U.S. 47 (1929)....................................................................................................................2

*Olympic Airways v. Husain*,
   540 U.S. 644 (2004) ...................................................................................................... 2

*Orr v. Hodgson*,
   17 U.S. 453 (1819) ........................................................................................................ 2

*Rep. of the Marshall Islands v. United States*,
   865 F.3d 1187 (9th Cir. 2017) ............................................................................... 3, 4, 5

*Robertson v. General Elec. Co.*,
   32 F.2d 495 (4th Cir. 1929) ........................................................................................... 5

*Rodriguez v. Pan Am. Health Org.*,
   502 F. Supp. 3d 200 (D.D.C. 2020) .............................................................................. 5

*Sanitary Dist. of Chicago v. United States*,
   266 U.S. 405 (1925) ...................................................................................................... 8

*Smith v. Canadian Pac. Airways*,
   452 F.2d 798 (2d Cir. 1971) ......................................................................................... 4

*Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. Iowa*,
   482 U.S. 522 (1987) ...................................................................................................... 2

*Strother v. Lucas*,
   31 U.S. 763 (1838) ........................................................................................................ 2

*Sumitomo Shoji Am., Inc. v. Avagliano*,
   457 U.S. 176 (1982) ...................................................................................................... 2

*Tameling v. U.S. Freehold & Emigration Co.*,
   93 U.S. 644 (1876) ........................................................................................................ 7

*Trans World Airlines, Inc. v. Franklin Mint Corp.*,
   466 U.S. 243 (1984) ...................................................................................................... 2

*Tucker v. Alexandroff*,
   183 U.S. 424 (1902) ...................................................................................................... 2

*United States v. Alabama*,
   691 F.3d 1269 (11th Cir. 2012) .................................................................................... 8

*United States v. Arredondo*,
   31 U.S. 691 (1832) ........................................................................................................ 2

*United States v. Bd. of Cnty. Comm'rs*,
 843 F.3d 1208 (10th Cir. 2016) ...................................................................................... 8

*United States v. Forty-Three Gallons of Whiskey*,
 93 U.S. 188 (1876) .......................................................................................................... 2

*United States v. O'Donnell*,
 303 U.S. 501 (1938) ........................................................................................................ 7

*United States v. Percheman*,
 32 U.S. 51 (1833) ............................................................................................................ 2

*United States v. Postal*,
 589 F.2d 862 (5th Cir. 1979) .......................................................................................... 3

*United States v. Rauscher*,
 119 U.S. 407 (1886) ........................................................................................................ 2

*United States v. South Carolina*,
 720 F.3d 518 (4th Cir. 2013) .......................................................................................... 8

*United States v. Supreme Ct. of N.M.*,
 839 F.3d 888 (10th Cir. 2016) ........................................................................................ 9

*United States v. Texas*,
 557 F. Supp. 3d 810 (W.D. Tex. 2021) .......................................................................... 8

*United States v. Texas*,
 No. 1:24-cv-8-DAE, 2024 WL 861526 (W.D. Tex. Feb. 29, 2024) ........................... 8, 9

*United States v. Washington*,
 596 U.S. 832 (2022) ........................................................................................................ 9

*Ware v. Hylton*,
 3 U.S. 199 (1796) ............................................................................................................ 1

*Whitney v. Robertson*,
 124 U.S. 190 (1888) ........................................................................................................ 1

*Zicherman v. Korean Air Lines Co.*,
 516 U.S. 217 (1996) ........................................................................................................ 2

**STATUTES**

28 U.S.C. § 1331 .................................................................................................................... 8

28 U.S.C. § 1651 ...................................................................................................................... 8

**TREATIES**

Treaty of Guadalupe Hidalgo, 1848 WL 6374 .............................................................. 1, 3, 4, 5, 6, 7

1889 Convention, 1890 WL 10691 ........................................................................................... 10

1944 Treaty, Article 24(c), 1945 WL 26968 ............................................................................. 10

**RESTATEMENTS**

Restatement (4th) of Foreign Relations Law, § 310 .............................................................. 2, 3, 6

On March 19, the Court ordered supplemental briefs addressing Texas's arguments for dismissal of the United States' second claim, which alleges that Article VII of the Treaty of Guadalupe Hidalgo ("1848 Treaty") preempts Texas's construction of the floating barrier in the Rio Grande. *See* Tr. 42-46 (ECF 62). The Court directed the parties to provide additional authorities and argument addressing two issues: (1) whether Article VII is self-executing; and (2) if so, whether the United States has a cause of action to enforce Article VII against conflicting state action. Tr. 43. For the reasons discussed below and in the United States' Opposition brief (ECF 63), the Court should deny Texas's Motion to Dismiss.

**I.     Article VII of the 1848 Treaty is Self-Executing and Enforceable as Federal Law.**

A.)  A self-executing treaty provision is "equivalent to an act of the legislature" and "operates of itself without the aid of any legislative provision."[1] Such provisions "constitute binding federal law enforceable in United States courts" that preempts contrary state law under the Supremacy Clause.[2] By contrast, when "treaty provisions are not self-executing they can only be enforced pursuant to legislation to carry them into effect."[3]

Although the Supreme Court did not fully clarify the doctrinal framework for analyzing self-execution until its seminal case of *Medellin*, *supra* n.1, self-execution is not a novel or modern concept. Indeed, dating back to the Founding era, federal courts have enforced some treaty provisions on the premise that they are self-executing.[4] Those include provisions of numerous bilateral "Friendship, Commerce, and Navigation treaties" defining the "civil, property, and

---

[1] *Medellin v. Texas*, 552 U.S. 491, 505 (2008) (quoting *Foster v. Neilson*, 27 U.S. 253, 314 (1829) (Marshall, C.J.)).
[2] *Id.* at 504; *see Asakura v. City of Seattle*, 265 U.S. 332, 341 (1924).
[3] *Medellin*, 552 U.S. at 505 (quoting *Whitney v. Robertson*, 124 U.S. 190, 194 (1888)).
[4] *See, e.g.*, *Ware v. Hylton*, 3 U.S. 199, 204 (1796) (holding provision of Treaty of Paris that guaranteed recovery of *bona fide* debts prevailed over contrary state law); *Medellin*, 552 U.S. at 568-69 (listing examples of Supreme Court decisions treating treaty provisions as self-executing).

commercial rights each treaty country will afford to nationals of the other."[5]  Treaty provisions found to be self-executing also cover a wide range of subject matter, including: rights of aliens to travel, engage in commerce, pursue a trade, and have access to the courts;[6] recovery of monetary debts by aliens;[7] alien land, property, and inheritance rights;[8] property claims from territorial acquisition;[9] extradition treaties and criminal jurisdiction;[10] alcohol control conventions;[11] civil air carrier liability;[12] trademark rights;[13] and international civil discovery rules.[14]

It is rare for a treaty to explicitly address whether any particular provision is self-executing.[15]  Instead, courts have outlined several principles for identifying self-executing provisions.  The fundamental question is whether the President and Senate ratifying the treaty

---

[5] *Al-Bihani v. Obama*, 619 F.3d 1, 15-16 (D.C. Cir. 2010) (Kavanaugh, J., concurring) (citing *Kolovrat v. Oregon*, 366 U.S. 187 (1961) (treaty with Serbia); *Clark v. Allen*, 331 U.S. 503 (1947) (treaty with Germany); *McKesson Corp. v. Islamic Rep. of Iran*, 539 F.3d 485 (D.C. Cir. 2008) (treaty with Iran)).

[6] *Chew Heong v. United States*, 112 U.S. 536 (1884); *Asakura*, 265 U.S. at 341; *Jordan v. Tashiro*, 278 U.S. 123 (1928); *Nielsen v. Johnson*, 279 U.S. 47 (1929); *Maiorano v. Baltimore & Ohio R. Co.*, 213 U.S. 268 (1909); *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176 (1982).

[7] *Georgia v. Brailsford*, 3 U.S. 1 (1794); *Hopkirk v. Bell*, 7 U.S. 454 (1806).

[8] *Fairfax's Devisee v. Hunter's Lessee*, 11 U.S. 603 (1813); *Chirac v. Chirac*, 15 U.S. 259 (1817); *Orr v. Hodgson*, 17 U.S. 453 (1819); *Hughes v. Edwards*, 22 U.S. 489 (1824); *Am. Ins. Co. v. 356 Bales of Cotton*, 26 U.S. 511 (1828); *Hauenstein v. Lynham*, 100 U.S. 483 (1879); *De Geofroy v. Riggs*, 133 U.S. 258 (1890).

[9] *Comegys v. Vasse*, 26 U.S. 193 (1828); *United States v. Arredondo*, 31 U.S. 691 (1832); *United States v. Percheman*, 32 U.S. 51 (1833); *Strother v. Lucas*, 31 U.S. 763 (1838); *Meade v. United States*, 76 U.S. 691 (1869).

[10] *United States v. Rauscher*, 119 U.S. 407 (1886); *Johnson v. Browne*, 205 U.S. 309 (1907); *Factor v. Laubenheimer*, 290 U.S. 276 (1933); *Tucker v. Alexandroff*, 183 U.S. 424 (1902).

[11] *United States v. Forty-Three Gallons of Whiskey*, 93 U.S. 188 (1876); *Cook v. United States*, 288 U.S. 102 (1933).

[12] *Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243 (1984); *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996); *El Al Israel Airlines v. Tsui Yuan Tseng*, 525 U.S. 155 (1999); *Olympic Airways v. Husain*, 540 U.S. 644 (2004).

[13] *Bacardi Corp. of Am. v. Domenech*, 311 U.S. 150 (1940).

[14] *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. Iowa*, 482 U.S. 522 (1987).

[15] Restatement (4th) of Foreign Relations Law, § 310 cmt. c ("Restatement (4th)"); *see Medellin*, 552 U.S. at 521 (noting treaties need not use "talismanic words" to be self-executing).

2

intended the provision to have domestic effect. *Medellin*, 552 U.S. at 519. This analysis is primarily based on interpretation of the operative treaty text, and may also be informed by the treaty's drafting and negotiation history and the parties' postratification understanding.[16] *Id.* at 506-07; *United States v. Postal*, 589 F.2d 862, 877 (5th Cir. 1979). In reviewing the text, courts assess whether the treaty provision anticipates "future action through [the parties'] political branches," *Medellin*, 522 U.S. at 508, and whether it "is sufficiently precise or obligatory to be suitable for direct application by the judiciary," *Rep. of the Marshall Islands v. United States*, 865 F.3d 1187, 1194 n.3 (9th Cir. 2017).

Self-execution is analyzed provision-by-provision for each treaty, and a treaty may have some provisions that are self-executing and others that are not.[17] There is no presumption for or against self-execution.[18]

B.) The text of Article VII unambiguously "conveys an intention that it be self-executing" through its precise and obligatory language. *Medellin*, 552 U.S. at 505 (cleaned up). First, Article VII uses the obligatory term "shall" to denote exactly what specific rights are protected and what specific conduct is prohibited.[19] The guarantee of "free and common" navigation of the Rio

---

[16] In some cases, the President or Senate may have expressed positions on self-execution during the ratification process. *See Brzak v. United Nations*, 597 F.3d 107, 111-12 (2d Cir. 2010). Such explicit evidence of intent is rare for treaties ratified before the 20th century, and the absence of such statements for the 1848 Treaty should not be taken as evidence that Article VII is not self-executing.

[17] *Postal*, 589 F.2d at 884 n.35; *see also British Caledonian Airways v. Bond*, 665 F.2d 1153, 1161 (D.C. Cir. 1981) (finding Article 33 of Convention on International Civil Aviation is self-executing despite presence of other provisions that "clearly require the contracting states … to take the necessary steps under national law to implement the purposes of those provisions"); *Lidas, Inc. v. United States*, 238 F.3d 1076, 1080 (9th Cir. 2001) ("[I]t is far from uncommon for a treaty to contain both self-executing and non-self-executing provisions.").

[18] *See Medellin*, 552 U.S. at 520 (whether provision is self-executing "depend[s] on the treaty"); Restatement (4th), § 310 rep. n.3.

[19] *See Marshall Islands*, 865 F.3d at 1195 n.5 ("A provision that is 'absolute and mandatory' is more likely self-executing.") (citation omitted).

3

Grande, 1848 WL 6374, at *4, is not simply an aspirational "declaration[] of principles" imposing no obligations.[20] Rather, it secures a right for the "vessels and citizens of both countries," and the immediately following language reinforces and protects that right through an explicit prohibition on works that "may impede or interrupt" it. 1848 WL 6374, at *4. Thus, Article VII is analogous to the treaty provision the Supreme Court found self-executing in *Asakura*, which provided that citizens of the United States and Japan "shall have liberty to … carry on trade … upon the same terms as native citizens or subjects."[21] Second, Article VII's text is sufficiently precise to allow for direct application by courts. The treaty does not use ambiguous or discretionary language to define the parties' commitments.[22] Article VII leaves no ambiguity as to what it prohibits: "*any* work that may impede or interrupt, *in whole or in part*, the exercise of" the right of free and common navigation on the Rio Grande. 1848 WL 6374, at *4 (emphases added).

Further, nothing in Article VII indicates that future action by the political branches was anticipated or needed to give it domestic effect or provide meaning to its guarantees. Courts have declined to read treaty provisions as self-executing where they use language indicating the parties will "undertake" or otherwise endeavor to carry out their commitments.[23] But Article VII does not

---

[20] *See Frolova v. U.S.S.R.*, 761 F.2d 370, 374 (7th Cir. 1985) (holding "pledge to assist in achieving" treaty provision's principles was not self-executing); *In re Alien Children Educ. Lit.*, 501 F. Supp. 544, 590 (S.D. Tex. 1980) (holding provision promising parties "will exert the greatest efforts" to achieve treaty goals was not self-executing).

[21] 265 U.S. at 340; *see also Smith v. Canadian Pac. Airways*, 452 F.2d 798, 801 (2d Cir. 1971) (finding "absolute and mandatory" language of Warsaw Convention provision was self-executing), *abrogated on other grounds*, *Benjamins v. British European Airways*, 572 F.2d 913 (2d Cir. 1978).

[22] *See Doe v. Holder*, 763 F.3d 251, 256 (2d Cir. 2014) (finding provision not self-executing where it left parties discretion on "what measures are 'appropriate' and 'within its means,' and what protection is sufficiently 'effective'"); *Marshall Islands*, 865 F.3d at 1196 (noting treaty provision's use of "vague terms that do not 'provide specific standards' for courts to apply") (quoting *Diggs v. Richardson*, 555 F.2d 848, 851 (D.C. Cir. 1976)); *Frolova*, 761 F.2d at 375 n.7.

[23] *See, e.g.*, *Medellin*, 552 U.S. at 508 (holding treaty's promise that parties will "undertake[] to comply" with International Court of Justice decisions was merely "a commitment … to take future action through their political branches"); *Marshall Islands*, 865 F.3d at 1195 (noting parties

4

provide that the United States and Mexico will *undertake* to protect navigation of the Rio Grande. It simply states that navigation "shall be free and common" and that "neither [country] shall" impede or interrupt it. 1848 WL 6374, at *4. This immediate, imperative language is analogous to the provision Chief Justice Marshall treated as self-executing in *Percheman*, which similarly provided certain land grants "shall be ratified and confirmed" without any need for further action.[24]

Finally, subsequent treaties between the United States and Mexico demonstrate their postratification understanding that Article VII is self-executing. For example, both the Treaty of 1853 and the 1884 Convention declare their intent to preserve Article VII's protections in language that makes clear both countries understood those protections to already be effective and contemplated no need for additional action to implement Article VII's requirements.[25]

C.) Texas primarily argues Article VII cannot be self-executing because Article XXI of the 1848 Treaty provides a "non-judicial dispute resolution procedure." ECF 62 at 9, 10-11; ECF 65 at 2-3. But that procedure is not relevant here. The 1848 Treaty's provision for "disagreement[s]

---

merely "undertake[] to pursue" future negotiations); *Frolova*, 761 F.2d at 376 (noting provision expressed parties' "intention now to proceed to the implementation" of treaty stipulations); *Doe*, 763 F.3d at 256 (noting parties' commitment to "take necessary measures, including legislative and administrative measures, to ensure the implementation" of treaty obligations) (cleaned up); *Robertson v. General Elec. Co.*, 32 F.2d 495, 500 (4th Cir. 1929) (noting priority rights provided in treaty would be extended by contracting parties, "not by the instrument itself"); *In re Alien Children Educ. Litig.*, 501 F. Supp. at 590 (noting parties "will exert the greatest efforts, in accordance with their constitutional processes, to insure" rights envisioned by treaty provision).

[24] 32 U.S. at 88-89 (holding treaty's language, when read together with Spanish counterpart, reflected intent to operate "by force of the instrument itself" and did not "stipulat[e] for some future legislative act"); *see also British Caledonian Airways*, 665 F.2d at 1160-61 (treaty providing certain certificates "shall be recognized as valid" "require[s] no legislation or administrative regulations to implement" it); *Asakura*, 265 U.S. at 340-41 (treaty providing individuals "shall have liberty … to carry on trade" "operates of itself").

[25] *See* ECF 63 at 12-13 (discussing treaties); *compare Rodriguez v. Pan Am. Health Org.*, 502 F. Supp. 3d 200, 226-27 (D.D.C. 2020) (rejecting argument that U.N. Charter automatically granted international organization immunity from suit where U.N. saw need to propose later treaties granting such immunity for specific organizations).

5

… between the governments of *the two republics*" (*i.e.*, the United States and Mexico) is irrelevant to how one party may enforce the treaty *domestically*. 1848 WL 6374, at *9 (emphasis added). Moreover, this case does not involve either of the two circumstances covered by Article XXI—*i.e.*, a dispute between the two countries over "the *interpretation* of any stipulation" in the 1848 Treaty or "the political or commercial relations of the two nations." *Id.* (emphasis added).

In any event, a treaty's provision for international dispute resolution mechanisms does not preclude its domestic enforcement through direct judicial application.[26] The question is whether the text indicates the treatymakers understood the treaty's dispute resolution provisions to preclude direct application. In *Medellin*, the Supreme Court found there was "no reason to believe that the President and Senate signed up" to make decisions of the International Court of Justice ("ICJ") self-executing and enforceable in domestic courts because it would negate the treaty's specific dispute mechanism, which afforded the United States an "unqualified right" to opt for noncompliance with an ICJ decision by vetoing any enforcement resolution in the U.N. Security Council. 552 U.S. at 510-11. By contrast, giving direct effect to Article VII would not undermine Article XXI, which simply states that should certain disputes arise between the two countries, they will endeavor to resolve them without resorting to hostility or reprisals. 1848 WL 6374, at *9.

Texas also argues Article VII cannot be self-executing because Article VIII of the 1848 Treaty, addressing Mexicans' rights to property owned in territory ceded to the United States, is not self-executing. ECF 62 at 11-14; ECF 65 at 4. But self-execution must be determined on a provision-by-provision basis. *See supra* n.17. The cases and statutes Texas cited in its briefs and at oral argument solely concern Article VIII and thus do not weigh against self-execution here.[27]

---

[26] Restatement (4th) § 310 rep. n.7 (citing *Head Money Cases*, 112 U.S. 580, 598-99 (1884)).
[27] At argument, Texas claimed that in on one of those cases, the Supreme Court "ruled that it could not enforce the [1848] Treaty's provisions by itself." Tr. 9 (discussing *Botiller v. Dominguez*,

6

Indeed, if anything, the cases interpreting Article VIII and the statutes implementing it only clarify why that provision is distinct from Article VII, the only provision at issue here. Unlike Article VII, the text and surrounding context of Article VIII reflect a need for further action by the political branches to give effect to its language. While Article VIII promised that "property of every kind … belonging to Mexicans" in the ceded territories "shall be inviolably respected," that provision by itself cannot "quiet the titles of the claimants under Spanish and Mexican grants" because land claims by their nature require authentication and recording with appropriate authorities.[28] The United States still needed to develop appropriate rules and procedures to identify which property "belong[ed]" to Mexican citizens in the ceded territory and ensure their property rights were "respected" under United States law.[29] The differences between the United States' and Mexico's land systems only heightened the need for domestic implementation.[30] Article VII's obligatory language presents no similar need and can be readily applied, and accordingly, the Court should recognize its domestic effect as a self-executing treaty provision.

---

130 U.S. 238 (1889)). This overstates the holding in *Botiller*, which solely concerned Article VIII and in no way addressed the enforceability of the 1848 Treaty as a whole, much less Article VII. And even as to Article VIII, the Court simply held that it could not rule on whether Congress's 1851 implementing legislation had adequately given effect to Article VIII's commitments. 130 U.S. at 246-47.

[28] 1848 WL 6374, at *5; *United States v. O'Donnell*, 303 U.S. 501, 512 (1938).

[29] *Botiller*, 130 U.S. at 247 (noting 1851 statute was "enacted for the purpose of ascertaining the validity of claims derived from the Mexican government"); *Barker v. Harvey*, 181 U.S. 481, 486-87 (1901) (holding Article VIII left United States discretion "to provide reasonable means for determining the validity of all titles within the ceded territory"); *Tameling v. U.S. Freehold & Emigration Co.*, 93 U.S. 644 (1876) (noting that while Article VIII protected property rights, "[t]he duty of providing the mode of securing them and fulfilling the obligations which the treaty of cession imposed, was within the appropriate province of the political department").

[30] *See Newhall v. Sanger*, 92 U.S. 761, 763 (1875) (noting absent legislation, "the operations of our land system, had it then been extended to California, would have produced the utmost confusion in titles to real estate"); *Doe*, 763 F.3d at 256 (finding provision not self-executing where "signatory must in the first instance determine what measures comply both with its treaty obligations and its domestic law").

## II.  The United States Has a Cause of Action in Equity to Enforce the Supremacy Clause.

A.)  Texas's argument that the United States lacks a cause of action to enforce the supremacy of federal law—including treaty provisions like Article VII—is mistaken.  Indeed, this Court recently rejected the very same argument by Texas in its decision preliminarily enjoining Texas Senate Bill 4.  *United States v. Texas*, No. 1:24-cv-8-DAE, 2024 WL 861526, *9-10 (W.D. Tex. Feb. 29, 2024).  Because the Supremacy Clause provides that treaties are "the supreme Law of the Land" in the same manner as the Constitution and federal laws, U.S. Const. art. VI, cl. 2, this Court's reasoning in *United States v. Texas* is directly applicable here.[31]

The equitable cause of action invoked in this case is no different from that invoked in the seminal Supremacy Clause case of *Arizona v. United States*—where neither the Supreme Court nor any party disputed the availability of a cause of action—or the numerous other cases in which the United States has brought suit to enforce the supremacy of federal law over contrary state actions.[32]  Congress has empowered federal courts to exercise equity jurisdiction and to grant such relief as "was traditionally accorded by courts of equity."[33]  "[E]quitable relief is traditionally available to enforce federal law" by a proper plaintiff unless Congress has "displace[d]" it.[34]  The

---

[31] At argument on its Motion to Dismiss, Texas asserted that recognizing an equitable cause of action here would negate the distinction between self-executing and non-self-executing treaty provisions.  Tr. 37.  This argument conflates the separate issues of whether a treaty provision is self-executing and, if so, whether a particular party may sue to enforce it.

[32] *Arizona v. United States*, 567 U.S. 387 (2012); *Sanitary Dist. of Chicago v. United States*, 266 U.S. 405 (1925); *Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (4th Cir. 2022) (en banc); *United States v. Bd. of Cnty. Comm'rs*, 843 F.3d 1208 (10th Cir. 2016); *United States v. South Carolina*, 720 F.3d 518, 523 (4th Cir. 2013); *United States v. Alabama*, 691 F.3d 1269, 1279 (11th Cir. 2012); *see also United States v. Texas*, 557 F. Supp. 3d 810, 820 (W.D. Tex. 2021) (citing cases).

[33] *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999); *see* 28 U.S.C. §§ 1331, 1651.

[34] *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution ….").

Fifth Circuit has recognized the availability of suits in equity under the Supremacy Clause as recently as last year.[35]

Texas's reliance on the Supreme Court's decision in *Armstrong*, ECF 65 at 5-6, is misplaced, as this Court recognized in *United States v. Texas*. 2024 WL 861526, at *9-10 (analyzing *Armstrong*, 575 U.S. at 327). The *Armstrong* Court declined to recognize an implied private cause of action under the Supremacy Clause, but simultaneously recognized the traditional availability of suits in equity. And though the Court found that an equitable cause of action was not available to enforce the specific provision of the Medicaid Act at issue in that case, it did not call into question the *general* availability of claims in equity to give effect to the Supremacy Clause. *Armstrong*, 575 U.S. at 327-39. In fact, the Supreme Court heard an equitable cause of action under the Supremacy Clause just a few years later without raising any concerns. *United States v. Washington*, 596 U.S. 832, 837 (2022). As the Tenth Circuit has noted, *Armstrong* "counsels in favor of—not against—permitting the United States to invoke preemption in order to protect its interest." *United States v. Supreme Ct. of N.M.*, 839 F.3d 888, 906 n.9 (10th Cir. 2016).

While Congress can displace an equitable cause of action through "express and implied statutory limitations," it has not done so here. *See United States v. Texas*, 2024 WL 861526, at *10 (quoting *Armstrong*, 575 U.S. at 327). "[F]or Texas's argument to succeed, Texas must identify some law that has displaced equitable relief." *Id.* Congress has not provided by statute any other remedy aimed at enforcing Article VII's protection of navigation or otherwise demonstrated any "intent to foreclose" equitable relief. *See Armstrong*, 575 U.S. at 328 (quoting *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002)).

---

[35] *See Crown Castle Fiber, L.L.C. v. City of Pasadena, Tex.*, 76 F.4th 425, 434-35 (5th Cir. 2023) ("Even though [the statute] does not confer a private right, a plaintiff is not prevented from gaining equitable relief on preemption grounds.").

9

B.) Texas's argument regarding the jurisdiction of the International Boundary Water Commission ("IBWC") under a different treaty, the 1889 Convention, 1890 WL 10691, is a non sequitur. Texas claims that Article I of the 1889 Convention grants the IBWC "exclusive jurisdiction over navigability disputes." ECF 62 at 15-17; *see also* ECF 65 at 6; Tr. 8, 36. As an initial matter, even if the 1889 Convention encompassed navigation (which it does not), Texas's argument would not preclude the equitable cause of action the United States asserts here. Like Article XXI of the 1848 Treaty, *see supra* p. 6, Article I of the 1889 Convention only addresses disputes *between the two countries* and does not speak to the United States' domestic enforcement of its treaty obligations. 1890 WL 10691, at *1.

In any event, Article I does not address "navigability disputes," a term appearing nowhere in that treaty. Rather, the Convention's sole focus is changes to the Rio Grande's *river bed* that may affect the boundary line's location. *See id.* (stating in preamble Convention's purpose to "avoid the difficulties occasioned by reason of the changes which take place in the bed of the Rio Grande"). Accordingly, Article I grants the IBWC jurisdiction over disputes as to "works that may be constructed in [the Rio Grande] … *affecting the boundary line*." *Id.* (emphasis added).

Finally, even if Texas were correct that Article I assigns the IBWC responsibility over navigation disputes, that still would not deny the United States a cause of action here. Instead, it would mean that the United States also has a cause of action under a *different* treaty provision: Article 24(c) of the 1944 Treaty, which authorizes the U.S. Section of the IBWC to "invoke when necessary the jurisdiction of the courts … to aid in the execution and enforcement of [the IBWC's] powers and duties" entrusted to it by the two countries. 1945 WL 26968, at *17.

**CONCLUSION**

For the foregoing reasons, Texas's Motion to Dismiss should be denied.

Respectfully submitted,

Dated: March 26, 2024

| | |
|---|---|
| JAIME ESPARZA<br>UNITED STATES ATTORNEY | TODD KIM<br>ASSISTANT ATTORNEY GENERAL<br>Environment & Natural Resources Division |
| /s/ Landon A. Wade<br>LANDON A. WADE<br>  Assistant United States Attorney<br>  Texas Bar No. 24098560<br>United States Attorney's Office<br>Western District of Texas<br>903 San Jacinto Blvd., Suite 334<br>Austin, TX 78701<br>(512) 370-1255 (tel)<br>(512) 916-5854 (fax)<br>Landon.wade@usdoj.gov | /s/ Andrew D. Knudsen<br>BRIAN H. LYNK<br>  Senior Trial Counsel<br>  DC Bar No. 459525<br>BRYAN J. HARRISON<br>  Trial Attorney<br>  FL Bar No. 106379<br>KIMERE J. KIMBALL<br>  Trial Attorney<br>  CA Bar No. 260660<br>ANDREW D. KNUDSEN<br>  Trial Attorney<br>  DC Bar No. 1019697<br>U.S. Department of Justice<br>Environmental Defense Section<br>P.O. Box 7611<br>Washington, DC 20044<br>(202) 514-6187 (Lynk)<br>(202) 514-8865 (fax)<br>Brian.lynk@usdoj.gov<br>Bryan.harrison@usdoj.gov<br>Kimere.kimball@usdoj.gov<br>Andrew.knudsen@usdoj.gov<br><br>*Counsel for the United States of America* |

## CERTIFICATE OF SERVICE

I certify that on March 26, 2024, a copy of this filing was served on counsel of record through the Court's electronic filing system.

*/s/ Andrew D. Knudsen*
Andrew Knudsen
