# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 1:23-cv-00853-DAE |
| GREG ABBOTT, in his capacity as GOVERNOR OF THE STATE OF TEXAS, and THE STATE OF TEXAS, | |
| *Defendants*. | |

**PLAINTIFF UNITED STATES' OPPOSED MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM, STRIKE DEFENDANTS' CONSTITUTIONAL DEFENSE, STRIKE JURY DEMAND & ADVISORY JURY REQUEST, AND FOR LEAVE TO FILE**

JAIME ESPARZA
UNITED STATES ATTORNEY

LANDON A. WADE
  Assistant United States Attorney
  Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

BRIAN H. LYNK
  Senior Trial Counsel
  DC Bar No. 459525
BRYAN HARRISON
  Trial Attorney
  FL Bar No. 106379
KIMERE J. KIMBALL
  Trial Attorney
  CA Bar No. 260660
ANDREW D. KNUDSEN
  Trial Attorney
  DC Bar No. 1019697
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov

Dated:  June 21, 2024

*Counsel for the United States of America*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ....................................................................................................1

BACKGROUND .....................................................................................................1

STANDARDS OF REVIEW ...................................................................................4

ARGUMENT ..........................................................................................................5

    I.     Texas's Counterclaim Fails to Identify a Waiver of Sovereign
         Immunity ........................................................................................ 5

    II.    The Court Should Strike Texas's "Invasion" Defense as Legally
         Insufficient ....................................................................................7

         A.     Texas's "Invasion" Defense Fails as a Matter of Law................8

         B.     Striking Texas's "Invasion" Defense Now Will Focus
             Discovery and Avoid Unnecessarily Prolonging Trial .............13

    III.   There Is No Right to a Jury Trial in this Matter ...................................16

    IV.   An Advisory Jury Would Be Unhelpful and Should be Denied..........................18

    V.    To the Extent Necessary, the Court Should Grant Leave to File
         This Motion....................................................................................20

CONCLUSION......................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**U.S. CONSTITUTION**

U.S. Const. amend. VII ................................................................................................................ 16

U.S. Const. art. I, § 10 ................................................................................................................. 9

U.S. Const. art. I, § 10, cl. 3 ........................................................................... 7, 8, 9, 11, 12, 13

U.S. Const. art. IV, § 4 ............................................................................................................... 11

**CASES**

*AMW Materials Testing, Inc. v. Town of Babylon*,
    584 F.3d 436 (2d Cir. 2009) ............................................................................................ 16, 17

*Anchor Hocking Corp. v. Jacksonville Elec. Auth.*,
    419 F. Supp. 992 (M.D. Fla. 1976) ....................................................................................... 13

*Anderson v. United States*,
    229 F.2d 675 (5th Cir. 1956) ................................................................................................... 6

*Arizona v. United States*,
    567 U.S. 387 (2012) ............................................................................................................... 12

*Balistrieri v. United States*,
    303 F.2d 617 (7th Cir. 1962) ................................................................................................... 6

*California v. United States*,
    104 F.3d 1086 (9th Cir. 1997) ............................................................................................... 10

*Cambridge Toxicology Grp. v. Exnicios*,
    495 F.3d 169 (5th Cir. 2007) ............................................................................................ 4, 14

*Chiles v. United States*,
    69 F.3d 1094 (11th Cir. 1995) ............................................................................................... 11

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999) .......................................................................................................... 16, 17

*Dep't of Energy v. Ohio*,
    503 U.S. 607 (1992) ................................................................................................................. 4

*Estrada v. Indus. Transit, Inc.*,
    No. 4:16-cv-013-DAE, 2016 WL 10967300 (W.D. Tex. Aug. 8, 2016) ................................. 9

*FDIC v. Niblo*,
    821 F. Supp. 441 (N.D. Tex. 1993) ................................................................. 14

*Fort Henry Mall Owner, L.L.C. v. U.S. Bank N.A.*,
    No. 2:11-cv-287, 2012 U.S. Dist. LEXIS 18824 (E.D. Tenn. Feb. 15, 2012) ....................... 20

*Frederick v. United States*,
    386 F.2d 481 (5th Cir. 1967) ............................................................... 6, 7

*Glenewinkel v. Carbajal*,
    No. 3:20-cv-2256-B, 2021 WL 2952833 (N.D. Tex. July 4, 2021) ........................... 6

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ....................................................................... 17

*Hill Country Bakery v. Honest Kitchens Grp., L.L.C.*,
    No. 5:17-cv-334-DAE, 2017 WL 9362706 (W.D. Tex. Dec. 11, 2017) ...................... 4

*Home Builders Ass'n v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) ............................................................... 4

*Julio Trujillo Santoyo v. United States*,
    No. 5:16-cv-855-OLG, 2017 WL 6033861 (W.D. Tex. Oct. 18, 2017) ...................... 6

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ............................................................... 4

*Lehman v. Nakshian*,
    453 U.S. 156 (1981) ....................................................................... 18

*N.A.A.C.P. v. Acusport Corp.*,
    226 F. Supp. 2d 391 (E.D.N.Y. 2002) .............................................. 17, 18, 19

*New Jersey v. United States*,
    91 F.3d 463 (3d Cir. 1996) ............................................................. 10, 11

*Owen Equip. & Erection Co. v. Kroger*,
    437 U.S. 365 (1978) ........................................................................ 6

*Owens v. UNUM Life Ins. Co.*,
    285 F. Supp. 2d 778 (E.D. Tex. 2003) ...................................................... 13

*Padavan v. United States*,
    82 F.3d 23 (2d Cir. 1996) .............................................................. 10, 11

*Purex Corp. v. Gen. Foods Corp.*,
    318 F. Supp. 322 (C.D. Cal. 1970) ...................................................................... 14

*Raygor v. Regents of the Univ. of Minn.*,
    534 U.S. 533 (2002) ........................................................................................... 6

*Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*,
    426 F.2d 709 (5th Cir. 1970) ............................................................................. 6

*Seven Seas Petrol., Inc. v. CIBC World Mkts. Corp.*,
    No. 4:08-cv-3048, 2012 WL 175415 (S.D. Tex. Jan. 20, 2012) ........................... 19

*Shanbaum v. United States*,
    32 F.3d 180 (5th Cir. 1994) ............................................................................... 5

*Springer v. Rodriguez*,
    No. 5:15-cv-108, 2019 WL 4417805 (S.D. Tex. Aug. 20, 2019) .......................... 19

*Texas v. United States*,
    106 F.3d 661 (5th Cir. 1997) ............................................................................. 11

*Texas v. Ysleta Del Sur Pueblo*,
    369 F. Supp. 3d 760 (W.D. Tex. 2019) ......................................................... 5, 16

*Tull v. United States*,
    481 U.S. 412 (1987) .................................................................................... 17, 18

*U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.*,
    898 F.3d 497 (5th Cir. 2018) ............................................................................. 6

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966) ........................................................................................... 6

*United States v. Abbott*,
    87 F.4th 616 (5th Cir. 2023) ............................................................................. 2

*United States v. Abbott*,
    90 F.4th 870 (5th Cir. 2024) ............................................................................. 2

*United States v. Abbott*,
    5th Cir. No. 23-50632, ECF Nos. 195, 231 and 234 (Mar. 18, 22 and 24, 2024). ................. 10

*United States v. Austin Two Tracts, L.P.*,
    239 F. Supp. 2d 640 (E.D. Tex. 2002) ............................................................... 5

*United States v. Hollis,*
    No. SA-08-cv-0362 NN, 2008 WL 4179474 (W.D. Tex. Sept. 7, 2008)............................ 7

*United States v. Louisiana,*
    339 U.S. 699 (1950) ...................................................................................... 17

*United States v. M.C.C. of Fla., Inc.,*
    863 F.2d 802 (11th Cir. 1989) ............................................................... 16, 17, 18

*United States v. Ownbey Enters., Inc.,*
    780 F. Supp. 817 (N.D. Ga. 1991).............................................................. 7

*United States v. Renda,*
    709 F.3d 472 (5th Cir. 2013) ...................................................................... 8

*United States v. Texas,*
    97 F.4th 268 (5th Cir. 2024) ...................................................................... 13

*United States v. Texas,*
    No. 1:24-cv-8-DAE, 2024 WL 861526 (W.D. Tex. Feb. 29, 2024) ...................... 8, 10, 11, 12

*Voluntary Purchasing Groups, Inc. v. Reilly,*
    889 F.2d 1380 (5th Cir. 1989) ............................................................... 4, 5

*Weeks v. Hous. Auth. of Opp, Ala.,*
    887 F. Supp. 2d 1232 (M.D. Ala. 2012).................................................... 6

*Wilkerson v. United States,*
    67 F.3d 112 (5th Cir. 1995) ...................................................................... 6

*Wyandotte Transp. Co. v. United States,*
    389 U.S. 191 (1967) ...................................................................................... 2

**STATUTES**

8 U.S.C. § 1103(a)(10)........................................................................................ 12

28 U.S.C. § 1331.................................................................................................. 5

28 U.S.C. § 1345.................................................................................................. 5

28 U.S.C. § 1367.................................................................................................. 6

28 U.S.C. § 2201.................................................................................................. 6

33 U.S.C. § 403.............................................................................................. 2, 19

33 U.S.C. § 406 .................................................................................................. 2

33 U.S.C. § 413 .................................................................................................. 2

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(1) ................................................................................... 1, 5

Fed. R. Civ. P. 12(f) ....................................................................... 1, 4, 8, 13, 14

Fed. R. Civ. P. 30(b)(6) ................................................................................ 15, 20

Fed. R. Civ. P. 38 ................................................................................................. 4

Fed. R. Civ. P. 38(a) ...................................................................................... 5, 16

Fed. R. Civ. P. 39(a) ........................................................................................... 4

Fed. R. Civ. P. 39(a)(2) ....................................................................................... 5

**TREATISE**

8 Moore's Federal Practice – Civil § 39.41 (2024) ......................................... 19

## INTRODUCTION

The Court has twice rejected Texas's attempts to transform the United States' civil suit for injunctive relief under Section 10 of the Rivers and Harbors Act (RHA) into a judicial examination of federal immigration policy by asserting a constitutional right to "defense" against "invasion." ECF 50 at 29-35; ECF 114 at 23-29.  Undaunted, Texas has now filed a counterclaim for declaratory relief that reintroduces "constitutional" issues, and pled in its answer an affirmative defense expressly asserting the same twice-rejected constitutional theory.

The Court should dismiss the counterclaim for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12 (b)(1).  Texas bears the burden of establishing jurisdiction over its counterclaim, and so must identify an applicable waiver of the United States' sovereign immunity. The counterclaim identifies no such waiver, and there is none.

The Court should also strike Texas's constitutional affirmative defense from its answer pursuant to Fed. R. Civ. P. 12(f).  That defense fails as a matter of law for reasons stated in the Court's prior opinions, and the Court should not allow Texas's futile re-assertion of its constitutional theory to waste time and resources in the remainder of discovery and at trial.

Finally, Texas demands a jury trial, invoking the Seventh Amendment to the Constitution. But the Seventh Amendment jury right does not apply to the RHA claim, nor to Texas's counterclaim even if the Court had jurisdiction over it.  And the advisory jury Texas alternatively requests would be extraordinary and unhelpful in an RHA civil enforcement case brought by the United States.  The Court should strike the jury demand and deny the advisory jury request.

## BACKGROUND

The United States sued Texas and its governor on July 24, 2023, claiming that Texas's placement of the Floating Barrier in the Rio Grande violated RHA Section 10.  ECF 1.  The RHA

prohibits "obstructions in the Nation's waterways," and the Supreme Court has "consistently found its coverage to be broad." *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967). Section 10 independently prohibits "creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States," and "build[ing] . . . any . . . boom . . . or other structures in any . . . navigable river, or other water of the United States" without the United States Army Corps of Engineers' permission.  33 U.S.C. § 403.  Section 12 provides that "the removal of any structures . . . erected in violation of [Section 10] may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the [U.S.] Attorney General." *Id.* § 406; *see also id.* § 413.

The United States' complaint alleges that the Floating Barrier violates both of the above-quoted clauses of Section 10 and seeks six forms of mandatory and prohibitory injunctive relief. ECF 60 ¶ 46 a.-f. (First Am. Compl., filed Oct. 23, 2023).  It does not seek declaratory relief.  *Id.*

On September 6, 2023, this Court issued a preliminary injunction upon finding, *inter alia*, that the United States had established a likelihood of success on the merits of its RHA claim.  ECF 50.  Texas appealed, and a panel of the Fifth Circuit Court of Appeals affirmed.  *United States v. Abbott*, 87 F.4th 616 (5th Cir. 2023).  Subsequently, the Fifth Circuit granted *en banc* rehearing and vacated the panel decision.  *United States v. Abbott*, 90 F.4th 870 (5th Cir. 2024).  The parties presented oral argument on the merits of the preliminary injunction appeal to the *en banc* Fifth Circuit on May 15, 2024, and completed post-argument briefing on May 24, 2024.

Meanwhile, in this Court the parties briefed and argued Texas's motion to dismiss the United States' First Amended Complaint, which had restated the RHA claim and added a second claim alleging preemption of Defendants' actions by Article VII of the 1848 Treaty of Guadalupe

Hidalgo ("Treaty").  On April 26, 2024, this Court dismissed the Treaty claim, but denied Texas's motion with respect to the RHA claim.  ECF 114.  The Court rejected Texas's arguments that its actions related to the floating barrier implicate a constitutional right of the State to "defend" itself against "invasion."  *Id.* at 23-29.  In concluding its analysis, the Court stated:  "Texas may not claim self-defense from an invasion at the border to justify a long-term usurping of congressional authority.  Texas must pursue its right and duty to protect the people of Texas through congressionally authorized means or appropriate state action.  Texas is a sovereign state, not a sovereign country." *Id.* at 29.  The April 2024 opinion was the Court's second in this case rejecting Texas's constitutional arguments, as it had previously done so in its opinion granting the preliminary injunction.  ECF 50 at 29-35.

Texas filed its Original Answer and Counterclaim on May 10, 2024.  ECF 118.  The counterclaim invokes the Declaratory Judgment Act and seeks two forms of declaratory relief.  *Id.* ¶ 25.  Specifically, Texas asks the Court to declare:

[1] that Texas has lawfully placed the floating buoys in their current location and has a right to maintain them there and has a right to place and maintain the floating buoys in other places in the Texas side of the Rio Grande that do not conflict with the RHA as constitutionally applied. . . .

[2] that the portions of the Rio Grande River within Texas that are upstream of mile marker 275.5 are not navigable within the meaning of the RHA as constitutionally applied.

*Id.* (emphasis added).

Texas then filed an Amended Answer and Counterclaim asserting the following as its second enumerated defense to the RHA claim:

Plaintiff's claim under the Rivers and Harbors Act conflicts with and is barred by Texas's constitutional prerogative to defend itself, as reserved to the Sovereign States in Article I, Section 10, Clause 3 of the U.S. Constitution. Defendants' good-faith invocation of this self-defense authority in deploying the Floating Buoys,

which have been placed for defensive purposes, raises a non-justiciable political question.

ECF 120 at 6 (May 24, 2024).

Texas's pleading demands trial by jury "on all issues so triable," pursuant to Fed. R. Civ. P. 38 and the Seventh Amendment. *Id.* at 6. In the alternative, it requests an advisory jury pursuant to Fed. R. Civ. P. 39(a) "on any and all issues not triable by jury as of right." *Id.* at 6-7.

## STANDARDS OF REVIEW

A claim "is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the [claim]." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Establishing subject-matter jurisdiction over Texas's counterclaim requires a waiver of the United States' sovereign immunity, which must be stated in "unequivocal" terms in a pertinent statute. *Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992). Waivers "must be construed strictly in favor of the sovereign" and "not enlarged beyond what the language requires." *Id.* (internal quotations and citations omitted); *see also Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1385 (5th Cir. 1989).

Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Such a motion "is proper when the defense is insufficient as a matter of law." *Hill Country Bakery, LLC v. Honest Kitchens Grp., LLC*, No. 5:17-cv-334-DAE, 2017 WL 9362706, *2 (W.D. Tex. Dec. 11, 2017) (Ezra, J.); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). District courts have "broad discretion to determine whether the challenged matter should be stricken." *Hill Country*, 2017 WL 9362706, at *2; *see Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007) (decision is reviewed for "abuse of discretion").

If a jury trial is demanded, "[t]he trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). A jury right must be provided by a federal statute or the Seventh Amendment. Fed. R. Civ. P. 38(a). When no such federal right to a jury trial exists, the Court may strike a jury demand. *See, e.g., Texas v. Ysleta del Sur Pueblo*, 369 F. Supp. 3d 760, 768 (W.D. Tex. 2019).

## ARGUMENT

## I.    Texas's Counterclaim Fails to Identify a Waiver of Sovereign Immunity.

Texas's counterclaim should be dismissed pursuant to Rule 12(b)(1) because it fails to identify a waiver of the United States' sovereign immunity and, hence, has not met Texas's burden of establishing subject-matter jurisdiction. Although the counterclaim cites a hodge-podge of federal statutes that it alleges provide "jurisdiction," none of them waives the United States' sovereign immunity. ECF 120 at 7, ¶ 1. Each cited statute is addressed below.

**28 U.S.C. § 1331** is the federal question jurisdiction statute. "It is well settled that section 1331 implies no general waiver of sovereign immunity." *Voluntary Purchasing*, 889 F.2d at 1385 (internal quotation marks and citation omitted); *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994). Thus, it cannot be relied upon by itself as the basis for subject-matter jurisdiction over a claim against the United States. *Voluntary Purchasing*, 889 F.2d at 1385.

**28 U.S.C. § 1345** gives district courts jurisdiction over "suits or proceedings commenced by the United States," *id.*, but "does not constitute a waiver of sovereign immunity of the United States to be sued." *United States v. Austin Two Tracts, L.P.*, 239 F. Supp. 2d 640, 644 (E.D. Tex. 2002). Although district courts have general subject matter jurisdiction over actions brought *by* federal agencies or officers, "there is no corollary rule whereby all suits brought *against* federal

agencies or officers are within the[ir] subject matter jurisdiction." *Weeks v. Housing Auth. of Opp, Ala.*, 887 F. Supp. 2d 1232, 1236 (.D. Ala. 2012) (internal quotation marks omitted).

**28 U.S.C. § 1367** is the supplemental jurisdiction statute, essentially codifying two related doctrines: pendant and ancillary jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) (pendant); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978) (ancillary). Courts have long held that this statute is not a sovereign immunity waiver. *See, e.g.*, *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 542-43 (2002); *U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 503 (5th Cir. 2018). Moreover, pendant jurisdiction is inapplicable, as it concerns transactionally related state law claims and Texas pleads no such claim. *See Wilkerson v. United States*, 67 F.3d 112, 119 n.13 (5th Cir. 1995). Ancillary jurisdiction similarly has no applicability; that doctrine concerns extension of jurisdiction to third parties brought into the suit, of which there are none here. *See Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 713 (5th Cir. 1970).

**28 U.S.C. § 2201**, the Declaratory Judgment Act, "created a remedy as to controversies of which the federal courts have jurisdiction." *Balistrieri v. United States*, 303 F.2d 617, 619 (7th Cir. 1962). However, it is well settled that the Act "does not grant any consent of the United States to be sued." *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956); *see also Julio Trujillo Santoyo v. United States*, No. 5:16-cv-855–OLG, 2017 WL 6033861, at *4 (W.D. Tex. Oct. 18, 2017); *Glenewinkel v. Carbajal*, No. 3:20-cv-2256-B, 2021 WL 2952833, at *3 (N.D. Tex. July 4, 2021).

Nor can Texas establish a sovereign immunity waiver by asserting that its counterclaim is a claim "in recoupment." *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967); *EEOC v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1007 (5th Cir. 1980). To sound in recoupment, the

counterclaim (1) must arise out of "the same transaction or occurrence" as the United States' suit, (2) must not go beyond defeating the United States' claim, and (3) most pertinent here, must not involve "relief different in kind or nature to that sought by the government." *Frederick*, 386 F.2d at 488; *see also United States v. Ownbey Enterps., Inc.*, 780 F. Supp. 817, 820 (N.D. Ga. 1991). Texas cannot satisfy the third prong, because while the United States' RHA claim seeks only injunctive relief, ECF 60 ¶ 46, the counterclaim seeks only declaratory relief, ECF 120 at 11.[1]

Finally, if Texas opposed this motion by filing a brief invoking the Administrative Procedure Act's (APA's) sovereign immunity waiver, that would not cure its pleading defect. There is not a single citation or even allusion to the APA anywhere in the Amended Answer and Counterclaim for any purpose, let alone specifically to identify the source of jurisdiction or a sovereign immunity waiver.

Because the counterclaim fails to identify an applicable waiver of the United States' sovereign immunity, it must be dismissed for lack of subject-matter jurisdiction.

## II. The Court Should Strike Texas's "Invasion" Defense as Legally Insufficient.

In its answer, Texas attempts to interject a legal theory that this Court has already considered and rejected twice. Specifically, as one of its affirmative defenses, Texas asserts that the United States' RHA claim:

> conflicts with and is barred by Texas's constitutional prerogative to defend itself, as reserved to the Sovereign States in Article I, Section 10, Clause 3 of the U.S. Constitution. Defendants' good-faith invocation of this self-defense authority in

---

[1] Moreover, a counterclaim in recoupment is generally understood as one seeking to reduce or extinguish a monetary judgment, but the United States does not seek money here. *See, e.g.*, *United States v. Hollis*, No. SA-08-cv-0362 NN, 2008 WL 4179474, at *1 (W.D. Tex. Sept. 7, 2008) ("Recoupment is merely the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out [of] the very [matter] giving rise to the plaintiff's claim." (internal quotation marks and citation omitted); *FDIC v. Cheng*, 787 F. Supp. 625, 635 (N.D. Tex. 1991) (collecting cases holding similarly).

> deploying the Floating Buoys, which have been placed for defensive purposes,
> raises a non-justiciable political question.

ECF No. 120 at 6.  In other words, Texas is arguing that the Constitution grants it an absolute right

to engage in war based on the Governor's unilateral determination that it has been "invaded," and

that neither Congress, the federal Executive, nor the federal courts may disagree with that

determination or limit Texas's action in response.

This radical interpretation of the Constitution's "State War Clause," U.S. Const. art. I, § 10,

cl. 3, is wholly unsupported by the text, history, or caselaw.  For precisely that reason, this Court

has twice rejected Texas's "invasion" argument in this case, as well as in another recent case

involving Texas Senate Bill 4 ("SB4").  ECF 50 at 29-35 (granting United States' motion for

preliminary injunction); ECF 114 at 23-29 (partially granting and partially denying Texas's motion

to dismiss Amended Complaint); *United States v. Texas*, No. 1:24-cv-8-DAE, 2024 WL 861526

(W.D. Tex. Feb. 29, 2024) (granting United States' motion to preliminarily enjoin SB4).  Indeed,

*every court* that has considered the issue has flatly rejected the reading of the State War Clause

that Texas advances here.  ECF 50 at 33-34 (listing cases).

The Court should strike this defense from Texas's answer now rather than waiting to

address it after trial.  Because Texas's purported "invasion" defense is insufficient as a matter of

law, striking it is an appropriate exercise of the Court's discretion under Rule 12(f).  Moreover,

striking Texas's defense now will avoid a needless and distracting expenditure of time and

resources in discovery and at trial on an issue that cannot affect the ultimate outcome of this case.

### A.  Texas's "Invasion" Defense Fails as a Matter of Law.

A defense is "legally insufficient" for purposes of Rule 12(f) if it "cannot, as a matter of

law, succeed under any circumstance."  *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013).

Texas's "invasion" defense is unsupported by law, and no facts that Texas may develop at trial

would enable Texas to prevail on its legal theory, which if adopted would reflect a radical reimaging of the constitutional order.

Article I, section 10 of the Constitution generally prohibits a State from engaging in various activities without the consent of Congress.  U.S. Const. art. I, § 10.  The State War Clause provides one limited, narrow exception:  no State may "engage in War, unless *actually invaded*, or in such *imminent* Danger as will not admit of delay."  *Id.* art. I, § 10, cl. 3 (emphases added).  Texas's pleading reads this exception as reserving to each State a "constitutional prerogative to defend itself" that, once invoked, cannot be questioned and bars enforcement of any federal law allegedly conflicting with the State's exercise of its asserted "self-defense authority."  ECF No. 120 at 6.

This Court has already rejected Texas's expansive reading of the State War Clause twice— and in fact, its second opinion addressing the issue is binding as law of the case.  The Court first addressed this issue when it granted the United States' motion for a preliminary injunction, and its reasoning in that opinion remains persuasive at the present stage of the case.  *See* ECF 50 at 29-35 (rejecting Texas's "breathtaking" claims to self-defense powers).  Moreover, the Court later considered and resolved the same issue *again* when it rejected Texas's State War Clause argument as a basis for dismissing Count II of the Amended Complaint.  *See* ECF 114 at 23-29 (holding Texas's interpretation "goes far beyond the original and natural meaning of 'invasion' and incurably exceeds the power granted to the States by our Founding Fathers").  Importantly, that ruling—which repeated and expanded on the Court's earlier decision on this issue at the preliminary injunction stage—constitutes the law of the case.  Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case."  *Estrada v. Industrial Transit, Inc.*, No. 4:16-cv-013-DAE, 2016 WL 10967300, at *2 (W.D. Tex. Aug. 8, 2016) (Ezra, J.) (quoting *Lindquist v. City of*

*Pasadena*, 669 F.3d 225, 238 (5th Cir. 2012)).  Because the Court has already squarely addressed and rejected Texas's interpretation of the State War Clause, the law of the case requires the same result here.

Even if the Court's prior decisions in this case do not foreclose Texas's "invasion" defense as presented here, the Court should reject that defense for the same reasons articulated in those decisions and in its well-reasoned opinion in *United States v. Texas* preliminarily enjoining SB4. Texas's position lacks legal merit—indeed, "[t]o discuss 'invasion' at length is to take the argument more seriously than it deserves."  *Texas*, 2024 WL 861526, at *24.  The asserted defense cannot prevail here for at least four reasons.[2]

First, irregular migration and the other alleged criminal activities identified by Texas do not come within the meaning of the phrase "actually invaded" as used in the State War Clause.  *Id.* at *25-33.  As the Court noted in *Texas*, "all tools of constitutional construction cut against Texas's position," *id.* at *25, and every court to consider the issue has reached the same conclusion.  *See California v. United States*, 104 F.3d 1086, 1090-91 (9th Cir. 1997); *New Jersey v. United States*, 91 F.3d 463, 469-70 (3d Cir. 1996); *Padavan v. United States*, 82 F.3d 23, 28 (2d Cir. 1996). Instead, "[c]ontemporary definitions of 'invasion' and 'actually invaded' as well as common usage of the term in the late Eighteenth Century predominantly referred to an 'invasion' as a hostile and organized military force, too powerful to be dealt with by ordinary judicial proceedings."  *Texas*, 2024 WL 861526, at *25; *see id.* at *26-27 (surveying contemporaneous dictionaries and usage). And the constitutional context reinforces that conclusion:  in light of the Constitution's general

---

[2] Additional support for the United States' position can be found in its supplemental brief and two letter briefs submitted to the Fifth Circuit during its *en banc* review of the preliminary injunction appeal.  *See United States v. Abbott*, 5th Cir. No. 23-50632, ECF Nos. 195 at 41-44 (Mar. 18, 2024), 231 (May 22, 2024), and 234 (May 24, 2024).

prohibition on States "engag[ing] in War," U.S. Const. art. I, § 10, cl. 3, it is particularly unlikely that the Framers intended for States to utilize the State War Clause's exception to respond to prolonged circumstances addressable by other, nonmilitary means.  And as discussed below, here Congress has supplied such nonmilitary means to address the precise question of irregular migration through the Immigration and Nationality Act.

    Second, even if the term "actually invaded" could be interpreted to include irregular migration, "the Constitution commits the question of whether an invasion has occurred to the policy making (or political) branches *of the federal government.*"  *Abbott I*, 2023 WL 5740596 at *12; *see California*, 104 F.3d at 1090-91; *New Jersey*, 91 F.3d at 469-70; *Padavan*, 82 F.3d at 28; *Chiles v. United States*, 69 F.3d 1094, 1097 (11th Cir. 1995); *cf. Texas v. United States*, 106 F.3d 661, 667 (5th Cir. 1997) (finding that Texas "suggests no manageable standards by which a court could decide the type and degree of immigration law enforcement that would suffice to comply with [the] strictures" of the Constitution).  This does not mean that Texas's conduct is unreviewable, but rather that its invocation of an "invasion" to *defend* against an otherwise meritorious RHA claim brought by the United States should "be rejected in the same way that nonjusticiable claims are rejected." *Texas*, 2024 WL 861526, at *37.

    Texas itself argues that whether any particular fact scenario amounts to an "invasion" is a nonjusticiable political question, ECF No. 120 at 6, but claims that question is committed exclusively to the *state governments*.  Not so.  The Constitution generally assigns the federal government the responsibility to "protect each of [the States] against Invasion."  U.S. Const. art. IV, § 4.  And "by placing the responsibility to protect against invasion on the federal government, the Constitution commits the question of whether an invasion has occurred to the policy making (or political) branches *of the federal government.*"  ECF 50 at 34 (emphasis in original).  Moreover,

the asserted "invasion" here involves "the immigration and the status of aliens," which are themselves matters committed to the federal government, not to the States. *Arizona v. United States*, 567 U.S. 387, 394-95 (2012).  Accordingly, this Court has no grounds for deferring to Texas's claim that it has been "invaded."  "To hold otherwise would give any state the right to ignore the Supremacy Clause so long as it could imagine a nonfrivolous claim of invasion." *Texas*, 2024 WL 861526 at *37.

Third, even if Texas could properly invoke its State War Clause powers here, the text of this clause makes clear that it provides only a time-limited emergency authority allowing a state to respond to circumstances that "will not admit of delay" until the federal government has had an opportunity to respond—which, at the time of the Founding, could have taken substantial time. *Id.* at 34-36; U.S. Const. art. I, § 10, cl. 3.  Once the federal government has been apprised of the situation, as it obviously has been here, that clause does not authorize a State to continue engaging in war-related activities indefinitely or disregard the federal government's determination as to whether (and how) to "engage in War" or to pursue other measures in response to particular circumstances.  "[O]nce the federal government has had time to respond to the purported invasion," the state must "cede authority to the federal government to conduct [any] war." *Texas*, 2024 WL 861526, at *35; ECF 114 at 29 ("Texas may not claim self-defense from an invasion at the border to justify a long-term usurping of congressional authority.").

Here, the federal government has already spoken.  Congress has comprehensively addressed immigration through the Immigration and Nationality Act, which even includes specific mechanisms for the Secretary of Homeland Security to authorize state and local law enforcement officers to exercise certain powers in the event of a "mass influx of aliens."  §§ 1103(a)(10).  And by bringing the present suit, the United States has also made clear that it does not view Texas's

unpermitted construction activities as an appropriate response to irregular migration.  *See Texas*, 2024 WL 861526, at *35 ("Here, the United States has had time to respond, and it has directed Texas to halt enforcement of [state action purportedly justified by State War Clause].").

Fourth, even if Texas could properly invoke its State War Clause powers here, it would not excuse Texas's failure to comply with otherwise applicable federal statutes.  The Constitution's Supremacy Clause does not have an "invasion" exception, and "federal statutes addressing matters such as [obstructions in navigable waters] are still supreme even when the State War Clause has been triggered."  *United States v. Texas*, 97 F.4th 268, 295 (5th Cir. 2024).  The "actually invaded" exception to the State War Clause applies by its terms only to the specific prohibition against States "engag[ing] in War," U.S. Const. art. I, § 10, cl. 3, and does not purport to excuse States from compliance with all other federal laws, especially on an ongoing basis.

In sum, Texas's interpretation of the State War Clause is unsupported by the Constitution and caselaw, and Texas's affirmative defense based on that interpretation is legally insufficient for purposes of Rule 12(f).

### B. Striking Texas's "Invasion" Defense Now Will Focus Discovery and Avoid Unnecessarily Prolonging Trial.

The Court should exercise its discretion to strike Texas's "invasion" defense now rather than waiting to address it after trial.  Courts commonly strike legally meritless defenses from pleadings to streamline the proceedings, focus the parties' and the court's resources, and narrow the issues for trial.  *See Owens v. UNUM Life Ins. Co.*, 285 F. Supp. 2d 778, 780 (E.D. Tex. 2003) ("If the determination of [a defense's] invalidity can be made at an early stage it will enable the parties to proceed with the litigation in the proper posture."); *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976) (holding courts should strike legally insufficient defenses "in order to avoid unnecessary time and money in litigating invalid, spurious

issues"); *Purex Corp., Ltd. v. Gen. Foods Corp.*, 318 F. Supp. 322, 323 (C.D. Cal. 1970) (holding if defense lacks merit, "such determination should be made [on Rule 12(f) motion], in order to avoid the needless expenditures of time and money").

Texas's "invasion" defense is precisely the type of meritless defense that Rule 12(f) exists to address. As noted above, Texas's defense attempts to re-raise an issue that this Court has already decided against Texas twice in this case. *See Cambridge Toxicology*, 495 F.3d at 178 (striking a pleading that "attempt[ed] to circumvent the court's multiple denials" on the same issue at earlier stage). This is not an issue on which there is unsettled law or conflicting authority: *every court* that has considered Texas's interpretation of the State War Clause has rejected it. *Supra* at 8.

While courts commonly refer to Rule 12(f) motions as disfavored, that is in part because they are sometimes used as a "dilatory tactic." *See FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993). By contrast, granting this motion will introduce no delay. Trial is already scheduled for August 6-9, 2024, and the parties are nearing the close of discovery. Rather, the purpose of this motion is to promote *more* efficient resolution of the case by streamlining the issues for trial and eliminating the unnecessary expenditure of time and resources on developing an issue whose resolution is clear as a matter of law. Because there are no facts that Texas could develop in discovery or present at trial that would enable it to prevail on its "invasion" defense, the Court should strike this defense now to ensure that discovery and trial are limited to relevant issues.

The United States' concern for the possibility of wasted time and resources is not a hypothetical one. Despite the Court's previous rulings on the State War Clause and its inapplicability in this case, Texas has continued to seek information through discovery in support of its "invasion" defense that is irrelevant to the United States' RHA claim, including information regarding federal immigration policy. For example, Texas recently noticed depositions of four

federal agencies under Rule 30(b)(6).  These notices, which Texas served in amended form on June

20, 2024—three days after the deadline in the Court's March 5, 2024 scheduling order (*see* ECF

97 at 2)—request information on, *inter alia*:  "the number and impact of illegal people, guns, drugs,

and goods entering the U.S. by crossing the Rio Grande River"; "[b]order security on the Rio

Grande River . . . including but not limited to the impact of the buoys and razor wire installed by

Texas"; and "[i]mplementation and impact of the June 4, 2024 Executive Order on border security

and asylum claims by the Biden Administration."  *See* Ex. 1 ¶ 48 (amended USIBWC deposition

notice dated June 20, 2024); Ex. 2 ¶ 56 (Am. USACE deposition notice); Ex. 3 ¶¶ 22, 24, 25 (Am.

USCBP deposition notice); Ex. 4 ¶¶ 26, 28, 29 (Am. USCG deposition notice).  These topics bear

no plausible relationship to the merits of the RHA claim or of any other defense to it Texas may

assert.[3]

Further, Texas's initial disclosures and expert designations include several potential fact

and expert witnesses whose trial testimony would focus partially or entirely on issues related to

Texas's "invasion" defense.  Among other fact witnesses, Texas has indicated that it may call a

White House Homeland Security Adviser, a New York City police officer who may address topics

including "violence committed by illegal immigrants" and "the impact of illegal immigration,"

and several other witnesses whose potential testimony includes topics like "crime," "border

security," and "law enforcement."  Ex. 5 at 13, 16 (Defs.' Am. Initial Disclosures).  Texas has also

noticed its intent to call Michael Banks, Governor Abbott's Special Advisor on Border Matters, as

a joint fact and expert witness to offer opinions that the Floating Barrier is effective as a deterrent

---

[3] The United States intends to move contemporaneously with this Rule 12 motion for a protective
order that would, among other relief, quash Texas's immigration-related 30(b)(6) topics.

to migration, and that migration in the Eagle Pass area made it "necessary" for Texas to install the Floating Barrier. *Id.* at 5; ECF No. 122 at 9-11 (Defs.' Expert Designations).

If the Court does not strike Texas's "invasion" defense and waits to resolve it after trial, significant trial time may be consumed by Texas's efforts to establish this defense, including fact and expert testimony on immigration-related matters that have no bearing on the United States' RHA claim against Texas. This is particularly inappropriate given that Texas itself argues this issue is non-justiciable. *Supra* at 11. To focus the parties' efforts and the court's time and resources on the issues relevant to resolution of this case, the Court should strike Texas's "invasion" defense.

## III.   There Is No Right to a Jury Trial in this Matter.

A federal right to a jury trial must be provided by either a federal statute or the Seventh Amendment to the Constitution. Fed. R. Civ. P. 38(a). Here, the analysis must hinge solely on the Seventh Amendment, as Texas does not allege a statutory right to a jury. ECF 120 at 6. Nor could it, as neither the RHA nor the Declaratory Judgment Act provides for a jury trial. *United States v. M.C.C. of Fla., Inc.,* 863 F.2d 802, 803 (11th Cir. 1989) (conducting a constitutional analysis for the RHA); *Ysleta del Sur Pueblo*, 369 F. Supp. 3d at 768 (stating that the "Declaratory Judgment Act itself confers no right to a jury trial; whether this right is afforded depends on the underlying claim"). And, as shown below, neither the United States' RHA claim nor Texas's Declaratory Judgment Act counterclaim is subject to a Seventh Amendment jury right.

The Seventh Amendment preserves a jury right for "suits at common law," U.S. Const., Amend. VII, which extends to civil cases "arising in law, rather than in equity." *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 451 (2d Cir. 2009); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708-09 (1999). Claims "arising in law" are typically those that sound in tort, seek legal relief such as damages, or seek punitive remedies. *City of Monterey*,

526 U.S. at 708 (compensatory damages for an illegal taking was a legal remedy); *Tull v. United States*, 481 U.S. 412, 422 (1987) (Clean Water Act civil penalties are punitive, legal remedies).

In contrast, an equitable claim often seeks purely injunctive relief. *AMW Materials Testing*, 584 F.3d at 451-52; *see also Tull*, 481 US at 423-24 (discussing traditional cases in equity such as nuisance cases seeking injunctive relief). In such actions, there is no constitutional jury right. *United States v. Louisiana*, 339 U.S. 699, 706 (1950) (finding no jury trial right for "an equity action [seeking] an injunction"); *N.A.A.C.P. v. Acusport Corp.*, 226 F. Supp. 2d 391, 397 (E.D.N.Y. 2002) ("[A]ctions solely for injunctions do not require trial by jury.").

In order to discern if a claim lies in law or equity, and thus whether a jury trial right attaches, courts typically "examine both the nature of the action and the remedy sought." *Tull*, 481 U.S. at 418. Here, however, the second factor is dispositive, as the Amended Complaint seeks only injunctive relief, ECF 60 ¶ 46, the "classic example" of an equitable remedy. *Tull*, 481 U.S. at 423-24; *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S 204, 211 n.1 (2002) (an "injunction is inherently an equitable remedy"). It is "settled law" that the Seventh Amendment does not apply to "suits seeking only injunctive relief." *City of Monterey*, 526 U.S. at 719.

Even if it were necessary here to additionally consider "the nature of the action," that factor also supports striking the jury demand. "An action under the [RHA] is an *equitable lawsuit* which seeks to enjoin any violation committed under that Act . . . ." *United States v. M.C.C. of Florida, Inc.*, 863 F.2d 802, 803 (11th Cir. 1989) (emphasis added). The United States' complaint is consistent with this analysis—it seeks only to enjoin Texas's violating conduct and obtain removal of the Floating Barrier from the Rio Grande. ECF 60 ¶ 46. Indeed, this Court has already acknowledged the RHA claim's narrow focus on injunctive (and thus, equitable) relief in denying Texas's motion to dismiss that claim. *See* ECF 114 at 7-11. And, as that opinion also addressed,

17

this is not a case seeking *criminal* RHA penalties, but rather a civil enforcement action.  *Id.*; *compare United States v. Raven*, 500 F.2d 728, 729-30 (5th Cir. 1974) (jury used for criminal trial under RHA); *United States v. West Indies Transport, Inc.*, 127 F.3d 299, 304 (3d Cir. 1997) (same).

Because the complaint here seeks only injunctive relief, cases finding actions partially "legal" in nature where they sought other relief are readily distinguishable.  For example, in *Tull*, the Supreme Court considered whether the Seventh Amendment jury right applied in a Clean Water Act enforcement suit where the United States sought more than $20 million in civil penalties, as well as injunctive relief.  481 U.S. at 414-15.  The Court determined that statutory civil penalties are a legal claim; thus, the defendant had a constitutional right to jury trial to determine if it was liable under the Clean Water Act.  *Id.* at 424-25.  And, to the extent equitable and legal issues overlapped, a constitutional jury right applied on "all issues common to both claims."  *Id.* at 425.  Here, in contrast, the United States' complaint seeks only injunctive relief, not statutory civil penalties.  *Tull* is thus inapposite.  *See M.C.C. of Fla.,* 863 F.2d at 803-04 (holding that *Tull* did not entitle defendant to a jury trial on claims for RHA equitable relief).

Finally, it is also well established that the Seventh Amendment jury right does not extend to claims against the United States.  *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981).  Thus, regardless of whether the Court dismisses the counterclaim, it should strike Texas' jury demand.

## IV.    An Advisory Jury Would Be Unhelpful and Should be Denied.

Texas seeks an advisory jury "on any and all issues not triable by jury as of right."  ECF 120 at 6-7.  "The decision to utilize an advisory jury where there is no right to a jury is entirely discretionary," *N.A.A.C.P.*, 226 F. Supp. 2d at 398, and would be extraordinary and likely unprecedented in an RHA civil enforcement proceeding brought by the United States.  Were the Court to give this request any consideration, factors courts commonly have considered include:

the complexity of the issues, *Seven Seas Petroleum, Inc. v. CIBC World Mkts. Corp.*, No. 4:08-cv-3048, 2012 WL 175415, at \*4 (S.D. Tex. Jan. 20, 2012); "special factors" that suggest that involving members of the community would "provide the Court valuable guidance," *N.A.A.C.P.*, 226 F. Supp. 2d at 398 (internal quotations omitted); and the potential that empaneling an advisory jury may consume additional time and expense, *Springer v. Rodriguez*, No. 5:15-cv-108, 2019 WL 4417805, at \*3 (S.D. Tex. Aug. 20, 2019).  *See also* 8 Moore's Federal Practice – Civil § 39.41 (2024).

An advisory jury here would not meaningfully enhance the Court's ability to resolve the relevant issues.  For example, whether the disputed stretch of the Rio Grande is a navigable water will turn on expert testimony, which the court is fully capable of assessing independent of a jury.

This also is not a case where legal or factual determinations may be informed by opinions and perceptions of the local community, such as changing attitudes about obscenities or public nuisance.  *See, e.g., N.A.A.C.P.*, 226 F. Supp. 2d, at 398-99.  Here, the factual and legal questions—*e.g.*, whether the Floating Barrier creates an "obstruction" to "navigable capacity" of the Rio Grande, 33 U.S.C. § 403—are not subject to changing community standards.

Likewise, in the event the United States prevails on the merits of the RHA claim, an advisory jury would serve no purpose in fashioning appropriate injunctive relief.  Nor, for that matter, would it serve any purpose in fashioning declaratory relief on Texas's counterclaim, even assuming the Court had jurisdiction to hear the counterclaim.

Finally, empaneling a jury is sure to increase the complexity and length of the trial, with no commensurate benefit to the Court.  Put simply, it would bring all the logistical disadvantages, and none of the benefits, of jury usage in the claims where there is a *right* to jury trial.  *See Fort*

*Henry Mall Owner, LLC v. United States Bank N.A.*, 2012 U.S. Dist. Lexis 18824, at *15 (E.D. Tenn. Feb. 15, 2012).  For all of these reasons, the Court should deny Texas' advisory jury request.

**V.     To the Extent Necessary, the Court Should Grant Leave to File this Motion.**

The Court's March 5, 2024 scheduling order (ECF 97)—the same order under which Texas's 30(b)(6) notices are untimely, *supra* at 15—notes the parties' "agreement" that "there will be no further dispositive motions filed."  However, none of the pleadings from which this motion seeks relief—Texas's counterclaim, its defense, its jury demand and its advisory jury request— were on file then.  The defense was added to Texas's answer on May 24, 2024, nearly 3 months after entry of the scheduling order.  The original answer and counterclaim were not pled until May 10, 2024.  It would prejudice the United States to deny it the opportunity to respond under Rule 12 to a counterclaim that did not exist when the Court entered the scheduling order.  Moreover, the counterclaim's defect is one that the United States has a duty to the Court to raise regardless of procedural circumstances.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").  Finally, rulings striking Texas's jury demand and denying its advisory jury request would not be "dispositive" of any claim and thus are not even subject to the scheduling order provision.  Accordingly, to the limited extent that the scheduling order's limitation on dispositive motions applies, the United States requests the Court to construe this motion to include a request for leave to file it notwithstanding the scheduling order, and to grant such leave.  Texas has confirmed it opposes this request for leave.

**CONCLUSION**

For the foregoing reasons, the Court should grant leave to file this motion, grant the motion on all other points, and issue an order:  (1) dismissing Texas's counterclaim; (2) striking its constitutional defense; (3) striking its jury demand; and (4) denying its advisory jury request.

Respectfully submitted,

Dated:  June 21, 2024

JAIME ESPARZA
UNITED STATES ATTORNEY

/s/ Landon A. Wade
LANDON A. WADE
  Assistant United States Attorney
  Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

/s/ Brian H. Lynk
BRIAN H. LYNK
  Senior Trial Counsel
  DC Bar No. 459525
BRYAN HARRISON
  Trial Attorney
  FL Bar No. 106379
KIMERE J. KIMBALL
  Trial Attorney
  CA Bar No. 260660
ANDREW D. KNUDSEN
  Trial Attorney
  DC Bar No. 1019697
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov

*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I certify that on June 21, 2024, a copy of this filing was served on counsel of record through the Court's electronic filing system.

/s/  Brian Lynk
Brian Lynk

21