**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>   v.<br><br>GREG ABBOTT, in his capacity as<br>GOVERNOR OF THE STATE OF TEXAS,<br>and THE STATE OF TEXAS,<br><br>    *Defendants*. | Case No. 1:23-cv-00853-DAE |

**PLAINTIFF UNITED STATES' OPPOSED MOTION FOR PROTECTIVE ORDER**

JAIME ESPARZA
UNITED STATES ATTORNEY

LANDON A. WADE
 Assistant United States Attorney
 Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

BRIAN H. LYNK
 Senior Trial Counsel
 DC Bar No. 459525
BRYAN J. HARRISON
 Trial Attorney
 FL Bar No. 106379
KIMERE J. KIMBALL
 Trial Attorney
 CA Bar No. 260660
ANDREW D. KNUDSEN
 Trial Attorney
 DC Bar No. 1019697
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov

Dated:  June 21, 2024

*Counsel for the United States of America*

## INTRODUCTION

The United States of America, pursuant to Federal Rule of Civil Procedure 26(c), requests that this Court enter a protective order that: (1) quashes certain topics in Texas's amended 30(b)(6) deposition notices served on June 20, 2024; and (2) limits the number of depositions Texas can take to the presumptive number of 10 as provided by the Federal Rules.[1]

Texas originally served four 30(b)(6) deposition notices on June 17, 2024, seeking 30(b)(6) testimony on topics that were irrelevant, disproportionate, unduly burdensome, and otherwise not reasonably known to the federal agencies. Texas's four "amended" 30(b)(6) notices—served on June 20, 2024—are no better. The amended notices came after the United States raised its issues with Texas's initial topics and after efforts to meet and confer, yet the amendments greatly expand rather than narrow the proposed scope of the 30(b)(6) deposition topics and move several depositions to earlier dates. As one example, Texas added a new topic for several agencies to testify about the "number, location, condition, details, height, and dimensions" of every piece of "debris" across hundreds of miles of the Rio Grande River. *See* USACE Amended Notice ¶ 39; USIBWC Amended Notice ¶ 33.

The United States will of course designate 30(b)(6) witnesses for information within each agency's possession, custody, and control for the non-objectionable topics that Texas identified. Yet the scope of the examination demanded by Texas goes well beyond what is allowable under the federal rules. The Court should thus enter a protective order limiting Texas to an appropriate scope of inquiry, and to the usual seven hours of testimony for each agency deposed.

---

[1] The United States reserves all rights as to the amended 30(b)(6) notices and does not waive the ability on behalf of any agency to further object to the scope of any of the remaining amended 30(b)(6) notice topics.

On top of serving overbroad 30(b)(6) notices, Texas has exceeded the number of depositions allowed under the federal rules without seeking leave of Court or the consent of the United States.  Texas has already deposed four of the United States' experts; the four 30(b)(6) notices and other deposition notices served the same day (including a subpoena for a third-party deposition) would add 15 more depositions.  Texas's proposed total of 19 depositions is nearly double the presumptive limit of 10.  *See* Fed. R. Civ. P. 30(a)(2)(A)(i).  The parties never agreed to such an exceedance, and Texas has not explained why it is warranted, particularly given that the United States, in accordance with the federal rules, has limited itself to 10 depositions despite Texas's identification of 12 experts.  The Court should thus also enter a protective order barring Texas from taking more than the 10 depositions allowed by the federal rules.

## BACKGROUND

This case is about a straightforward inquiry into whether Texas unlawfully constructed an obstacle to navigation in the Rio Grande River without first seeking a permit from the U.S. Army Corps of Engineers under the Rivers and Harbors Act.  The factual background in this case is detailed in the United States' motion for preliminary injunction, ECF 5, its written closing arguments on the motion for preliminary injunction, ECF 45, its amended complaint, ECF 60, the Court's September 6, 2023 Order granting the preliminary injunction, ECF 50, and the Court's April 26, 2024 Order granting in part and denying in part Texas's motion to dismiss.  Critically, the Court has already rejected Texas's arguments that illegal immigration at the border justifies its construction of the buoy barrier.  Texas has alleged a constitutional "territorial right" to "control borders and regulate the flow of people and goods across them and rights to defend the territory against outside aggression," pointing in particular to the alleged dangers of unlawful border crossings and unlawful cross-border commerce.  ECF 62 at 19.  The Court has squarely

rejected the notion that immigration and illegal trade at the border justified Texas' actions, or *were even properly at issue*—"[I]f Texas seeks to justify its implementation of the buoy barrier because of an invasion at the border, that argument is foreclosed." ECF 114 at 24; *see also* ECF 50 at 31 (noting when issuing a preliminary injunction that "[t]o credit Texas's allegation of invasion would be to make a policy decision on a topic the Supreme Court and Fifth Circuit have identified as a nonjusticiable political question").

The Court's scheduling order adopted the parties' agreed date of June 17, 2024 as the "deadline to serve any discovery request other than noticing expert depositions." ECF 97 at 2. Without seeking leave of Court or seeking a stipulation as required by Fed. R. Civ. P. 30(a)(2), on June 17, 2024, Texas served the United States with *fifteen* notices of deposition (including a subpoena to a third party), four of which were 30(b)(6) notices for the U.S. Section of the International Boundary and Water Commission ("USIBWC"); the United States Coast Guard ("USCG"); the United States Army Corps of Engineers ("USACE"); and the United States Customs and Border Protection ("CBP"). *See* Exhibit 1 (combining notices), attached here. In these notices, Texas identified 32 topics for USIBWC, 35 topics for USCG, 38 topics for USACE, and 27 topics for CBP. *See id.* Those topics were far-ranging, including entirely irrelevant matters such as "alleged instances of misconduct, including sexual misconduct, involving employee agency employees [sic]" and "the circumstances of illegal immigrants storming and/or overwhelming border security barriers," among others. *See, e.g.*, USIBWC Notice ¶ 6; USACE Notice ¶¶ 6, 24; CBP Notice ¶¶ 6, 19; USCG Notice ¶¶ 6, 18. Texas served ten more notices for depositions of fact witnesses, plus a third-party subpoena on the City of Eagle Pass, Texas seeking documents and a deposition.

When Texas noticed these 15 depositions, it had already deposed the United States' four experts, on May 22, 2024 (Adrian Cortez); May 29, 2024 (Dr. Ben Johnson); May 31, 2024 (Tim MacAllister); and June 5, 2024 (Captain John Timmel).  Thus, Texas has noticed a total of 19 depositions.

Pursuant to W.D. Tex. L.R. CV-7(G), the United States notes that on June 18, 2024, counsel for the United States emailed Texas regarding these issues.  Following the parties' attempted meet-and-confer, Texas did not identify good cause to take 19 depositions.  Instead, Texas served amended 30(b)(6) deposition notices.  *See* Exhibit 2 (Amended USIBWC 30(b)(6) Notice); Exhibit 3 (Amended USCG 30(b)(6) Notice); Exhibit 4 (Amended USACE 30(b)(6) Notice); Exhibit 5 (Amended CBP 30(b)(6) Notice).  In these amended notices, Texas did withdraw a handful of its improper originally noticed topics.  That said, not only did a significant number of problematic topics remain, but Texas also expanded and added to its already-overbroad inquiries.  For example, Texas now identifies dozens of new topics for USIBWC and USACE.  *See generally* Amended USIBWC Notice ¶¶ 1-50; Amended USACE Notice ¶¶ 1-56.

## LEGAL STANDARD

Federal Rule of Civil Procedure 1 requires that the Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1 & Advis. Note 2015 Amd.  And those Rules expressly limit the scope of discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(a)(1).  Discovery may be further limited where "the burden of expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1). The court may also order that "certain matters not be inquired into, or that the scope of discovery be limited to certain

matters." Fed. R. Civ. Proc. 26(c)(4).  "[T]he Court must limit discovery, if it determines . . . that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive or the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  *D'Souza v. Marmaxx Operating Corp.*, No. EP-15-CV-00256-DCG, 2017 WL 1322243, *2 (W.D. Tex. Apr. 7, 2017).

Rule 30(b)(6) permits a party to name a governmental agency as a deponent.  The party seeking the agency's testimony must "describe with reasonable particularity the matters for examination[,]" and the individual designated to testify on the agency's behalf must then "testify about information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6). If the agency objects to any matter set forth in the deposition notice, it may move for a protective order pursuant to Fed. R. Civ. P. 26(c), but in doing so it "bears the burden of demonstrating to the court that the notice is objectionable or insufficient."  *Westheimer Regency I, L.P. v. Great Lakes Reinsurance (UK) SE*, 2018 WL 7198643, at *1 (W.D. Tex. Aug. 20, 2018) (citations omitted).  The Court has broad discretion in determining whether to grant a motion for protective order.  *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).  An expansive 30(b)(6) notice served on the government is especially inappropriate because it imposes a significant burden of preparation on the agency.  *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432-33 (5th Cir. 2006); *see also SEC v. Nacchio*, 614 F. Supp. 2d 1164, 1177 (D. Colo. 2009) (finding undue burden where 30(b)(6) deposition preparation "would literally require some person in [the agency] to spend untold weeks if not months").

## ARGUMENT

Texas's four amended 30(b)(6) notices seek testimony on topics that are irrelevant, outside the scope of discovery, not known or reasonably available to the relevant federal

agencies, and would impose a significant burden on the agencies.  Most importantly, Texas seeks to depose representatives from four separate federal agencies on topics that this Court has repeatedly ruled are not properly at issue.  *See supra* at 2.  Testimony or evidence about "illegal people," immigration, or the "implementation and impact" of executive actions on "border security"—*see* USIBWC Amended Notice ¶ 48; USCG Amended Notice ¶¶ 26, 28, 29; CBP Amended Notice ¶¶ 22, 24, 25; USACE Amended Notice ¶ 56—are not relevant to the United States' Rivers and Harbors Act Section 10 claim.  These topics, along with others described below, should be quashed in their entirety.[2]

Texas's "amended" notices, which followed the United States' attempt to confer in order to *narrow* the topics, only exacerbated the problem.  While Texas withdrew a few blatantly improper topics (like sexual misconduct claims), it added far more, expanding the scope of its notices well beyond the original versions.  For that matter, adding *any* topics at this stage—even relevant ones—is inappropriate, because the June 17, 2024 deadline to serve discovery requests passed before Texas served these amended notices.

For all these reasons, which are developed below, this Court should issue a protective order precluding Texas from seeking testimony on the identified improper topics as specified in the corresponding Appendix.  A proposed order is also attached.

## A.   30(b)(6) topics pertaining to immigration, "border security," or "illegal" activities should be quashed.

Texas seeks to elicit 30(b)(6) testimony on topics that exclusively pertain to immigration and border security issues, which the Court has already held are not relevant in this case.  For

---

[2] The corresponding Appendix is lists by agency the specific topics contained in Texas's amended 30(b)(6) notices with specific objection(s) that the United States seeks to quash.

example, Texas seeks testimony about "the number of illegal people, guns, drugs, and goods entering the U.S. by crossing the Rio Grande River," *see, e.g.*, USCG Amended Notice ¶ 28, "all construction projects … whose purpose was to facilitate illegal commercial navigation," USIBWC ¶ 38, USACE ¶ 45, "[b]order security on the Rio Grande River," *see, e.g.*, CBP ¶ 13; "the impact of razor wire erected by Texas on agency operations and border security on the Rio Grande River," *see, e.g.*, USCG ¶ 15; and "records and data related to agency employees or contractors killed or injured while operating in the vicinity of the buoys from 2020 through the present," *see, e.g.*, CBP Amended Notice ¶ 20; *see generally* Appendix Table.  Beyond being irrelevant, these topics are also objectionable because they seek testimony on information that is not readily available, disproportionate to the needs of the case, and would impose an improper and unnecessary burden on the agencies to prepare.  *See Brazos*, 469 F.3d at 432-33.

### B.    The Court should quash additional topics seeking information not known or reasonably available to the noticed agencies, that is publicly available, or overly broad and unduly burdensome.

Several topics should be quashed because they are not appropriate for 30(b)(6) testimony or because they can be obtained with less effort from public sources.  *See Sill v. State Farm Lloyds*, 2013 WL 12393984, at *9 (W.D. Tex. Apr. 8, 2013) (issuing protective order for 30(b)(6) deposition topics that pertained to information otherwise publicly available); *see generally* Appendix Table.  These topics include those pertaining to features of the Rio Grande River's depth and flow that are all publicly available, such as "all gage readings between Mile Markers 275.5 and 610 from 2013 through the present," USIBWC Amended Notice ¶ 12, the "average water depths at each gage between Mile Markers 275.5 and 610 over the past 1, 3, 5, and 10 years," *id.* ¶ 16, and "the average water depths at the Amistad and Falcon reservoirs over the past 1, 3, 5, and 10 years," *id.* ¶ 17.  Real-time and historical data regarding the Rio Grande River can

be readily obtained directly from USIBWC's website as well as from the United States Geological Service.[3]  The USIBWC database provides data at several points along the Rio Grande River over many years, including gage readings, discharge flows, and average flows for the river dating back to the early 1900s.  *See id.*  The USIBWC data can be downloaded in table form and as an interactive map.

Texas also seeks deposition testimony that would require several federal agencies to speculate on the "feasibility, reasonableness, impact, amount" and "legality" of certain hypothetical situations Texas posits in its topics.  *See* USIBWC Amended Notice ¶¶ 20, 21, 22, 23, 25; USACE Amended Notice ¶¶ 27, 28, 29, 30, 35.  Indeed, Texas's topics would require the agencies to perform complex data collection, analysis, and calculations to generate information and facts that are not currently or reasonably known to the agencies.  For example, Texas seeks testimony from USIBWC and USACE on

> The feasibility, reasonableness, impact, and amount of water from Amistad Reservoir necessary to raise the minimum and average dimensions and depths of the Rio Grande River between Mile Markers 275.5 and 610 to the minimum dimensions of 250 feet wide and 9, 12, and 30 feet deep.

USACE Amended Notice ¶ 28; USIBWC Amended Notice ¶ 21; *see also* USACE Amended Notice ¶ 27 (same except to the dimensions and depth of "waterways in the U.S. Maritime Transportation System, U.S. National Inland Transportation Systems, National Waterway Network, and U.S. Waterways Systems"), ¶ 39; USIBWC Amended Notice ¶¶ 20, 34.

Similarly, Texas demands that USIBWC and USACE identify every piece of debris in the Rio Grande River between Mile Markers 275.5 and 610 and testify to the "number, location,

---

[3] *See* IBWC Water Data, available at https://www.ibwc.gov/water-data/.  This website includes Daily Rio Grande Flow Conditions, Near Real-time Streamflow data, Weekly 5-Year Cycle Status, as well as Reservoir Reports for Amistad and Falcon dams; *see* USGS National Water Dashboard, available at https://dashboard.waterdata.usgs.gov/app/nwd/en/.

condition, details, height, and dimensions" of each.  *See* USIBWC Amended Notice ¶ 33; USACE Amended Notice ¶ 39 (same).  Such information does not exist and cannot be reasonably known or available to the agencies.  Requiring agencies to prepare for and testify on these types of topics imposes significant improper burdens.  *See Brazos*, 469 F.3d at 432-33.

Texas's 30(b)(6) notices also would require CBP and USIBWC to testify to "navigable waters" and "navigability definitions and determinations" as well as "highway of commerce definitions and determinations relating to the Rio Grande River between Mile Markers 275.5 and 610," *see* CBP Amended Notice ¶¶ 1, 2; USIBWC Amended Notice ¶ ¶1, 2. These topics and similar ones should be quashed with respect to CBP and USIBWC because they are outside the scope of the specific agency's operations and not within their purview or mission, and so they are necessarily not "known or reasonably available" to either agency.  As identified in the Appendix Tables, the United States does not, however, object to these topics for USACE.

Finally, Texas also seeks testimony from USIBWC and USACE regarding the "feasibility, reasonableness, and process of changing water priorities in the existing treaties governing the Rio Grande River" and "Mexico's current and historic compliance with their treaty obligations relating to the Rio Grande River," *see* USIBWC Amended Notice ¶¶ 14, 26, 50; USACE Amended Notice ¶ 33. These agencies should not have to provide binding speculation on the so-called "feasibility" or "reasonableness" of amending a treaty.  Nor should they be expected to speculate on Mexico's compliance with treaty obligations.  USIBWC will designate a witness to testify to the "process of changing water priorities in the existing treaties."

***

The United States will designate individuals as to non-privileged information within each agency's possession, custody, and control regarding the remaining topics that it does not seek to

quash, but to avoid further unnecessary issues and burdens on the agencies, counsel, and this Court, the United States requests that, as part of any protective order, the Court limit each agency's 30(b)(6) deposition to no more than seven hours regardless of the number of designees.

### C. Texas should be limited to the presumptive total of ten depositions.

Texas did not first seek or obtain leave of court to take more than 10 depositions as the Federal Rules require.  Instead, Texas noticed fifteen depositions at the eleventh-hour on the last day to do so.  In the parties' meet-and-confer, Texas provided no good-faith basis for why it requires 19 depositions except to note that some were identified on the United States' initial disclosures.  That is not a basis to exceed the presumptive limit.  *See Mullenik v. Univ. of Texas*, No. 1-19-CV-1203-LY-SH, 2021 WL 3474008, at *3 (W.D. Tex. Aug. 6, 2021) (citing *United States v. Goertz*, No. A-09-CA-179 LY, 2010 WL 2900309, at *1 (W.D. Tex. July 20, 2010) (same)).  Texas's position is even more tenuous because the United States made clear it will endeavor to stay within the presumptive limit of 10 (notwithstanding Texas identifying twelve experts).  Texas expressed its preference to the United States for its remaining six depositions to be the four 30(b)(6) depositions, the City of Eagle Pass, and Hillary Quam.

### CONCLUSION

For all these reasons, Plaintiff requests that the Court: (1) grant its motion to quash certain topics in Texas' 30(b)(6) depositions as detailed above and as outlined in the corresponding Appendix Table and proposed order, and limit each 30(b)(6) deposition seven hours of testimony regardless of the number of designees; and (2) limit Texas to the presumptive number of ten depositions to following: the four expert witness depositions that have already occurred, the four 30(b)(6) depositions, the City of Eagle Pass, and Hillary Quam.

Dated:  June 21, 2024

JAIME ESPARZA
UNITED STATES ATTORNEY

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division


 /s/ Landon A. Wade
LANDON A. WADE
  Assistant United States Attorney
  Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

 /s/ Bryan J. Harrison
BRIAN H. LYNK
  Senior Trial Counsel
  DC Bar No. 459525
KIMERE J. KIMBALL
  Trial Attorney
  CA Bar No. 260660
ANDREW D. KNUDSEN
  Trial Attorney
  DC Bar No. 1019697
BRYAN J. HARRISON
  Trial Attorney
  FL Bar No. 106379
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov
Kimere.kimball@usdoj.gov
Andrew.knudsen@usdoj.gov
Bryan.harrison@usdoj.gov

*Counsel for the United States of America*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on June 21, 2024, a copy of this filing was served on counsel of record through the Court's electronic filing system.

*/s/ Bryan J. Harrison*
Bryan J. Harrison