# Exhibit 2

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **United States of America,**<br>　　*Plaintiff*,<br><br>　v.<br><br>**Greg Abbott, in his capacity as Governor of<br>the State of Texas, and<br>the State of Texas,**<br>　　*Defendants*. | **No. 1:23-cv-00853-DAE** |

## DEFENDANTS' NOTICE OF INTENT TO TAKE ORAL AND VIDEOTAPED DEPOSITION OF THE U.S. SECTION OF THE INTERNATIONAL BOUNDARY AND WATER COMMISSION PURSUANT TO RULE 30(b)(6)

**TO:**　The U.S. Section of the International Boundary and Water Commission, by and through Brian H. Lynk, U.S. Department of Justice, Environmental Defense Section, P.O. Box 7611, Washington, DC 20044, and Landon Wade, U.S. Attorney's Office, Western District of Texas, 903 San Jacinto Blvd., Ste. 334, Austin, TX 78701, counsel for the United States of America, and to All Counsel of Record.

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(6) and by agreement of the parties, Defendants Greg Abbott, in his official capacity, and the State of Texas (collectively "Defendants") will take the oral and videotaped deposition of the U.S. Section of the International Boundary and Water Commission, commencing at 9:00 a.m. CST on July 15, 2024. At the scheduled time, a representative for the U.S. Section of the International Boundary and Water Commission is directed to appear at The Office of the Attorney General of Texas, 300 W. 15th Street, Austin, Texas 78701. The deposition will continue from time to time and place to place until concluded.

In accordance with Federal Rule of Civil Procedure 30(b)(6), Plaintiff is directed to designate one or more officers, directors, managing agents, or other persons who consent to testify on Plaintiff's behalf. The Defendants shall meet and confer with Plaintiff about the matters of examination. A list of potential topics for examination is listed on Exhibit A to this Notice. The Plaintiff shall identify the specific subject matters listed on Exhibit A on which each designated person will testify. The person(s) designated as deponent(s) shall be prepared to testify as to such matters known or reasonably available to Plaintiff. This Notice serves to inform Plaintiff that is has a duty to make such designation.

The deposition will be recorded stenographically and on videotape. The deposition, answers, and documents referenced during the deposition may be read and used in evidence at the trial of this cause in accordance with the Federal Rules of Civil Procedure.

Date: June 20, 2024

Respectfully submitted,

Ken Paxton
Attorney General of the State of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy Attorney General for Legal Strategy

Ryan Walters
Chief, Special Litigation Division

Office of the Attorney General
P. O. Box 12548, MC-009
Austin, TX 78711-2548
(512) 936-2172

*/s/ Johnathan Stone*
**Johnathan Stone**
Special Counsel
Tex. State Bar No. 24071779
Johnathan.stone@oag.texas.gov

David Bryant
Senior Special Counsel
Tex. State Bar No. 03281500
david.bryant@oag.texas.gov

Munera Al-Fuhaid
Special Counsel
Tex. State Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

Kyle S. Tebo

Special Counsel
Tex. State Bar No. 24137691
kyle.tebo@oag.texas.gov

Zachary Berg
Special Counsel
Tex. State Bar. 24107706
Zachary.Berg@oag.texas.gov

**Counsel for Defendants**

**Certificate of Service**

On June 20, 2024, this document was served on all counsel of record via email.


*s/ Johnathan Stone*
**Johnathan Stone**
Special Counsel

**EXHIBIT A TO NOTICE OF RULE 30(b)(6) DEPOSITION OF
THE U.S. SECTION OF THE INTERNATIONAL WATER BOUNDARY
COMMISSION**

**TOPICS FOR EXAMINATION[1]**

1.   "Navigable waters" and "navigability" definitions, determinations, reports, and data relating to the Rio Grande River between Mile Markers 275.5 and 610;

2.   "Highways of commerce" definitions and determinations, reports, and data relating to the Rio Grande River between Mile Markers 275.5 and 610;

3.   Current agency policies, procedures, protocols, and regulations relating to commercial navigation, including but not limited to waterways, vessels, permits, locks, dams, dredging, civil works projects, and inspections;

4.   Agency policies, procedures, protocols, regulations, and operations relating to the Amistad, Falcon and Maverick Dams;

5.   Agency policies, procedures, protocols, regulations, and operations relating to when the Rio Grande River, Amistad Reservoir, and/or Falcon Reservoir run out of water;

6.   Agency policies, procedures, protocols, and regulations relating to Class A vessels, Class I vessels, canoes, kayaks, airboats, commercial vessels and/or vessels or barges carrying commercial cargo;

7.   Current or historical use as a highway of commerce to transport goods or commodities in lawful interstate or foreign commerce on the Rio Grande River between Mile Markers 275.5 and 610;

8.   Commercial navigation on the Rio Grande River between Mile Markers 275.5 and 610;

9.   Agency policies, procedures, protocols, regulations, and operations relating to intermodal and maritime logistics, supply chain management, commodity corridors, and supply chain resilience on the Rio Grande River between Mile Markers 275.5 and 610 from 2020 through the present;

10.   The process for obtaining approval for construction, projects, dredging, or any other improvement to the Rio Grande River between Mile Markers 275.5 and 610, including but not limited to studies, surveys, cost-benefit analyses, and environmental impacts assessments and studies;

11.   Agency policies, procedures, protocols, and regulations relating to water retention and

---

[1]   Mile Markers 275.5 to 610 refers to the segment of the Rio Grande River that Plaintiffs contend in this lawsuit is navigable.

releases at the Amistad, Falcon, and Maverick Dams;

12.   All gage readings between Mile Markers 275.5 and 610 from 2013 through the present;

13.   Weather conditions, including rainfall, fog, and smoke, between Mile Markers 275.5 and 610 of the Rio Grande River from June 2023 through the present;

14.   The feasibility, reasonableness, and process of changing water priorities in the existing treaties governing the Rio Grande River between Mile Markers 275.5 and 610;

15.   The policies and procedures relating to surveys, studies, and proposals for maritime construction projects, including feasibility, cost-benefit analyses, cost effectiveness analyses, and environmental planning and studies, engineering, installations and operational environments, civil works, geospatial research and engineering, and engineered resilient systems;

16.   The average water depths along the Rio Grande River at each gage between Mile Markers 275.5 and 610; over the past 1, 3, 5, and 10 years.

17.   The average water depths at the Amistad and Falcon reservoirs over the past 1, 3, 5, and 10 years;

18.   The average dimensions of the Rio Grande River between Mile Markers 275.5 and 610; over the past 1, 3, 5, and 10 years.

19.   The maximum amount of water capable of being released at the Amistad and Falcon Dams;

20.   The feasibility, reasonableness, impact, and amount of water from Amistad Reservoir necessary to raise the minimum and average dimensions and depth of the Rio Grande River between Mile Markers 275.5 and 610 to the minimum (and average) dimensions and depth of waterways in the U.S. Maritime Transportation System, U.S. National Inland Transportation Systems, National Waterway Network, and U.S. Waterway Systems;

21.   The feasibility, reasonableness, impact, and amount of water from Amistad Reservoir necessary to raise the minimum and average dimensions and depth of the Rio Grande River between Mile Markers 275.5 and 610 to the minimum dimensions of 250 feet wide and 9, 12, and 30 feet deep;

22.   The average (and minimum) dimensions and depth of the Rio Grande River between Mile Markers 275.5 and 610 if U.S. released the maximum amount of water from the Amistad Dam that it is capable of releasing at current water levels in the Amistad Reservoir;

23.   The average (and minimum) depth at each of the gauges on the Rio Grande River between Mile Markers 275.5 and 610 if U.S. released the maximum amount of water from the Amistad Dam that it is capable of releasing at current water levels in the Amistad Reservoir;

24.   The existing treaty obligations relating to water use of the Rio Grande River, including but

not limited to prioritization of uses;

25.   The legality and/or feasibility of releasing water from Amistad Dam or Falcon Dam for the purpose of enabling or enhancing commercial navigation on the Rio Grande River anywhere downstream of Amistad Dam;

26.   Mexico's current and historic compliance with their treaty obligations relating to the Rio Grande River, including but not limited to the area between Mile Markers 275.5 and 610;

27.   Any present, proposed/planned, and/or historical practical use of the Rio Grande River as a highway of commerce for goods, commodities, or trade anywhere between El Paso, Texas and the Gulf of Mexico;

28.   The existing treaty obligations relating to water use of the Rio Grande River, including but not limited to prioritization of uses;

29.   All instances of vessels transporting commercial cargo up or down, or bank-to-bank, on the Rio Grande River between Mile Markers 275.5 to 610;

30.   The legality, reasonableness, and/or feasibility of releasing water from Amistad Dam or Falcon Dam for the purpose of enabling or enhancing commercial navigation on the Rio Grande River anywhere downstream of Amistad Dam;

31.   The number, location, condition, details, height, and dimensions of the weirs on the Rio Grande River between Mile Markers 275.5 and 610;

32.   The number, location, condition, details, height, and dimensions of the cableways on the Rio Grande River between Mile Markers 275.5 and 610;

33.   The number, location, condition, details, height, and dimensions of debris in the Rio Grande River between Mile Markers 275.5 and 610;

34.   The amount of water necessary to overcome the weirs, cableways, debris, and Maverick Dam such that the Rio Grande River navigable for vessels carrying commercial cargo between Mile Markers 275.5 and 610;

35.   Construction permits that have been proposed and/or approved or authorized for construction projects and/or dredging on the Rio Grande River between Mile Markers 275.5 and 610 from 2000 through the present;

36.   Any Section 10 or other construction permits ever issued by USACE or IBWC for work on the Rio Grande River;

37.   The processes and criteria for approval or rejection for applications for Section 10 permits, the policies and criteria that would be applicable relating to approval or rejection of any potential dredging or other improvements to the Rio Grande River or rivers or waterways under management or control of USACE to enable or enhance navigability (including

feasibility, cost-benefit analyses, cost effectiveness analyses, and environmental planning and studies, engineering, installations and operational environments, civil works, geospatial research and engineering, and engineered resilient systems);

38.   All construction projects authorized, approved, or proposed whose purpose was to facilitate illegal commercial navigation;

39.   Current agency policies, procedures, protocols, and regulations relating to recreational navigation;

40.   Recreational navigation on the Rio Grande River between Mile Markers 275.5 and 610;

41.   Agency policies, procedures, protocols, and regulations relating to operations on the Rio Grande River between Mile Markers 275.5 and 610 from 2020 through the present;

42.   Agency operations on the Rio Grande River between Mile Markers 275.5 and 610 from 2020 through the present;

43.   Specifications, recommendations, and warnings relating to agency vessels operating between Mile Markers 275.5 and 610 of the Rio Grande River from 2020 through the present, including length, width, passenger, capacity, weight capacity, and draft;

44.   The impact of the buoys on agency operations between Mile Markers 275.5 and 610 of the Rio Grande River, including but not limited to any actual obstruction, delay, obstacle, or restriction;

45.   Nighttime operations involving the use of vessels in the location of the buoys from June 2023 through the present;

46.   Any actual navigation of the Rio Grande River that has been obstructed, harmed, or otherwise affected by the presence of the buoys;

47.   Damage to agency vessels caused by collision or making contact with rocks, shoals, debris, weirs, dams, buoys, structures, booms, cableways, and/or any other object, while operating between Mile Markers 275.5 and 610 of the Rio Grande River from 2020 through the present;

48.   Implementation and impact of the June 4, 2024, Executive Order on border security and asylum claims by the Biden Administration on the operations on Rio Grande River between Mile Markers 275.5 and 610 from 2020.

49.   The statement on page 12 of the 1930 Report of the International Water Commission to the United States Congress that "[t]here has never been any practical navigation on the 1,044 miles from El Paso to Roma"; whether that statement was or was not true when made by the Commission and remains true, and whether that statement has ever been withdrawn, retracted, or contradicted by the Commission or any other agency of the United States of

America; and,

50.  The feasibility, reasonableness, and process of changing water priorities in the existing treaties governing the Rio Grande River between Mile Markers 275.5 and 610.