**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. GREG ABBOTT, ET AL., *Defendants.* | CIVIL ACTION NO. 1:23-CV-00853 |

**DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE
EXPERT WITNESS TESTIMONY OF ADRIAN CORTEZ**

Defendants Greg Abbott, in his capacity as Governor of the State of Texas, and the State of Texas, hereby files the following motion to exclude or limit the expert witness testimony of Adrian Cortez and offer the following in support:

### BACKGROUND

On May 3, 2024, Plaintiff identified Mr. Cortez as an *expert* witness testifying about the "decision factors and procedures for water releases from Amistad Dam; dam release information; regional hydrologic inputs and outputs; information about water levels downstream of Amistad Dam as these relate to navigability; and the USIBWC's use of watercraft in support of its operations on the Rio Grande." Ex. A at 1.

Three days later, on May 6, 2024, Plaintiff identified Mr. Cortez as a *fact* witness with knowledge of the U.S. Section of the International Boundary Water Commission's (USIBWC) "navigation of the Rio Grande and the impact of the Floating Barrier on the USIBWC." Ex. B at 2.

On May 9, 2024, Plaintiff produced an expert report from Mr. Cortez. Ex. C.

On May 22, 2024, Defendants deposed Mr. Cortez. Ex. D.

## Motion to Exclude or Limit

Trial Courts serve a gatekeeping role in determining whether expert testimony is admissible. *Harris v. FedEx Corp. Services, Inc.*, 92 F.4th 286, 303 (5th Cir. 2024) (citing *United States v. Valencia*, 600 F.3d 389, 423–24 (5th Cir. 2010)). Federal R. Evid. 702 provides the general criteria for determining the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if *the proponent demonstrates* to the court that it is *more likely than not* that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

(emphasis added).

Additionally, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), expert testimony is admissible only if the proponent demonstrates by a preponderance of the evidence that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable, *see Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). *Daubert* sets forth four specific factors that the trial court should ordinarily apply when considering the reliability of scientific evidence: (1) whether the technique can or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Daubert*, 509 U.S. at 592–93. This test of reliability, however, is "flexible," and these factors "neither necessarily nor exclusively appl[y] to all experts or in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it

enjoys in respect to its ultimate reliability determination." *Id*. at 142. "The proponent need not prove that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore*, 151 F.3d at 276.

## I.     Mr. Cortez is Not an Expert Witness.

Plaintiff designated Mr. Cortez as an expert on (A) decision factors and procedures for water releases from Amistad Dam; (B) dam release information; (C) regional hydrologic inputs and outputs; (D) information about water levels downstream of Amistad Dam as these relate to navigability; and (E) the USIBWC's use of watercraft in support of its operations on the Rio Grande." Ex. A at 1. Mr. Cortez admitted that he is not testifying in this case as an expert on any other topics. Ex. D at 9, 27:6-18; 21, 81:13-18.

### A.     Decision Factors and Procedures for Water Releases from Amistad Dam.

Plaintiff cannot meet its burden of showing by a preponderance of the evidence that Mr. Cortez has relevant and reliable opinions about the decision factors and procedures for water releases from Amistad Dam. Mr. Cortez is a fact witness and admitted that he has no expert opinions in this case about the decision factors for water releases from Amistad Dam:

> Q: Are you offering fact testimony or opinion testimony about the decision factors for water releases from the Amistad Dam at conservation levels?[1]
>
> A: I believe I would be offering *fact testimony*.

Ex. D at 10, 34:2-7 (emphasis added).

> Q: What opinions do you have in this case about the decision factors for water releases from Amistad Dam during conservation water levels?
>
> A: I have *no opinions* that I cover in my report.

---

[1] Water conservation levels refers to the non-flood conditions at the Amistad Reservoir, which have existed continuously since 2010 through the present. See Ex. D at 59, 231:15-232:4; 8, 28:14-21.

Ex. D at 10, 35:10-14 (emphasis added).

Mr. Cortez, similarly, is not an expert on the procedures for water releases from Amistad Dam and has no expert opinions on the subject in the case:

> Q: Are you an expert on the procedures for water releases from Amistad Dam?
>
> A: Not the specifics for power generation, no.
>
> Q: Is power generation the only procedure for water releases from Amistad Dam?
>
> A: No. There would also be procedures for releases out of the irrigation gates that are not used for generating power.
>
> Q: Are you an expert on those [] procedures for those releases?
>
> A: I am not.

Ex. D at 10, 36:12-23.

> Q: Are you offering fact testimony or opinion testimony about the procedure for water releases from the Amistad Dam at water conservation levels?
>
> A: *Fact testimony*.
>
> Q: What opinions, if any, do you have in this case about the procedures for water releases from the Amistad Dam at water conservation levels?
>
> A: You said "opinions"?
>
> Q: If any.
>
> A: *No opinions*.

Ex. D at 11-12, 41:14-42:1 (emphasis added).

### B. Dam Release Information.

Plaintiff cannot meet its burden of showing by a preponderance of the evidence that Mr. Cortez has relevant and reliable opinions about dam release information. Mr. Cortez, by his own admission, is not an expert on dam release information (except as it relates to his job duties) and has no expert opinions in this case on the subject:

4

> Q: Are you providing fact testimony or opinion testimony in this case about Amistad Dam release information?
>
> A: *Fact testimony*.
>
> …
>
> Q: Do you have any expert opinions in this case about Amistad Dam release information?
>
> A: Expert opinions, no.
>
> Q: Do you have any expert opinions in this case about Falcon Dam release information?
>
> A: No.

Ex. D at 13, 46:9-47:16 (emphasis added).

### C.  Regional Hydrologic Inputs and Outputs.

Plaintiff cannot meet its burden of showing by a preponderance of the evidence that Mr. Cortez has relevant and reliable opinions about regional hydrologic inputs and outputs. Mr. Cortez has no expert opinions in this case on regional hydrologic inputs and outputs (only fact testimony):

> Q: [A]re you offering fact testimony in this case or opinion testimony in this case about the hydrologic inputs and outputs on the Rio Grande River?
>
> A: I was asked to provide expert testimony on that.
>
> Q: Okay. What expert opinions do you have in this case about the hydrologic inputs and outputs on the Rio Grande River?
>
> A: *I have no opinions*.

Ex. D at 14, 52:3-13 (emphasis added).

### D.  Water Levels Downstream of Amistad Dam as these Relate to Navigability.

Plaintiff cannot meet its burden of showing by a preponderance of the evidence that Mr. Cortez has relevant and reliable opinions about water levels downstream from Amistad Dam as it relates to navigability. First, Mr. Cortez is not an expert on navigability:

> Q: Are you an expert on navigability?

>    A:  I am not.
>
>    …
>
>    Q:  Are you an expert on navigability of the Rio Grande River?
>
>    A:  No.

Ex. D at 15, 56:2-15.

Mr. Cortez testified that his expertise and opinions on the subject of water levels downstream of Amistad Dam were limited to "[i]n the sense that increased flow would raise water levels as a general statement," *id* at 15, 54:3-4, but he admitted that "you do not need a particular expertise to know that water levels rise if you release more water from the Amistad Dam," *id*. at 54:17-21.

Mr. Cortez testified that, to the extent he had any opinions on the subject, it was limited to two Gages on the Rio Grande River downstream of Amistad Dam. *Id*. at 20, 77:1-25. But, when pressed, he admitted that he has no opinions in this case for one gage, and the testimony he provided about the other gage is fact testimony (not opinion):

>    Q:  What opinions do you have about the water levels downstream of the Amistad Dam as they relate to navigability at the Eagle Pass gage?
>
>    A:  *I do not offer any opinions on that topic*.
>
>    …
>
>    Q:  What expert opinion do you have about the water levels downstream of Amistad Dam as they relate to navigability at the Jiminez gage?
>
>    A:  Only that the reduced water levels at the Jiminez gage reduces -- the reduced water flows at the Jiminez gage reduces water levels. So, depending on how far it's reduced, that would have an impact on navigability.

Ex. D at 21, 78:12-79:4 (emphasis added).

E. **USIBWC's Use of Watercraft in Support of Operations on the Rio Grande.**

Plaintiff cannot meet its burden of showing by a preponderance of the evidence that Mr. Cortez has relevant and reliable opinions about the USIBWC's use of watercraft on the Rio Grande River. Mr. Cortez was designated as a fact witness on this topic. Ex. B at 2. He has no expert opinions in this case on the subject:

> Q: Will you be providing expert opinions in this case on the Commission's use of watercraft in support of its operations on the Rio Grande River?
>
> A: I provide information on the type of watercraft that we use.
>
> Q: Is that fact testimony, or is it expert opinion testimony?
>
> A: It is *fact testimony*.
>
> Q: Do you have any expert opinions in this case about the [USIBWC's] use of watercraft in support of its operations on the Rio Grande River?
>
> A: *I do not*.

*Id*. at 21, 80:21-81:12 (emphasis added).

F. **Mr. Cortez's Undesignated Opinions About Water Priorities.**

Mr. Cortez's opinions on water priorities in the 1944 treaty should be struck because Plaintiffs failed to disclose Mr. Cortez as an expert witness testifying on the subject. Ex. A.

Alternatively, at his deposition, Mr. Cortez testified that he had expert opinions in this case that "if priorities of the current water allocations and management practices change, the Treaty was written with the required flexibility to accommodate these adjustments." Ex. D at 52, 203:3-205:6. But Mr. Cortez testified that there has never been a change in priority in the 1944 treaty and he has no opinion on the feasibility of such a change nor how high a reprioritization would be needed to be to accommodate navigation, *id*. at 34, 131:11-132:16, nor could he testify to whether such a change would be plausibly and whether the U.S. and Mexico would ever agree to such

7

modifications, *id*. at 50, 194:16-195:20. This testimony will not assist the trier of fact in resolving the issues in dispute (which is the *reasonableness* of such a change) and is not proper expert testimony because it merely regurgitates that the 1944 treat permits the U.S. and Mexico to agree to treaty modifications. That Mr. Cortez cannot opine on the plausibility or reasonableness of reprioritizing navigation in the 1944 treaty demonstrates that he is no expert on the subject. *Id*. He has no specialized training, education, skills, or knowledge on the subject beyond "[j]ust what it says in the treaty." *Id*. at 23, 88:7-89:23. And his testimony on the subject is entirely factual, not opinion:

> Q: Do you have any expert opinions in this case on how this could be prioritized in the future along the Rio Grande River?
>
> A: I provide information on how the treaty is flexible in its application of uses, which navigation is one of the uses that is contemplated by the treaty.
>
> Q: Is that factual information or expert opinion?
>
> A: It would be *factual information*.

*Id*. at 24, 91:3-14 (emphasis added).

No expertise is needed to read the text of the 1944 treaty and Mr. Cortez should be excluded from testifying on the subject because he has no opinions beyond repeating the language contained in the treaty itself.

\*\*\*

Plaintiff cannot meet its burden of showing by a preponderance of the evidence that Mr. Cortez has relevant and reliable opinions because, by Mr. Cortez's own admission, he is either not an expert or has no expert opinions on the topics for which he was identified as an expert witness; instead, Mr. Cortez only offers fact testimony or, in one case, an opinion for which no expertise is

needed.[2] This Court should, consequently, exclude Mr. Cortez from giving expert witness testimony in this case.

In the event this Court permits Mr. Cortez to offer expert opinions in this case, it should limit Mr. Cortez to the five opinions involving the use of adverbs in his expert report.

## II. Alternatively, Mr. Cortez's Expert Testimony Should be Limited.

Mr. Cortez should be excluded from offer any expert testimony in this this. Should the Court find that Mr. Cortez is an expert and permit his testimony, it should be limited. Expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Therefore, an expert's testimony generally is limited to his or her report produced in accordance with Rule 26(a)(2)(B) and to explanations "that are a reasonable extension of his report." *Chrastecky v. C. R. Bard, Inc.*, 2020 WL 748182, at *14 (W.D.Tex., 2020) (quoting *Bates & Co., Inc. v. Hosokawa Micron Int'l, Inc.*, 2005 WL 6227845, *1 (E.D. Tex. April 4, 2005).

Mr. Cortez admitted that he is either not an expert or has no expert opinions in this case on *any* of the disputed issues in this case. *See e.g. id.* at 23-24, 89:24-91:14. At his deposition, *see id.* at 23-52, 86:6-205:10, Mr. Cortez went page-by-page through his expert report and identified the following as the *only* expert opinions he has in this case:

1. After reviewing the flow record for the Rio Grande at Eagle Pass, Texas stream gage, it is evident that flows in the Rio Grande can vary *significantly* from year to year;

---

[2] Mr. Cortez testified that he similarly was either not an expert or had no opinions (only fact testimony) on the topics he was asked to opine on in this case, including "how the 1944 Water Treaty addresses the subject of navigation, current navigational uses of the Rio Grande within the responsibility of the Commission, and how this could be prioritized in the future within the stretch of the river extending from Amistad International Dam to Falcon International Dam and Reservoir." Ex. D at 23-24, 87:9-91:14.

2. Completion of Amistad Dam *drastically* altered the flow regime downstream of that dam, as its storage capacity has allowed it to buffer all floods observed so far and provides a steady and constant water supply in this reach;

3. The Maverick canal diverts up-to 1,500 cubic feet per second which can result in *greatly* reduced flow passing downstream;

4. The flow regime of the Rio Grande has been *highly* modified over time; and,

5. The construction of Amistad Dam and other smaller infrastructure like Maverick Dam have *greatly* modified the flow regime downstream of Del Rio, Texas, to Falcon Dam and Reservoir.

Ex. D at 47-48, 185:24-186:5; 48, 187:1-1; 49, 190:2-24.

In each case, Mr. Cortez testified that while the statements themselves were factual, his use of the adverbs "significantly," "drastically," "greatly," and "highly" were opinions. *Id*. This is *not* expert testimony. It will not be helpful to this Court in resolving any of the issues in dispute—as the adverbs, even if taken as true, do not make any claim, defense, or disputed fact in this case more or less likely. To the extent this Court deems otherwise, it should limit Mr. Cortez to the five opinions he expressed in the form of adverbs in his expert report and at his deposition.

## CONCLUSION

For all the foregoing reasons, Mr. Cortez should be excluded from offering expert opinions in this matter because he is either not an expert or has no expert opinions on any relevant matter that is at issue or, in the event the Court permits his to testify as an expert then his testimony should be limited to the five uses of adverbs in his expert report. Defendants ask for any further relief to which they are justly entitled.

| | |
|---|---|
| Date: June 25, 2024 | Respectfully submitted, |

Ken Paxton
Attorney General of the State of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy Attorney General for Legal Strategy

Ryan Walters
Chief, Special Litigation Division

Office of the Attorney General
P. O. Box 12548, MC-009
Austin, TX 78711-2548
(512) 936-2172

*/s/ Johnathan Stone*
**Johnathan Stone**
Special Counsel
Tex. State Bar No. 24071779
Johnathan.stone@oag.texas.gov

David Bryant
Senior Special Counsel
Tex. State Bar No. 03281500
david.bryant@oag.texas.gov

Munera Al-Fuhaid
Special Counsel
Tex. State Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

Kyle S. Tebo
Special Counsel
Tex. State Bar No. 24137691
kyle.tebo@oag.texas.gov

Zachary Berg
Special Counsel
Tex. State Bar. 24107706
Zachary.Berg@oag.texas.gov

**Counsel for Defendants**

### CERTIFICATE OF CONFERENCE

On June 25, 2024, I conferred with counsel for Plaintiff via email and they indicated that they are opposed to this motion.

*s/ Johnathan Stone*
**Johnathan Stone**
Special Counsel

## CERTIFICATE OF SERVICE

On June 25, 2024, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

*s/ Johnathan Stone*
**Johnathan Stone**
Special Counsel