**United States District Court**
**Western District of Texas**
**Austin Division**

| | |
|---|---|
| United States of America, | |
| *Plaintiff*, | |
| v. | No. 1:23-cv-00853-DAE |
| Greg Abbott, in his capacity as Governor of the State of Texas, and the State of Texas, | |
| *Defendants*. | |

**Defendants' Response to Motion to Dismiss Defendants' Counterclaim, Strike Defendants' Constitutional Defense, Strike Jury Demand & Advisory Jury Request, and for Leave to File**

TABLE OF CONTENTS

**Table of Contents** ........................................................................................... **ii**

**Table of Authorities** ...................................................................................... **iii**

**Argument** ......................................................................................................... **1**

I.   Sovereign Immunity Does Not Bar Texas's Counterclaim. ........................1

    A.   The United States waived any sovereign immunity from Texas's counterclaim by voluntarily initiating this action. .............................................................................1

    B.   The APA waives the United States's sovereign immunity from the nonmonetary relief Texas seeks in its counterclaim. ................................................ 4

II.  Texas has adequately pled its constitutional defense under the Self-Defense Clause...6

III. The Seventh Amendment entitles Texas to a jury trial in this case. ..........................12

**Conclusion** ..................................................................................................... **16**

**Certificate of Service** ................................................................................... **18**

TABLE OF AUTHORITIES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amoco Oil Co. v. Torcomian,*
    722 F.2d 1099 (3d Cir. 1983) ..................................................... 15

*Apter v. HHS,*
    80 F.4th 579 (5th Cir. 2023) ....................................................... 5

*Augustus v. Bd. of Pub. Instr. of Escambia County,*
    306 F.2d 862 (5th Cir. 1962) ...................................................... 7

*Austin v. Shalala,*
    994 F.2d 1170 (5th Cir. 1993) (Smith, J.) ................................... 16

*Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Intern. Software, Inc.,*
    653 F.3d 448 (7th Cir. 2011) ....................................................... 4

*Blagojevich v. Gates,*
    519 F.3d 370 (7th Cir. 2008) ....................................................... 5

*Chapman v. Nat'l Aeronautics & Space Admin.,*
    736 F.2d 238 (5th Cir. 1984) ....................................................... 8

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) ....................................................... 6

*Curtis v. Loether,*
    415 U.S. 189 (1974) ................................................................... 12

*Dairy Queen, Inc. v. Wood,*
    369 U.S. 469 (1962) ................................................................... 15

*DGG Grp., LLC v. Lockhart Fine Foods, LLC,*
    No. A-20-cv-330, 2020 WL 2475821 (W.D. Tex. May 13, 2020) ............... 6

*Dimick v. Schiedt,*
    293 U.S. 474 (1935) ................................................................... 12

*Dussouy v. Gulf Coast Investment Corp.*,
　660 F.2d 594 (5th Cir. 1981) ...................................................................................6

*EEOC v. Courtesy Bldg. Servs., Inc.*,
　No. 3:10-cv-1911, 2011 WL 208408 (N.D. Tex. Jan.21, 2011) ...................................7

*Entergy Services, Inc. v. U.S. Dep't of Labor*,
　No. CIV.A. 14-1524, 2014 WL 8507568 (E.D. La. Dec. 15, 2014)............................4

*Escobar v. City of Del Rio*,
　No. DR-20-cv-31, 2023 WL 6465132 (W.D. Tex. Oct. 2, 2023) (Moses, C.J.) .......7

*FDIC v. Niblo*,
　821 F. Supp. 441 (N.D. Tex. 1993) ..........................................................................7

*First Nat. Bank v. Genina Marine Services, Inc.*,
　136 F.3d 391 (5th Cir. 1998) ....................................................................................2

*Franchise Tax Board of Cal.v. Hyatt*,
　587 U.S. 230 (2019).................................................................................................1

*Frederick v. United States*,
　386 F.2d 481 (5th Cir. 1967)................................................................................2, 4

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
　485 U.S. 271 (1988) ...............................................................................................16

*Hildebrand v. Honeywell*,
　622 F.2d 179 (5th Cir. 1980) ...................................................................................5

*Joe Hand Promotions, Inc. v. HRA Zone, L.L.C.*,
　No. A-13-CA-359, 2013 WL 5707810 (W.D. Tex. Oct. 18, 2013)............................7

*Johnson v. City of Shelby*,
　574 U.S. 10 (2014)...................................................................................................6

*Jones v. State of La. Through Bd. of Trustees for State Colleges & Universities*,
　764 F.2d 1183 (5th Cir. 1985) ..................................................................................6

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
　677 F.2d 1045 (5th Cir. 1982)..................................................................................7

*Lapides v. Board of Regents University System of Georgia*,
　535 U.S. 613 (2002)..............................................................................................1, 2

*Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*,
　594 F.3d 383 (5th Cir. 2010) ...................................................................................6

*Mallory v. Norfolk Southern Railway Co.*,
    600 U.S. 122 (2023) ................................................................................................ 2

*Med. Ctr. Pharmacy v. Holder*,
    634 F.3d 830 (5th Cir. 2011) .................................................................................. 8

*Moyer v. Peabody*,
    212 U.S. 78 (1909) ................................................................................................. 11

*Mugler v. Kansas*,
    123 U.S. 623 (1887) ............................................................................................... 14

*New York v. DeLyser*,
    759 F. Supp. 982 (W.D.N.Y. 1991) ...................................................................... 14

*New York v. Gen. Elec. Co.*,
    No. 1:14-cv-747, 2015 WL 12748007 (N.D.N.Y. Sept. 29, 2015) ........................... 4

*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20,
    2010*,
    98 F. Supp. 3d 872 (E.D. La. 2015) ...................................................................... 12

*Park Club v. Resolution Trust Corp.*,
    967 F.2d 1053 (5th Cir. 1992) ................................................................................. 3

*Parsons v. Bedford*,
    3 Pet. 433 (1830) ................................................................................................... 12

*PennEast Pipeline Co. v. New Jersey*,
    594 U.S. 492 (2021) (Gorsuch, J., dissenting) ....................................................... 1

*Pennsylvania v. Wheeling & Belmont Bridge Co.*,
    9 How. 647 (1850) (Daniel, J., dissenting) ............................................................ 15

*Pernell v. Southall Realty*,
    416 U.S. 363 (1974) .......................................................................................... 14, 15

*Pingree v. United States*,
    No. 3:98-cv-2886, 1999 WL 714759 (N.D. Tex. Sept. 14, 1999) ............................ 6

*Plant v. Blazer Fin. Servs., Inc.*,
    598 F.2d 1357 (5th Cir. 1979) ................................................................................. 3

*SEC v. First Fin. Grp. of Tex.*,
    645 F.2d 429 (5th Cir. Unit A May 1981) ............................................................... 7

*SEC v. Jarkesy*,
    No. 22-859, 2024 WL 3187811 (U.S. June 27, 2024) ............................................. 12, 13, 14, 16

*Smith v. Turner*,
    48 U.S. 283 (1849) (McLean, J.) ................................................................................. 11

*Standard Oil Co. of California v. Arizona*,
    738 F.2d 1021 (9th Cir. 1984) ..................................................................................... 12

*Starbucks Corp. v. McKinney*,
    144 S.Ct. 1570 (2024) ................................................................................................. 13

*Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*,
    429 U.S. 363 (1977) .................................................................................................... 13

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ...................................................................................................... 4

*Sterling v. Constantin*,
    287 U.S. 378 (1932) ..................................................................................................... 11

*Sumner v. Mata*,
    449 U.S. 539 (1981) ..................................................................................................... 11

*Texas v. Caremark, Inc.*,
    584 F.3d 655 (5th Cir. 2009) ........................................................................................ 2

*Texas v. DHS*,
    88 F.4th 1127 (5th Cir. 2023) ....................................................................................... 5

*Texas v. Ysleta del Sur Pueblo*,
    369 F. Supp. 3d 760 (W.D. Tex. 2019) ....................................................................... 16

*Tollett v. City of Kemah*,
    285 F.3d 357 (5th Cir. 2002) ........................................................................................ 9

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) (Garland, J.) ............................................................... 5

*Tull v. United States*,
    481 U.S. 412 (1987) ................................................................................................ 13, 15

*United States v. Becerra*,
    155 F.3d 740 (5th Cir. 1998) ........................................................................................ 9

*United States v. Irby*,
    618 F.2d 352 (5th Cir. 1980) ........................................................................................ 4

*United States v. Renda*,
    709 F.3d 472 (5th Cir. 2013) ...........................................................7, 8, 9

*United States v. Sullivan*,
    No. CA 3-97-cv-488, 1998 WL 223709 (N.D. Tex. Apr. 28, 1998) ...................3

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) .................................................................................8

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ...............................................................................13

*Wis. Dep't of Corr. v. Schacht*,
    524 U.S. 381 (1998) (Kennedy, J., concurring) .........................................1

*Zarnow v. City of Wichita Falls, Tex.*,
    614 F.3d 161 (5th Cir. 2010) ....................................................................8

**Statutes**

5 U.S.C. § 702...............................................................................................4, 5, 6

33 U.S.C.
    § 403 ..................................................................................................13
    § 406 ..................................................................................................13

90 Stat. 2721 (1976)............................................................................................5

**Other Authorities**

Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1219 (4th ed.) ..................................6

25 Am. Jur. 2d *Ejectment* §§ 1, 18........................................................................14

78 Am. Jur. 2d *Waters* § 168................................................................................14

Black's Law Dictionary, *Abatement* (12th ed. 2024) ..............................................14

Black's Law Dictionary, *Ejectment* (12th ed. 2024)...............................................13

Fed. R. Civ. P. 13(a)(1)(A) ..................................................................................2

Fed. R. Civ. P. 13(a), (b) .....................................................................................2

Fed. R. Civ. P. 38(a)..........................................................................................12

Restatement (Second) of Torts §§833, 847A (1979) .............................................14

Samuel L. Bray, *The Supreme Court and the New Equity*, 68 Vand. L. Rev. 997,
    1045–46 (2015)...........................................................................................................15

U.S. Const. Amend. VII.....................................................................................................12

U.S. Const. art. I, § 10, cl. 2 ............................................................................................. 11

U.S. Const. art. I, § 10, cl.3............................................................................................ 9, 11

18B Wright & Miller, Fed. Prac. and Proc. § 4478.6 (2d ed. 2013) ..................................8

Defendants Greg Abbott, in his capacity as Governor of the State of Texas, and the State of Texas (collectedly, "Texas"), oppose Plaintiff's motion asking the Court to dismiss Texas's counterclaim, strike its constitutional defense based on the Self-Defense Clause, and strike its jury demand. *See* ECF No. 125 (the "Omnibus Motion").[1]

**ARGUMENT**

## I.   Sovereign Immunity Does Not Bar Texas's Counterclaim.

### A.   The United States waived any sovereign immunity from Texas's counterclaim by voluntarily initiating this action.

Texas has moved to strike Plaintiff's motion to dismiss because it violates the Court's March 1, 2024, Scheduling Order for no sufficient reason to grant leave. *See* ECF No. 132. But even if the Court decides to excuse Plaintiff's breach of its order, the Court should not dismiss Texas's counterclaim. Plaintiff's sole argument in support of dismissal is that Texas has failed to allege a waiver of the United States's sovereign immunity. Plaintiff lists every potential source of waiver of sovereign immunity it can think of—the jurisdictional statutes that Texas cites, the Declaratory Judgment Act which provides Texas its cause of action, the waiver clearly provided by the APA—but ignores the obvious waiver created by its own lawsuit.

Under the "general 'voluntary invocation' principle," a sovereign that invokes a federal court's adjudicatory power waives a sovereign-immunity objection. *Lapides v. Board of Regents University System of Georgia*, 535 U.S. 613, 621 (2002). That makes sense. Structural sovereign immunity—whether asserted by a State or by the United States—"sounds in personal jurisdiction." *PennEast Pipeline Co. v. New Jersey*, 594 U.S. 492, 510 (2021) (Gorsuch, J., dissenting) (citing *Franchise Tax Board of Cal.v. Hyatt*, 587 U.S. 230, 238-39 (2019), and *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998) (Kennedy, J., concurring)). And it is black-letter law

---

[1] References to pagination for documents filed on this Court's electronic docket are to the stamped page numbers in the header of those filings.

that a party may waive objections to a court's exercise of adjudicatory power over it by invoking or consenting to that court's jurisdiction over the action. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 144-46 & n.11 (2023) (collecting cases). That is what the United States did here: It was not "brought involuntarily" to this court to fight about the buoy barrier; instead, the United States "voluntarily" brought this suit as Plaintiff and "invoked the federal court's jurisdiction" seeking to have the buoys removed. *Lapides*, 535 U.S. at 620. To allow the United States now to claim immunity from Texas's counterclaim in the action *it commenced* as Plaintiff "would seem anomalous" or "seriously unfair" and "would permit the [United States] to achieve unfair tactical advantages" to boot. *Id.* at 619, 621.

At the very least, when the United States initiates suit it consents to *compulsory* counterclaims, *Frederick v. United States*, 386 F.2d 481, 487–89 (5th Cir. 1967), and Texas has brought a compulsory counterclaim. When the United States files suit it waives sovereign immunity to certain counterclaims. *First Nat. Bank v. Genina Marine Services, Inc.*, 136 F.3d 391, 394–95 (5th Cir. 1998). Whether a sovereign's immunity from suit extends to a counterclaim "is controlled by th[e] compulsory-permissive distinction," the sovereign "waives its sovereign immunity only as to compulsory counterclaims." *Texas v. Caremark, Inc.*, 584 F.3d 655, 659 (5th Cir. 2009) (citing Fed. R. Civ. P. 13(a), (b)). Counterclaims "arising out of the same transaction or occurrence which is the subject matter of the government's suit" clear the federal government's sovereign immunity "to the extent of defeating the government's claim but not … involving relief different in kind or nature to that sought by the government." *Frederick*, 386 F.2d at 488.

The *Frederick* test tracks the Federal Rules of Civil Procedure, which define a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). The Fifth Circuit has further explained that a claim is compulsory if it meets *any one* of the following four criteria: (1) "the issues of fact and law raised by the claim and counterclaim largely are the same"; (2) "*res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule"; (3) "substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim"; or

2

(4) "there is [a] logical relationship between the claim and the counterclaim." *Park Club v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992).

Here, Texas's single counterclaim arises out of the same occurrence as Plaintiff's claim, and Texas has tailored its request for relief to precisely mirror what Plaintiff itself has asked for. Plaintiff claims that the buoys have been unlawfully deployed in the Rio Grande River; Texas claims that it "has a legal right to maintain the Floating Buoys and similar items in their present location." ECF No. 120, Amended Answer & Counterclaim at 10, ¶ 25. Plaintiff has asked the Court to enjoin Texas "from creating or maintaining obstructions in or affecting the navigable waters of the United States, except in compliance with the [Rivers and Harbors Act] and all other applicable law," ECF No. 60, First Amended Complaint at 10, ¶ 46(b), while Texas requests the Court "[d]eclare that the State of Texas may lawfully place and maintain the Floating Buoys and any similar items in any portion of the Rio Grande River within Texas that does not conflict with the [Rivers and Harbors Act] as constitutionally applied." Amended Answer & Counterclaim at 11. Far from asserting a novel claim for affirmative relief, Texas is asking the Court to declare only such rights that the Court would tacitly accept by deciding Plaintiff's original claim in Texas's favor. *See Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979) ("logical relationship" exists when "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates legal rights, otherwise dormant, in the defendants").

Texas's counterclaim stems from the same occurrence as Plaintiff's claim under the Rivers and Harbors Act. The two claims share largely the same issues of fact and law. *United States v. Sullivan*, No. CA 3-97-cv-488, 1998 WL 223709, at *2 (N.D. Tex. Apr. 28, 1998). The only meaningful impediment to the legality of maintaining the buoys is the alleged need for federal permission under the Rivers and Harbors Act. Thus, if the Act turns out to be inapplicable, then the Court would be able to grant the relief Texas has requested. Conversely, if the Court determines that the buoys' placement has violated the Act, then Texas's counterclaim would necessarily fail.

Plaintiff makes much of the difference between the forms of relief the parties are each

requesting, pointing to *Frederick*'s proviso that counterclaims cannot request "relief different in kind or nature to that sought by the government." *Frederick*, 386 F.2d at 488. However, "[t]he government construes *Frederick* too closely. The test is not one of dry nomenclature." *United States v. Irby*, 618 F.2d 352, 357 (5th Cir. 1980). In *Irby*, the Fifth Circuit held that the United States did not enjoy sovereign immunity from a counterclaim that sounded in tort and asked for a setoff even though the Government had sued under a contract theory. *Id.* at 356–57. In allowing the counterclaim to proceed, the court signaled that formalistic differences would not bar a counterclaim that met the same transaction or occurrence test and did not enlarge the scope of the lawsuit the United States initiated. *Id.*

Following *Irby*'s cue, district courts in the Fifth Circuit have allowed a counterclaim for declaratory relief to be proceed when the United States had asked for only injunctive relief in its claim. *See, e.g., Entergy Services, Inc. v. U.S. Dep't of Labor*, No. CIV.A. 14-1524, 2014 WL 8507568, at *6, *15 (E.D. La. Dec. 15, 2014). Numerous courts have permitted compulsory counterclaims to overcome sovereign immunity despite requesting forms of relief different from that pled by sovereign plaintiffs. *See, e.g., New York v. Gen. Elec. Co.,* No. 1:14-cv-747, 2015 WL 12748007, at *13 (N.D.N.Y. Sept. 29, 2015) (stating that counterclaim for declaratory relief is proper when scope of declaration is limited to Government's original claims); *Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Intern. Software, Inc.*, 653 F.3d 448, 467–68 (7th Cir. 2011).

The relevant difference for this purpose is between monetary and nonmonetary relief. *Cf.* 5 U.S.C. § 702 (marking relevant categories of relief as "other than money damages" and monetary relief). The declaratory relief sought by Texas in its counterclaim is part of the same relevant category of relief (nonmonetary) as the injunction sought by Plaintiff. Plaintiff's objection to declaratory relief—"a much milder form of relief than an injunction," *Steffel v. Thompson*, 415 U.S. 452, 471 (1974)—thus has no bearing on this question.

## B. The APA waives the United States's sovereign immunity from the nonmonetary relief Texas seeks in its counterclaim.

Even setting the United States's invocation of this court's jurisdiction aside, federal law

waives Plaintiff's sovereign immunity from Texas's claim for nonmonetary relief. The relevant waiver, which Congress added to the APA in 1976, provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States in an indispensable party.

5 U.S.C. § 702; *see also* 90 Stat. 2721 (1976). "Though codified in the APA, the waiver [in § 702] applies to any suit, whether or not brought under the APA." RICHARD FALLON ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 902 (7th ed. 2015). Section 702's text is clear—"[a]n action in" federal court "seeking relief other than money damages" means any action, whether under the APA, a different statute, or the common law. As the current U.S. Attorney General once put it: "There is nothing in the language of the second sentence of § 702 that restricts its waiver to suits brought under the APA." *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006) (Garland, J.). The Fifth Circuit, likewise, reads the provision to "generally waive[]" sovereign immunity. *Apter v. HHS*, 80 F.4th 579, 589 (5th Cir. 2023). "Section 702's plain terms waive sovereign immunity for 'any suit' seeking nonmonetary relief in federal court." *Texas v. DHS*, 88 F.4th 1127, 1133 (5th Cir. 2023).

Plaintiff argues that the counterclaim "should be dismissed pursuant to Rule 12(b)(1) because it fails to identify a waiver of the United States's sovereign immunity" necessary to show subject matter jurisdiction. ECF No. 125, Omnibus Motion at 13. But Plaintiff misunderstands federal pleading standards. "Regarding the issue of the complaint's deficiency in alleging proper jurisdiction, it is well settled that where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute." *Hildebrand v. Honeywell*, 622 F.2d 179, 181 (5th Cir. 1980).

The facts alleged in the counterclaim show that the APA's waiver of sovereign immunity provides jurisdiction: It seeks a declaratory judgment, which is "relief other than money damages … against the United States." 5 U.S.C. § 702; *see also Blagojevich v. Gates*, 519 F.3d 370, 371–72

(7th Cir. 2008) ("Congress has waived sovereign immunity for most forms of prospective relief" because "§ 702 is a law of general application"). That is all that is required under the notice pleading standards, which require pleading facts, not legal standards or authorities. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014); WRIGHT & MILLER, 5 FED. PRAC. & PROC. CIV. § 1219 (4th ed.) ("The federal rules effectively abolished the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief.").

If the Court determines that Texas's omission of mentioning the APA's waiver is a pleading defect that cannot be overlooked, it should afford Texas the opportunity to replead. *See Pingree v. United States*, No. 3:98-cv-2886, 1999 WL 714759, at *2 (N.D. Tex. Sept. 14, 1999) (describing claimant's failure to satisfactorily state facts supporting waiver of sovereign immunity as a "pleading defect" and permitting cure by amendment). "An initial complaint must be construed liberally ... Mere technical defects in a pleading do not provide a basis for dismissal." *Jones v. State of La. Through Bd. of Trustees for State Colleges & Universities*, 764 F.2d 1183, 1185 (5th Cir. 1985) (citation omitted). The Fifth Circuit opts for a policy of "liberal amendment" to prevent "litigation from becoming a technical exercise in the fine points of pleading." *Id.* (citing *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Further, the Western District's local rules permit parties to replead in response to 12(b) motions within 21 days, *see* W.D. Tex. Local Rule CV-15(a). Those 21 days had not elapsed as of the time this Response is filed, so Texas should be permitted to amend to the extent the Court finds its pleading insufficient.

## II.    Texas has adequately pled its constitutional defense under the Self-Defense Clause.

Even in evaluating a Rule 12(b)(6) motion, "the Court does not weigh the evidence or evaluate the plaintiff's likelihood of success." *DGG Grp., LLC v. Lockhart Fine Foods, LLC*, No. A-20-cv-330, 2020 WL 2475821, at *4 (W.D. Tex. May 13, 2020). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan*

*Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000)); *see also Escobar v. City of Del Rio*, No. DR-20-cv-31, 2023 WL 6465132, at *2 (W.D. Tex. Oct. 2, 2023) (Moses, C.J.) (noting the same). But a motion to strike under Rule 12(f) is an even higher hurdle for Plaintiff to overcome.

"[B]ecause striking a portion of a pleading is a drastic remedy… motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (citing *Augustus v. Bd. of Pub. Instr. of Escambia County*, 306 F.2d 862, 868 (5th Cir. 1962)). Motions to strike "should be granted only when the pleading to be stricken has no possible relation to the controversy." *Augustus*, 306 F.2d at 868.

If a motion to strike is grounded on the "insufficiency" of a defense, the movant must demonstrate that the defense is "insufficient as a matter of law." *EEOC v. Courtesy Bldg. Servs., Inc.*, No. 3:10-cv-1911, 2011 WL 208408, at *1 (N.D. Tex. Jan.21, 2011) (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)). A defense is insufficient as a matter of law for purposes of Rule 12(f) only if it cannot "succeed under *any* circumstances." *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013) (emphasis added). Even "when dealing with a pure question of legal sufficiency, courts are [] very reluctant to determine such issues on a motion to strike." *Joe Hand Promotions, Inc. v. HRA Zone, L.L.C.*, No. A-13-CA-359, 2013 WL 5707810, at *2 (W.D. Tex. Oct. 18, 2013) (citing *Augustus*, 306 F.2d at 868) (other citation omitted).

This Court has previously rejected Texas's argument under the Self-Defense Clause. Respectfully, Texas maintains that was error. But this Court has never suggested that the State's self-defense argument has "no possible relation" to this lawsuit. *Augustus*, 306 F.2d at 868. In fact, this Court conceded that "Texas has the right to defend itself," even though it proceeded to second-guess that quintessentially political decision. ECF No. 50 at 35 n.29.[2]

---

[2] Conclusive proof is never required at the preliminary-injunction stage, which is "by its very nature … not fixed or final or conclusive." *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 435

The law-of-the-case doctrine is no impediment to the Court reconsidering its own prior rulings. That doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." *Med. Ctr. Pharmacy v. Holder,* 634 F.3d 830, 834 (5th Cir. 2011) (internal quotation marks omitted). But the real significance of the law-of-the-case doctrine is that it "preclude[s] a reexamination of issues of law decided on appeal, explicitly or by necessary implication, either by the district court on remand or by the appellate court in a subsequent appeal." *Chapman v. Nat'l Aeronautics & Space Admin.,* 736 F.2d 238, 241 (5th Cir. 1984); *see also* 18B Wright & Miller, Fed. Prac. and Proc. § 4478.6 (2d ed. 2013) ("The question is not whether a court should adhere to its own prior ruling without reexamination, but whether a different court should refuse its ordinary reviewing responsibility to encourage compliance with fair and efficient procedure."). Federal Rule of Civil Procedure 54(b) grants the district court the authority to reexamine its own rulings "for any reason it deems sufficient." *Renda,* 709 F.3d at 479 (internal quotation marks omitted). Indeed, the Fifth Circuit has stated in no uncertain terms that "the law-of-the-case doctrine does not operate to prevent a district court from reconsidering prior rulings." *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 171 (5th Cir. 2010). This Court has found Texas's constitutional arguments wanting but never in a procedural context that would create res judicata. Therefore, the Court's discretion is not bound by its previous rulings, and it may and should consider Texas's Self-Defense Clause arguments anew.

---

n.8 (5th Cir. Unit A May 1981) (citation omitted). Indeed, because "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," it follows that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The same is even more true at the motion-to-dismiss stage. Plaintiff will have to prove its case at trial, and Texas has the right to plead its constitutional defense.

The pendency of Texas's appeal also undermines the salience of Plaintiff's law of the case argument. "Under the law of the case doctrine, an issue of law or fact decided on appeal may not be re-examined by the district court on remand or by the appellate court on a subsequent appeal." *Tollett v. City of Kemah*, 285 F.3d 357, 364 (5th Cir. 2002) (quoting *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998)). Once the Fifth Circuit resolves the appeal, it will create law of the case that will bind this Court and will abrogate any of the Court's opinions that are to the contrary. The law of the case doctrine therefore counsels waiting for the *en banc* Court's ruling, which will bind the trial proceedings on the topics it addresses.

Regardless, in ruling on Texas's motion to dismiss, this Court has previously interpreted the Self-Defense Clause as being legitimately raised by States in the face of "organized, hostile military or naval actions." ECF No. 114 at 27. The possibility of evidence demonstrating this defense shows that Plaintiff cannot win on a motion to strike, as a defense is insufficient as a matter of law for purposes of Rule 12(f) only if it cannot "succeed under *any* circumstances." *Renda*, 709 F.3d at 479 (emphasis added). Texas should be permitted to introduce evidence of terrorist incursions and paramilitary forces crossing the border, which it has described in the Fifth Circuit. *See United States v. Abbott*, 5th Cir. No. 23-50632, ECF No. 229 at 2–3 (May 22, 2024) (citing terrorist incursions and paramilitary forces crossing the border).

In any event, Texas's invocation of U.S. Const. art. I, § 10, cl.3 is presently under consideration by the Fifth Circuit. The *en banc* court regarded Texas's self-defense arguments as plausible enough to specifically ordered supplemental briefing regarding its impact on the Plaintiff's claim:

> Given that Texas has invoked its war powers under Article I, Section 10, Clause III of the U.S. Constitution, the en banc court directs the parties to submit letter briefs addressing the following:
>
> 1. Does the political-question doctrine require dismissal of this entire action for want of jurisdiction in the federal courts, based on non-justiciability? Specifically, does the district court *à quo* have jurisdiction to determine whether Texas has properly invoked its war powers by having been invaded or being in imminent danger of invasion?

2. If the district court is barred from adjudicating whether Texas has properly invoked its war powers, can either this court or the district court adjudicate the claims of the United States under the Rivers and Harbors Act despite the presence of that non-justiciable political question?

3. Did the district court err in holding that whether Texas has been invaded is a non-justiciable political question? If not, did the district court err in proceeding to issue a preliminary injunction despite the presence of that question?

4. In a hypothetical case, if an action is brought against the President, rather than a governor, for exercising the constitutional war power, do we apply the same justiciability analysis?

*United States v. Abbott,* 5th Cir. No. 23-50632, ECF No. 226 (May 16, 2024). And a number of judges on the Fifth Circuit have *sua sponte* raised the issue of Texas's right to rely on the Self-Defense Clause in this very case. *See United States v. Abbott*, 92 F.4th 570, 575, 578–81 (5th Cir. 2024) (Ho, J., joined by Smith, Duncan, Engelhardt, and Oldham, JJ., dissenting); *id.* at 581 (Oldham, J., joined by Smith, Ho, Duncan, and Engelhardt, JJ., dissenting); *see also* Oral Argument Recording in *United States v. Abbott*, 5th Cir. No. 23-50632 (May 15, 2024) (Smith, J., at 2:56–5:09, 33:55–36:25; Jones, J., at 36:26–37:45, 37:45–37:50 (on Self-Defense Clause: "personally I haven't gotten interested in this until Judge Smith raised it—but now I'm interested."); Ho., J., at 38:10–41:53), available at ca5.uscourts.gov/OralArgRecordings/23/23-50632_5-15-2024.mp3.

By seeking to strike the constitutional defense, Plaintiff is asking the Court to not allow evidence or argument on an issue that the *en banc* Fifth Circuit has requested to hear about—over no dissent. To avoid a waste of time of all parties and the Court, it is in the interest of everyone that this Court have the resources needed to produce a judgment that can survive contact with the Court of Appeals. So far, Plaintiff's arguments have led this Court down another path—its preliminary-injunction ruling, issued in September of last year, has never been allowed to go into effect by the Fifth Circuit.

This Court previously assured the parties that "this [order] is a Preliminary Injunction and not a final disposition of this case on the full merits." ECF 50 at 42 n.32. Given the heightened level of attention the Fifth Circuit has shown, it is likely that the Fifth Circuit will soon provide

guidance concerning Texas's constitutional defenses. Accordingly, it would be imprudent and self-destructive to dismiss the relevance of the Self-Defense Clause before the *en banc* Court's decision. That the Fifth Circuit has treated seriously Texas's constitutional defenses adds a unique reason for the Court to "view with disfavor" the "infrequently granted" Rule 12(f) motion. It would be particularly galling for the Court to refuse to even allow Texas to present its constitutional defense when the *en banc* Fifth Circuit has itself has been recognizing the legitimacy of that argument on its own initiative.

Both parties agree that the existence *vel non* of an invasion presents a nonjusticiable political question and limit their disagreement to whether States have a right to defend themselves when actually invaded. Omnibus Motion at 19. Plaintiff argues that the authority to determine when an emergency qualifies as an invasion belongs exclusively to the United States and therefore the States lack the very self-defense powers that the Constitution itself promises them.

Contrary to Plaintiff, the judgment whether a State faces invasion or imminent danger and the concomitant decision of what self-defense measures to employ in response are committed to State sovereigns. *Moyer v. Peabody*, 212 U.S. 78, 83–85 (1909). The Constitution's Self-Defense Clause permits States to "engage in War" when "actually invaded, or in such imminent Danger as will not admit of delay" all "without the Consent of Congress." U.S. Const. art. I, § 10, cl.3. Under the Self-Defense Clause, States retain the "power of self-preservation" they possessed prior to entering the federal union. *Smith v. Turner*, 48 U.S. 283, 400 (1849) (McLean, J.). Moreover, the constitutional text signals that a State's self-defense is not conditioned on prior approval by Congress or the Executive. Adjacent provisions, including the Import-Export Clause, expressly render State authority "subject to the Revision and Controul of the Congress." U.S. Const. art. I, § 10, cl. 2. No such proviso limits the scope of a State's self-defense powers.

Texas acknowledges that reliance on the self-defense power is reviewable for "good faith." *Sterling v. Constantin*, 287 U.S. 378, 400 (1932). But up to this point, Plaintiff has never even argued that Texas has invoked such power in bad faith. *Cf. Sumner v. Mata*, 449 U.S. 539, 549 (1981) (stating federal courts should presume state officers "do their mortal best" to follow the

Constitution). Perhaps Plaintiff believes that mere "good faith review" would fail to check frivolous or insincere uses of the Self-Defense Clause. But any suggestion that this Court may do more than good-faith assessment amounts to a request that this Court ignore binding Supreme Court precedent.

**III.    The Seventh Amendment entitles Texas to a jury trial in this case.**

Plaintiff asks the Court to strike Texas's demand for a jury trial. Omnibus Motion at 24–26. Texas has a Seventh Amendment right to have this case tried by jury. Plaintiff focuses its arguments on the form of relief at play, insisting that their request for injunctive relief dispositively determines that its lawsuit is in equity.

The Seventh Amendment guarantees a right to trial by jury "in suits at common law." U.S. Const. Amend. VII; *cf.* Fed. R. Civ. P. 38(a) (this right "is preserved to the parties inviolate"). States, moreover, enjoy Seventh Amendment jury rights no less than private persons. *See In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 98 F. Supp. 3d 872, 883 (E.D. La. 2015) (ruling that Seventh Amendment gave state plaintiff right to jury trial); *Standard Oil Co. of California v. Arizona*, 738 F.2d 1021, 1028 (9th Cir. 1984) ("we conclude that [S]tates enjoy a right to jury trial akin to that enjoyed by the English crown in 1791"). "The right of trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right" has always been and 'should be scrutinized with the utmost care.'" *SEC v. Jarkesy*, No. 22-859, 2024 WL 3187811, at *7 (U.S. June 27, 2024) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

Just last week, the Supreme Court reiterated that "the [jury] right is not limited to the 'common-law forms of action recognized' when the Seventh Amendment was ratified." *Jarkesy*, 2024 WL 3187811, at *8 (quoting *Curtis v. Loether*, 415 U.S. 189, 193 (1974)). Instead, it embraces "'all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume.'" *Id.* at *8 (quoting *Parsons v. Bedford*, 3 Pet. 433, 446 (1830)). That includes claims brought under "novel statutory regimes" that are "akin to common law claims,"

*id.* at *17, and it applies even when "the [United States] government is the party prosecuting th[e] action," *id.* at *14. In other words, the critical question is whether a suit could be deemed "legal in nature" based on "the cause of action" or "the remedy it provides." *Id.* at *8. Accordingly, jury rights attach even when the nature of the underlying action is analogous to *both* legal and equitable suits. *Tull v. United States*, 481 U.S. 412, 414 n.1 (1987).

Here, the remedies that the Rivers and Harbors Act authorizes are "all but dispositive." *Jarkesy*, 2024 WL 3187811, at *8. Plaintiff sued here arguing that Texas violated Section 10 of the Act, which prohibits creating an "obstruction" or enumerated "structure[]" in a commercially navigable river. 33 U.S.C. § 403. Elsewhere, the Act says that a violation of Section 10 is a misdemeanor, "punish[able] by a fine … or by imprisonment." *Id.* § 406. The criminal punishments the Act imposes are, by definition, "designed to punish and deter." *Jarkesy*, 2024 WL 3187811, at *8. And "[r]emedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity." *Tull*, 481 U.S. at 422.

In addition to these criminal penalties, the law "further" allows a district court to order "the removal of any structures or parts of structures erected in violation of" Section 10. 33 U.S.C. § 406. This narrow class of relief is no less legal in nature. The Act does not authorize a district court to award broad equitable relief "as it deems just and proper." *Cf. Starbucks Corp. v. McKinney*, 144 S.Ct. 1570, 1575 (2024); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("[t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case" and "[f]lexibility rather than rigidity has distinguished it."). Instead, it merely permits a court to order "the removal" of a specific chattel in a navigable waterway, which is what the United States seeks here—an order forcing Texas to remove a chattel from land over which the federal government claims to have a superior interest. *See* Original Complaint, ECF No. 1 at 8; First Amended Complaint, ECF No. 60 at 10. This remedy bears a close resemblance to an ejectment order. *See* Black's Law Dictionary, *Ejectment* (12th ed. 2024); *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S.

363, 365 (1977) (common-law ejectment action involving dispute over parcels in navigable river). No wonder some cases press claims under Section 10 and common-law ejectment side by side. *See, e.g.*, *New York v. DeLyser*, 759 F. Supp. 982, 984 (W.D.N.Y. 1991). The Supreme Court has already said that a statutory action for a remedy akin to ejectment is subject to the Seventh Amendment. *See Pernell v. Southall Realty*, 416 U.S. 363, 369–376 (1974) (finding Seventh Amendment applied to District of Columbia's statutory ouster action "[w]hether or not a close equivalent … existed in England in 1791"). In sum, the Act lays out a default criminal penalty, supplemented by a narrow remedy recycled from common-law ejectment. "That conclusion effectively decides that this suit implicates the Seventh Amendment jury right." *Jarkesy*, 2024 WL 3187811, at *9.

If that were not enough, the gravamen of the United States's underlying cause of action "confirms" the Seventh Amendment's coverage here. *Id.* The purpose of common-law ejectment was "to permit the plaintiff to evict one who is wrongfully detaining possession and to regain possession himself." *Pernell*, 416 U.S. at 371 n.6. The common-law action could be used to compel the removal of persons or chattels, including from waterways. 25 Am. Jur. 2d *Ejectment* §§ 1, 18; 78 Am. Jur. 2d *Waters* § 168. That is one way to understand the nature of this dispute, which asks whether Texas may occupy the Rio Grande River by maintaining the buoys in their current location. Texas argues that it is authorized to deploy the buoys in the waterways forming the State's southern boundary, while Plaintiff contends the River is a commercially navigable waterway subject to complete federal control. Accordingly, this case concerns rights to occupy physical space and Plaintiff's action is a suit to compel removal from the space currently occupied. This lawsuit fits the mold of "detaining possession" versus "regaining possession" that *Pernell* found analogous to common-law ejectment. It therefore "involves rights and remedies of the sort traditionally enforced in an action at law." *Pernell*, 416 U.S. at 375.

Plaintiff may counter that the remedy or cause of action at issue here is more akin to an order to abate a nuisance. *See, e.g.*, Black's Law Dictionary, *Abatement* (12th ed. 2024); Restatement (Second) of Torts §§833, 847A (1979). But that changes nothing. For one thing, "courts of law" may also issue injunctions to "reach existing nuisances." *Mugler v. Kansas*, 123

U.S. 623, 673 (1887); *see also Pennsylvania v. Wheeling & Belmont Bridge Co.*, 9 How. 647, 659 (1850) (Daniel, J., dissenting) ("the question of nuisance or no nuisance is one proper for the cognizance of a court of law, to be determined by a jury upon the testimony of witnesses confronted and cross-examined before a jury in open court"). In other words, nuisance actions may sound in both law and equity and law courts historically could issue injunctions. *See* MAITLAND, EQUITY AND THE FORMS OF ACTION AT COMMON LAW 15 (1929); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477–478 (1962). For another thing, even assuming (incorrectly) that *all* nuisance claims sound in equity, the Supreme Court already rejected a similar effort to point to nuisance law to end-run the Seventh Amendment. In *Tull*, the United States insisted that an enforcement action under the Clean Air Act was "closer" to the equitable nuisance action of "purpresture" rather than the legal action in debt. 481 U.S. at 420. The Supreme Court said that didn't matter. "It suffice[d] that both … are appropriate analogies to the instant statutory action." *Id.* at 420–21. So too here.

And even though "equity might grant similar relief as law," "this fact hardly converts a legal remedy into an equitable one," *Amoco Oil Co. v. Torcomian*, 722 F.2d 1099, 1103 n.7 (3d Cir. 1983), because "a claimant out of possession who has open to him the remedy of ejectment cannot escape a jury trial of the question of fact on which his claim depends by presenting that issue in some form of equitable action." *Id.* at 1103 n.8 (citation omitted). As "federal law … unequivocally holds actions seeking ejectment to be legal, not equitable," *id.* at 1103, and an injunction under of the Rivers and Harbors Act "serves the same essential function" as an action for ejectment, *Pernell*, 416 U.S. at 375, Plaintiff's lawsuit is analogous to an action at law subject to the Seventh Amendment. "[T]here have always been nonmonetary remedies outside of equity—not only mandamus but also relief in replevin, ejectment, and habeas, as well as in declaratory judgment actions." Samuel L. Bray, *The Supreme Court and the New Equity*, 68 Vand. L. Rev. 997, 1045–46 (2015). An injunction under the Rivers and Harbors Act falls into this category.

Additionally, Plaintiff's injunctive relief is not the sole demand before the Court. Because "[a]ctions for declaratory judgments are neither legal nor equitable," the Court cannot decide whether Texas's counterclaim must be heard by a jury based on the solely declaratory relief that

Texas requests. *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988). Instead, the Court should look to the nature of the rights that Texas asks it to adjudicate because "[t]he Declaratory Judgment Act itself confers no right to a jury trial; whether this right is afforded depends on the underlying claim." *Texas v. Ysleta del Sur Pueblo*, 369 F. Supp. 3d 760, 768 (W.D. Tex. 2019). That underlying claim centers on whether Texas has lawfully occupied a portion of the Rio Grande by deploying the buoys. Since that claim would either ground or defeat a suit in ejectment at common law, Texas's counterclaim must be heard by a jury.

Finally, Plaintiff flatly states that the Seventh Amendment's jury right does not run against the United States. Omnibus Motion at 26. Unfortunately for the United States, the Supreme Court said the opposite just last week: "What matters is the substance of the suit, not where it is brought, *who brings it*, or how it is labeled." *Jarkesy*, 2024 WL 3187811, at \*14 (emphasis added) (holding Seventh Amendment jury right ran against the SEC, an agency of the United States); *accord Austin v. Shalala*, 994 F.2d 1170, 1175 (5th Cir. 1993) (Smith, J.) ("where the United States *brings* the action, the right to trial by jury is determined in the same manner as if the suit were between private parties").

**CONCLUSION**

The Court should deny all relief sought in Plaintiff's Omnibus Motion.

Date: July 5, 2024

KEN PAXTON
Attorney General of the State of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

Office of the Attorney General
P. O. Box 12548, MC-009
Austin, TX 78711-2548
(512) 936-2172

Respectfully submitted,

*/s/ Ryan D. Walters*
RYAN D. WALTERS
Chief, Special Litigation Division
Tex. State Bar No. 24105085
ryan.walters@oag.texas.gov

DAVID BRYANT
Senior Special Counsel
Tex. State Bar No. 03281500
david.bryant@oag.texas.gov

JOHNATHAN STONE
Special Counsel
Tex. State Bar No. 24071779
johnathan.stone@oag.texas.gov

MUNERA AL-FUHAID
Special Counsel
Tex. State Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

ZACHARY BERG
Special Counsel
Tex. State Bar No. 24107706
zachary.berg@oag.texas.gov

KYLE S. TEBO
Assistant Attorney General
Tex. State Bar No. 24137691
kyle.tebo@oag.texas.gov

**Counsel for Defendants**

**Certificate of Service**

On July 5, 2024, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

*/s/ Ryan D. Walters*
Ryan D. Walters