**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

GREG ABBOTT, in his capacity as GOVERNOR OF THE STATE OF TEXAS, and THE STATE OF TEXAS,

*Defendants*.

Case No. 1:23-cv-00853-DAE

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE EXPERT TESTIMONY OF ADRIAN CORTEZ**

JAIME ESPARZA
UNITED STATES ATTORNEY

LANDON A. WADE
Assistant United States Attorney
Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

BRIAN H. LYNK
Senior Trial Counsel
DC Bar No. 459525
BRYAN J. HARRISON
Trial Attorney
FL Bar No. 106379
KIMERE J. KIMBALL
Trial Attorney
CA Bar No. 260660
ANDREW D. KNUDSEN
Trial Attorney
DC Bar No. 1019697
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov

*Counsel for the United States of America*

Dated: July 8, 2024

## INTRODUCTION

This Court should deny Texas's motion to preclude Mr. Adrian Cortez from testifying as an expert witness or from offering certain opinions. Texas offers no evidence that Mr. Cortez is unqualified or that his opinions are unreliable; in fact, as demonstrated below, Mr. Cortez is amply qualified as an expert witness. Therefore, Texas's motion should be denied.

## BACKGROUND

This case is about a straightforward inquiry into whether Texas unlawfully constructed an obstacle to navigation in the Rio Grande without first seeking a permit from the U.S. Army Corps of Engineers under the Rivers and Harbors Act. A central question in this case is whether Texas's floating barrier is a structure in, or obstructs the "navigable capacity" of, the relevant stretch of the Rio Grande.[1] The United States has identified fact witnesses and designated expert witnesses who possess opinions about the use and management of the Rio Grande's water, including for purposes of navigation. This includes Mr. Cortez, a senior hydrologist with the United States Section of the International Boundary and Water Commission ("USIBWC"), whom the United States identified as both an expert and fact witness. *See* ECF No. 130-1 at 1; ECF No. 130-2 at 2.

Mr. Cortez has worked as a hydrologist for USIBWC since 2010. Tex. Ex. D at 10:7-25, 11:1-20; Tex. Ex. C at 4. He currently serves as a subject matter expert for stream flow records and water data management and is responsible for providing "technical analyses and opinions regarding matters of operations of the international dams." Tex. Ex. C at 4; Tex. Ex. D at 11:14-22, 17:11-18. This includes applying the "Utilization of Waters of the Colorado and Tijuana

---

[1] For the purpose of this brief, the "relevant stretch" of the Rio Grande is between Mile Markers 275.5 and 610. All references in this brief to "the Rio Grande" or "the River" are in reference to the "relevant stretch."

Rivers and of the Rio Grande" (Nov. 14, 1944) ("1944 Treaty"), which informs water flow management of the shared waters between the United States and Mexico. Tex. Ex. C at 4, 10-14; Tex. Ex. D at 11:1-4; 30:13-18. For more than a decade, Mr. Cortez has worked closely with federal, state, interstate, and Mexican governmental organizations, providing technical guidance on water accounting and administering databases that house historical and current water quantity, precipitation, and water level data. Tex. Ex. C at 4-5. Mr. Cortez is prepared to offer expert opinions at trial on subjects including:

- The 1944 Treaty, its treatment of navigability, and relevance to decision-making for maintaining water flows in the River, Tex. Ex. D at 29:22-25, 30:1-25, 31:1-15, 61:2-6, 93:19-25, 94:1-9;
- The operation of storage dams, including the Amistad Dam, to maintain flows for beneficial use of the River, Tex. Ex. D at 20:2-7, 133:3-8, 144:13-22, 168:24-25, 169:1-3, 230:9-25, 231:1-12, 187:24-25, 188:1-24, 232:10-23;
- Seasonal impacts to regional hydrology, Tex. Ex. D at 209:3-25, 210:1-9, 231:1-25, 232:1-23; and
- Use and management of the river for navigation, including the type of watercraft used by USIBWC in its operations, Tex. Ex. D at 53:13-16, 79:21-24, 120:17-19, 121:17-25, 122:1-5.

*See also* Tex. Ex. C at 36-37 ("Conclusion and Statement of Expert Opinion"); Tex. Ex. A at 1. Mr. Cortez's technical knowledge and experience on these subjects will assist the trier of fact

and his expert testimony on those points will help distill and simplify complicated and technical subjects.[2]

## LEGAL STANDARD

The Court has broad discretion to determine the admission or exclusion of testimony. *See Shelter Ins. Cos. v. Ford Motor Co.*, No. 06-60295, 2006 U.S. App. LEXIS 31120, at * 5 (5th Cir. Dec. 18, 2006) (discussing discretion under Rule 702). Federal Rule of Evidence 702 provides that a witness may provide an expert opinion if "it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." The judge serves as a gatekeeper, to ensure that expert testimony is "not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 US 137, 147 (1999); *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012). In conducting the "flexible" inquiry under Rule 702, it is appropriate for experts to base their opinions on "inferences properly drawn from scientific facts." *Holcombe v. United States*, 516 F. Supp. 3d 660, 677 (W.D. Tex. 2021) (citing *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 592, 594 (1993). "The proponent has the burden of establishing, by a preponderance of the evidence, that the pertinent admissibility requirements are met." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

---

[2] At a minimum, Mr. Cortez can offer opinion testimony as a percipient witness, which will aid the Court in determining central issues in this matter. *See* Fed. R. Evid. 701.

## ARGUMENT

Mr. Cortez offers relevant[3] testimony that goes directly to a core issue in this case—that the Rio Grande is susceptible to future navigation. Texas does not argue otherwise; it argues only that Mr. Cortez is not qualified to present expert testimony. As discussed below, Texas's argument fails.

### A. Texas does not explain why Mr. Cortez does not qualify under Fed. R. Evid. 702.

Texas fails to provide any information calling into question whether Mr. Cortez possesses "scientific, technical, or other specialized knowledge," whether his testimony is based on "sufficient facts or data," or whether his testimony is reliable. *See* Fed. R. Evid. 702. Instead, Texas relies exclusively on supposed admissions by Mr. Cortez that he is not an expert witness and that he is only offering fact testimony. ECF No. 130 at 3-9. For example, Texas' sole support for why Mr. Cortez does not offer "relevant and reliable opinions about the decision factors and procedures for water release from Amistad Dam," is that Mr. Cortez allegedly admits he is a fact witness and has no expert opinions:

> Q: Are you offering fact testimony or opinion testimony about the decision factors for water releases from the Amistad Dam at conservation levels?
>
> A: I believe I would be offering ***fact testimony*.**
>
> . . .
>
> Q: What opinions do you have in this case about the decision factors for water releases from Amistad Dam during conservation water levels?
>
> A: I have ***no opinions*** that I cover in my report.

Tex. Ex. D at 34:2-4, 34:6-7, 35:10-14.

[3] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

ECF No. 130 at 3-4 (emphasis in Texas's brief). These alleged admissions do not demonstrate that Mr. Cortez cannot satisfy Rule 702 criteria. Reading Mr. Cortez's testimony in context reveals that he was simply detailing facts that underlie his expert opinions:

> Q. . . . When there is a water release done at the Amistad Dam, what decision factors do you go through?
>
> A. Okay. So both countries are going to make a request – we'll say [Texas] and Mexico. Because Amistad is a power-generating facility, there are decisions that are made on how the generators and turbines are operated in order to release the order request. . . . [T]he power plant operators will make a decision based off of how to make that release through the turbines in order to generate energy off that release.

Tex. Ex. D at 32:14-25, 33:1.

> Q: How do you know what that the decision factors are for water release from the Amistad Dam when the water is at conservation levels?
>
> A: Just from my experience with the agency, because we do the [water] accounting . . . .
>
> Q: Are you offering fact testimony or opinion testimony . . . ?
>
> A: I believe I would be offering fact testimony.

Tex. Ex. D at 33:14-25, 34:2-7. This exchange clarifies that Mr. Cortez would categorize these pieces of information as facts: countries issue "request[s]" based on water needs; operation of the Amistad Dam informs how to satisfy the request; and USIBWC conducts "water accounting" for the River. It is perfectly appropriate for an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Mr. Cortez is a scientist; not a sophisticated litigator. His testimony identifying "expert" versus "fact" testimony reflects a layman's understanding of "expert," rather than the meaning of "expert" in Rule 702, and does not affirm, as a legal matter, that Mr. Cortez is not an expert.

Texas makes near identical attempts to discredit Mr. Cortez as an expert for each topic on which he offers an opinion, all of which suffer from the same flaw. *Compare* ECF No. 130 at 4-5

with Tex. Ex. D at 42:13-44:8 (on dam releases); ECF No. 130 at 5 with Tex. Ex. D at 47:23-48:7, 51:11-52:13 (on regional hydrologic inputs and outputs); ECF No. 130 at 5-6 with Tex. Ex. D at 53:7-54:4, 56:2-23 (on water levels downstream of Amistad Dam); and ECF No. 130 at 7 with Tex. Ex. D at 79:5-81:12 (on USIBWC's use of watercraft). The testimony that Texas derides as "admissions" simply confirms that Mr. Cortez is knowledgeable about the facts underlying his expert opinions.[4] And as discussed in the following section, Mr. Cortez is amply qualified to opine on the topics for which he was identified as an expert.

**B. Mr. Cortez qualifies as an expert witness and offers reliable testimony.**

Mr. Cortez satisfies all criteria necessary to testify as an expert witness under Rule 702. First, Mr. Cortez has demonstrated that he possesses "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). "[T]o qualify as an expert, the witness must have such knowledge or experience in [his] field . . . to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (internal quotations omitted). Mr. Cortez is trained as a civil engineer and has worked as a hydrologist with the USIBWC for 14 years. Tex. Ex. D at 8:2-25, 10:7-25, 11:1-20; Tex. Ex. C at 4. In that capacity, he has developed specialized knowledge specific to the Rio Grande, including predicting and managing its waterflows. Tex. Ex. C at 4-5, 28, 31, 36-37; Tex. Ex. D at

[4] Contrary to Texas's argument, Mr. Cortez is qualified to offer testimony regarding water priorities pursuant to the 1944 Treaty and how those inform water flows on the River. See ECF No. 130 at 7-8. Those issues fit comfortably within the topics for which Mr. Cortez has been identified as an expert, particularly "decision factors and procedures for water releases from Amistad Dam" and "information about water levels downstream of Amistad Dam as these relate to navigability." *See* Tex. Ex. A at 1. Even if the Court disagrees, it need not prohibit such testimony on an alleged technicality. *See* Fed. R. Civ. P. 37(c) (allowing nondisclosed witnesses to supply information if "the failure was substantially justified or is harmless."); *Koen v. Monsanto Co.*, No. 1:22-cv-209, 2024 U.S. Dist. LEXIS 103409, at * 23 (W.D. Tex., June 11, 2024) (permitting testimony even if it fell outside of the notice provided by Fed. R. Civ. P. 26(a)).

138:15-25, 140:11-25, 141:1-13. This qualifies him to testify as to regional hydrology, water flows on the River, and water management to support priority uses, including navigability. *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 665 (S.D. Tex. 2009) (explaining that experts are allowed to testify to matters "within their general expertise"). Moreover, Mr. Cortez's technical knowledge on these topics can assist the Court in resolving a central issue in this case by offering testimony that distills and synthesizes complex data. *See United States v. Holguin*, 51 F.4th 841, 857 (9th Cir. 2022) (finding expert testimony proper because it "distill[ed] and synthesiz[ed]" personal observations); *Dillon v. United States*, 218 F.2d 97, 100 (8th Cir. 1955) (explaining that expert testimony is appropriate to ""decipher or simplify" abstruse records.); *Kolokowski v. Crown Equip. Corp.*, No. 05-4257, 2009 U.S. Dist. LEXIS 77474, at * 37 (D. N.J., Aug., 27, 2009) (utilizing expert testimony to "distill" complex issues to inform a reasoned decision).

Second, Mr. Cortez's testimony is based on sufficient facts or data. Fed. R. Evid. 702(b). The data and information that Mr. Cortez reviewed in developing his report date back to 1953 and span several decades. *E.g.*, Tex. Ex. C at 26 (Figure 8); Tex. Ex. D at 21:10-13 (confirming that his Expert Report contains all facts and data used in forming opinions). These data include water capacity parameters and criteria for releases from the Amistad Dam, Tex. Ex. C at 17 (Table 1), and Maverick Dam, Tex. Ex. C at 30; gauge measurements taken at multiple locations on the Rio Grande, Tex. Ex. C at 14-15; and river width and depth data, Tex. Ex. C at 31-32.

Third, Mr. Cortez's testimony derives from reliable principles and methods, and his expert opinions reflect a reliable application of the principles and methods to the facts of this case. Fed. R. Evid. 702(c)-(d). Whether evidence is reliable often depends on the circumstances of a particular case. *Kumho Tire Co.*, 526 U.S. at 150. "[A] trial court not only has broad latitude

in determining whether an expert's testimony is reliable, but also in deciding *how* to determine the testimony's reliability." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (internal quotations omitted). Depending on the nature of the testimony, traditional *Daubert* factors (peer review, publication, potential error rate, etc.) may not be the relevant measure of reliability. *Id.*; *see also Kumho Tire*, 526 U.S at 150. Here, the reliability of testimony "depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." *See Hangarter*, 373 F.3d at 1017 (internal citations omitted). Mr. Cortez's opinions are based on his knowledge of and expertise in hydrology as an employee of the USIBWC. *See, e.g.*, Tex. Ex. D at 44:6-8, 45:11-13, 80:8-10, 144:8-10, 146:20-24.

Mr. Cortez's experience makes him uniquely qualified to testify to water flows and priority uses for the River, as well as navigability and USIBWC's use of watercraft. *See* Tex. Ex. C at 4-5. He also relied on concrete data—the reliability of which has not been challenged in Texas' motion—to form his opinions. *See* Tex. Ex. C. at 36 (stating that opinion is based on "facts, data, and documents" outlined in the report). The inferences he drew from those facts are reasonable—for example, after reviewing water data pre- and post-construction of the Amistad Dam, Mr. Cortez opines that the "flow regime of the Rio Grande has been highly modified over time." Tex. Ex. D at 203:6-7; *accord id.* at 186:18-21, 187:22-23; Tex. Ex. C at 21-26, 37; *see Holcombe*, 516 F. Supp. 3d at 677 (affirming expert opinion was reliable because conclusions reflected a supportable inference). Mr. Cortez similarly reasonably connects his opinion that "[t]he use of these water [*sic*] for the purpose of navigation . . . is highly dependent on the consumptive use needs of water users . . ." to data concerning the purpose, construction, capacity, and operation of the Amistad and Maverick Dams, and how operation of the dams

relates to water use priorities. Tex. Ex. C at 37. *See, e.g.*, Tex. Ex. C at 14-20, 28-36; Tex. Ex. D at 168:6- 170:5, 198:2-22, 199:4-202:4.

As an alternative to excluding his expert testimony entirely, Texas asks that this Court limit Mr. Cortez "to the five opinions involving the use of adverbs in his expert report." See ECF No. 130 at 9-10. Such hair splitting is inconsistent with the plain language of Rule 702, which does not contemplate such an untenable narrowing of testimony. To the extent that Texas is arguing that certain opinions are invalid, the proper inquiry is through application of Rule 702 to each opinion, not by a mechanical dissection of statements including "adverbs."

In sum, Mr. Cortez's expert opinions are relevant and reliable, and he is well-qualified; indeed, Texas makes no serious attempt to question any of this. Texas's attempt at "gotcha" by alleging that Mr. Cortez admits he does not qualify as an expert under Rule 702 fails. The Court should thus deny Texas's motion to preclude Mr. Cortez from testifying as an expert under Rule 702 or to limit the scope of his opinions.

**CONCLUSION**

For all of these reasons, the Court should deny Texas's motion to exclude or limit the expert testimony of Mr. Cortez.

Dated: July 8, 2024

JAIME ESPARZA
UNITED STATES ATTORNEY

/s/ Landon A. Wade
LANDON A. WADE
Assistant United States Attorney
Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

/s/ Andrew D. Knudsen
ANDREW D. KNUDSEN
Trial Attorney
DC Bar No. 1019697
BRIAN H. LYNK
Senior Trial Counsel

903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

DC Bar No. 459525
KIMERE J. KIMBALL
Trial Attorney
CA Bar No. 260660
BRYAN J. HARRISON
Trial Attorney
FL Bar No. 106379
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov
Kimere.kimball@usdoj.gov
Andrew.knudsen@usdoj.gov
Bryan.harrison@usdoj.gov

*Counsel for the United States of America*

**CERTIFICATE OF SERVICE**

I certify that on July 8, 2024, a copy of this filing was served on counsel of record through the Court's electronic filing system.

*/s/ Andrew D. Knudsen*
Andrew D. Knudsen