UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

United States of America,
    *Plaintiff*,

v.

Greg Abbott, in his capacity as Governor of the State of Texas, and the State of Texas,
    *Defendants*.

No. 1:23-cv-00853-DAE

**DEFENDANTS' OPPOSED MOTION TO EXCLUDE OR LIMIT
EXPERT WITNESS TESTIMONY OF TIM MACALLISTER**

Defendants Greg Abbott, in his capacity as Governor of the State of Texas, and the State of Texas, hereby move to exclude or limit the expert testimony of Timothy McAllister, and offer the following in support:

## BACKGROUND

On May 3, 2024, Plaintiff sent Texas its Fed. R. Civ. P. 26(a)(2) disclosures designating Timothy MacAllister as an expert witness. Plaintiff's disclosures described the subject of Mr. MacAllister's testimony as "the capability of potential improvements to water management, dam operation, and dredging for further improving the navigational capacity of the Rio Grande." Ex. A at 2.

On May 8, 2024, Mr. MacAllister produced an expert report containing the following opinions:

   a. The Rio Grande, between river miles 275.5 to 610.0, has sufficient water flow to support navigation on the waterway by Class A and Class I vessels.

   b. The Rio Grande, between river miles 275.5 to 610.0, is presently navigable by Class A and Class I vessels.[1]

   c. Reasonable improvements can be made to the Rio Grande, between river miles 275.5 to 610.0, to enhance and incrementally improve navigation.

Ex. B. at 2.

On May 29, 2024, Mr. Timmel produced a supplemental expert report. *Id*.

On May 31, 2024, Defendants deposed Mr. MacAllister. Ex. C.

---

[1] Mr. MacAllister's opinions A and B should, alternatively, be excluded because he was not designated as an expert on these subjects. *Compare* Ex. A at 2 (designating Mr. MacAllister as an expert on improvements to make the river navigable) *with* Ex. B at 2 (opining that the river is currently navigable to Class A and Class I vessels).

# STANDARD OF REVIEW

Trial courts serve an important gatekeeping role in determining whether purported expert witness testimony is admissible. *Harris v. FedEx Corp. Service, Inc.*, 92 F.4th 286, 303 (5th Cir. 2024) (citing *United States v. Valencia*, 600 F.3d 389, 423-24 (5th Cir. 2010)). Federal R. of Evid. 702 provides the general criteria for determining the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if *the proponent demonstrates to the court that it is more likely than not* that:
>
> (a)   The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue;
> (b)   The testimony is based on sufficient facts or data;
> (c)   The testimony is based on reliable principles and methods; and
> (d)   The expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added).

Under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, expert testimony is admissible only if the proponent demonstrates by a preponderance of the evidence that: (1) the expert is qualified; (2) the expert testimony is relevant to the suit; and (3) the expert testimony is reliable. *See Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). *Daubert* sets forth four specific factors that the trial court should ordinarily apply when considering the reliability of scientific or technical evidence: (1) whether the particular scientific or technical technique can be or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific or technical community generally accepts the technique. *Daubert*, 509 U. S. 579, 592-93 (1993). "The

proponent need not prove that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore*, 151 F.3d at 276.

I.     **Mr. MacAllister is Not an Expert Witness.**

Mr. MacAllister is a longtime employee of the United States Army Corps of Engineers (USACE). He holds a bachelor's degree from Tarleton State University in Range-Management. Ex. C at 3, 7:18-20. During his tenure with USACE, he has been a Park Ranger and Recreation Specialist and has managed and maintained reservoirs for the Fort Worth District of USACE. *Id.* at 3-5, 7:23-15:9. He is currently Chief of the Operations Division of the Fort Worth District. *Id.* at 3, 8:4-6. He has not listed any other occupational duties or experiences as qualifications for his opinions.

Mr. MacAllister testified that the Fort Worth District of USACE has no responsibilities or authority with respect to management, maintenance, or operations of any part of the Rio Grande River. *Id.* at 3-4, 9:5-10:21. According to him, those responsibilities are squarely under the jurisdiction of the International Boundary and Water Commission (IBWC). *Id.* at 26. The IBWC exclusively manages and maintains reservoirs on the main stem of the Rio Grande, including the segment of the Rio Grande where the buoys are located. Nor does the USACE have a hand in operating the Amistad and Falcon Dams on the Rio Grande. Ex. C at 8, 26:11-21.

Mr. MacAllister therefore has no current or previous work responsibilities that relate to USACE operations on the Rio Grande River. He is not and has never been employed in the Regulatory Division of the USACE. He has had no training related to navigation on the Rio Grande River. He has never navigated the River himself nor has he had any other

3

experience related to navigation on the River let alone commercial navigation, which is at issue in this suit. *Id*. at 5, 16:3-18.

Indeed, Mr. MacAllister had never even been on a vessel on the Rio Grande River prior to writing his report. *See id*. at 17:4-20 (testifying his first time on the Rio Grande River was on May 21, 2024). Thus, though it beggars belief, Mr. MacAllister wrote his report opining on the navigational capabilities of the Rio Grande between River Miles 275.5 and 610 without the benefit of any experience *of any kind* related to this section of the Rio Grande River. Even after supplementing his report, Mr. MacAllister's only pertinent experience is the single trip to Eagle Pass, TX, that he took on May 21, 2024, after writing his expert report, but before sitting for his deposition.

Mr. MacAllister expressly *admitted he is not qualified* to make navigability determinations under the River and Harbors Act (RHA), to handle permit applications under the RHA, or to decide whether to grant permits under the RHA. Ex. C at 8-9, 28:19-30:24. He testified, instead, with respect to navigability determinations that he is "bound in my role to follow what has already been declared and determined [by USACE]." *Id*. at 30:19-24. He has no independent knowledge, skill, experience, training, or education qualifying him to make a navigability determination. Mr. MacAllister works for the Operations Division, whereas navigability determinations are made by the Regulatory Division, and is therefore outside the scope of Mr. MacAllister's experience.

Mr. MacAllister lacks specialized training or experience that could assist the trier of fact in resolving the fact issues in this case. His time at the USACE has been divided between park ranger/park operations duties and his current position as chief of operations. a role

4

which he described as focused on maintaining USACE reservoirs. While Mr. MacAllister's report states that he operated patrol boats while employed as a park ranger, he has never boated the Rio Grande River. He never claims to be familiar with navigation on the River reach under contention nor does he disclose experience or training that would suggest he is expertly familiar with piloting boats per se. Further, Mr. MacAllister testified that in his capacity as Chief of Operations he had no responsibilities over any part of the Rio Grande, and there are no USACE reservoirs on the Rio Grande. Therefore, Mr. MacAllister's work-related experiences do not qualify him as an expert on the navigability of the Rio Grande.

Mr. MacAllister's familiarity with the segment of the Rio Grande under contention is limited to a single visit he took to Eagle Pass *after* writing his original report. He was briefly on a boat near the buoys; he is not an expert concerning navigation on the river where the buoys are located. Mr. MacAllister's one-day tour of a fraction of the reach between River Mile 275.5 and 610. Even if this Court found, somehow, a single site visit qualifies Mr. MacAllister to testify as an expert on the 2-mile area he visited, it still does not make him an expert concerning the entire 334.5-mile reach. This Court should, accordingly, exclude Mr. MacAllister from testifying as an expert in this case.

II.     **Mr. MacAllister's opinions should be excluded because they are irrelevant to the issues in this case and could mislead the trier of fact.**

    A.    Mr. MacAllister Uses an Incorrect Definition of "Navigable" under the RHA.

To be admissible expert testimony must be relevant to the issues of fact the trier of fact must decide. Fed. R. Evid. 401. Mr. MacAllister's opinions fail this test. Additionally, testimony may be excluded if its probative value is substantially outweighed by a danger of…

5

unfair prejudice, confusing the issues, misleading the jury." Fed. R. Evid. 403. Mr. MacAllister's opinions fail this test too, because they would tend to mislead and confuse by using inapplicable definitions of key statutory terms.

Mr. MacAllister's expert opinions in this case refer to "navigation," "navigable" and related terms. *See e.g.* Ex. B at 2; Ex. C 11-12, 41:21-42:15. But Mr. MacAllister conceded that he is not qualified to make navigability determinations under the RHA or to determine whether the Rio Grande River is "navigable" under the RHA or whether the Rio Grande is a "navigable water of the United States" under the RHA. Because Mr. MacAllister is unfamiliar with the RHA, his report uses colloquial definitions of those terms, which do not precisely align with their meaning under the RHA. Mr. MacAllister admitted that the definition of "navigable" he used in all of his opinions was simply "a usable body of water with a vessel". *Id.* That is *not* the correct definition under the RHA, and this fundamental error renders his opinions irrelevant to this case.

Contrast Mr. MacAllister's definition with the meaning of "navigable water" under the RHA. Rivers are "navigable" when they are "susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 406 n.21 (1940). Thus, a "navigable" water of the United States under the RHA is not just any body of water "usable" by any small vessel. Even in the 19th century, the Supreme Court noted that navigability did not extend to "every small creek in which a fishing skiff or gunning canoe can be made to float at high water." *United States v. Rio Grande Dam*

*& Irr. Co.*, 174 U. S. 690, 698-99 (1899).[2]

However, Mr. MacAllister's layman's understanding of "navigable water" led him to limit his opinions concerning "navigability" to Class A and Class I vessels. These light, mostly recreational vessels are too small to engage in viable commercial navigation under the RHA. Class A vessels are generally limited to canoes and kayaks; Class I vessels are small vessels of less than 26 feet in length. The customary modes of trade and travel on water for purposes of interstate and foreign commerce today require far larger vessels with deeper drafts than Class A or Class 1 recreational craft like canoes, kayaks, and ski boats. *See* Ex. C at 13, 48:6-24 (drafts for such vessels are often four inches to two feet). These light, short-range vessels, have extremely shallow drafts, can carry few passengers, and can bear very limited weight. They are unsuited to carry commercial cargo for trade in interstate commerce and therefore are irrelevant to the determinations of navigability under the RHA at issue in this case.

Because Mr. MacAllister uses an inapplicable definition of a key statutory term, his testimony risks confusing or misleading to the trier of fact. The Court could be misled to believe that the legal definition of "navigable water" stretches to include the light craft Mr. MacAllister is focused on. Ordinary jurors are especially likely to be misled or confused by the difference in nuance between the commercial-scale navigation intended by the RHA and the recreation-scale boating that Mr. MacAllister calls 'navigation.'

---

[2] In its 1975 Study, the USACE found there was then "no current commercial activity" in the relevant stretch of the Rio Grande, and thus no current navigation under the RHA. Since small Class A and Class 1 vessels were used in that stretch in 1975, it is clear that the USACE did not consider such Class A and Class 1 vessels sufficient to constitute "commercial activity" under the RHA.

For the same reasons, Mr. MacAllister's opinions should be excluded as unreliable because he applied the wrong standard. Fed. R. Evid. 702.

Mr. MacAllister's opinions are based on an incorrect and inapplicable definition of "navigable". His definition is radically broader than the applicable definition under the RHA. As a result, all of Mr. MacAllister's opinions are irrelevant in this case, which solely involves a claim under the RHA. Allowing him to testify about passage by airboats and ultra-light watercraft as if that were RHA-relevant navigation would likely mislead the trier of fact. Accordingly, his testimony should be excluded in this case.

> B. <u>Mr. MacAllister's Opinion Regarding "Reasonable Improvements" is Unsupported and Irrelevant.</u>

Some caselaw related to the RHA has allowed navigability to be proved by showing that "reasonable improvements" can render the waterway susceptible to commercial navigation. *See United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 407, 408-09 (1940). To qualify as "reasonable", "[t]here must be a balance between cost and need at a time when the improvement would be useful." *Id.* at 407-08*; see also Lykes Bros., Inc. v. U. S. Army Corps of Eng'rs,* 821 F. Supp. 1457, 1464 (M. D. Fla. 1993), *aff'd*, 64 F.3d 630 (11th Cir. 1995) ("the costs of improvement [must] be justified by the benefits of commercial transit in the[e] area"). Under *Appalachian* there must be a "balance between cost and need *at a time when the improvements would be useful.*" 311 U.S. at 407-08 (emphasis added). Thus, any testimony that proposed improvements are "reasonable" necessarily requires a showing of (a) the cost of the proposed improvements; (b) actual demand for and benefits of the proposed improvements; and (c) the time period when the proposed improvements would be undertaken and completed.

8

Mr. MacAllister's proposed expert opinion is that there could be improvements that could somewhat "enhance" the navigability of the Rio Grande to an undefined extent. Ex. B 2, 6-9. But his opinion ignores *all* of the above essential elements of an admissible expert opinion as to reasonable improvements. Mr. MacAllister did nothing to calculate or estimate the costs of the improvements he proposed, per his own statement. Ex. C at 13-14, 49:22-51:18. He did nothing to calculate or estimate the extent of any actual need for the proposed improvements, or any possible commercial benefit the proposed improvements would generate. *Id.* at 14, 50:1-51:25. And Mr. MacAllister did nothing to determine how much time would required to complete the proposed improvements or when they actually could be available. *Id.* at 52:1-6. His opinion concerning potential reasonable improvements is inadmissible guesswork.

Mr. MacAllister testified that Plaintiff's counsel instructed him to "assume" that the benefits of the improvements would equal or exceed the costs of those improvements; and that Congress would readily appropriate funds needed to cover all costs, whatever they were. *Id.* at 50:13-51:15; 34, 132:12-133:20; 35-37, 135:25-142:6. Moreover, Plaintiff's counsel instructed Mr. MacAllister to assume that all obstacles, regulatory and natural, had been already cleared—in effect to assume that significant improvements had already been carried out; he was also instructed to ignore costs, regulatory approvals, objections, and delays related to environmental permitting or objections by holders of vested water rights that would be adversely affected, objections by Mexico, and all objections by cities and irrigation users of Rio Grande waters in both Mexico and Texas. *Id.* In other words, Mr. MacAllister did not rely on sufficient facts and data and reliably analyze the information; he instead assumed all

9

facts, data, and analyses based on the conclusory representations of counsel. The resulting unrealistic opinions are inadmissible and must be excluded.

**III.     Mr. MacAllister's Opinions Are Unreliable, and Should be Excluded.**

A basic requirement of admissibility of expert opinions under *Daubert* is reliability. Experts must base opinions on sufficient reliable data, and use a recognized methodology proven to produce reliable results. Otherwise, the trier of fact is left with little or nothing but the *ipse dixit* of the witness: "I am an expert and therefore it is so." That is insufficient. *E.g., Burst v. Shell Oil Co.*, 650 Fed. Appx. 170, 2016 U. S. App. LEXIS 9386 (5th Cir. 2016); *Brass Creekside, LP v. Amguard Ins. Co.*, 2021 U. S. Dist. LEXIS 257173 at *6-11 (W. D. Tex. 2021). Yet essentially his *ipse dixit* is all MacAllister offers. He has no independent knowledge, skill, experience, training, or education qualifying him to testify as an expert. He identifies no scientific or other methodology he used in arriving at his opinions. He offers no explanation of how he applied any methodology to any data. Indeed, he disclosed no data he used in arriving at his opinions. The entirety of his testimony is conclusory—the Rio Grande River could be made navigable to commercial navigation if, based on the assumptions provided by Plaintiff's counsel, all regulatory, environmental, and economic factors favored such improvements. This is not reliable expert opinion.

Defendants move the Court to exclude or limit at trial the opinions and testimony of Mr. MacAllister.

## CONCLUSION

For all the foregoing reasons, Mr. MacAllister should be excluded from offering expert opinions in this matter because he is either not an expert or has no expert opinions on any

relevant matter that is at issue or, in the event the Court permits his to testify as an expert then his testimony should be limited. Defendants ask for any further relief to which they are justly entitled.

Date: July 15, 2024                                   Respectfully submitted,

| | |
|---|---|
| Ken Paxton<br>Attorney General of the State of Texas | */s/ Johnathan Stone*<br>**Johnathan Stone**<br>Special Counsel<br>Tex. State Bar No. 24071779<br>Johnathan.stone@oag.texas.gov |
| Brent Webster<br>First Assistant Attorney General | |
| Ralph Molina<br>Deputy Attorney General for Legal Strategy | David Bryant<br>Senior Special Counsel<br>Tex. State Bar No. 03281500<br>david.bryant@oag.texas.gov |
| Ryan Walters<br>Chief, Special Litigation Division | |
| | Munera Al-Fuhaid<br>Special Counsel<br>Tex. State Bar No. 24094501<br>munera.al-fuhaid@oag.texas.gov |
| Office of the Attorney General<br>P. O. Box 12548, MC-009<br>Austin, TX 78711-2548<br>(512) 936-2172 | |
| | Kyle S. Tebo<br>Special Counsel<br>Tex. State Bar No. 24137691<br>kyle.tebo@oag.texas.gov |
| | Zachary Berg<br>Special Counsel<br>Tex. State Bar. 24107706<br>Zachary.Berg@oag.texas.gov |
| | **Counsel for Defendants** |

## CERTIFICATE OF CONFERENCE

On July 15, 2024, I emailed Plaintiff's counsel asking if they would agree to exclude or limit the testimony of Mr. MacAllister. I did not hear back at the time of filing this motion and it is presumed that they are opposed.

*s/ Johnathan Stone*
**Johnathan Stone**
Special Counsel

## CERTIFICATE OF SERVICE

On July 15, 2024, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

*s/ Johnathan Stone*
**Johnathan Stone**
Special Counsel
