# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | |
| v. | CIVIL ACTION NO. 1:23-CV-00853 |
| **GREG ABBOTT, ET AL.,** | |
| *Defendants.* | |

## DEFENDANTS' OPPOSED MOTION TO EXCLUDE OR LIMIT THE EXPERT WITNESS TESTIMONY OF JOHN C. TIMMEL

Defendants Greg Abbott, in his capacity as Governor of the State of Texas, and the State of Texas, hereby files the following motion to exclude or limit the expert witness testimony of John C. Timmel and offer the following in support:

## Background

On May 3, 2024, Plaintiff identified Mr. Timmel as an expert witness testifying about the following:

> [(1)] Capt. Timmel is expected to testify regarding the nature of the floating barrier system deployed in the Rio Grande by the State of Texas, and [(2)] the floating barrier system's impact upon the navigability of the Rio Grande.

Ex. A at 2.

On May 9, 2024, Plaintiff produced an expert report from Mr. Timmel wherein he opined that the Rio Grande River is navigable as understood by mariners, the buoys are actually floats and constitute a boom, the buoys are an obstacle and/or obstruction to navigation, the buoys are a hazard to navigation, and the buoys diminish the navigable capacity of the Rio Grande River. Ex. B at 31.

On June 4, 2024, Mr. Timmel produced a supplemental report disclosing additional documents reviewed and a second site visit to Eagle Pass, TX, since he produced his original report on May 9, 2024. Ex. C.

On June 5, 2024, Defendants deposed Mr. Timmel. Ex. D.

## Motion to Exclude or Limit

Trial Courts serve a gatekeeping role in determining whether expert testimony is admissible. *Harris v. FedEx Corp. Services, Inc.*, 92 F.4th 286, 303 (5th Cir. 2024) (citing *United States v. Valencia*, 600 F.3d 389, 423–24 (5th Cir. 2010)). Federal R. Evid. 702 provides the general criteria for determining the admissibility of expert testimony:

1

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if *the proponent demonstrates* to the court that it is *more likely than not* that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

(emphasis added).

## I. Mr. Timmel is Not an Expert Witness on the Designated Topics.

Plaintiff designated Mr. Timmel as an expert (1) regarding the nature of the floating barrier system deployed in the Rio Grande by the State of Texas, and (2) the floating barrier system's impact upon the navigability of the Rio Grande. Ex. A at 2. He is an expert on neither.

### A. The Nature of the Buoys.

Plaintiff cannot meet its burden of showing by a preponderance of the evidence that Mr. Timmel has relevant and reliable opinions about the nature of the floating buoy-barrier system deployed in the Rio Grande River. Mr. Timmel flatly admitted that he is not an expert on the subject:

> Q: Are you currently an expert on the nature of the floating buoy-barrier system deployed in the Rio Grande River?
>
> A: **No.**

Ex. D at 6, 20:10-13 (emphasis added).

Mr. Timmel is not qualified to give an opinion in this case that the buoys are made of "floats" and are a "boom." Ex. B at 4 (topics 3-4), 18-26. He admitted he is not an expert on that subject:

> Q: Are you an expert on booms?
>
> A: **No.**

2

> Q: Are you an expert on floats?
>
> A: **No.**
>
> Q: Are you an expert on buoys?
>
> A: **No.**
>
> Q: Have you ever built a boom?
>
> A: **I have not.**

Ex. D at 61, 238:4-11 (emphasis added).

Mr. Timmel, by his own admission, is not an expert qualified to provide opinions on the nature of Texas's buoys in particular nor is he an expert on buoys, booms, or floats in general. *See id*.

Even if Mr. Timmel were knowledgeable about buoys, booms and other maritime structures, his opinions about them are unreliable, because in forming his opinions he used anachronistic definitions. Mr. Timmel copied definitions of key terms from modern-day dictionaries he found online instead of definitions appropriate to the River and Harbors Act (RHA). Take, for instance, the definition of "structures." As it appears in the RHA and related regulations, "structures" means "any pier, boat dock, boat ramp, wharf, dolphin, weir, boom, breakwater, bulkhead, revetment, riprap, jetty, artificial island, artificial reef, permanent mooring structure, power transmission line, permanently moored floating vessel, piling, aid to navigation, or any other obstacle or obstruction." 33 C.F.R. § 322.2(b); *United States v. Hall*, 63 F.472, 474 (1st Cir. 1894) (describing "structures" as "all obstructions of a permanent nature."). Structures must affect the course, location, or condition of a waterway in such a manner as to impact on its navigable capacity. 33 C.F.R. § 322.3(a); 33 U.S.C. § 403. Instead of relying on this definition, Mr. Timmel relied on the definition of "structures" he found on Vocabulary.com. Ex. B at 21. Based on this definition,

he concluded that a "structure" is "*something of many parts that is put together. A structure can be a skyscraper, an outhouse, your body, or a sentence.*" *Id*. ("Structure," Vocabulary.com (accessed July 15, 2024) (emphasis added)). But skyscrapers, outhouses, our bodies, and sentences are not structures for the purposes of the RHA. The online definition relied on by Mr. Timmel is so broad as to include everything, regardless of their impact on navigation. His failure to use the definition of "structures" from the RHA is fatal to his testimony on the subject of whether the buoys are structures.

Mr. Timmel makes the same mistake with respect to "booms." "Booms" when the RHA was adopted meant "a chain cable or line of spars extended across a river or the mouth of a harbor to obstruct passage." Webster's New International Dictionary 254 (1930); *Lindsay & Phelps Co. v. Mullen*, 176 U.S. 126, 154 (1900) ("constructed" boom "extend[ed] across the main channel of the Mississippi river and into the territory of Wisconsin"); *United States v. Bellingham Bay Boom Co.*, 176 U.S. 211, 211 (1900) ("boom . . . constructed across the Nooksack river"); *Susquehanna Boom Co. v. West Branch Boom Co.*, 110 U.S. 57, 57-58 (1884) (similar).

Mr. Timmel should have been aware of this, because he cited to an online source noting that "[i]n the Middle Ages, logs were chained together and used as a floating barrier *across a waterway* to protect a harbor from attack or to force passing ships to stop and pay a toll. During the American Revolution, for example, the Hudson River *was boomed with logs to prevent the British from sailing upriver*." Ex. B at 21 n.28 (citing Office of Response and Restoration, *Booms, Beams, and Baums: The History Behind the Long Floating Barriers to Oil Spills*, NOAA (Apr. 28, 2014) (emphasis added), https://tinyurl.com/34wr2uwf. But Mr. Timmel, in concluding the buoys are a boom, applied a modern-day definition of "boom" he found online as the bases for his opinion in this case,

4

despite the use and definition of booms evolving since the RHA was adopted in 1899 to now include such modern uses as oil spill containment. *See e.g.* Ex. D at 60-61, 237:19-238:3. Mr. Timmel's testimony is unreliable because he applied the wrong definition of "boom."

Finally, Mr. Timmel's testimony about the nature of the buoys will confuse and mislead the jury about the issues in this case. Mr. Timmel's testimony will confuse the jury by applying the wrong definitions of terms, conflating layman's definitions with those contained in the RHA. It will also confuse the jury because the U.S. Army Corps of Engineers (USACE) concluded, and its employees have repeatedly testified, that the buoys are **not a boom**. Mr. Timmel's testimony is at odds with the conclusions of the federal entity and employees who purport to enforce violations of the RHA on the Rio Grande River. Mr. Timmel's expert testimony about booms should be excluded because it will confuse the jury—as it directly conflicts with the testimony of three USACE fact witnesses who concluded that the buoys are not a boom.

### B. The Impact of the Buoys on Navigability.

Plaintiff cannot meet its burden of showing by a preponderance of the evidence that Mr. Timmel has relevant and reliable opinions about the impact of the floating barrier system's impact upon the navigability of the Rio Grande. Mr. Timmel's testimony should be excluded as to whether the Rio Grande River is navigable and whether the buoys are an obstacle, obstruction, hazard to navigation, and whether the buoys diminish the navigable capacity of the Rio Grande River. Ex. B at 4, 27-31.

#### 1. Mr. Timmel's is Not an Expert on Navigability.

Mr. Timmel should not be permitted to testify about how "mariners" determine whether a body of water is navigable. Ex. B at 3-4 (Questions 1 and 2).

5

*First*, Mr. Timmel is not an expert on the process for determining the Rio Grande River is navigable. He has never testified on the subject before. Ex. D. at 50, 195:1-7. He has not read, nor is he an expert on, the Rivers and Harbors Act. Ex. D. at 51, 200:22-201:4. His process of determining whether a body of water is navigable as a mariner amounts to **no more** than checking official publications to see if it has been designated as such. Ex. B at 10-17. He testified:

> Q: So if I'm understanding your answer correctly, the answer to the first question of "How does a professional mariner determine if a body of water that he or she is or is planning to operate upon is classified as a navigable water and with which rules they must comply," the answer to that is to look it up or ask the U.S. Coast Guard. Is that fair?
>
> A: That's the short version of the answer, yes.

Ex. D at 51, 199:9-17.

The bases of his opinion that the Rio Grande River is navigable, are the very Coast Guard and USACE's determinations challenged in this case:

> Q: So, going back about ten minutes ago to the question I originally asked, other than the Coast Guard and the U.S. Army Corps of Engineers… that's all the documents that you relied on in terms of concluding that the Rio Grande River from 22-mile marker 275 to 610 is a navigable water of the U.S., right?
>
> A: Yes, I'll concede to that.

*Id*. at 59, 230:17-24; *see also id*. at 61, 239:8-16 (testifying that he accepts whatever determination on navigability is made by the USACE or the Coast Guard).

Repeating, uncritically, the contents of publicly available official publications is not an "opinion." The Court should exclude this testimony, framed as expert opinion, in its entirety.

*Second*, Mr. Timmel's opinion about the navigability of the Rio Grande River is irrelevant, Fed. R. Evid. 401, and is prejudicial, confusing, and a waste of time, *id*. at 403. Mr. Timmel's testimony is about the process and determinations made by "mariners" is irrelevant because it does

not have a tendency to make a fact of consequence in determining this action more less probable that it would be without the evidence. Fed. R. Evid. 401. The issue before the Court is whether the Rio Grande River is a navigable water as defined by the River and Harbors Act—not whether "mariners" think it is navigable.

Moreover, to the extent this Court finds Mr. Timmel's testimony relevant, it should still exclude it because it is unfairly prejudicial, confuses the issues, will mislead the jury, and needlessly waste time. Fed. R. Evid. 403. It is unfairly prejudicial because Mr. Timmel's conclusion relies **solely** on the conclusions published by Plaintiff and not on any separate determination. It confuses the issues and will mislead the jury because it conflates the fact-intensive navigability determination made by Courts under the River and Harbors Act with a "mariners" determination about navigability based solely on official publications. This will confuse the jury about which standard applies. Finally, even if the testimony had some relevance, it should still be excluded because it will waste time, since determinations by mariners are not at issue in this lawsuit.

### 2. The Basis for Mr. Timmel's Opinions is Unknown.

Mr. Timmel testified that he formed his opinions in this case about the buoys impeding navigability **prior** to being retained, based solely on images from undisclosed news articles that he read online. Ex. D at 21, 78:1-80:7 (testifying he formed his opinions in the Fall of 2023 after reviewing photographs in online news stories). Mr. Timmel did not identify, nor did he provide Defendants with copies of the documents he relied on in forming his expert opinions in this case. *Id.* at 22, 82:13-83:21 (testifying that the articles and photographs relied on in forming his opinion were not identified in his expert report). These documents have never been provided and

Defendants are prejudiced if Mr. Timmel is allowed to provide opinion testimony based on undisclosed documents that have been withheld from Defendants.

Mr. Timmel, moreover, testified that he did not rely on **any** document identified in his expert report or disclosed by Plaintiff when forming his opinions in this case, nor on either of his site visits. *See e.g.* Ex. D at 13, 46:8-48:21. His opinions were exclusively formed in this case **prior** to being retained and he testified that they have been "unwavering" ever since. *Id*. at 25, 94:1-5. Even when he received an email from the federal agencies operating on the river advising him that the buoys had not "impacted the type of vessels utilizing the river," he nonetheless testified that "I considered it, but my opinion still stands and did not waiver as a result of that answer." *Id*. at 24, 92:24-93:25. He testified that after forming his opinions prior to being retained in this case, all evidence he viewed thereafter only "bolstered my opinions and reinforced my opinions." *See e.g. id*. at 91:17-21. He explained:

> Q: When you say that it bolstered your opinion, is that because you already had an opinion about this case before you ever saw this document?
>
> A: Yes.

*Id*. at 91:24-92:9.

This Court should exclude Mr. Timmel's opinions about navigability because they are not based on sufficient and reliable data or experiences, instead, they are based on undisclosed online news articles he read prior to even being retained in this case as an expert. The Court should, alternatively, excluded his opinions because he failed to reliably apply facts and data in this case. Mr. Timmel admitted that he remained "unwavering" in the opinions he formed prior to be retained in the case no matter what evidence he was subsequently shown—even the evidence provided by Plaintiff's that undermined his opinions. *Id*. at 24, 92:24-93:25. Finally, this Court

should exclude Mr. Timmel because he formed his opinions relying on documents that have never been provided to Defendants.

### 3. Mr. Timmel's Opinions about Obstacles, Obstructions, Hazards to Navigation, and Diminishing the Navigable Capacity of the Rio Grande River.

Mr. Timmel used modern online dictionaries for definitions of the terms "obstacle," "obstruction." Ex. B at 27. He defined, for instance, an obstruction as "something the completely clocks of blocks a passage." *Id*. (citing "Obstruction," Merriam-Webtser (accessed July 15, 2024)), https://tinyurl.com/57mecvsx. But the RHA and the related regulations define "obstruction" as "anything that restricts, endangers or interferes with navigation." 33 C.F.R. § 245.5. Mr. Timmel's testimony is unreliable and irrelevant where his opinions are premised on a misunderstanding of the basic terms about which he opines.

Mr. Timmel's opinions that the buoys are a hazard to navigation are unreliable because they applied the wrong standard. "Hazard to navigation" means "an obstruction, usually sunken, that presents sufficient danger to navigation so as to require expeditious, affirmative action such as marking, removal, or redefinition of a designated waterway to provide for navigational safety." 33 C.F.R. § 245.5. This was not the definition used by Mr. Timmel. Instead, he relied on the "U.S. Inland Rules of the Road" as the standard his conclusion that the buoys are a hazard to navigation. Ex. B at 28-29.

In addition to applying the wrong standard, Mr. Timmel failed to obtain sufficient information to conclude the buoys are a hazard to navigation. He testified they are only a hazard at night and during periods of heavy fog, rain, smoke, or traffic on the Rio Grande River. *See e.g.* 710, 275:1-22; 71, 280:1-5; *see also* 73, 288:4-17 (conceding that under normal conditions the buoys are not a hazard). But he did not determine if boats operate in the vicinity of the buoys at night. Ex. D

9

at 67, 265:15-22 (testifying that "if no boats travel on the river in the vicinity of the barrier, then it would not create a hazard at night, if they don't travel at night."). And he did not determine if there have been periods of heavy fog, rain, smoke, or traffic exist in the vicinity of the buoys. Without determining whether these are weather and traffic conditions that occur in the vicinity of the buoys, Mr. Timmel lacks sufficient information to conclude that they are a hazard to navigation.

Finally, Mr. Timmel opined that the buoys diminish the navigable capacity of the Rio Grande River. This opinion was based on the anonymous observation from a federal employee that he received via email from Plaintiff's counsel. Ex. D. at 23, 88:2-9. Defendants are prejudiced because the identity of this anonymous persons identity was never disclosed during discovery—yet it serves as the basis for Mr. Timmel's opinion that the buoys interfere with federal operations on the Rio Grande River. The only other source for this opinion was an email from an International Boundary Water Commission (IBWC) employee who wrote that measuring the river requires the full width and anything in the Rio Grande River could obstruct agency measurement operations, unless the agency could go around it. Ex. B at 30. But Mr. Timmel never inquired whether the IBWC had actually attempted to take measurements in the vicinity of the buoys and been obstructed. So, Mr. Timmel's opinion on the subject are no more than *ipsi dixit* unsupported by data or facts or reliable analyses of same.

Finally, Mr. Timmel's opinions are exclusively concerned with the area in the immediate vicinity of the buoys, not the entire 334.5-mile stretch between Mile Markers 275.5 and 610. His testimony should be limited, if permitted at all, to the 2-mile segment of the river he visited.

## CONCLUSION

For all the foregoing reasons, Mr. Timmel should be excluded from offering expert opinions in this matter because he is either not an expert or has no expert opinions on any relevant matter that is at issue or, in the event the Court permits his to testify as an expert then his testimony should be limited. Defendants ask for any further relief to which they are justly entitled.

Date: July 16, 2024

Respectfully submitted,

Ken Paxton
Attorney General of the State of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy Attorney General for Legal Strategy

Ryan Walters
Chief, Special Litigation Division

Office of the Attorney General
P. O. Box 12548, MC-009
Austin, TX 78711-2548
(512) 936-217

/s/ Johnathan Stone
**Johnathan Stone**
Special Counsel
Tex. State Bar No. 24071779
Johnathan.stone@oag.texas.gov

David Bryant
Senior Special Counsel
Tex. State Bar No. 03281500
david.bryant@oag.texas.gov

Munera Al-Fuhaid
Special Counsel
Tex. State Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

Kyle S. Tebo
Special Counsel
Tex. State Bar No. 24137691
kyle.tebo@oag.texas.gov

Zachary Berg
Special Counsel
Tex. State Bar. 24107706
Zachary.Berg@oag.texas.gov

**Counsel for Defendants**

**CERTIFICATE OF CONFERENCE**

On July 16, 2024, I conferred with counsel for Plaintiff via email to see if they would agree to exclude or limit the testimony of Mr. Timmel. While they agreed to certain limitations, the agreement was contingent on Defendants not seeking to exclude Mr. Timmel. They stated during the course of conferring that they are opposed to this motion.

*s/ Johnathan Stone*
**Johnathan Stone**
Special Counsel

**CERTIFICATE OF SERVICE**

On July 16, 2024, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

*s/ Johnathan Stone*
**Johnathan Stone**
Special Counsel