**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> GREG ABBOTT, in his capacity as GOVERNOR OF THE STATE OF TEXAS, and THE STATE OF TEXAS, <br><br> *Defendants*. | Case No. 1:23-cv-00853-DAE |

**UNITED STATES' MOTION TO COMPEL**

JAIME ESPARZA
UNITED STATES ATTORNEY

LANDON A. WADE
  Assistant United States Attorney
  Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

BRIAN H. LYNK
  Senior Trial Counsel
  DC Bar No. 459525
BRYAN J. HARRISON
  Trial Attorney
  FL Bar No. 106379
KIMERE J. KIMBALL
  Trial Attorney
  CA Bar No. 260660
ANDREW D. KNUDSEN
  Trial Attorney
  DC Bar No. 1019697
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov

Dated:  July 16, 2024

*Counsel for the United States of America*

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 37(a), the United States respectfully requests that this Court compel Texas to produce one or more documents as required by Fed. R. Civ. P.  26 and 34. Notwithstanding the United States' Requests for Production and rules governing expert reports, Texas has not produced an email sent to some or all of its experts that set forth Texas's exclusive views on the law of navigability.  *See* Fed. R.  Civ. P. 26(a)(2)(B)(i) (expert reports must include "all opinions the witness will express *and the basis or reasons for them*"), (ii) (expert reports must include "the facts or data considered by the witness" in forming opinions); *Id.* 26(a)(4)(C)(iii) (assumptions that expert relied on not protected as work product); RFP 12 (Ex. 1).  Indeed, at least one of Texas's experts understood from Texas's purported "definitions" that these definitions were so indisputable that the parties had *agreed* on this fundamental issue of the case.  Miller Dep. 79:20-80:16.  Texas belatedly sent the United States what purport to be the definitions sent to Texas's experts, *see* Ex. 2, but has not produced the actual email – thus, the United States has no way of knowing what additional information or instructions may have been conveyed.  Because Texas did not produce fundamental assumptions that undergirded its experts' opinions – and still has not produced the actual document(s) it provided its experts – neither the United States nor the Court can fully assess the basis for or reliability of the experts' opinions.  Texas should therefore have to produce the email.

## BACKGROUND

The United States alleges that Texas unlawfully built a structure in, and interfered with, the navigable capacity of waters of the United States without first seeking a permit from the U.S. Army Corps of Engineers under the Rivers and Harbors Act (RHA).  *See* 33 U.S.C. § 403; ECF 58-1 ¶¶ 11-16.  A key issue is whether the stretch of the Rio Grande in which Texas installed the

floating barrier is navigable, thus bringing the Rio Grande within the ambit of the RHA.  Both case law and regulation define navigability as whether the river can "'(1) be or have been (2) used or susceptible to use (3) in the ordinary or customary modes of trade and travel on water'" in (4) domestic or foreign commerce.  33 C.F.R. § 329.4; Order (ECF 50) at 10 (quoting *Miami Valley Conservancy Dist. v. Alexander*, 692 F.2d 447, 450 (6th Cir. 1982)).  Texas disclosed 12 experts, 11 of whom were identified as offering opinions on various aspects of commerce and navigability.  *See* ECF 122.  Of those 11, 10 provided expert reports on June 14. *See* Exhibits to ECF 122.[1]

Texas sent many, if not all, of its experts an email setting forth Texas's view of the law the Court will apply in determining navigability; it still has not identified for the United States exactly which experts received the definitions or whether they were transmitted in a single message or in several.  *See* Iakovou Dep. 54:20-24, 167:7-25 (testifying that to the best of his knowledge Taylor, Shields, Rubenstein, Herman, and Zhao received the email).  None of the expert reports so much as mentioned the email, nor was it produced in response to the United States' request for "all documents and communications reflecting any assumptions any expert Texas intends to call . . . relies on to form any opinions the expert expresses in any expert report and/or intends to express at trial in the above-captioned matter."  *See* Ex. 1 at 10.  Indeed, the United States learned that Texas had sent these definitions to some experts only on July 1, when one of Texas's experts testified that she not only received the definitions but (mistakenly) understood that the parties agreed on it.  Miller Dep. 79:20-80:16.  The United States promptly requested a copy of the

---

[1] Despite identifying Dr. Kathy Alexander, an employee of the Texas Commission on Environmental Quality, as a person whose duties regularly involve testifying, ECF 122 at 7, Texas now claims that she is not required to provide a report.  *Compare* Fed. R. Civ. P. 26(a)(2)(B)(expert witnesses who must provide report include "one whose duties as the party's employee regularly involve giving expert testimony").  The United States is moving concurrently to exclude her testimony for that and other reasons.

definitions but received no response until July 11, when Texas's counsel sent the United States an excerpt from the email.  *See* Ex. 2.  Texas has still flatly refused to produce the original email. Iakovou Dep. 175:3-10 (Texas' counsel stating "[w]e will not produce [the email].").

## ARGUMENT

Under Rule 37, a party may move to compel "a disclosure required by Rule 26(a)" or production of documents required by Rule 34. Fed. R. Civ. P. 37(a)(1); (3)(A), (B)(iv).  Despite multiple requests, Texas has failed to timely disclose information required by Federal Rule of Civil Procedure 26(a) and 34. This was not a harmless omission – even Texas's excerpt reveals that Texas provided a slanted and inaccurate view of the law on which its experts were to base their opinions.  Texas should have to produce the original email so that the United States and the Court can fully assess the reliability of these experts' testimony.

**A.      The Texas-provided definitions are inaccurate, or at least in dispute, in several respects.**

In theory, there would be nothing wrong with Texas providing its experts with some background in the law of navigability.  Here, however, not only was the United States never informed that Texas had provided its experts with a legal primer, but Texas's recounting of the purportedly applicable law is slanted and inaccurate.

For example, Texas states that:

> [F]ederal law and regulation, and US Army Corp. of Engineer policies and procedures, prevent the construction of any improvements on the Rio Grande River for the purposes of navigation absent a cost-benefit analysis showing that the projected benefits outweigh the costs.  So, as a practical matter, the projected commercial benefits *must* be sufficiently large enough to outweigh the costs of the proposed improvement necessary to make the Rio Grande River navigable.

Ex. 2 at 2 (emphasis added).  Texas cites no specific laws, regulations, policies, or procedures, and the United States is aware of none that impose the requirement Texas describes. [2]  The Corps does sometimes consider cost-benefit analyses, but nothing in the RHA or its implementing regulations *requires* the Corps to prepare or consider such a determination before issuing a Section 10 permit.

Other items similarly reflect Texas's view of the law, often in instances in which the parties have not only fully briefed their disagreement, but the district court has explicitly based *both* its order granting the United States a preliminary injunction *and* its order denying Texas's motion to dismiss the RHA claim orders in this case on the United States' view of the case.  *See, e.g.*, Order (ECF 50) at 7-18 (holding Rio Grande is navigable based, in part, on cross-river ferry traffic); Order (ECF 114) at 16 n.56 (reiterating that cross-river ferry traffic demonstrates Rio Grande's historic navigability).  Although Texas has challenged the Court's ruling at the Fifth Circuit, the current law of the case is directly contrary to Texas's purported definitions.  And notwithstanding this law of the case, Texas told its experts that the commerce relevant to determining navigability must run up and down the river and cannot include cross-river traffic.  Ex. 2 at 1-2.  Texas is of course free to argue that this is the law; what it cannot do is present its own views as undisputed principles that its experts should use in their analysis.  Nor does Texas's assertion that an obstruction must "destroy" or at least "substantially diminish" navigable capacity to be unauthorized, Ex. 2 at 3, find support in the case law.  *See Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 462-63 (5th Cir. 1989) ("[t]he Supreme Court has

---

[2] Texas may have intended to refer to 33 C.F.R. § 329.8, which provides that determining whether "reasonable" improvements could lead to navigability "is always a matter of degree; there must be a balance between cost and need at a time when the improvement would be (or would have been) useful" and that this balance is "often similar to the cost analyses presently made in Corps of Engineers studies."  This general reference to "balancing" costs and needs is a far cry from the rigid cost-benefit analysis that Texas contends is required.

encouraged a broad interpretation of a section 10 'obstruction'").  These are merely a few examples of Texas's slanted definitions – definitions which, as discussed in the next section, call into question the reliability of Texas's experts' opinions.

**B.     Texas's one-sided definitions undermine reliability**

The Texas-provided definitions speak directly to the reliability of Texas's experts' opinions.  Because the United States did not know how Texas had characterized the law to its experts before taking these depositions, it could not fully explore the basis of the experts' opinions.  Indeed, even when the United States discovered the definitions in the middle of the deposition, and asked for the definitions on a break in the deposition, Texas refused to provide the definitions until a week and a half later, and even then did not provide the actual document (or documents, if more than one message was sent) given to the experts.  *See* Ex. 2.  This in turn at least brings up whether Texas's expert opinions are unreliable because they are based on faulty assumptions or erroneous information.  *See Parmley v. Home Depot U.S.A., Inc.*, No. 22-cv-2806-B, 2024 WL 119579, *4 (N.D. Tex. Mar. 20, 2024) (excluding expert testimony based on flawed assumptions); *Guillory v. Domtar Indus.,* 95 F.3d 1320, 1331 (5th Cir. 1996) (explaining that the court should "extract evidence tainted by farce or fiction" as unreliable.).

Texas may argue that its experts did not consider these assumptions.  *See* Iakovou Dep. 175:3-19.   There can, however, be no question but that Texas's late-disclosed definitions influenced expert opinions.  Dr. Iakovou, for example, testified that he "never knew the term highway of commerce before" Texas provided it to him, that he understood it to be a "legal term," and that it "is not a term that is used today in any industry or academia."  Iakovou Dep. 188:9-10; 60:4-5; 179:16-17; *see* Ex. 2 at 2, item e (referring to "highway of commerce").  Dr. Iakovou's testimony makes clear that the Texas-provided reference to "highway of commerce" underpins

much of his opinions related to the use of the Rio Grande.  *See* Iakovou Dep. 45:7-19, 48:8-49:3, 54:20-55:12.  Mr. Ciarametaro similarly testified that he was provided with a list of assumptions by Texas's counsel.  Ciarametaro Dep. 58:18-21.  Of those provided "navigable waters" and "buoys" were addressed in his report and reflected portions of the definitions of those terms as provided by Texas counsel. *Id.* 59:3-9, 121:20-122:7, 159:24-160:11.  Mr. Ciarametaro stated that he would testify to these definitions at trial and that he "concurs" with them. *Id.* 126:24-127-12.

Some experts have testified that they were not influenced by Texas's one-sided definitions. Miller Dep. 79:20-80:16; Iakovou Dep. 168:23-25.  But without knowing the content of the Texas-provided assumptions the United States could not explore how much they influenced an expert's work.  For example, Dr. Miller testified that the definitions were "assumptions" Texas had provided her about "the stretch of the river we were looking at."  Miller Dep. 79:22-80:12. Despite Texas having explicitly defined navigation as not including cross-river traffic, Ex. 2 at 2 item 3.d, Dr. Miller testified that Texas had not provided any limitations on cross-river traffic versus up- or downriver traffic.  Miller Dep. 80:5-9.  Had the United States known that Dr. Miller had been told only up- and down-river traffic constituted navigation, the United States would have been able to more fully explore the effect of this purported definition on her opinions.

Texas has provided no justification for its failure to produce the email, beyond the conclusory assertion that its experts did not rely on Texas's definitions.  *See* Iakovou Dep. 175:3-19.  As discussed above, that is impossible to assess without seeing the document.  Nor has Texas ever asserted that the email is work product (and even if it had, communications from a party's attorney that "identify assumptions that the party's attorney provided and that the expert relied on" are not protected as work product, Fed. R. Civ. P. 26(a)(4)(C)(iii)).  Thus, Texas should have to produce the email (or emails, if sent separately) as originally transmitted to its experts.

6

## CONCLUSION

For all of these reasons, the court should require Texas to serve on the United States the original email or emails containing the assumptions in Ex. 2.

Dated:  July 16, 2024

JAIME ESPARZA
UNITED STATES ATTORNEY

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

*/s/ Landon A. Wade*
LANDON A. WADE
  Assistant United States Attorney
  Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

*/s/ Andrew D. Knudsen*
ANDREW D. KNUDSEN
  Trial Attorney
  DC Bar No. 1019697
BRIAN H. LYNK
  Senior Trial Counsel
  DC Bar No. 459525
KIMERE J. KIMBALL
  Trial Attorney
  CA Bar No. 260660
BRYAN J. HARRISON
  Trial Attorney
  FL Bar No. 106379
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov
Kimere.kimball@usdoj.gov
Andrew.knudsen@usdoj.gov
Bryan.harrison@usdoj.gov

*Counsel for the United States of America*

## <u>CERTIFICATE OF CONFERENCE</u>

As set forth in the United States' Motion to Compel, during a deposition on July 11 Texas stated that notwithstanding the United States written requests for production and oral request for this specific document it would not produce the email sent to its experts to the United States.  On July 16 counsel for the United States advised counsel for Texas of the United States' intent to file this motion.  Counsel for Texas stated that they are opposed.


              /s/ Andrew D. Knudsen
              Andrew D. Knudsen

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 16, 2024, a copy of this filing was served on counsel of record through the Court's electronic filing system.

/s/ Andrew D. Knudsen
Andrew D. Knudsen