```
 1              UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF TEXAS
 2                    AUSTIN DIVISION

 3   UNITED STATES OF AMERICA    )
                                 )
 4                               ) NO.
     VS.                         ) 1:23-CV-00853-DAE
 5                               )
     GREG ABBOTT, IN HIS CAPACITY)
 6   AS GOVERNOR OF THE STATE OF )
     TEXAS, AND THE STATE OF     )
 7   TEXAS                       )

 8

 9

10            ------------------------------------

11                  VIDEOTAPED DEPOSITION OF
                     CAPTAIN JUSTIN PETERS
12                      JULY 15, 2024
                      (REPORTED REMOTELY)
13

14            ------------------------------------

15

16          ANSWERS AND DEPOSITION OF CAPTAIN JUSTIN

17   PETERS, produced as a witness at the instance of the

18   Defendant, taken in the above-styled and -numbered

19   cause on JULY 15, 2024, from 9:06 a.m. to 10:41

20   a.m., before CHARIS M. HENDRICK, a Certified

21   Shorthand Reporter in and for the State of Texas,

22   witness located at the United States Department of

23   Justice, 150 M Street NE, Washington, DC, pursuant

24   to the Federal Rules of Civil Procedure, and the

25   provisions stated on the record or attached hereto.
```



```
 1                    A P P E A R A N C E S

 2   FOR THE PLAINTIFF:

 3        MS. KIMERE KIMBALL
          MS. HEATHER S. KENNEALY
 4        MS. KAITLYN E. CHARETTE
          UNITED STATES DEPARTMENT OF JUSTICE
 5        150 M Street NE
          Washington, District of Columbia,  20002
 6        (202) 514-2285
          kimere.kimball@usdoj.gov
 7        heather.s.kennealy@uscg.mil
          kaitlyn.charette@hq.dhs.gov
 8

 9   FOR THE DEFENDANTS:

10        MR. KYLE S. TEBO
          MR. JOHNATHAN STONE
11        OFFICE OF THE ATTORNEY GENERAL
          P.O. Box 12548, MC-009
12        Austin, Texas  78711-2548
          (512) 936-2172
13        kyle.tebo@oag.texas.gov
          johnathan.stone@oag.texas.gov
14

15   ALSO PRESENT:  MR. MIGUEL BANUELOS - VIDEOGRAPHER

16

17

18

19

20

21

22

23

24

25
```



```
 1   Coast Guard did not fill them.
 2        Q.   Understood.  Approximately, how many other
 3   requests were there?
 4        A.   They were still the same two requests, but
 5   those requests contained additional capabilities for
 6   support to the southwest border.
 7        Q.   Understood.  So the additional requests
 8   that you were referring to are -- were to do with
 9   the -- were to do with the two requests for the
10   deployable specialized forces; is that correct?
11                 MS. KIMBALL:  Objection.  Form.
12        A.   The deployable specialized forces were one
13   capability that were requested; that is correct.
14                 (Exhibit 4 marked.)
15        Q.   (By Mr. Tebo)  Captain Peters, I am going
16   to share-screen for just a moment.  Do you see a
17   document before you that is titled Plaintiff United
18   States' Initial Disclosures?
19        A.   Yes.
20        Q.   I am scrolling down to Page 2.  Do you see
21   your name and position listed besides Bullet Point
22   Number 10?
23        A.   Yes.
24        Q.   I am going to read from that paragraph.
25   Captain Peters has knowledge of the United States
```



```
 1   Coast Guard missions and operational capabilities on
 2   the Rio Grande.
 3              Did I read that correctly?
 4       A.   Yes, you did.
 5       Q.   Do you have knowledge of Coast Guard
 6   missions and operational capabilities on the Rio
 7   Grande River?
 8       A.   I have general knowledge of those -- those
 9   things, yes.
10       Q.   Have you been asked to testify at trial on
11   any subject matter other than Coast Guard missions
12   and operational capabilities on the Rio Grande
13   River?
14              MS. KIMBALL:  Objection.  Calls for
15   work product.  The witness is instructed not to
16   answer.
17       Q.   (By Mr. Tebo)  Let me rephrase that
18   question -- question slightly.  Are you prepared to
19   testify at trial on any subject matter other than
20   Coast Guard missions and operational capabilities on
21   the Rio Grande River?
22              MS. KIMBALL:  Objection.  Calls for
23   work product.  The witness is --
24              MR. TEBO:  I didn't ask any -- that
25   question didn't ask anything about confidential
```



```
 1   discussions with DOJ attorneys.
 2        Q.   (By Mr. Tebo)  Just are you prepared to
 3   testify at trial concerning subject matter other
 4   than what is listed in your disclosure?
 5             MS. KIMBALL:  Objection.  Calls for
 6   work product.  The witness is instructed not to
 7   answer.
 8             MR. TEBO:  I'm going to take a quick
 9   break here.
10             THE VIDEOGRAPHER:  Going off the
11   record, 10:25 a.m.
12             (Recess taken.)
13             THE VIDEOGRAPHER:  Back on the record,
14   10:35 a.m.  Go ahead.
15        Q.   (By Mr. Tebo)  Thank you.  All right.
16   Captain Peters, sorry for the delay.  I was asking
17   you a little bit about the Plaintiff's Disclosures
18   in this case.  So I am going to read your disclosure
19   one more time just so it's fresh in your mind.
20   Captain Peters has knowledge of the USCG missions
21   and operational capabilities on the Rio Grande.
22             Did I read that correctly?
23        A.   Yes, you did.
24        Q.   And is that all that you intend to testify
25   concerning at trial?
```



```
 1                  MS. KIMBALL:  Objection.  Calls for
 2   work production.  The witness is instructed not to
 3   answer.
 4                  MR. TEBO:  Counsel, could I ask you a
 5   little bit about the basis of your objection?  So
 6   you're -- are you citing -- you are citing the
 7   work-product privilege?
 8                  MS. KIMBALL:  That's correct.  Anything
 9   that the witness has done to prepare with counsel or
10   at the direction of counsel is all work product.
11                  MR. TEBO:  I am not -- you understand I
12   am not asking about the contents of any privileged
13   documents or anything like that?
14                  MS. KIMBALL:  It's -- it's not just
15   privileged documents.  It's anything that he has
16   discussed --
17                  MR. TEBO:  Or conversations; I'm not --
18   I'm not trying to pry into confidential
19   conversations he's had between himself and DOJ
20   attorneys or anything like that.  I am just asking
21   about his disclosure and the subject matter for
22   which he has been disclosed.
23                  MS. KIMBALL:  So he didn't do the
24   disclosure; that's the attorneys' disclosure.
25   And --
```



```
 1                    MR. TEBO:  The disclosure is -- is not
 2      -- is not privileged work product.
 3                    MS. KIMBALL:  I am -- I am not
 4      suggesting it is, but --
 5                    MR. TEBO:  Okay.
 6                    MS. KIMBALL:  -- I am saying that he
 7      didn't draft the disclosure.
 8                    MR. TEBO:  Correct.
 9                    MS. KIMBALL:  And anything that he has
10      done to prepare for trial is necessarily work
11      product.  The definition of work product is the work
12      that -- attorney does to prepare for trial.  So
13      anything that he has done in order to prepare for
14      trial is necessarily something done with counsel or
15      at the direction of counsel.  And so the -- I think
16      the work-product privilege covers it.
17                    MR. TEBO:  I want to just make crystal
18      clear that I'm not asking him about specific
19      preparations.  I am not trying to learn the US's
20      legal strategy.  I am just asking him about the
21      subject matter of his testimony at trial; do you
22      understand that?
23                    MS. KIMBALL:  The only thing he could
24      possibly know about what he might be expected to
25      testify to at trial is something he would know from
```



```
 1   his communication with counsel in preparation for
 2   trial.  It's not, you know, within the -- the normal
 3   course of his duties.  He's not deciding what to
 4   testify to.  That's exclusively within the
 5   attorney's domain.
 6              MR. TEBO:  Well, the US, with this 26A
 7   disclosure, has communicated to Texas at least
 8   something about what he intends to testify at trial,
 9   correct?
10              MS. KIMBALL:  We provided the necessary
11   disclosure under the rule.  That does not waive our
12   work-product privilege in any way.
13              MR. TEBO:  And I am not asking you to
14   waive your work-product privilege in inquiring about
15   the disclosure; that's what I am saying.
16              MS. KIMBALL:  Except you are not.  You
17   are not inquiring about the disclosure.  You're
18   asking about --
19              MR. TEBO:  I am just ask --
20              MS. KIMBALL:  -- he expects to testify
21   to.
22              MR. TEBO:  I am just --
23              MS. KIMBALL:  And that's --
24              MR. TEBO:  -- asking if --
25              MS. KIMBALL:  -- question --
```



```
 1                    THE REPORTER:  We're talking over each
 2     other, so one at a time, please.
 3                    MR. TEBO:  Okay.  Just get this on the
 4     record.  I am just asking him about whether the
 5     subject matter for which he has been disclosed to
 6     testify at trial is the subject matter that he will
 7     testify concerning at trial.  And that's the purpose
 8     of the disclose --
 9                    MS. KIMBALL:  The -- the only possible
10     way that he could know that is through
11     communications with counsel and through discussion
12     of counsel's strategy for trial.
13                    MR. TEBO:  I just want to say --
14                    MS. KIMBALL:  You have disclosure --
15                    MR. TEBO:  -- I do not --
16                    MS. KIMBALL:  -- if -- if he testifies
17     to something outside the disclosure, then you are
18     certainly within your right to object to that
19     testimony at trial on that basis.  But he cannot
20     testify as we sit here today as to what he may
21     testify to at trial because that's exclusively a
22     question into what the attorney has prepared him for
23     and what the attorney's strategy is for trial.  It's
24     -- it's a matter that is purely work product.
25                    MR. TEBO:  So do I understand that you
```



```
 1   are standing by the work-product privilege and
 2   instructing the witness not to answer the question;
 3   is this -- is what's in your disclosure all you
 4   intend to testify about at trial?
 5                 MS. KIMBALL:  Yes.  It's -- it's work
 6   product.  It's potentially attorney/client --
 7                 MR. TEBO:  Okay.  Good.  That's all --
 8   that's all I need to understand.  I will proceed
 9   with the deposition.
10                 I don't have any other questions for
11   Captain Peters.  But before I pass the witness, I
12   would just like to state for the record that Texas
13   was impeded from learning the facts that the witness
14   may testify to at trial and Texas may take up this
15   matter with the magistrate.
16                 MS. KIMBALL:  I will -- I will respond
17   that Texas wasn't impeded from learning the facts
18   that he may testify to at trial.  Texas was impeded
19   from learning counsel's trial strategy and how he
20   may have been prepared for --
21                 MR. TEBO:  I did not ask any questions
22   about y'all's trial strategy.  I just asked him
23   about what he would testify to at trial; that's it.
24                 MS. KIMBALL:  Uh-huh.
25                 MR. TEBO:  That -- with that on the
```



```
 1   record, I will pass the witness.
 2                 MS. KIMBALL:  No questions.
 3                 THE REPORTER:  And then, Ms. Kimball,
 4   did you need to --
 5                 MS. KIMBALL:  We will read and sign.
 6                 THE REPORTER:  Okay.  And, Ms. Kimball,
 7   did you need to order a copy of the transcript?
 8                 MS. KIMBALL:  Yes, please.
 9                 THE REPORTER:  Thank you.
10                 MS. KIMBALL:  I will have our
11   procurement people get in touch.  Is the information
12   that was in the Zoom link, is that the information
13   that's best to contact you for ordering the
14   transcript?
15                 THE REPORTER:  I'm unsure what you're
16   looking at, so can we go off the record first?
17                 MS. KIMBALL:  Oh, sure.
18                 THE VIDEOGRAPHER:  Going off the
19   record, 10:41 a.m.
20                 (End of Proceedings, 10:41 a.m.)
21
22
23
24
25
```

