IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>GREG ABBOTT, in his capacity as GOVERNOR OF THE STATE OF TEXAS, and THE STATE OF TEXAS,<br><br>*Defendants*. | Case No. 1:23-cv-00853-DAE |

**UNITED STATES' MOTION *IN LIMINE*
TO LIMIT MICHAEL BANKS'S TESTIMONY TO LAY TESTIMONY**

In accordance with the Court's scheduling order (ECF 97), the United States respectfully requests the Court issue an order limiting Defendants Governor Greg Abbott and the State of Texas's (collectively, "Texas") purported mixed fact and expert witness, Michael Banks, to providing only lay testimony.

**Introduction**

Texas identified Michael Banks, Special Advisor to the Governor of Texas on Border Matters, as a purported mixed fact and expert witness under Federal Rule of Civil Procedure 26(a)(2)(C).  Because the topics for which Mr. Banks has been disclosed are not topics requiring "scientific, technical, or other specialized knowledge;" because his opinions are not based on "reliable principles and methods;" and because his opinions do not "reflect[] a reliable application of the principles and methods to the facts of the case," Mr. Banks should be limited to providing only lay testimony.

1

**Factual Background**

Texas disclosed the following topics on which Mr. Banks is expected to opine:

1. The buoys are an extremely effective deterrent against transnational crime and have proven to be incredibly effective in preventing the illegal entry of persons, guns, drugs, and goods into Texas. Current deployed buoys are monitored 24 hours a day 7 days a week, and there have been 0 observed illegal crossing over the buoys since they were placed in the river.

2. It is my view, that buoys do not pose a danger to the public or law enforcement. The Rio Grande River has numerous natural dangers, including the currents, depth, rocks, debris (both sunken and floating), large boulders. As a moving body of water, the river is constantly changing. Each of these changes present a danger to boats operating on the river. That [sic] buoys, on the other hand, are affixed and constant so their location is marked on maps, GPS systems, and known to locals and law enforcement. Additionally, the buoys are bright orange for visual identification, which prevents collision by passing vessels. The buoys run perpendicular [sic] to the banks of the rive [sic] to ensure the water flow and navigation of vessels up and down the river is unimpeded.

3. In my opinion, the buoys do not inhibit law enforcement from doing their jobs. Federal law enforcement can access the river from both sides of the buoys, just as state law enforcement, local law enforcement, local fire department, news crews, and maintenance workers do. The buoys assist law enforcement in preforming [sic] their job, as no illegal cross border activity has happened at this portion of the border, instead the buoys have funneled that traffic and proven to be a force multiplier. While employed at CBP [Customs and Border Protection], Mr. Banks is aware of the agency engaging in the process of putting the very came [sic] buoys in the Rio Grande River, however when the administration changed the buoy contracts where [sic] shelved. The decision to shelve the buoys was not an operational, legal, or safety decision, but instead a political one.

4. The conditions in recent years in the Rio Grande area where the buoys are located have deteriorated to such an extent that placing the buoys was necessary. Over the last three and a half years, the Eagle Pass area has become not only a major public safety issue, but also a humanitarian crisis. The Del Rio Sector, where the buoys are located, saw a 547% increase in cross border related deaths over the last three and a half-year period. Prior to the installation of the buoys there were thousands of illegal immigrants huddled under a bridge, with thousands more held in retention pounds adjacent to the bridge, and thousands more still crossing with federal law enforcement doing nothing to stop this flow.

5. In my opinion, the buoys are a safe and effective means of preventing the entry of illegal persons, drugs, guns, and goods into Texas, and preventing drownings by those crossing illegally into the United States.

Ex. 1 (Tex. Expert Discl.) at 11-12.

**Standard of Review**

The Court has broad discretion to admit or exclude expert testimony. *See Shelter Ins. Cos. v. Ford Motor Co.*, No. 06-60295, 2006 WL 378047, at *2 (5th Cir. Dec. 18, 2006). The judge serves as a gatekeeper, ensuring that expert testimony is "not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 US 137, 147 (1999); *see also Daubert*, 509 U.S. at 589 (1993). "The proponent has the burden of establishing, by a preponderance of the evidence, that the pertinent admissibility requirements are met." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003). Federal Rule of Evidence 702 provides that a witness may provide an expert opinion only if:

> it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[1]

**Argument**

Each of the opinions Mr. Banks is expected to provide at trial are simply his personal opinions; they do not demonstrate any reliance on any scientific expertise, technical expertise, or specialized knowledge, nor are his opinions based on reliable, reproduceable methods. Instead, he offers only his personal observations and opinions based on review of immigration reports, seeing the barrier, and riding in a boat. None of these run-of-the-mill experiences imbue Mr. Banks with any specialized ability to understand or form opinions of the information he reviewed that any lay person and this Court do not similarly possess. *See United States v. Veasey*, 843 Fed.

---

[1] The Rule 702 Advisory Committee notes for the 2023 amendments clarify the distinction between admissibility and weight. The Committee explains that the proponent must show that it is more likely than not that the expert's opinions are reliable and so admissible. *See* Advisory Committee Notes on 2023 Amendments.

Appx. 555, 567 (5th Cir. 2021) ("[E]xpert testimony results from a process of reasoning which can be mastered only by specialists in the field.") (internal citations omitted).

First, Mr. Banks's opinion that the Floating Barrier is an effective crime deterrent is not based on any reliable, reproduceable methods. Ex. 1 ¶¶ 1, 4, 5.  Mr. Banks testified that he based his opinions on U.S. Customs and Border Protection's ("CBP") public data of the number of migrant crossings over the past 3.5 years in the Del Rio Sector. Ex. 2 (Banks Dep.) 14:19-15:9, 48:19-50:7.  But CBP's data regarding encounters at the Del Rio Sector cannot be pinpointed to the specific 1000-foot location of the barrier; the Sector covers 245 miles of the Rio Grande River.[2]  See https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/del-rio-sector-texas; https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters-by-component.

Additionally, consideration of these statistics does not require any scientific, technical, or specialized expertise.  This Court is just as capable as Mr. Banks of looking at migration statistics and determining if more or fewer people have illegally entered the United States since the barrier was placed in the Rio Grande in July 2023.

Moreover, Mr. Banks testified at his deposition that the floating barrier was one of many "force multipliers" Texas has deployed to curb illegal immigration and transnational crime. Ex. 2 (Banks Dep.) at 96:5-97:9.  He specifically acknowledged that he could not consider the Floating Barrier's effect in deterring illegal immigration in isolation from the other "force multipliers" Texas has put in place. He explained that the floating barrier is merely "one tool in a toolbox."

---

[2] Similarly, although Mr. Banks testified that he relied on daily reports from Texas's law enforcement identifying how many people (1) approached the Floating Barrier, (2) were turned back from the Floating Barrier, (3) made contact with the Floating Barrier, or (4) came over Floating Barrier, Ex. 2 (Banks Dep.) at 19:7-21:24, none of the reports Texas produced contained that information.

Ex. 2 (Banks Dep.) at 99:7-100:7.  Mr. Banks's opinion regarding the effectiveness of the Floating Barrier *itself* as a crime deterrent, separate and apart from Texas's other "force multipliers," is connected to existing data only by Mr. Bank's own *ipse dixit*. The Court should not accept such a speculative and unsupported opinion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Second, Mr. Banks's opinions that the Floating Barrier does not "pose a danger to the public or law enforcement" or "inhibit law enforcement from doing their jobs," Ex. 1 (Tex Expert Disc.) ¶¶ 2, 3, should be excluded because Banks has no specialized expertise to testify regarding the impact of barrier on navigation that would help the trier of fact.  *Id*. He was never certified to operate boats in the Rio Grande during his employment with CBP, and does not appear to have operated any boats for Texas law enforcement. Ex. 2 (Banks Dep.) at 31:25-32:11, 76:18-77:23, 121:2-4.  Moreover, his opinions about the safety of the Floating Barrier appear to be informed by the fact that the buoys are large and orange—which any layperson could observe—and not by any scientific, technical, or specialized knowledge. Ex. 2 (Banks Dep.) at 78:13-19.

Finally, although Texas's expert disclosure of Mr. Banks includes his "aware[ness] of [CBP] engaging in the [unidentified] process of putting the very [s]ame buoys in the Rio Grande River," his "aware[ness]" is not a matter of expertise.[3]  Ex. 1 (Tex. Expert Disc.) ¶ 3.  Mr. Banks testified that his knowledge of CBP's consideration of floating barriers is based in part on a mere *two* conversations with co-workers while he was employed at CBP, and that he was not

---

[3] As fully explained in the United States' Motion *in Limine* to Exclude Evidence and Argument Regarding CBP's Consideration of Floating Barriers filed concurrently with this motion, this information should also be excluded because it is irrelevant and because it is protected by deliberative process privilege.

personally involved with any decisionmaking. Ex. 2 (Banks Dep.) at 101:23-104:5. Mr. Banks further testified that the remainder of his knowledge comes from more recent conversations with retired CBP personnel (who cannot speak for the agency) since he left CBP. Ex. 2 (Banks Dep.) at 106:24-107:17. There is nothing "scientific, technical, or other[wise] specialized" about any opinions Mr. Banks may form simply from his conversations with other people. Moreover, Mr. Banks's recollection of and personal opinions about conversations cannot constitute "reliable principles and methods," much less a "reliable application of the principles and methods to the facts of the case." *Id*.

Accordingly, none of Mr. Banks's disclosed opinions rely on the type of scientific, technical, or specialized knowledge to which an expert may testify under Rule 702. Mr. Banks's experience instead limits him to testifying exclusively as a lay witness.

## Conclusion

For the foregoing reasons, the Court should limit Mr. Banks's testimony to only lay testimony.

Respectfully submitted,

Dated: July 26, 2024

| | |
|---|---|
| JAIME ESPARZA<br>UNITED STATES ATTORNEY | TODD KIM<br>ASSISTANT ATTORNEY GENERAL<br>Environment & Natural Resources Division |
| */s/ Landon Wade*<br>LANDON WADE<br>  Assistant United States Attorney<br>  Texas Bar No. 24098560<br>United States Attorney's Office<br>Western District of Texas<br>903 San Jacinto Blvd., Ste. 334<br>Austin, TX 78701 | */s/ Brian H. Lynk*<br>BRIAN H. LYNK<br>  Senior Trial Counsel<br>  DC Bar No. 459525<br>KIMERE J. KIMBALL<br>  Trial Attorney<br>  CA Bar No. 260660<br>ANDREW D. KNUDSEN |

(512) 370-1255 (tel.)  
(512) 916-5854 (fax)  
landon.wade@usdoj.gov

Trial Attorney  
DC Bar No. 1019697  
BRYAN J. HARRISON  
  Trial Attorney  
  FL Bar No. 106379  
U.S. Department of Justice  
Environmental Defense Section  
P.O. Box 7611  
Washington, DC 20044  
(202) 514-6187 (Lynk)  
(202) 514-8865 (fax)  
Brian.lynk@usdoj.gov  
Andrew.knudsen@usdoj.gov  
Kimere.kimball@usdoj.gov  
Bryan.harrison@usdoj.gov

*Counsel for the United States of America*

### CERTIFICATE OF SERVICE

I certify that on this date a copy of this filing was served on all counsel of record using this Court's electronic filing system.

*/s/  Kimere J. Kimball*  
KIMERE J. KIMBALL

### CERTIFICATE OF CONFERENCE

Pursuant to W.D. Tex. Rule CV-7(G), I certify that on July 26,2024, counsel for the United States advised counsel for Texas of its intent to file this motion and gave Texas a summary of the bases for its motion. Counsel for Texas responded that Texas opposes the United States' requested relief.

*/s/ Kimere J. Kimball*  
KIMERE J. KIMBALL