UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> GREG ABBOTT, in his capacity as § <br> GOVERNOR OF THE STATE OF § <br> TEXAS, and THE STATE OF TEXAS, § <br> § <br> *Defendants.* | CASE NO. 1:23-CV-00853-DAE |

DEFENDANTS' OPPOSED EMERGENCY MOTION
FOR A CONTINUANCE OR STAY OF TRIAL

Defendants Governor Greg Abbott and the State of Texas (collectively, "Texas") ask the Court to continue or stay the trial currently scheduled to begin August 6, 2024. Such a pause is needed to give the United States Court of Appeals for the Fifth Circuit time to consider and rule on Texas's soon-to-be-filed petition for a writ of mandamus seeking to require trial by jury to effectuate Texas's rights under the Seventh Amendment. Texas intends to seek similar relief from the Fifth Circuit if this Court does not grant this motion by **5:00 p.m. on Tuesday, July 30, 2024**.

Texas timely requested a jury trial in both tits original and amended answers. ECF 118; 120. *See Curtis v. Loether*, 415 U. S. 189, 190 (1974) (jury demand timely when in answer); *In re Texas Gen'l Petroleum Corp.*, 52 F.3d 1330, 1339 (5th Cir. 1995); 9 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 2318, 2320 (4th ed.). Contrary to the Federal Rules of Civil Procedure, although "a jury trial … ha[d] been demand[ed] under Rule 38," this action was never "designated on the docket as a jury action," Fed. R. Civ. P. 39(a). To correct this oversight, on June 21, 2024, Texas filed a motion requesting this Court set the case for jury trial. ECF 123. The same day, the United States countered with a motion to strike the jury demand before filing an opposition to Texas's motion to set the case for jury trial. ECF 125; 127. Texas filed a response in opposition to the United States' motion to strike on July 5, 2024, and the United States filed its reply on July 12, 2024. ECF 150, 155. At no time during these proceedings was the case ever designated for jury trial.

On July 24, less than two weeks from the start of trial, this Court denied Texas's motion to set this case for a jury trial. ECF 190. It rejected the argument that the Rivers and Harbors Act's statutory scheme authorizes criminal punishment and that the United States' claim under the Act was analogous to a legal action for ejectment. ECF 190 at 12–15. The Court reasoned that the claim under the Act does not request damages and is not like an ejectment action but is "purely equitable." *Id.* at 13, 15. Further, it distinguished Texas's cases as involving actions to try title or recover possession of real property, neither of which the United States was attempting. *Id.* at 13.

**I.     The Fifth Circuit will likely issue a writ of mandamus to require a jury trial in this case.**

This Court abused its discretion by denying Texas its constitutional right to a jury trial. An abuse of discretion occurs when a court "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc). If the court abuses its discretion in any of these ways, then the petitioner's "right to issuance of the writ is necessarily clear and indisputable." *Id.* at 311.

With denials of a right to a jury, the Fifth Circuit takes a more relaxed approach akin to de novo review. *See, e.g.*, *In re Jensen*, 946 F.2d 369, 370 (5th Cir. 1991) (considering *de novo* the legal question of entitlement to a jury and ultimately concluding "a writ of mandamus is an appropriate remedy to protect the valued right of trial by jury and to avoid costly, multiple trials"); *see also In re Clay*, 35 F.3d 190, 191, 198 (5th Cir. 1994) (applying de novo review, granting mandamus "instruct[ing] the district court to … honor the [party's] demand for trial by jury"); *accord In re Fibreboard Corp.*, 893 F.2d 706, 707 (5th Cir. 1990) (articulating "clear and indisputable" standard but applying de novo review to alleged violations of several protections including the Seventh Amendment). This reflects the priority of preventing abridgments of the right to a jury trial. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472 (1962); *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 511 n.20 (1959). So "where, as here, the mandamus petition alleges the erroneous deprivation of a jury trial … the only question presented is whether the district court erred in denying petitioner's request for a jury trial." *In re County of Orange*, 784 F.3d at 526. The court "may issue the writ even if the petitioner is unable to show a clear and indisputable right." *Id.*

Under these standards, this Court erred by rejecting Texas's request for a jury trial. The Rivers and Harbors Act lays out a criminal scheme that includes punitive fines and the United States' claim is analogous to the common-law ejectment action, which has historically been tried to a jury.

   **A.  The Seventh Amendment entitles Texas to a jury trial.**

"The right to trial by jury is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right has always been and should be scrutinized with the utmost care." *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024). The Constitution guarantees

2

that in "[s]uits at common law, … the right of trial by jury shall be preserved." U.S. Const. amend. VII. In interpreting the meaning of "suits at common law," the right to a jury is not limited to "'common law forms of action recognized' when the Seventh Amendment was ratified." *Jarkesy*, 144 S. Ct. at 2128 (quoting *Curtis*, 415 U.S. at 193). "[T]he Framers used the term 'common law' in the Amendment 'in contradistinction to equity, admiralty, and maritime jurisprudence." *Id.* (quoting *Parsons v. Bedford*, 28 U.S. 433, 445 (1830)). The right, therefore, "'embrace[s] all suits not of equity or admiralty jurisdiction, whatever may be the particular form which they may assume.'" *Id.* "The Court has construed" the Amendment's "language to require a jury trial on the merits in those actions that are analogous to 'Suits at common law.'" *Tull v. United States*, 481 U.S. 412, 417 (1987). As while "a jury trial was customary in suits brought in the English *law* courts," it was not in "18th-century case tried in courts of equity or admiralty." *Id.*

To find a particular cause of action within the Seventh Amendment, we look to whether the claim is "legal in nature," *Jarkesy*, 144 S. Ct. at 2128 (citation omitted), by examining "the cause of action and the remedy it provides." *Id.* at 2129. The former inquiry requires a "compar[ison] [of] the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Tull*, 481 U.S. at 417. The latter requires "examin[ation] [of] the remedy sought [to] determine whether it is legal or equitable in nature." *Id.*

Both lines of inquiry lead to the conclusion that the Rivers and Harbors Act claim is "legal in nature." The claim under the Act is analogous to ejectment, which requires a jury trial. *See Pernell v. Southall Realty*, 416 U.S. 363, 369-76 (1974). And the remedy provided for in the Act—a mixture of fines and a narrow form of injunctive relief allowing for the removal of obstructions in a waterway—is punitive and unlike the types of remedies traditionally available at equity.

1. **The Rivers and Harbors Act claim is "legal in nature."**

Under the Act, the United States claims jurisdiction over the "navigable capacity of any waters of the United States," and pursuant to that authority forbids "[t]he creation of any obstruction" in such waters unless "affirmatively authorized by Congress," as well as the "build[ing] or

3

commenc[ing] the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any … navigable river" absent its express permission. 33 U.S.C. § 403. Should anyone transgress this prohibition, the Act vests courts with the power to impose criminal "punishments," including "a fine not exceeding $2,500 nor less than $500" and "imprisonment (in the case of a natural person) not exceeding one year." *Id.* § 406. It "further" allows the court to order "the removal of any structures or parts of structures erected in violation of" the Act. *Id.*

This statutory scheme bears a striking resemblance to the common-law action for ejectment, which "by the time our Constitution was drafted," had "become the most important common-law possessory action" that was "the primary means of trying either the title to or the right to possession of real property." *Pernell*, 416 U.S. at 373. Ejectment could even be used to compel the removal of persons or chattels—including from waterways. 25 Am. Jur. 2d *Ejectment* §§ 1, 18; 78 Am. Jur. 2d *Waters* § 168; *see Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 365 (1977) (common-law ejectment action over dispute over parcels in navigable river). This analogy is particularly relevant here because it has long been held that a statutory action for a remedy akin to ejectment is subject to the Seventh Amendment. *See Pernell*, 416 U.S. at 369–76 (finding Seventh Amendment applied to District of Columbia's statutory ouster action "[w]hether or not a close equivalent … existed in England in 1791"). Historically, "questions of fact arising in an ejectment action were resolved by a jury." *Id.* at 374. In fact, "every action recognized in 1791 for the recovery of possession of property carried with it the right to jury trial." *Id.* at 375–76.

The cause of action under the Act and the common-law action for ejectment are analogous precisely because they "serve[] the same essential function—to permit the plaintiff to evict one who is wrongfully detaining possession and to regain possession himself." *Id.* at 375. That is exactly what the United States aims to do with this lawsuit. By virtue of the Act, it claims jurisdiction over the 1,000-foot stretch of the Rio Grande in which Texas has placed its buoy array and with it the statutory authority to oust Texas to "regain possession" of that area for itself. *Id.* Indeed, the operative complaint repeatedly requests an order "compel[ling]" Texas to remove the buoy system. ECF 60 at 10 at 10, Prayer for Relief ¶ 46(d)-(f). Texas has countered the United States'

4

argument not only with its own interpretation of the Act, but also that the Constitution's Self-Defense Clause provides *Texas* with the superior right to occupy this space. ECF 120 at 6. The Rivers and Harbors Act claim, then, bears all of the hallmarks of an action "to recover real property"—"a right ascertained and protected by courts at common law." *Pernell*, 416 U.S. at 376.

### 2. The remedies available in the Rivers and Harbors Act are "legal in nature."

An "examination of the remedy provided" reinforces that the claim is "legal in nature." "Remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law not courts of equity." *Tull*, 481 U.S. at 422. "Civil penalties," for example, "are a type of remedy at common law that could only be enforced in courts of law." *Jarkesy*, 144 S. Ct. at 2129. Generally, "an injunction is an equitable remedy." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982). But "there have always been nonmonetary remedies outside of equity—not only mandamus but also relief in replevin, *ejectment*, and habeas, as well as in declaratory judgment actions." Samuel L. Bray, *The Supreme Court and the New Equity*, 68 Vand. L. Rev. 997, 1045–46 (2015) (emphasis added).

In this case, the remedy provided by the Act is "all but dispositive." *Jarkesy*, 144 S. Ct. at 2129. It provides that a violation constitutes a misdemeanor, "punish[able] by a fine not exceeding $2,500 nor less than $500 or by imprisonment (in the case of a natural person) not exceeding one year." 33 U.S.C. § 406. And the United States' operative complaint appears to seek such fines, invoking the district court's jurisdiction in part on the basis of 28 U.S.C. § 1355—a statute that gives district courts exclusive jurisdiction over statutory causes of action for "fines, penalties, and forfeitures, pecuniary or otherwise," *id.*—and simultaneously requesting any relief "the Court may deem just and proper." ECF 60 at 10, ¶ 46 (h). This fine serves no "remedial purpose, but rather can only be explained as … serving either retributive or deterrent purposes." *Jarkesy*, 144 S. Ct. at 2129. Indeed the Act itself describes this "fine" as a "punishment[]." 33 U.S.C. § 406. And the statute "tie[s] the availability of" the fine to "the culpability of the defendant and the need for deterrence, not the size of the harm that must be remedied." *Jarkesy*, 144 S. Ct. at 2129–

5

30. So courts have routinely empaneled juries to adjudicate claims brought under the Act. *See, e.g.*, *Leovy v. U.S.*, 177 U.S. 621, 622 (1900); *U.S. v. Raven*, 500 F.2d 728, 730 (5th Cir. 1974).†

True, the Act also authorizes—and most of the operative complaint seeks, ECF 60 at 9–10, ¶ 46—"further" relief by an order requiring the "removal of any structures or parts of structures erected in violation of" it. 33 U.S.C. § 406. But this narrow form of relief is no less legal in nature than the fines. When Congress intends to create an equitable remedy, it often deploys "the phrase 'just and proper,'" "invok[ing] the discretion that courts have traditionally exercised when faced with requests for equitable relief." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1577 (2024). That is, "[t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). But the Act confers no such "discretion." Instead, it permits a district court to order one narrow form of affirmative relief: the "removal" of "structures" in a navigable waterway. 33 U.S.C. § 406. That limited relief is thus akin to the remedy in ejectment: "permit[ting] the plaintiff to evict one who is wrongfully detaining possession and to regain possession himself." *Pernell*, 416 U.S. at 376. And actions for ejectment—along with every other "action recognized in 1791 for the recovery of possession of property"—"carried with it the right to a jury trial." *Id.* at 375–76.

### 3. This Court erred in denying Texas's right to a jury trial.

This Court reasoned that the claim under the Act "in no way resembles the common law ejectment action." ECF 190 at 13. As to the nature of the action, it held that here "the United States is not trying its title to the Rio Grande River, attempting to recover possession of real property, or bringing a claim as a wrongfully ejected lessee." *Id.* But the Court erred in requiring a showing that the claim be an exact match to an 18th-century action. It is only required that the two causes of action be "analogous" or "similar to" one another—not on all fours, *Tull*, 481 U.S. at

---

† Texas previously urged this Court to dismiss the Rivers and Harbors Act claim against Texas and its Governor (sued in his official capacity) because they are not "natural persons" subject to the criminal punishment that § 406 authorizes. ECF 62 at 8–12; ECF 65 at 12–14. This Court rejected that argument and agreed with Plaintiff. ECF 114 at 7–11. There can therefore be no suggestion now that these punitive remedies are categorically unavailable as "other relief" the Court could award in this case. ECF 60 at 10.

6

417, as "it has long been settled that the right extends beyond the common-law forms of action recognized at that time." *Curtis*, 415 U.S. at 193. "[T]he Seventh Amendment does apply to novel statutory claims, so long as they are *akin* to common law claims." *Jarksey*, 144 S. Ct. at 2139. So "[w]hether or not a close equivalent to" a claim under the Act "existed in England in 1791 is irrelevant for Seventh Amendment purposes, for that Amendment requires trial by jury in actions unheard of at common law, provided the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than an action in equity." *Pernell*, 416 U.S. at 375.

By requiring an exact match between the two causes of action, this Court overlooked the common thread linking the claim under the Act and the ejectment action: both "serve[] the same essential function—to permit the plaintiff to evict one who is wrongfully detaining possession and to regain possession himself." *Id*. The Court rejected this conclusion on the ground that the United States is merely enforcing "a [c]ongressional mandate to keep navigable waterways accessible to all, not a right to possession of real property." ECF 190 at 13, 14. But the United States can only seek to enforce that mandate *because* it is claiming a right to possession of the contested portion of the Rio Grande. After all, the very basis of its statutory claim is that the contested 1,000-foot stretch of the Rio Grande is a "water of the[] of the *United States*," 33 U.S.C. § 403 (emphasis added), subject to its exclusive jurisdiction and from which it is authorized to exclude Texas.

Furthermore, because "[r]egulation of land and water use lies at the core of traditional state authority," *Sackett v. EPA*, 598 U.S. 651, 679 (2023), and Texas retained its sovereignty over the waterways within and along its territory upon its admission, *Pollard v. Hagan*, 44 U.S. (3 How.) 212, 230 (1845), through its claim the United States necessarily asserts a superior possessory interest over this contested stretch of the Rio Grande by virtue of "rights surrendered and powers granted by the Constitution to the Federal Government," *PPL Mont., LLC v. Montana*, 565 U.S. 576, 590 (2012). This is precisely the type of possessory dispute that the Supreme Court has held is akin to an ejectment action requiring a jury. *See Pernell*, 416 U.S. at 373–76.

This Court's analysis of the remedy fares no better. It concluded that the claim was not legal in nature because the United States "brings no claim for damages" but instead "asks for an

7

injunction, which is considered to be equitable relief." ECF 190 at 13, 14. But this overlooks that the complaint seeks any "other relief" authorized by the Act. As discussed, the criminal fines it imposes are punitive in nature and render the claim "legal in nature." It also overlooks that the type of affirmative relief provided for by the Act is not the typical type of free-wheeling injunction issued in equity that allows the judge to "exercise … discretion," *Starbucks*, 144 S. Ct. at 1577, by "mould[in]g each decree to the necessities of the particular case." *Hecht*, 321 U.S. at 329.

### B. The Fifth Circuit will likely find mandamus appropriate here.

The Court of Appeals will also likely find that Texas also meets the other two elements of the test for mandamus relief: issuance of the writ to correct the district court's error is appropriate under the circumstances, and Texas lacks any other adequate means to protect its rights. For more than a century, the Supreme Court has identified the writ of mandamus as proper for vindicating Seventh Amendment rights improperly denied by a district court. Issuing such relief would therefore be "appropriate under the circumstances" here. *In re Volkswagen*, 545 F.3d at 311; *see generally* 9 Wright & Miller, Fed. Prac. & Proc. Civ. § 2322 (4th ed.) ("mandamus may be used routinely to require a jury trial if it has been denied improperly."); Nathan A. Forrester, *Mandamus as a Remedy for the Denial of Jury Trials*, 58 U. CHI. L. REV. 769 (1991) ("most federal courts of appeals now routinely use mandamus to compel a lower court to conduct a jury trial.").

In *Dairy Queen, Inc. v. Wood*, for example, the Supreme Court reversed a denial of mandamus relief with respect to a district court's order striking a jury-trial demand because it was "inconsistent with the protections already clearly recognized for the important constitutional right to trial by jury in [the Supreme Court's] previous decisions." 369 U.S. at 470. In determining that the "district judge erred in refusing to grant petitioner's demand for a jury trial" and that "[t]he Court of Appeals should have corrected the error of the district judge by granting the petition for mandamus," *id.* at 479, the Supreme Court "emphasize[d] the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the right to trial by jury," *id.* at 472.

8

*Dairy Queen* followed on the heels of *Beacon Theaters*, in which the Supreme Court reversed the Ninth Circuit's refusal to grant mandamus relief to a petitioner who was improperly denied the right to a jury trial. 359 U.S. at 511. It explained that "because 'Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence[,] … any seeming curtailment of the right to such a jury trial should be scrutinized with the utmost care.'" *Id.* at 501. And in expressly rejecting the respondent's argument that "mandamus is not available under the All Writs Act" to correct this error, the Court pointedly stated that "the right to grant mandamus to require a jury trial where it has been improperly denied is settled." *Id.* at 511 & n.20. Among the welter of decisions cited by the Court to support that proposition, it pointed to *In re Simons*, in which the Supreme Court itself issued a writ of mandamus to a district court to rectify an erroneous denial of a right to a jury trial. 247 U.S. 213 (1918) (Holmes, J.). The Court explained that the wrongful denial of a jury trial "should be dealt with now," before a trial occurs, and "mandamus may be adopted to require the District Court to" satisfy that right. *Id.* at 239–40.

The Fifth Circuit has long used mandamus to correct erroneous denials of a right to a jury trial. *See, e.g.*, *In re Pan-Am Life Ins. Co.*, 188 F.2d 833, 834 (5th Cir. 1951) ("[I]n a case where a jury trial is denied to persons who are entitled to it as a matter of right, mandamus lies to compel the judge to grant it."); *In re Jensen*, 946 F.2d at 371 ("[W]e are persuaded that a writ of mandamus is an appropriate remedy to protect the valued right of trial by jury."); *Mut. Fire Ins. v. Booth*, 24 F.3d 240 (5th Cir. 1994) (finding mandamus the only proper procedure for appealing denial of jury trial because that denial is interlocutory); *cf. In re Clay*, 35 F.3d 190, 191, 198 (5th Cir. 1994) (observing that no party "contest[s] the propriety of review via petition for writ of mandamus" and granting mandamus to "instruct the district court to … honor the [party's] demand for trial by jury").

Texas also lacks any "other adequate means to obtain the relief" it seeks through the ordinary appellate process. *In re Volkswagen*, 545 F.3d at 311. When a district court deprives a party of its right to trial by jury, "[i]t is an order that should be dealt with now, before" that party "is put to the difficulties and the courts to the inconvenience" of holding a trial laboring "under a mistake." *In re Simons*, 247 U.S. at 239–40. Were it otherwise, the parties and the court would be forced to

9

endure "costly, multiple trials." *In re Jensen*, 946 F.2d at 371. That is in part why the Supreme Court has "emphasized the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury." *Dairy Queen*, 369 U.S. at 472. And it is why none of the rich body of cases discussed above vindicating the venerable right to a jury trial by way of mandamus relief insisted that a party endure the burden and expense of an improper bench trial before obtaining such relief. Consequently, the Fifth Circuit will likely determine that mandamus is the only form of remedy available to rectify this Court's error.

II.  **This Court should continue the trial to allow consideration of Texas's right to a jury.**

This Court has inherent power to stay proceedings, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936), and scheduling orders may be modified for "good cause." *Sw. Refrigerated Warehousing Servs. Joint Venture v. M.A. & Sons, Inc.*, No. EP-16-cv-00421, 2017 WL 8777365, at *1 (W.D. Tex. Dec. 20, 2017) (Guaderrama, J.).

While motions to continue a trial are in the broad discretion of this Court, *see Clinton v. Jones*, 520 U.S. 681, 706–07 (1997), that discretion must evaluate the totality of the circumstances, including the amount of time available, the moving party's responsibility for the situation, and the likelihood of prejudice. *See United States v. Stalnaker,* 571 F.3d 428, 439 (5th Cir. 2009). The Fifth Circuit will reverse denial of a continuance if it "result[s] in serious prejudice" to the movant. *United States v. German*, 486 F.3d 849, 854 (5th Cir. 2007). A bench trial would plainly prejudice Texas and its constitutional entitlement. By rejecting that right so close to the trial date, this Court has made a continuance the only avenue to allow consideration of this issue.

## Conclusion

If this Court does not grant this motion by **5:00 p.m. on Tuesday, July 30, 2024**, Texas will petition the Fifth Circuit for a writ of mandamus and a request to stay the trial pending its determination on whether Texas is entitled to trial by jury. The Court of Appeals has independent power to stay this Court's proceedings. *See, e.g.*, *United States v. Dunbar*, 611 F.2d 985, 989 (5th Cir. 1980) (en banc). Texas respectfully urges this Court to grant a continuance or stay of trial.

Dated: July 29, 2024

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

Office of the Attorney General
P.O. Box 12548, MC-009
Austin, TX 78711-2548
(512) 936-2172

Respectfully submitted.

*/s/ Ryan D. Walters*
**RYAN D. WALTERS**
Chief, Special Litigation Division
Texas State Bar No. 24105085
ryan.walters@oag.texas.gov

**DAVID BRYANT**
Senior Special Counsel
Texas State Bar No. 03281500
david.bryant@oag.texas.gov

**JOHNATHAN STONE**
Special Counsel
Texas State Bar No. 24071779
johnathan.stone@oag.texas.gov

**MUNERA AL-FUHAID**
Special Counsel
Texas State Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

**KYLE S. TEBO**
Assistant Attorney General
Texas State Bar No. 24137691
kyle.tebo@oag.texas.gov

**ZACHARY BERG**
Special Counsel
Texas State Bar No. 24107706
zachary.berg@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF CONFERENCE

I certify that on July 29, 2024, I conferred via email with Andrew Knudson, counsel for Plaintiff, who confirmed that it is opposed to this motion.

*/s/Ryan D. Walters*
RYAN D. WALTERS

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 29, 2024, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Ryan D. Walters*
RYAN D. WALTERS