```
1                 IN THE UNITED STATES DISTRICT COURT
                   FOR THE WESTERN DISTRICT OF TEXAS
2                            AUSTIN DIVISION

3  UNITED STATES OF AMERICA,           ) AU:23-CV-00853-DAE
                                       )
4       Plaintiff,                     )
                                       )
5  v.                                  ) AUSTIN, TEXAS
                                       )
6  GREG ABBOTT, ET AL.,                )
                                       )
7       Defendants.                    ) AUGUST 6, 2024

8

9

10          ***********************************************
                   TRANSCRIPT OF STATUS CONFERENCE
11            BEFORE THE HONORABLE DAVID A. EZRA
            ***********************************************
12

13

   FOR THE PLAINTIFF:   BRIAN H. LYNK
14                       U.S. DEPARTMENT OF JUSTICE
                         ENVIRONMENTAL DEFENSE SECTION
15                       P.O. BOX 23986
                         WASHINGTON, D.C. 20026-3986
16
                         ANDREW D. KNUDSEN
17                       BRYAN JAMES HARRISON
                         KIMERE J KIMBALL
18                       U.S. DEPARTMENT OF JUSTICE
                         ENVIRONMENT & NATURAL RESOURCES
19                       P.O. BOX 7611
                         WASHINGTON, D.C. 20044
20
                         LANDON ALLEN WADE
21                       UNITED STATES ATTORNEY'S OFFICE
                         903 SAN JACINTO BOULEVARD, SUITE 334
22                       AUSTIN, TEXAS 78701

23                       MARY F. KRUGER
                         UNITED STATES ATTORNEYS OFFICE
24                       CHIEF, CIVIL DIVISION
                         601 NW LOOP 410, SUITE 600
25                       SAN ANTONIO, TEXAS 78216
```

```
 1  FOR THE DEFENDANTS:   MUNERA AL-FUHAID
                          MONROE DAVID BRYANT, JR.
 2                        JOHNATHAN STONE
                          KYLE STEPHEN TEBO
 3                        OFFICE OF THE ATTORNEY GENERAL
                          PO BOX 12548
 4                        AUSTIN, TX 78711-2548

 5                        RYAN DANIEL WALTERS
                          OFFICE OF THE TEXAS ATTORNEY GENERAL
 6                        SPECIAL LITIGATION DIVISION
                          209 WEST 14TH STREET, 7TH FLOOR
 7                        AUSTIN, TEXAS 78701

 8                        JAMES P. SULLIVAN
                          OFFICE OF THE GOVERNOR
 9                        P.O. BOX 12428
                          AUSTIN, TEXAS 78711-2428
10
    COURT REPORTER:       ARLINDA RODRIGUEZ, CSR
11                        501 WEST 5TH STREET, SUITE 4152
                          AUSTIN, TEXAS 78701
12                        (512) 391-8791

13

14

15

16

17

18

19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

```
09:10:45   1        (Open court)
09:10:45   2            THE CLERK:  AU:23-CV-853, United States of
09:10:49   3   America v. Greg Abbott, et al.
09:10:53   4            THE COURT:  All right.  Good morning to all of
09:10:55   5   you.  Can we have appearances, please.
09:11:00   6            MR. LYNK:  Good morning, Your Honor.  For the
09:11:01   7   United States, Brian Lynk from the Department of Justice.
09:11:05   8   With me are Andrew Knudsen, Kimere Kimball,
09:11:09   9   Bryan Harrison, as well as Mary Kruger and Landon Wade of
09:11:15  10   the U.S. Attorney's Office.
09:11:18  11            MS. AL-FUHAID:  Good morning, Your Honor.
09:11:19  12            THE COURT:  Good morning.
09:11:19  13            MS. AL-FUHAID:  Munera Al-Fuhaid on behalf of
09:11:19  14   Defendants Governor Greg Abbott and the State of Texas.
09:11:23  15   And with me are my colleagues from the Texas Attorney
09:11:25  16   General's Office, David Bryant, Johnathan Stone,
09:11:29  17   Zach Berg, Kyle Tebo, Ryan Walters.
09:11:42  18            THE COURT:  And my buddy back there in the
09:11:42  19   courtroom, good to see you.  You want to make your
09:11:42  20   appearance?
09:11:42  21            MR. SULLIVAN:  Sure.  James P. Sullivan,
09:11:45  22   General Counsel for the Governor of Texas, Greg Abbott.
09:11:47  23            THE COURT:  Good.  Good to see you.
09:11:49  24            MR. SULLIVAN:  Thanks, Judge.
09:11:49  25            THE COURT:  Okay.  Well, we've had an eventful,
```

09:11:55  1  if not entirely clear opinion or a bunch of opinions, out

09:12:01  2  of the Fifth Circuit.  And one of the things we need to

09:12:09  3  do today is decide how we're going to go forward.

09:12:11  4        I think the first thing we have to keep in mind

09:12:15  5  is that the *en banc* ruling was a ruling on a preliminary

09:12:19  6  injunction, not the merits.  We haven't had the trial in

09:12:21  7  this case yet, so there is room for additional evidence.

09:12:25  8        Now, to the extent that the *en banc* ruling laid

09:12:29  9  out legal principles, those legal principles of course

09:12:32  10  are binding.  But the problem is -- and several judges

09:12:41  11  who have read the opinions, and some law professors I

09:12:45  12  think have also weighed in -- we have a nine-nine split.

09:12:56  13        So you have the majority, which is nine judges,

09:13:06  14  for the -- for most of it, but then you have seven

09:13:13  15  judges -- seven or eight judges; I'm not sure -- who

09:13:18  16  Judge Richman, who did not agree with the majority.  She

09:13:23  17  concurred in the judgment, but she did not agree with the

09:13:26  18  majority on the test for navigability.  She took a

09:13:32  19  dispute with that.  And Judge Ho didn't say anything

09:13:35  20  about it at all.  So you actually have, if you look at

09:13:41  21  that issue, what could be said to be a nine-nine split.

09:13:48  22        I'm not sure about that.  I'm not taking that

09:13:51  23  position, okay?  I don't know.  But it's something that

09:14:01  24  the parties are going to have to address.

09:14:04  25        Typically, if you have -- for instance, I'll

09:14:08  1  give you an example.  I was on a panel.  I sit regularly
09:14:12  2  with the Ninth Circuit Court of Appeals, and have for
09:14:15  3  over 35 years.  And I was on a panel that made a very
09:14:20  4  important ruling involving the State of Oregon, and that
09:14:35  5  was appealed to the Supreme Court.  Justice Kagan had to
09:14:46  6  recuse herself because she had been Solicitor -- I guess
09:14:49  7  she had been -- I'm not sure.  I think she was Solicitor
09:14:52  8  General, right? at the time.  So she had to recuse
09:14:56  9  herself, and the Supreme Court split four-four.  The end
09:14:59  10  result was our ruling, the Ninth Circuit ruling, was
09:15:03  11  affirmed.
09:15:07  12        Now, we have done some research of our own on
09:15:16  13  this, and I think what we have to do is there's going to
09:15:20  14  have to be some parsing of these opinions and looking at
09:15:24  15  them carefully.  But the point is that it isn't as clear
09:15:28  16  cut as one would seem, and I think both parties need to
09:15:32  17  understand that.  I think we need to look at it very
09:15:36  18  carefully.
09:15:36  19        And I think Governor Abbott, who is himself an
09:15:42  20  attorney and a former State Supreme Court Justice, a very
09:15:46  21  bright man, he's made, obviously, a statement in support
09:15:51  22  of the decision, but he's been very -- otherwise, very
09:15:55  23  reserved, I thought, which leads me to believe that he
09:16:00  24  understands that this isn't quite as clear-cut as one
09:16:03  25  might think.

09:16:04    1            I don't know.  I could be wrong here.  But it
09:16:11    2    doesn't matter, quite frankly, because this case, I
09:16:15    3    predict -- and I'm a good predictor.  I've had four
09:16:23    4    cases -- three or four cases that I said -- that I've
09:16:25    5    decided that I said would go to the Supreme Court, and
09:16:28    6    all four of them did.
09:16:34    7            I did okay at the Supreme Court except in
09:16:41    8    bump stock.  I got -- I didn't do well in bump stock, but
09:16:45    9    I still think I was right on bump stock.  The others the
09:16:52   10    Fifth Circuit was reversed.  I was reversed, and then
09:16:55   11    they were reversed by the Supreme Court.  The most recent
09:16:59   12    one was the 1983 case involving Castle Hills.  And had
09:17:06   13    good dissent from, actually.  Judge Oldham wrote a strong
09:17:10   14    dissent from the panel opinion.  And think I -- Judge
09:17:14   15    Oldham and I were right, and the Supreme Court thought so
09:17:16   16    also.
09:17:16   17            But this case will end up, I think, in the
09:17:19   18    Supreme Court.  So you have to take the long view.  And
09:17:24   19    for sure SB 4 will end up at the Supreme Court.  So we
09:17:29   20    have to take the long view in this case and remember
09:17:35   21    that, whatever we do, we have to do with a light of
09:17:40   22    trying to create the very best record we can, both sides,
09:17:45   23    because it isn't going to end here.
09:17:50   24            Whatever I do, we don't know whether we have a
09:17:53   25    jury yet.  You know, that's still up there.  And who

09:18:01  1   knows?  I don't know why the State of Texas would

09:18:08  2   actually want a jury in this case, but all right.  Unless

09:18:13  3   it was just a way to delay the case.  I don't know.  I'm

09:18:16  4   not sure.  I would hope not.  But a lot of people have

09:18:26  5   been shaking their heads on that one.

09:18:28  6           You know, I haven't ruled entirely against the

09:18:30  7   State of Texas in this case.  I dismissed a cause of

09:18:33  8   action brought by the -- by the United States Government

09:18:41  9   in this case.  It wasn't mentioned, I don't think, in the

09:18:44 10   *en banc*, but it did happen.

09:18:45 11           So here we are.  Do we have any additional

09:18:55 12   discovery that needs yet to be done before we go to

09:18:58 13   trial?

09:18:58 14           MS. AL-FUHAID:  No, Your Honor.

09:18:59 15           THE COURT:  You don't?

09:19:01 16           MS. AL-FUHAID:  Not from our perspective.

09:19:04 17           MR. LYNK:  Your Honor, we're not requesting

09:19:05 18   that at this time.  Now, we are of course looking, as you

09:19:10 19   mentioned, at the opinion carefully.  We're also looking

09:19:13 20   at -- we'll be making our evaluation as to whether to

09:19:17 21   seek further appeal from the opinion.  I think as part of

09:19:20 22   that, of course, we're going to reevaluate the evidence

09:19:23 23   that we have in light of the discussions in the opinion.

09:19:27 24   And so I can't rule that out entirely.

09:19:29 25           THE COURT:  Yeah.  I want to make it very clear

09:19:31  1    that I am personally not saying there is a definitive

09:19:36  2    split here.  What I'm saying is that has -- that is the

09:19:42  3    chatter, okay?  There are law professors and judges who

09:19:47  4    have said that Judge Willett's opinion is not

09:19:51  5    precedential.  Now, I'm not saying that.  I want to make

09:19:55  6    that very, very clear.

09:19:58  7            MR. LYNK:  Yes.

09:19:58  8            THE COURT:  I don't want to read a newspaper

09:20:01  9    article saying Judge Ezra said Judge Willett's opinion is

09:20:05 10    not precedential.  I didn't say that, and I'm not saying

09:20:08 11    it.

09:20:08 12            MR. LYNK:  Understood, Your Honor.  But just on

09:20:10 13    your question of discovery, I think -- again, we're not

09:20:12 14    asking for it today, but I think we'd like the

09:20:14 15    opportunity to give you a firmer answer once we evaluate.

09:20:16 16            THE COURT:  Okay.  Let me explain to you, now,

09:20:19 17    the parties had requested a 60-day continuance.  And you

09:20:22 18    might be wondering why there was a joint motion filed.

09:20:26 19    Or I guess the State had agreed to it or something?

09:20:29 20            MS. AL-FUHAID:  We did not oppose the request,

09:20:31 21    Your Honor.

09:20:31 22            THE COURT:  You didn't oppose the request.

09:20:33 23    Okay.  Well, that's agreeing to it.

09:20:36 24            So why -- I don't know what -- is that --

09:20:41 25    that's kind of a --

09:20:43  1        Anyway, so the State didn't oppose the request.

09:20:48  2   The government made it.  Why -- why 90 days instead of 60

09:20:52  3   days?  The reason is you have to prepare for trial.  I

09:20:59  4   used to be a trial lawyer in my time.  I don't know how

09:21:03  5   long it will take the panel that is selected -- I don't

09:21:09  6   even know who the panel is in this case.  Do we know?

09:21:12  7        MS. AL-FUHAID:  We're not aware, Your Honor.

09:21:14  8        THE COURT:  Yeah.  I don't think we even know

09:21:16  9   who the panel is.  I don't know how long it's going to

09:21:22 10   take them.  I mean, I'm still waiting even to this day

09:21:25 11   for a panel ruling on the SB 4 case.  And I'm not chiding

09:21:28 12   the Fifth Circuit for that; it's a difficult issue.  But

09:21:31 13   they haven't come down with an opinion in that, and that

09:21:33 14   was argued quite some time ago.

09:21:36 15        So sometimes it takes a while to get these

09:21:39 16   rulings out.  And I know that because, as I said, I sit

09:21:42 17   on the Ninth Circuit.  In fact, I'm about to go off to

09:21:46 18   Portland to sit on the Ninth Circuit again.  We have some

09:21:49 19   important cases we're going to be deciding.  So I'm

09:21:52 20   not -- I'm not critical at all.  But we don't know.

09:21:56 21        And my concern was that, once you get a ruling,

09:22:01 22   you need to prepare for trial.  And sometimes you prepare

09:22:04 23   differently if you're going to try the case to a jury

09:22:11 24   versus a judge.  And I don't want to put you in the same

09:22:15 25   kind of squeeze play the State likes to put me in.

```
09:22:21   1              By the way, I think that's a bad practice.  If
09:22:24   2    I were you, I would not continue -- I would talk to
09:22:26   3    whoever is in charge of that and not do these letters to
09:22:30   4    the judge saying, if you don't rule by tomorrow at 5:00,
09:22:33   5    I'm doing this.  It kind of sounds like a threat, and
09:22:37   6    federal judges don't do threats well.  I think it's not a
09:22:45   7    good idea to do that.
09:22:46   8              I have never in my entire 35, almost 36 years,
09:22:50   9    on the bench had it done to me, except by the State of
09:22:53  10    Texas twice now.  So I think -- and I've handled big
09:22:59  11    cases.  So I think it's a better practice not to do that.
09:23:04  12    Now, does it prejudice me against the State?  Absolutely
09:23:08  13    not.  I mean, I made my ruling for the State in this case
09:23:14  14    after they did it the first time.  But I just think it's
09:23:18  15    not a good practice, and it doesn't look good.  It
09:23:22  16    doesn't look good to me, and I don't even think it looks
09:23:25  17    good to the Fifth Circuit.
09:23:31  18              It would be me like putting an order out
09:23:33  19    saying, you know, if the Fifth Circuit doesn't do
09:23:36  20    something by X number hours, I'm going to do this, this,
09:23:40  21    or this.  And I think a Fifth Circuit Judge would look at
09:23:44  22    that and say, Who does this guy think he is?  So I think
09:23:46  23    it's not a good practice, and I would really kind of
09:23:48  24    avoid it.
09:23:49  25              If you intend to file a motion or a writ of
```

09:23:53  1  mandamus and you want to let the judge know, I would just

09:24:02  2  say, We are contemplating filing a writ of mandamus in

09:24:08  3  this matter, period.  And if you're going to file it,

09:24:11  4  file it five minutes after you send me the notice.  Or

09:24:14  5  file it two days after.  But don't say, if you don't do

09:24:17  6  it by X hour, I'm going to drop the ball on you.  I think

09:24:22  7  it just doesn't play well.

09:24:27  8          But that's an aside, all right?  That's just a

09:24:30  9  little bit of advice from somebody who's been a lawyer

09:24:36  10  for 52 years.

09:24:39  11          So I wanted to be sure that both sides had a

09:24:44  12  full and ample opportunity to be prepared for whatever

09:24:49  13  kind of trial we get.  We may get a ruling.  I don't know

09:24:55  14  if they're going to have -- do they have oral argument on

09:24:57  15  this mandamus?

09:24:58  16          MS. AL-FUHAID:  Right now no oral argument has

09:25:00  17  been scheduled, but I believe they could if they chose to

09:25:02  18  have an argument.

09:25:03  19          THE COURT:  Sure.  Did they have oral argument

09:25:06  20  the last mandamus, the one that they denied?  The State

09:25:07  21  of Texas filed a mandamus the last time, and it was

09:25:10  22  denied.

09:25:11  23          MS. AL-FUHAID:  They did not.

09:25:12  24          THE COURT:  They did not have -- I think they

09:25:14  25  did, didn't they?

| | | |
|---|---|---|
| 09:25:16 | 1 | MR. SULLIVAN:  They had an emergency oral |
| 09:25:18 | 2 | argument remotely the day after from the U.S. Supreme |
| 09:25:23 | 3 | Court. |
| 09:25:23 | 4 | MS. AL-FUHAID:  I'm sorry, Your Honor.  I stand |
| 09:25:24 | 5 | corrected. |
| 09:25:29 | 6 | THE COURT:  That's okay.  Listen, this has been |
| 09:25:31 | 7 | crazy.  This has been crazy. |
| 09:25:33 | 8 | So the only reason I mentioned the chatter |
| 09:25:35 | 9 | about the nine-nine split is because I want you to be |
| 09:25:39 | 10 | ready for that.  I want you to argue it and be able to |
| 09:25:41 | 11 | prepare it.  If you sail along thinking, oh, well, we |
| 09:25:46 | 12 | won, maybe you didn't win as much as you thought you won |
| 09:25:49 | 13 | or maybe you did.  I don't know.  And I don't want the |
| 09:25:55 | 14 | State -- the Federal Government to be oblivious about |
| 09:26:01 | 15 | this either.  I mean, this is an important issue.  We |
| 09:26:04 | 16 | need to look at it. |
| 09:26:05 | 17 | There's an interesting water -- it's a water |
| 09:26:07 | 18 | case where the Supreme Court made it -- wrote a decision. |
| 09:26:13 | 19 | The case is -- my good law clerk Sam Krevlin found it -- |
| 09:26:20 | 20 | *Rapanos v. United States*.  It's not that old, really, in |
| 09:26:22 | 21 | Supreme Court terms.  It's a 2006 decision at 547 U.S. |
| 09:26:28 | 22 | 715, where there was this kind of a plurality.  And one |
| 09:26:35 | 23 | of the justices agreed with the judgment but didn't go |
| 09:26:38 | 24 | along with all of the reasoning. |
| 09:26:42 | 25 | So you had kind of this four-four -- I mean, |

| | | |
|---|---|---|
| 09:26:46 | 1 | you had four-four and then somebody else over here doing |
| 09:26:50 | 2 | something different.  And two circuits did not follow the |
| 09:26:56 | 3 | four opinion, the, quote/unquote, majority opinion, |
| 09:27:01 | 4 | didn't follow it.  And -- because they deemed it |
| 09:27:05 | 5 | non-precedential.  And there's another case called *June* |
| 09:27:10 | 6 | *Medical Services v. Russo* which you might want to look |
| 09:27:14 | 7 | at.  That's another one. |
| 09:27:15 | 8 | So there are these cases out there, and we need |
| 09:27:21 | 9 | to -- we need to look at it and I need to make a |
| 09:27:23 | 10 | decision.  I mean, I might ultimately decide that, under |
| 09:27:31 | 11 | the circumstance of this case, that Judge Willett's |
| 09:27:34 | 12 | opinion controls.  I might very well decide that, or I |
| 09:27:43 | 13 | may be convinced otherwise. |
| 09:27:44 | 14 | But let's just say there are law professors and |
| 09:27:47 | 15 | other judges out there who feel that isn't the case.  And |
| 09:27:51 | 16 | I have not -- and I promise you this is true.  I have not |
| 09:27:54 | 17 | made a decision one way or the other.  I want to hear |
| 09:27:59 | 18 | from you.  I want to hear from the lawyers.  I want to |
| 09:28:01 | 19 | look at it much more carefully. |
| 09:28:05 | 20 | THE COURT:  You want to introduce yourself, |
| 09:28:11 | 21 | because the record doesn't know who you are. |
| 09:28:11 | 22 | MR. STONE:  Yes, Your Honor.  I'm |
| 09:28:12 | 23 | Johnathan Stone.  I just wanted to get a little follow-up |
| 09:28:15 | 24 | on that and get a little clarity.  Are you wanting us -- |
| 09:28:18 | 25 | are you going to enter a briefing schedule related to |

| | | |
|---|---|---|
| 09:28:20 | 1 | this issue of what is the law of the case, and do you |
| 09:28:22 | 2 | want us to get with the plaintiff's counsel in this case |
| 09:28:25 | 3 | and see if we're in agreement on what is the law of the |
| 09:28:28 | 4 | case going forward?  Or, if we disagree, do you want that |
| 09:28:30 | 5 | briefed as well? |
| 09:28:31 | 6 | THE COURT:  Yeah.  I think that would be -- |
| 09:28:32 | 7 | that's one of the reasons we're here, is to try to figure |
| 09:28:35 | 8 | all this out.  I mean, the United States might agree with |
| 09:28:38 | 9 | you or they may disagree.  I mean, they're going to have |
| 09:28:43 | 10 | to look at it very carefully.  I mean, this is a tricky |
| 09:28:47 | 11 | one, and, ultimately, this may be a decision made by the |
| 09:28:55 | 12 | Supreme Court in this case. |
| 09:28:55 | 13 | But this case is not going to go to the Supreme |
| 09:28:58 | 14 | Court, I don't think, on this record.  I think it will go |
| 09:29:01 | 15 | after trial.  They've been a little bit hesitant to take |
| 09:29:06 | 16 | things up on partial records recently.  But I don't know. |
| 09:29:09 | 17 | You know a lot more.  You live in Washington.  I don't. |
| 09:29:17 | 18 | Although my cases seem to get there a lot. |
| 09:29:20 | 19 | I'm really happy, by the way, and this has |
| 09:29:24 | 20 | nothing to do with this case. |
| 09:29:24 | 21 | (Discussion off the record) |
| 09:30:12 | 22 | THE COURT:  All right.  What kind of a briefing |
| 09:30:15 | 23 | schedule, since we're going to allegedly go to trial -- |
| 09:30:20 | 24 | by the way, 90 days would have been the day after the |
| 09:30:24 | 25 | election, but I moved it one more day past.  Because I |

| | | |
|---|---|---|
| 09:30:29 | 1 | didn't want anybody, no matter what their view was, to be |
| 09:30:32 | 2 | so depressed or so happy that they couldn't focus, |
| 09:30:37 | 3 | depending upon what happens in the presidential election, |
| 09:30:41 | 4 | assuming we even know by then, right?  Sometimes you |
| 09:30:48 | 5 | don't. |
| 09:30:48 | 6 | I would certainly like to make a decision on |
| 09:30:51 | 7 | this prior to trial.  I don't think we want to go to |
| 09:30:54 | 8 | trial not knowing whether it's, as Judge -- the |
| 09:31:00 | 9 | majority -- the dissents plus Judge Richman feel that the |
| 09:31:07 | 10 | definition by Judge Willett was too narrow and that it's |
| 09:31:14 | 11 | you can use "across the river" or whether the majority, |
| 09:31:21 | 12 | which says you can't go "across the river." |
| 09:31:23 | 13 | I know what you do in a lake.  What do you do |
| 09:31:26 | 14 | with a lake?  You know, there's a lot of lakes that are |
| 09:31:30 | 15 | navigable waters in the United States.  What do you do |
| 09:31:32 | 16 | with a lake if you can't go across?  Let's say the lake |
| 09:31:36 | 17 | is long and you go across, what do you?  It's a problem. |
| 09:31:47 | 18 | Yes, ma'am? |
| 09:31:47 | 19 | MS. AL-FUHAID:  Your Honor, may I make a |
| 09:31:48 | 20 | suggestion?  The United States had requested a 60-day |
| 09:31:51 | 21 | stay of proceedings, and we agree with that request. |
| 09:31:55 | 22 | Would Your Honor be amenable to 60 days from now as |
| 09:32:00 | 23 | submitting briefing on this issue, and then that would |
| 09:32:02 | 24 | give them a chance to determine how they want -- |
| 09:32:05 | 25 | THE COURT:  Yeah.  Hopefully by then we will |

09:32:07  1  have heard on the mandamus petition as to whether we'll

09:32:09  2  have -- whether we have a jury or not doesn't matter on

09:32:13  3  this issue.

09:32:14  4          MS. AL-FUHAID:  If that is agreeable to them.

09:32:16  5          MR. LYNK:  Your Honor, I think a 60-day

09:32:18  6  interval to brief you on this question makes sense as

09:32:21  7  well.

09:32:21  8          THE COURT:  Yeah.  That's much longer than we

09:32:23  9  would normally do.  You know ...

09:32:29  10          MR. LYNK:  Your Honor, and the reason --

09:32:31  11          THE COURT:  Yeah.  No.  I'll tell you what.

09:32:33  12  I'm going to give you 45 days so I've 15 days to look at

09:32:37  13  it before we get to the 60-day point, okay?  Because I

09:32:40  14  really need to -- I need to do a lot of work on this

09:32:44  15  myself.

09:32:44  16          MS. AL-FUHAID:  And would this be simultaneous

09:32:46  17  briefing, Your Honor?

09:32:47  18          THE COURT:  Yes.  We know what the issue is.

09:32:49  19  We're not going to go back and forth like a ping-pong

09:32:52  20  tournament.

09:32:53  21          MR. LYNK:  Understood, Your Honor.

09:32:55  22          THE COURT:  Friday, September 20th.

09:32:58  23          MR. LYNK:  Do you -- are you proposing a page

09:32:59  24  limit for each side's brief on this?

09:33:02  25          THE COURT:  Generally, 35 pages.

| | | |
|---|---|---|
| 09:33:05 | 1 | MS. AL-FUHAID:  Thank you, Your Honor. |

09:33:05   1                    MS. AL-FUHAID:  Thank you, Your Honor.

09:33:06   2                    THE COURT:  That should be enough.

09:33:16   3                    MR. LYNK:  And, just to be clear, you just want

09:33:17   4   a single filing from each side?

09:33:19   5                    THE COURT:  Yes.

09:33:19   6                    MR. LYNK:  Should we reply to each other?

09:33:20   7                    THE COURT:  No.

09:33:22   8                    MR. LYNK:  Okay.  Thank you.  No.

09:33:23   9                    THE COURT:  No.  No.  Say everything you need

09:33:25   10  to say right then and there.  Yeah.  She was just asking

09:33:52   11  me about the pretrial deadlines and so forth, which

09:33:54   12  obviously have to be continued.  So you'll get that in

09:33:57   13  the order.

09:33:58   14                    MS. AL-FUHAID:  Thank you, Your Honor.

09:33:59   15                    THE COURT:  All right.  Anything else?

09:34:07   16                    MR. LYNK:  Nothing that the United States can

09:34:12   17  think of, Your Honor.

09:34:13   18                    MS. AL-FUHAID:  Nothing from Texas at the

09:34:14   19  moment, Your Honor.  Thank you.

09:34:15   20                    THE COURT:  Let me again make myself very

09:34:18   21  clear, because for some reason I've been misquoted and

09:34:25   22  people have jumped to conclusions.  I have not reached

09:34:29   23  any decision as to what or even if there is an issue with

09:34:34   24  respect to Judge Willett's majority opinion.  I'm not

09:34:40   25  suggesting here that it isn't precedential, all right?  I

09:34:46  1   don't know.

09:34:46  2          I'm saying that there have been voices who have
09:34:51  3   said that because of the split, and I don't know.  As I
09:35:01  4   look at it, I think that it's something that we need to
09:35:04  5   work out and I need to make a ruling on.  And then that
09:35:10  6   becomes an appealable ruling one way or the other.
09:35:16  7   Unless the parties fully agree, and I may not even agree
09:35:17  8   with the parties.

09:35:27  9          I will tell you that the -- I had a bankruptcy
09:35:30 10   appeal that went to the Supreme Court where I disagreed
09:35:32 11   with the parties, and the -- and the Fifth Circuit agreed
09:35:35 12   with the parties and the Fifth Circuit was reversed
09:35:38 13   nine-zero.  So I'm glad I didn't agree with the parties.

09:35:42 14          So I think we need to be very careful here.  I
09:35:50 15   am not taking a position on this at this time.  I'm just
09:35:55 16   saying that I needed to raise it because it's there.
09:36:04 17   And, I mean, the one -- the one opinion we don't need to
09:36:10 18   worry about is Judge Ho's, because he was off by himself
09:36:13 19   and nobody followed anything he did.  And I'm not saying
09:36:18 20   that in a derogatory way, but it just -- he didn't
09:36:22 21   address this issue at all.  So we have to look at the
09:36:27 22   other -- we have to look at the other opinions.

09:36:32 23          Yes, sir?

09:36:32 24          MR. LYNK:  Your Honor, I did having something.
09:36:35 25   I think you mentioned you'll be issuing an order that

```
09:36:37   1  makes clear the pretrial deadlines are continued.
09:36:39   2          THE COURT:  Right.
09:36:40   3          MR. LYNK:  There was some filings yesterday.
09:36:42   4  Can we assume that, for the moment, those matters are
09:36:45   5  stayed?
09:36:45   6          THE COURT:  I haven't seen those filings.  I
09:36:47   7  just got here.
09:36:48   8          MR. LYNK:  Okay.
09:36:49   9          THE COURT:  What are those filings?
09:36:51  10          MS. AL-FUHAID:  There was a motion related --
09:36:52  11          THE COURT:  You didn't send me another filing
09:36:54  12  giving me 48 hours, did you, or 24 hours or 10 hours?
09:36:58  13          MS. AL-FUHAID:  No, Your Honor.
09:36:59  14          THE COURT:  I'm wasting my time sitting here.
09:37:01  15          MS. AL-FUHAID:  No, Your Honor.  Texas had some
09:37:05  16  lingering pretrial motions that it intended to file, and
09:37:09  17  we filed them yesterday.  We were unsure as to whether
09:37:13  18  this conference --
09:37:13  19          THE COURT:  What are those motions?  Can you
09:37:15  20  give me --
09:37:16  21          MS. AL-FUHAID:  There's a motion to preclude
09:37:18  22  one of the US's experts being presented in their case in
09:37:22  23  chief as opposed to a rebuttal expert.  And was there ...
09:37:28  24          MR. BRYANT:  Your Honor, the others are our
09:37:29  25  response to motions in limine filed by --
```

09:37:31  1                 THE COURT:  Oh.  The motions in limine ones I'm

09:37:33  2    not so worried about.  I'm going to -- I think it's been

09:37:41  3    referred to the magistrate.  It automatically gets

09:37:44  4    referred.

09:37:45  5                 MS. AL-FUHAID:  Oh, okay.  Thank you,

09:37:47  6    Your Honor.

09:37:48  7                 THE COURT:  And then the magistrate will make

09:37:51  8    a -- Judge Howell will make a preliminary ruling on it,

09:37:54  9    and then it can be appealed to me.  As long it doesn't

09:38:00  10   have to do with the merits.

09:38:02  11                MS. AL-FUHAID:  Well, Your Honor, what we were

09:38:03  12   unsure about, the reason we wanted to get those pretrial

09:38:06  13   filings, we were unsure as to whether Your Honor was

09:38:08  14   going to grant the United States's request for a stay at

09:38:11  15   this conference.

09:38:12  16                THE COURT:  Oh, you mean --

09:38:13  17                MS. AL-FUHAID:  We got those in before --

09:38:14  18                THE COURT:  No, I don't want to -- I put the

09:38:17  19   trial date off.  I don't want to stay that.  I mean,

09:38:22  20   there's no reason I can't rule on an expert designation.

09:38:32  21   I don't see that as, in any way, shape, or form, having

09:38:34  22   any bearing.

09:38:36  23                I mean, look.  The truth of the matter is, if

09:38:41  24   the opinion had gone a different way, we'd be in trial

09:38:44  25   today, right?

```
09:38:48   1              MR. LYNK:  Correct.  Your Honor, there were --
09:38:52   2    there was at least one ruling as to which we had been
09:38:56   3    preparing to file a notice of objections to the
09:38:59   4    magistrate judge ruling.
09:39:00   5              THE COURT:  Okay.
09:39:01   6              MR. LYNK:  Is that something that we should
09:39:02   7    proceed with on a normal schedule?
09:39:05   8              THE COURT:  Yes.  Yes.  Don't give me a
09:39:07   9    vacation.  I'm not entitled to it.
09:39:09  10              MR. LYNK:  Understood.  On August 2nd, on
09:39:12  11    Friday, obviously, there were a number of things that
09:39:14  12    originally were due and we understood those were
09:39:16  13    suspended as of late last week in the circumstances.  How
09:39:20  14    are you going to --
09:39:21  15              THE COURT:  What were those?
09:39:22  16              MR. LYNK:  Generally, the response to the July
09:39:24  17    26th pretrial filing: objections to witnesses, objections
09:39:27  18    to exhibits, things like that.
09:39:29  19              THE CLERK:  They didn't file those.  You had
09:39:31  20    said to wait until today.
09:39:32  21              THE COURT:  Oh, yes.  Okay.  Those I think
09:39:37  22    probably should wait.  And the reason for that is we're
09:39:40  23    still waiting to figure out whether we have a jury or we
09:39:42  24    don't have a jury.  And you may decide to go with certain
09:39:45  25    witnesses if you have a jury.  I may even allow, because
```

09:39:53  1   if -- if it stays the way it is, if the Fifth Circuit
09:39:58  2   rules that there is no jury in this case, because it's
09:40:02  3   equitable, then I won't reopen.
09:40:09  4        But if we -- if they change the landscape and
09:40:14  5   say, well, you're going to have a jury now out of the
09:40:18  6   blue, then I may allow the parties to add additional
09:40:24  7   witnesses.  And that may impact our trial date.  So we'll
09:40:26  8   have to see where we are, okay?
09:40:28  9        MR. LYNK:  And then, Your Honor, one other
09:40:30 10   motion I would bring to your attention, there was a
09:40:33 11   motion filed by Texas earlier to preclude some of the
09:40:36 12   injunctive relief that is sought in the case.
09:40:38 13        Now, that is a motion that we were preparing to
09:40:41 14   include our response to it in Friday's submissions, and
09:40:45 15   then obviously we didn't make submissions on Friday under
09:40:48 16   the circumstances.
09:40:48 17        THE COURT:  Right.
09:40:49 18        MR. LYNK:  How should we handle now the timing
09:40:52 19   of our opposition to that?
09:40:54 20        THE COURT:  I don't remember that motion.
09:40:56 21        MR. LYNK:  This is a motion --
09:40:58 22        THE CLERK:  It's an opposed motion to exclude
09:41:01 23   relief requested by the plaintiff, filed by the State of
09:41:03 24   Texas on July 3rd.
09:41:06 25        MR. LYNK:  So this is a motion that argues that

09:41:08   1   a number of the injunctive relief requests in our

09:41:11   2   complaint are not, in Texas's view, proper under the

09:41:14   3   statute.  So they seek to exclude those.

09:41:15   4           THE COURT:  Oh, okay.  All right.  I'm familiar

09:41:17   5   with that.

09:41:18   6           MR. LYNK:  So that one I just wanted to clarify

09:41:19   7   when we would need to make our -- our opposition to that

09:41:23   8   and submit that on file.

09:41:24   9           THE COURT:  Are you ready to file it?

09:41:26  10           MR. LYNK:  This afternoon, no, but certainly by

09:41:29  11   the end of the week or sooner, if needed.

09:41:31  12           THE COURT:  File it.

09:41:32  13           MR. LYNK:  Okay.

09:41:32  14           THE COURT:  By the end of the week -- next

09:41:34  15   week.  File it by Monday.

09:41:37  16           MR. LYNK:  Thank you, Your Honor.

09:41:38  17           THE COURT:  And then you can reply, okay?

09:41:42  18           MS. AL-FUHAID:  Is there a particular date by

09:41:44  19   which you would want our reply or just in accordance with

09:41:47  20   the rule?

09:41:47  21           THE COURT:  The normal course of events.

09:41:50  22           MS. AL-FUHAID:  Okay.  Thank you.

09:41:52  23           MR. BRYANT:  Your Honor, David Bryant.

09:41:54  24           THE COURT:  I was waiting, because now we

09:41:56  25   have -- no.  You haven't said anything officially.

09:42:00    1   you're just giving him the information.  But we have

09:42:03    2   three, at least.  You need to say something.  You need to

09:42:06    3   earn your money.  Yes?

09:42:08    4           MR. BRYANT:  Your Honor, the defendants would

09:42:11    5   suggest that it may be appropriate to wait on resolving

09:42:21    6   some of these motions.  I have no problem with going

09:42:23    7   ahead and briefing them, but wait on resolving them until

09:42:26    8   we know whether, among other things, the United States is

09:42:29    9   going to continue with the case, whether they're

09:42:32   10   appealing, until we get closer to trial and we know --

09:42:35   11           THE COURT:  I mean, if the United States ends

09:42:37   12   up taking the position -- I've never -- I personally have

09:42:41   13   never seen it -- had it happen in any case I've been

09:42:45   14   involved in, but I have seen it happen in other cases

09:42:47   15   where some of my colleagues had -- and not involving the

09:42:51   16   United States, by the way.  It was involving other

09:42:54   17   parties.  But they got a negative ruling out of the --

09:42:58   18   interim ruling out of the Ninth Circuit, and they decided

09:43:03   19   they were going to allow the judge to just enter judgment

09:43:08   20   against them, because they could not effectively

09:43:11   21   prosecute their defense, and then immediately appealed on

09:43:18   22   the legal issues that had been decided.

09:43:21   23           Now, if the United States takes that position,

09:43:25   24   obviously, they would have to come to the conclusion that

09:43:28   25   Judge Willett's decision was not precedential and argue

| | | |
|---|---|---|
| 09:43:32 | 1 | that to me.  And I would then have to make the ruling |
| 09:43:35 | 2 | that they were right, which I may not. |
| 09:43:41 | 3 | MR. BRYANT:  So, Your Honor, the defendants |
| 09:43:42 | 4 | would suggest that, although we can go ahead and brief |
| 09:43:44 | 5 | everything, that the Court wait until after the 60-day |
| 09:43:47 | 6 | period to make the Court's rulings, which the Court may |
| 09:43:50 | 7 | wish to do anyway. |
| 09:43:51 | 8 | THE COURT:  Yeah. |
| 09:43:52 | 9 | MR. BRYANT:  So that we can have a better |
| 09:43:54 | 10 | picture as to what the procedural posture of the case |
| 09:43:57 | 11 | will be going into a trial or otherwise, maybe on appeal |
| 09:44:03 | 12 | rather -- |
| 09:44:04 | 13 | THE COURT:  Well, I'm not going to make that |
| 09:44:06 | 14 | decision today.  I'll look at the -- I'll look at the |
| 09:44:09 | 15 | filings, and then I'll decide whether it's appropriate to |
| 09:44:11 | 16 | wait or to make a ruling.  I don't like to have |
| 09:44:14 | 17 | unresolved motions hanging around.  That's a -- it's a |
| 09:44:21 | 18 | bad look, you know.  But I'll do what I can.  I |
| 09:44:29 | 19 | understand your concern, I do. |
| 09:44:34 | 20 | All right.  Anything else? |
| 09:44:40 | 21 | MR. LYNK:  Nothing else from the government, |
| 09:44:41 | 22 | Your Honor.  Thank you. |
| 09:44:45 | 23 | MR. WALTERS:  Your Honor?  Ryan Walters. |
| 09:44:46 | 24 | THE COURT:  Okay.  There you go. |
| 09:44:46 | 25 | MR. WALTERS:  I'm taking your advice, |

09:44:48  1    Your Honor.

09:44:52  2              THE COURT:  Thank you.

09:44:52  3              MR. WALTERS:  We would just suggest that if the

09:44:54  4    Court is considering reopening discovery -- so we don't

09:44:57  5    know that yet, whether the Department of Justice wants

09:44:59  6    that -- when the Fifth Circuit rules on our right to a

09:45:06  7    jury trial --

09:45:07  8              THE COURT:  I can assure you that that will not

09:45:09  9    happen if they deny the request for a jury trial, only

09:45:15 10    because then that -- that means that the tenor of the

09:45:18 11    case has been the same since its inception.

09:45:22 12              MR. WALTERS:  Right.  What we're saying --

09:45:22 13              THE COURT:  But if they -- if they say the

09:45:25 14    State gets a jury trial or gets a partial jury trial on

09:45:30 15    some issues and not on others, then I would consider it.

09:45:34 16    I'm not saying I would grant it, but I would certainly

09:45:37 17    consider it.

09:45:39 18              MR. WALTERS:  But, Your Honor, I guess our

09:45:40 19    position is that, if the Fifth Circuit were to find that

09:45:43 20    we are entitled to a jury trial, the court would have to

09:45:46 21    resolve these motions again because the standard would be

09:45:51 22    different.  So we would suggest not wasting the Court's

09:45:54 23    time in resolving these motions before we get a ruling

09:45:57 24    from the Fifth Circuit on --

09:45:58 25              THE COURT:  I don't know that the legal

09:45:59  1  standard would be different.

09:46:01  2              MR. WALTERS:  Well, the standard for

09:46:03  3  considering, like, experts, whether they're going to be

09:46:06  4  excluded or not, would be different.

09:46:07  5              THE COURT:  Oh, I see what you're saying, in a

09:46:10  6  practical sense.  Yeah.  I would agree with you there.  I

09:46:13  7  think that's right.  I told you I will take a look at it.

09:46:15  8  I haven't made up my mind on that yet.  I'll take a very

09:46:18  9  good look at it, okay.

09:46:20  10             MR. WALTERS:  Thank you, Your Honor.

09:46:21  11             THE COURT:  I mean, you're the folks that filed

09:46:23  12 the motion to exclude them.

09:46:27  13             MR. WALTERS:  Your Honor, if -- if we -- if we

09:46:31  14 could stay all proceedings, then we would withdraw the

09:46:34  15 pending motions.

09:46:35  16             THE COURT:  Well, I'm not going to stay

09:46:36  17 everything.  There are other things that are going on

09:46:39  18 here we just talked about, but I certainly would stay

09:46:42  19 that.  I mean, I wouldn't have to stay it.  All I'd have

09:46:45  20 to do is tell you that I would give you leave to refile,

09:46:50  21 okay?  I will -- if you withdraw it, you will get leave

09:46:54  22 to refile.  And that means that you're safe.  You're not

09:46:58  23 going to be time-barred.

09:47:04  24             MR. SULLIVAN:  Your Honor, you know, this being

09:47:05  25 I think the second-largest geographic district in the

```
09:47:08  1   federal judiciary after the District of Alaska, as busy
09:47:10  2   as you are, as busy as Judge Howell is, we would suggest
09:47:13  3   that instead of looking at something twice, that could
09:47:15  4   just be looked at once.
09:47:16  5            THE COURT:  I agree with you.
09:47:19  6            MR. SULLIVAN:  And so whatever kind of stay
09:47:21  7   comes in Your Honor's order, again, we would respectfully
09:47:25  8   suggest that if it has to do with discovery, so the
09:47:27  9   motions in limine, the expert motions, because all of
09:47:29  10  that could be overtaken by events in a practical sense,
09:47:33  11  if not in a legal standard sense, we would respectfully
09:47:36  12  request clarity so that the parties can pull down any of
09:47:40  13  those kind of discovery motions and fights so that
09:47:41  14  they're not pending on your sheet with Chief Judge Moses
09:47:46  15  or anything like that.
09:47:47  16           THE COURT:  Chief Judge Moses is very happy
09:47:49  17  with me at the moment.  She's in the same boat I am.
09:47:52  18  Remember, she had the barbed wire case.
09:47:56  19           MR. SULLIVAN:  I remember it well, sir.  We've
09:47:58  20  had lovely times in Del Rio together as well with our --
09:48:00  21           THE COURT:  Yeah.  I used to sit in Del Rio.  I
09:48:03  22  sat in Del Rio for the first few years I was here.  I was
09:48:06  23  on the wheel down there, so I was down there every week.
09:48:09  24           MR. SULLIVAN:  Appreciate your service for that
09:48:10  25  sir.  So with clarification about discovery along those
```

```
09:48:13   1   lines, we can take things off of your, you know, 90-day
09:48:15   2   sheet or whatever it's called here and not do twice what
09:48:19   3   we can do once, if things are overtaken by events.
09:48:24   4           MR. LYNK:  From our point of view, I guess I'm
09:48:27   5   not sure if there really is a further issue to resolve.
09:48:32   6   I think your prior comments suggested that there are some
09:48:35   7   things you want to deal with and some things that should
09:48:37   8   wait.  And, generally, those seemed to make sense.
09:48:40   9           We can certainly respond, for example, to the
09:48:43   10  motion seeking to strike forms of injunctive relief by
09:48:47   11  Monday, as you've directed.  And that doesn't seem to
09:48:51   12  be --
09:48:52   13          THE COURT:  Are you concerned about that one?
09:48:55   14          MR. SULLIVAN:  No concern there.  It's well
09:48:57   15  said by my friend, Mr. Lynk.  I suppose that the whole
09:49:00   16  point is we're all obviously going to do whatever the
09:49:03   17  Court, whatever you tell us to do.  And so if your order
09:49:07   18  gives us clear marching orders, then we'll run up
09:49:10   19  whatever hills you want us to.
09:49:13   20          THE COURT:  Well, let's do this:  I think we
09:49:15   21  all agree that -- I think Mr. Lynk is right, and I
09:49:19   22  already said I would rule on that motion.  That's purely
09:49:22   23  a legal issue.  But I'll stay everything else.
09:49:29   24          MR. SULLIVAN:  Thank you, sir.
09:49:30   25          THE COURT:  And you're going to withdraw that,
```

| | | |
|---|---|---|
| 09:49:32 | 1 | then, without prejudice. |
| 09:49:34 | 2 | MR. WALTERS: Thank you, Your Honor. |
| 09:49:35 | 3 | THE COURT: Okay. So he's going to withdraw |
| 09:49:36 | 4 | without prejudice. You don't have to worry about it. |
| 09:49:39 | 5 | But leave the one we talked about. |
| 09:49:41 | 6 | MR. LYNK: So the motion to exclude our witness |
| 09:49:42 | 7 | for now is withdrawn without prejudice. |
| 09:49:45 | 8 | THE COURT: Yes. That's right. |
| 09:49:48 | 9 | MR. SULLIVAN: Thank you, sir. |
| 09:49:48 | 10 | THE COURT: Without prejudice so that he can |
| 09:49:50 | 11 | refile it. I don't want anybody to think they're being, |
| 09:49:53 | 12 | you know, hampered from refiling. |
| 09:49:56 | 13 | MR. SULLIVAN: Thank you, sir. Sorry for the |
| 09:49:59 | 14 | interruption. |
| 09:50:00 | 15 | THE COURT: No. Look. We need all the help we |
| 09:50:03 | 16 | can get around here. So, as usual, my very smart |
| 09:50:31 | 17 | courtroom deputy has a solution. What I'm going to do, |
| 09:50:38 | 18 | all the motions in limine that are on the record now I'm |
| 09:50:40 | 19 | going to deny as moot subject to refiling, and you can |
| 09:50:47 | 20 | then make a decision whether you want to refile those at |
| 09:50:50 | 21 | the appropriate time. We're going to give you deadlines |
| 09:50:53 | 22 | for those. |
| 09:50:54 | 23 | So the only thing that will be left on the |
| 09:50:56 | 24 | docket that I need to worry about is the -- is that one |
| 09:51:01 | 25 | motion we're talking about that he's going to be filing |

09:51:04  1   on Monday.

09:51:06  2            THE CLERK:  No.  The motion to exclude, he's

09:51:07  3   going to file a response.

09:51:08  4            THE COURT:  Yeah.  The motion to exclude, he's

09:51:11  5   going to file a response.

09:51:15  6            MR. STONE:  And, your Honor, there was one more

09:51:17  7   thing mentioned by our friends at the USA.  They

09:51:20  8   mentioned filing objections to Magistrate Howell's prior

09:51:25  9   ruling.  Is that also going to be stayed, or are they

09:51:26 10   going to proceed forward with that?

09:51:28 11            MR. LYNK:  This was specifically -- we had a

09:51:31 12   motion to compel production of an email and a document

09:51:36 13   that were sent to a number of the expert witnesses,

09:51:41 14   Texas's.  And Judge Howell reviewed the document and the

09:51:43 15   email in-camera, and then he ordered production of a --

09:51:47 16   of redacted versions of those.

09:51:49 17            THE COURT:  And you want --

09:51:50 18            MR. LYNK:  Our objection is to the redaction.

09:51:52 19   And so we were preparing to file a notice of objection as

09:51:56 20   that to see the whole document.

09:51:57 21            THE COURT:  Don't do that.  Just hold it.  You

09:51:59 22   can file it later.

09:52:01 23            MR. LYNK:  Okay.

09:52:01 24            THE COURT:  You'll have time to file that

09:52:04 25   later.

09:52:05  1          MR. LYNK:  Thank you.

09:52:06  2          THE COURT:  We have to be flexible here.  We've

09:52:08  3  got a very -- this -- look.  This is a very unusual case,

09:52:15  4  to say the least.  I mean, it's about a buoy floating

09:52:21  5  around in the Rio Grande River, after all, all by itself,

09:52:27  6  just bobbing around there.

09:52:31  7          I saw a picture the other day where two people

09:52:34  8  attempting to swim across the Rio Grande.  I don't know

09:52:39  9  what they were doing, but they were resting on the buoy.

09:52:42  10  They were using the buoy as a rest.  So I don't know.

09:52:46  11  They either go around it or you rest on it, or I don't

09:52:49  12  know what they're doing with the buoy.  But there it is,

09:52:52  13  and it's there.  And it's been there.

09:52:56  14          And the one thing I would disagree with my good

09:53:03  15  friend Judge Willett about, he made -- he always makes a

09:53:07  16  big deal of the fact that I didn't order the buoy removed

09:53:11  17  from the ocean -- ocean.  This is what happens when you

09:53:15  18  decide dozens and dozens of cases involving the Pacific

09:53:20  19  Ocean because I came from Hawaii -- the river.  We do

09:53:27  20  have an ocean pretty close.

09:53:32  21          The reason I did not order -- and I've said

09:53:36  22  this in writing, and I'll say it again.  The reason I did

09:53:39  23  not order the buoy to be removed from the river, it was

09:53:45  24  put up against the bank so it would not be -- if my order

09:53:49  25  was followed, it would have been moved against the bank.

09:53:54  1  It would not have been a hazard to navigation because it

09:53:58  2  would have been right up against the bank, number one.

09:54:01  3          Number two, it would have saved the taxpayers

09:54:05  4  of the State of Texas tens of thousands of dollars if,

09:54:10  5  for instance, I had ordered it removed, it had been

09:54:13  6  removed, and then ordered placed back in the water, what

09:54:21  7  a waste of money.  What an absolute waste of money.

09:54:28  8          And I was proven correct because I made my

09:54:33  9  ruling, that ruling was affirmed, originally, by a

09:54:37 10  three-judge panel.  In the meantime, that thing could

09:54:39 11  have been removed.  Then the *en banc* order comes along

09:54:44 12  and orders it, it would have to go back.  What a waste of

09:54:49 13  money.

09:54:51 14          So I'm sorry, Judge Willett.  That's the

09:54:55 15  reason.  And I -- I did not want the taxpayers of the

09:55:00 16  State of Texas or the Governor's Office, because he's got

09:55:06 17  other things to spend his money on, to have to spend the

09:55:10 18  money to put it back, you know, in the water if I had

09:55:15 19  ordered it taken out.

09:55:16 20          Plus -- and this is from a kid who worked his

09:55:20 21  way up going through school doing construction -- putting

09:55:26 22  those things in and out of the water -- and I've seen it

09:55:29 23  many times; we have it in Hawaii all the time -- is a

09:55:33 24  dangerous proposition.  And especially where those

09:55:39 25  concrete things have been laid down, to pull those out,

09:55:43  1    they get sunken in the mud.  To pull those out, you get a

09:55:50  2    snapped chain or you get -- a machine doesn't work or

09:55:52  3    somebody falls in the water between the buoy and the

09:55:55  4    pillar under the water, they could be drowned or killed.

09:56:01  5    It's a hazard.

09:56:03  6           I didn't want that to happen more often than

09:56:07  7    necessary, period.  Not because I didn't have faith in my

09:56:14  8    ruling or some such thing.  It had nothing to do with it.

09:56:19  9    It had to do with money.  I knew this thing would go on

09:56:22  10   appeal.  I knew the State would -- I mean, this is the

09:56:26  11   Fifth Circuit.  I knew the State had a chance of

09:56:30  12   prevailing.  It's -- it was a close call to begin with.

09:56:35  13          And I just didn't want the expense, and I

09:56:39  14   didn't want the danger to those workers of having to go

09:56:43  15   back out there and move it and then remove it and then

09:56:46  16   put it back.  It just didn't make sense to me.  And that

09:56:51  17   was the reason I did what I did.

09:56:53  18          It had nothing to do -- and I -- to be honest

09:56:58  19   with you, I wouldn't think, knowing Governor Abbott, he

09:57:08  20   would have been unhappy about that.  I mean, he wouldn't

09:57:13  21   say, jeez, I wish the judge had ordered it removed from

09:57:16  22   the water.  That just would not -- you know, I think he

09:57:25  23   is a very smart man.  He was a good lawyer.  He was a

09:57:29  24   Supreme Court Justice.  I'm sure that he understood what

09:57:32  25   I was doing.  And I said it at the time.

```
09:57:37   1              So I don't know -- understand why my friend
09:57:40   2   Judge Willett, who I have the greatest regard for -- he's
09:57:44   3   a very fine jurist, and he's a nice man -- keeps thinking
09:57:48   4   that I did it because I wanted to -- I didn't have faith
09:57:53   5   in my order.  Why did I not just order it removed?  Well,
09:57:57   6   there's the reason: safety and money.  Safety first and
09:58:02   7   money second.
09:58:05   8              Okay.  Anything else?
09:58:09   9              MR. LYNK:  No, Your Honor.
09:58:10  10              MS. AL-FUHAID:  No, Your Honor.  Thank you.
09:58:12  11              THE COURT:  Okay.  And, by the way, has there
09:58:14  12   been an appeal by the United States of my ruling against
09:58:18  13   you on the treaty issue?
09:58:22  14              MR. LYNK:  No, there has not been an appeal
09:58:25  15   taken from that ruling.
09:58:26  16              THE COURT:  But that -- you have -- you don't
09:58:28  17   have to file it now.
09:58:30  18              MR. LYNK:  Right.
09:58:31  19              THE COURT:  You can --
09:58:32  20              MR. LYNK:  No interlocutory appeal was taken,
09:58:35  21   correct.
09:58:35  22              THE COURT:  I suspect, ultimately, we will have
09:58:37  23   cross-appeals, so I'm in double jeopardy here.  He stands
09:58:51  24   by my every day right there.  No.  I'm pointing to my
09:58:54  25   alabaster eagle.  He's always faithful.  He doesn't move.
```

09:58:57  1    He's right there.

09:58:57  2              Thank you all very much.  It's good to see you.

09:59:00  3              You can be excused.  Thank you.

09:59:00  4              MS. AL-FUHAID:  Thank you, Your Honor.

09:59:00  5         (End of transcript)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   **UNITED STATES DISTRICT COURT       )**

2   **WESTERN DISTRICT OF TEXAS          )**

3        I, Arlinda Rodriguez, Official Court Reporter, United

4   States District Court, Western District of Texas, do certify

5   that the foregoing is a correct transcript from the record of

6   proceedings in the above-entitled matter.

7        I certify that the transcript fees and format comply with

8   those prescribed by the Court and Judicial Conference of the

9   United States.

10       WITNESS MY OFFICIAL HAND this the 6th day of August 2024.

11

12                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
13                              Expiration Date:  10/31/2025
                                Official Court Reporter
14                              United States District Court
                                Austin Division
15                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
16                              (512) 391-8791

17

18

19

20

21

22

23

24

25