```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
 2                        AUSTIN DIVISION

 3   UNITED STATES OF AMERICA,          ) AU:23-CV-00853-DAE
                                        )
 4      Plaintiff,                      )
                                        )
 5   v.                                 ) AUSTIN, TEXAS
                                        )
 6   GREG ABBOTT, ET AL.,               )
                                        )
 7      Defendants.                     ) AUGUST 7, 2024

 8

 9

10           ********************************************
                  TRANSCRIPT OF STATUS CONFERENCE
11            BEFORE THE HONORABLE DAVID A. EZRA
             ********************************************

12

13   FOR THE PLAINTIFF:   BRIAN H. LYNK
                          ANGELINE PURDY
14                        U.S. DEPARTMENT OF JUSTICE
                          ENVIRONMENTAL DEFENSE SECTION
15                        P.O. BOX 23986
                          WASHINGTON, D.C. 20026-3986
16
                          ANDREW D. KNUDSEN
17                        BRYAN JAMES HARRISON
                          KIMERE J. KIMBALL
18                        U.S. DEPARTMENT OF JUSTICE
                          ENVIRONMENT & NATURAL RESOURCES
19                        P.O. BOX 7611
                          WASHINGTON, D.C. 20044
20
                          LANDON ALLEN WADE
21                        UNITED STATES ATTORNEY'S OFFICE
                          903 SAN JACINTO BOULEVARD, SUITE 334
22                        AUSTIN, TEXAS 78701

23                        MARY F. KRUGER
                          UNITED STATES ATTORNEYS OFFICE
24                        CHIEF, CIVIL DIVISION
                          601 NW LOOP 410, SUITE 600
25                        SAN ANTONIO, TEXAS 78216
```

```
 1  FOR THE DEFENDANTS:   MUNERA AL-FUHAID
                          JOHNATHAN STONE
 2                        ZACHARY BERG
                          KYLE STEPHEN TEBO
 3                        OFFICE OF THE ATTORNEY GENERAL
                          PO BOX 12548
 4                        AUSTIN, TX 78711-2548

 5                        RYAN DANIEL WALTERS
                          OFFICE OF THE TEXAS ATTORNEY GENERAL
 6                        SPECIAL LITIGATION DIVISION
                          209 WEST 14TH STREET, 7TH FLOOR
 7                        AUSTIN, TEXAS 78701

 8  APPEARING AT THE COURT'S REQUEST:
                          LANORA CHRISTINE PETTIT
 9                        OFFICE OF THE TEXAS ATTORNEY GENERAL
                          OFFICE OF THE SOLICITOR GENERAL
10                        P.O. BOX 12548 (MC-059)
                          AUSTIN, TEXAS 78711-2548
11
    FOR MS. PETTIT:       JOSEPH N. MAZZARA
12                        OFFICE OF THE TEXAS ATTORNEY GENERAL
                          P.O. BOX 12548 (MC-059)
13                        AUSTIN, TX 78711-2548

14  COURT REPORTER:       ARLINDA RODRIGUEZ, CSR
                          501 WEST 5TH STREET, SUITE 4152
15                        AUSTIN, TEXAS 78701
                          (512) 391-8791
16

17

18

19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

| | | |
|---|---|---|
| 09:31:53 | 1 | (Open court) |
| 09:31:53 | 2 | THE CLERK:  AU:23-CV-853, *United States of* |
| 09:31:56 | 3 | *America v. Abbott, et al.* |
| 09:31:58 | 4 | THE COURT:  May we have appearances, please. |
| 09:32:02 | 5 | MR. WADE:  Good morning, Your Honor.  This is |
| 09:32:04 | 6 | Landon Wade with the U.S. Attorney's office for the |
| 09:32:06 | 7 | Western District of Texas on behalf of the United States. |
| 09:32:08 | 8 | THE COURT:  Okay.  And we do have the other |
| 09:32:10 | 9 | lawyers who are appearing by phone.  Can we have their |
| 09:32:13 | 10 | appearances. |
| 09:32:15 | 11 | MR. LYNK:  Good morning, Your Honor.  This is |
| 09:32:17 | 12 | Brian Lynk.  And I believe on the phone with me are |
| 09:32:25 | 13 | Andrew Knudsen, Kimere Kimball, Bryan Harrison, our |
| 09:32:27 | 14 | supervisor Angeline Purdy, and Mary Kruger, also from the |
| 09:32:31 | 15 | U.S. Attorney's office. |
| 09:32:33 | 16 | THE COURT:  Okay.  Thank you. |
| 09:32:34 | 17 | And can I have for the State of Texas. |
| 09:32:37 | 18 | MR. WALTERS:  Good morning, Your Honor. |
| 09:32:39 | 19 | THE COURT:  Good morning. |
| 09:32:39 | 20 | MR. WALTERS:  Ryan Walters for the defendants. |
| 09:32:43 | 21 | With me are my colleagues Johnathan Stone, Munera |
| 09:32:47 | 22 | Al-Fuhaid, Zach Berg, and Kyle Tebo. |
| 09:32:49 | 23 | THE COURT:  Okay.  All right.  And I had |
| 09:32:53 | 24 | invited, but had not ordered, Ms. Pettit to be here.  Is |
| 09:32:57 | 25 | she here today? |

| | | |
|---|---|---|
| 09:33:01 | 1 | MR. MAZZARA:  Yes, Your Honor.  She's here, and |
| 09:33:01 | 2 | I'm representing her.  I'm her counsel, Joseph Mazzara, |
| 09:33:04 | 3 | for the purposes of this hearing today. |
| 09:33:06 | 4 | THE COURT:  Mr. Mazzara, are your licensed here |
| 09:33:08 | 5 | in the Western District of Texas. |
| 09:33:09 | 6 | MR. MAZZARA:  No.  But the courtroom deputy |
| 09:33:12 | 7 | requested that I come before the bar to sit here, just to |
| 09:33:15 | 8 | make it easy with the microphone. |
| 09:33:17 | 9 | THE COURT:  No.  I don't have a problem.  You |
| 09:33:19 | 10 | can sit right up here.  I have no concern where you're |
| 09:33:22 | 11 | sitting.  I just wanted to know whether you were |
| 09:33:25 | 12 | licensed.  Now, if you're not licensed, technically, you |
| 09:33:28 | 13 | cannot argue. |
| 09:33:31 | 14 | MR. MAZZARA:  Right.  Yes, Your Honor.  I |
| 09:33:33 | 15 | understand that.  But given the short notice of the |
| 09:33:34 | 16 | hearing, putting in a *pro hac vice* application didn't |
| 09:33:40 | 17 | seem to be feasible.  But, again, I'm just here on a very |
| 09:33:44 | 18 | limited capacity. |
| 09:33:45 | 19 | THE COURT:  All right.  Well, I -- let me -- |
| 09:33:46 | 20 | let me clear any concerns that Ms. Pettit might have.  If |
| 09:33:51 | 21 | I were here for the purpose of sanctioning Ms. Pettit, |
| 09:34:00 | 22 | the order would have said so.  It would have been an |
| 09:34:03 | 23 | order to show cause why she should not be sanctioned. |
| 09:34:07 | 24 | I am not sanctioning Ms. Pettit.  I am not mad |
| 09:34:11 | 25 | at Ms. Pettit.  I am not going to be criticizing |

09:34:17  1  Ms. Pettit personally.  I am concerned about the filing

09:34:21  2  that was made, and I'm going to be questioning her about

09:34:25  3  that filing.  But I am not in any way, shape, or form

09:34:31  4  going to be doing anything to her that she would require

09:34:38  5  an attorney.

09:34:40  6        MR. MAZZARA:  Yes, Your Honor.  Except for the

09:34:42  7  fact that you're going to be questioning her.  She's an

09:34:44  8  attorney for the State, for sure, the second senior most

09:34:47  9  litigator, in fact, for the State of Texas.

09:34:50  10        THE COURT:  Well, I'm very pleased to have her

09:34:51  11  here.

09:34:52  12        MR. MAZZARA:  But he she's not made an

09:34:54  13  appearance in this case.

09:34:55  14        THE COURT:  Well, she did, actually.  She filed

09:34:58  15  this in this case.

09:35:00  16        MR. MAZZARA:  But --

09:35:00  17        THE COURT:  Yes, sir?

09:35:02  18        MR. MAZZARA:  In the appellate court.  Yes,

09:35:03  19  sir.

09:35:04  20        THE COURT:  Yes.  It doesn't matter.  We are

09:35:06  21  one federal court, sir.

09:35:08  22        MR. MAZZARA:  I understand that, Your Honor.

09:35:10  23  There are two case numbers.  But, again, she --

09:35:12  24        THE COURT:  Yeah.  Well, her filing was

09:35:15  25  rejected by the Court of Appeals.  Did you know that?

```
09:35:19   1              MR. MAZZARA:  Your Honor, I'm representing
09:35:21   2    Ms. Pettit in this matter.
09:35:22   3              THE COURT:  Yes.  I'm just asking you:  Were
09:35:24   4    you aware of that?
09:35:25   5              MR. MAZZARA:  No, I was not.  When was it
09:35:27   6    rejected, Your Honor?
09:35:28   7              THE COURT:  It was rejected yesterday.  The
09:35:29   8    case was closed.  You didn't know that it was rejected?
09:35:35   9    Did the State know it was rejected?
09:35:39   10             MR. STONE:  Your Honor, it was unfilled, but we
09:35:40   11   believe that it was refiled last --
09:35:41   12             MR. WALTERS:  It was refiled last night.
09:35:43   13             THE COURT:  Oh.  Did they refile it?
09:35:44   14             MR. WALTERS:  Yes, Your Honor.
09:35:45   15             THE COURT:  Okay.  Then I'm going to direct
09:35:47   16   that this transcript be filed, then.
09:35:51   17             MR. MAZZARA:  And I believe they circulated it
09:35:52   18   to the entire *en banc* court as well.
09:35:54   19             THE COURT:  Oh, okay.  Well, that was not -- I
09:35:56   20   was not made aware of that.  That's fine.
09:35:59   21             So I'd like Ms. Pettit to come forward.
09:36:04   22             MR. MAZZARA:  Yes, Your Honor.  Just a real
09:36:06   23   quick question before she does, just for the record.
09:36:08   24   What -- again, she's not an attorney in the case.  Are
09:36:10   25   you asking her to appear as a witness?
```

09:36:12  1          THE COURT:  I'm not asking her to appear as a

09:36:14  2    witness.  She wrote a letter which addressed my comments

09:36:17  3    in this court, and I'm trying to find out the basis for

09:36:22  4    what she said, number one.

09:36:24  5          MR. MAZZARA:  Yes, Your Honor.

09:36:25  6          THE COURT:  Number --

09:36:25  7          MR. MAZZARA:  Sorry.

09:36:26  8          THE COURT:  Just a minute, sir.  Let the court

09:36:28  9    finish.  I will give you plenty of opportunity.

09:36:30  10          Number one.  I want to make sure that -- as I

09:36:36  11    thought when I left the bench yesterday, we were on even

09:36:41  12    keel here and knew where we were going with this case.

09:36:43  13    And then this thing comes flying in which raised some

09:36:47  14    concern to me.  So I need to address it so that I am

09:36:53  15    absolutely sure that going forward we are on the same

09:36:57  16    path.  And that has, sir, nothing to do with you.  That

09:37:02  17    has to do with the gentlemen who represent the State of

09:37:04  18    Texas.

09:37:05  19          MR. WALTERS:  Your Honor, in that light, we --

09:37:08  20    I'm sure the Court understands that we -- no one here

09:37:11  21    will be able to talk about any of the internal

09:37:14  22    deliberations within the Attorney General's Office or

09:37:17  23    with our clients about the motivation or decisions to

09:37:20  24    file this letter to the Fifth Circuit.

09:37:26  25          THE COURT:  I have no concern about that.  I'm

```
09:37:27   1   not asking anybody about internal deliberations in the
09:37:30   2   Attorney General's Office.  That is not my purpose here.
09:37:39   3            MR. MAZZARA:  So, Your Honor, again, just for
09:37:42   4   Ms. Pettit, I mean, any questions regarding the letter
09:37:45   5   would be -- would fall under any number of privileges.
09:37:48   6            THE COURT:  No, it doesn't.  It's publicly
09:37:50   7   filed.
09:37:50   8            MR. MAZZARA:  Not the letter.  It's not the
09:37:52   9   words, the text of the letter itself, but any mental
09:37:56  10   impressions she had or any thought she had that went
09:37:57  11   into --
09:37:58  12            THE COURT:  I have every right and obligation
09:38:00  13   to address the matters that are in the letter, so you may
09:38:04  14   be seated, sir.
09:38:07  15            Now, Ms. Pettit, you were -- this is your
09:38:10  16   letter?  You wrote the letter?
09:38:12  17            MS. PETTIT:  Yes, sir.
09:38:12  18            THE COURT:  But you weren't here yesterday?
09:38:14  19            MS. PETTIT:  No, Your Honor.  As I noted in the
09:38:15  20   letter, I was not present.
09:38:17  21            THE COURT:  Right.  Now, you filed this under
09:38:19  22   Rule 28(j).  You had this filed.  It says:  Pursuant to
09:38:27  23   Rule 28(j), counsel notified the Court of developments
09:38:31  24   during today's status conference in which the court may
09:38:34  25   wish to be aware before it issues its forthcoming
```

09:38:38  1   mandate.

09:38:41  2             MS. PETTIT:  Yes, Your Honor.

09:38:41  3             THE COURT:  That case is essentially closed,

09:38:43  4   but all right.  Let's talk about whether this is a Rule

09:38:46  5   28(j) letter, all right?

09:38:48  6             MS. PETTIT:  Your Honor, that is the nature of

09:38:50  7   the refiling.  The Court asked us to file it simply as a

09:38:53  8   letter and not pursuant to Rule 28(j), because the

09:38:55  9   opinion had been issued but not the mandate.

09:38:58  10            THE COURT:  Okay.  Well, it isn't a Rule --

09:39:00  11  what is it, then, if -- it's just an attempt to do what.

09:39:06  12            MS. PETTIT:  It's an attempt to keep the Court

09:39:08  13  apprised of developments similar to when this Court

09:39:11  14  issued a number of advisements.  We filed those under

09:39:14  15  Rule 28(j) as well because there was no way other -- that

09:39:16  16  we could tell, other than that under the rule --

09:39:18  17            THE COURT:  Well, when you initially filed it,

09:39:20  18  you filed it as Rule 28(j) letter, and it isn't -- as the

09:39:26  19  Court of Appeals has indicated, it isn't a Rule 28(j)

09:39:30  20  letter.  And the reason it isn't is because it doesn't

09:39:33  21  address any of the issues, whatsoever, that are before me

09:39:41  22  for the purposes of the hearing I had yesterday.

09:39:46  23            MS. PETTIT:  Your Honor, it apprised the Fifth

09:39:47  24  Circuit of the hearing yesterday, which has been at issue

09:39:50  25  in a number of prior letters that we filed.  And we were

09:39:53  1  simply keeping the Court apprised.

09:39:55  2          THE COURT:  It has nothing to do with what we

09:39:57  3  were doing yesterday.  What we were doing yesterday was

09:40:00  4  going forward pursuant to the Fifth Circuit's ruling.

09:40:12  5  And the only issue that is now pending before the Fifth

09:40:16  6  Circuit, pending right now, is the issue of whether the

09:40:29  7  case is going to be tried to a jury or it's not going to

09:40:32  8  be tried to a jury.  That is the only issue, and that's a

09:40:37  9  mandamus petition.

09:40:40 10          MS. PETTIT:  Respectfully, Your Honor, the

09:40:41 11  mandate has not issued in the primary case.

09:40:44 12          THE COURT:  It doesn't matter whether the

09:40:45 13  mandate has issued or not.

09:40:47 14          MS. PETTIT:  The Court retains jurisdiction

09:40:49 15  until the mandate does.

09:40:51 16          THE COURT:  It doesn't matter.  There's no

09:40:52 17  litigation going on.  There is -- the United States

09:40:56 18  didn't file anything.  The State didn't file anything.

09:41:02 19  What happened here is you filed something which has

09:41:08 20  absolutely nothing to do with anything other than

09:41:13 21  attempting, I presume -- it isn't an appropriate filing.

09:41:18 22  You're not appearing in this case, are you?

09:41:20 23          MS. PETTIT:  No, Your Honor.  I do not

09:41:22 24  appear -- I did not appear in this case.

09:41:24 25          THE COURT:  So you're kind of a volunteer, and

| | | |
|---|---|---|
| 09:41:26 | 1 | you write this letter to say -- you might as well just be |
| 09:41:32 | 2 | somebody sitting -- |
| 09:41:33 | 3 | No.  Sit down. |
| 09:41:37 | 4 | MR. MAZZARA:  Your Honor, I just wanted to -- |
| 09:41:38 | 5 | THE COURT:  No, sir.  Not yet. |
| 09:41:42 | 6 | MR. MAZZARA:  All right. |
| 09:41:43 | 7 | THE COURT:  I will give you plenty of |
| 09:41:44 | 8 | opportunity. |
| 09:41:47 | 9 | MR. MAZZARA:  Fair enough, Your Honor.  I just |
| 09:41:48 | 10 | want to, again, lodge an objection to this line of |
| 09:41:51 | 11 | questioning. |
| 09:41:52 | 12 | THE COURT:  I don't know what line of |
| 09:41:53 | 13 | questioning you're talking about that there's an |
| 09:41:55 | 14 | objection to.  All I'm saying is she's not appeared, and |
| 09:41:59 | 15 | she's acknowledged that she hasn't appeared. |
| 09:42:00 | 16 | MR. MAZZARA:  In this case, Your Honor, before |
| 09:42:02 | 17 | the trial court. |
| 09:42:02 | 18 | THE COURT:  That's correct. |
| 09:42:04 | 19 | MR. MAZZARA:  Okay. |
| 09:42:05 | 20 | THE COURT:  She hasn't appeared here. |
| 09:42:09 | 21 | MR. MAZZARA:  She has appeared in the Fifth |
| 09:42:10 | 22 | Circuit and argued the *en banc* case. |
| 09:42:13 | 23 | THE COURT:  That's fine.  That is fine. |
| 09:42:15 | 24 | MR. MAZZARA:  But I also still stand on the |
| 09:42:17 | 25 | objection about this line of questioning into |

| | | |
|---|---|---|
| 09:42:20 | 1 | the appellate -- |
| 09:42:20 | 2 | THE COURT: Counsel, listen. If you don't |
| 09:42:22 | 3 | listen to me, I'm going to have to ask you to step |
| 09:42:26 | 4 | outside. I told you I would give you plenty of |
| 09:42:29 | 5 | opportunity to address the court, and you will have that |
| 09:42:34 | 6 | opportunity and I respect your opportunity to do so. But |
| 09:42:39 | 7 | I can't have you jumping up like a jack-in-the-box every |
| 09:42:42 | 8 | two minutes. |
| 09:42:44 | 9 | MR. MAZZARA: Understood, Your Honor. |
| 09:42:45 | 10 | THE COURT: You're not even a member of this |
| 09:42:47 | 11 | court. You're lucky that I'm even letting you say |
| 09:42:52 | 12 | anything here. |
| 09:42:53 | 13 | MR. MAZZARA: Thank you, Your Honor. |
| 09:42:55 | 14 | THE COURT: So you wrote this letter, not |
| 09:43:01 | 15 | having been present, and your letter unfortunately |
| 09:43:04 | 16 | contains a number of inaccuracies. |
| 09:43:09 | 17 | MS. PETTIT: Respectfully, sir, we have checked |
| 09:43:12 | 18 | it against the transcript that we got last night, and we |
| 09:43:16 | 19 | consider it to be accurate and stand behind everything. |
| 09:43:18 | 20 | THE COURT: I'm very happy you did. I can |
| 09:43:20 | 21 | assure you we did, and I know what I said. |
| 09:43:22 | 22 | So let's go through it, okay? |
| 09:43:25 | 23 | MS. PETTIT: Certainly. |
| 09:43:26 | 24 | THE COURT: First of all, you make a big deal |
| 09:43:29 | 25 | out of the fact that, without prompting from either |

09:43:32  1  party, the District Court raised the possibility that

09:43:37  2  Judge Willett's opinion from the *en banc* court might not

09:43:41  3  be precedential based on unspecified voices and chatter

09:43:45  4  the District Court had heard or read from *ex parte*

09:43:48  5  sources who suggested that the opinion was not entirely

09:43:51  6  clear.

09:43:51  7          That is absolutely true.  That is true.  I will

09:43:57  8  agree with you.  I did raise it.  The implication here is

09:44:02  9  that the court did so for the purpose of attempting to

09:44:06  10  encourage or announce its belief that Judge Willett's

09:44:11  11  opinion was not precedential or that I did not have the

09:44:15  12  authority or the right to raise it *ex parte*.

09:44:21  13          Let me read something to you, okay?  This is

09:44:23  14  from the Fifth Circuit.  It comes from a case called

09:44:30  15  *Ioannides v. The University of Texas M.D. Anderson*

09:44:33  16  *Center*, 418 F. App'x 269.  It's a Fifth Circuit 2011

09:44:39  17  case.  I presume it's unpublished, but it's okay.

09:44:41  18          Here's what it says:  The District Court did

09:44:45  19  not error by considering substantive process issues

09:44:53  20  *sua sponte*, because the parties briefed it.  As long as

09:44:57  21  the parties are given notice and opportunity to brief an

09:45:00  22  issue, the court can consider it *sua sponte.*  Any issue.

09:45:06  23  Ultimately, what matters is the party knew the issue

09:45:09  24  could be considered by the District Court.  So here we

09:45:14  25  are asking the parties to brief what the law is

```
09:45:17   1   applicable at the bench trial, giving the parties notice
09:45:21   2   and ability to brief it.
09:45:23   3          That was precisely what I was doing.  I was
09:45:29   4   calling the issue to the attention of the parties, which
09:45:33   5   is not only my right, it is my obligation.
09:45:41   6          MS. PETTIT:  Yes, Your Honor.
09:45:43   7          THE COURT:  You got that?
09:45:44   8          MS. PETTIT:  Yes, Your Honor.
09:45:44   9          THE COURT:  Okay.  And I wanted to give the
09:45:46  10   parties the opportunity to brief it.  This was written in
09:45:50  11   the sense that I was somehow being proactive in
09:45:57  12   supporting the theory that Judge Willett's opinion was
09:46:03  13   not precedential, and I went out on my own to find an
09:46:09  14   issue and then to encourage the parties to brief it.  You
09:46:13  15   make another misstatement there also, by the way, that
09:46:16  16   you will find is not in the -- in the record.  I'll get
09:46:21  17   to that in just a minute.
09:46:22  18          So do you know who Judge Posner is?
09:46:33  19          MS. PETTIT:  Yes, Your Honor.
09:46:33  20          THE COURT:  Okay.  Well, here's what
09:46:36  21   Judge Posner says about this.  He says:  They want to do
09:46:42  22   justice as well as merely not umpire disputes.  And they,
09:46:48  23   the district courts, should not be criticized when they
09:46:51  24   point out to counsel a line of argument or inquiry that
09:46:55  25   has been overlooked.
```

| 09:47:03 | 1 | Courts of appeals -- and I know because I sat |
| 09:47:06 | 2 | on the Ninth Circuit Court of Appeals for 35 years -- and |
| 09:47:10 | 3 | district courts regularly ask the parties *sua sponte* to |
| 09:47:18 | 4 | brief issues that the parties may not have been aware of |
| 09:47:22 | 5 | or which the court feels should be briefed on both sides. |
| 09:47:32 | 6 | So long as the court gives the parties the |
| 09:47:35 | 7 | opportunity to do so, and then fairly and adequately |
| 09:47:40 | 8 | reviews those briefings and takes them under |
| 09:47:46 | 9 | consideration, this circuit and every single circuit has |
| 09:47:54 | 10 | said, including the Supreme Court -- which often does |
| 09:47:58 | 11 | this, by the way -- that it is appropriate and, at times, |
| 09:48:05 | 12 | necessary. |
| 09:48:07 | 13 | It is not and was not my intent, as you seem to |
| 09:48:13 | 14 | imply here, to give to the parties some sort of marching |
| 09:48:24 | 15 | orders.  You did not point out in your letter, which it |
| 09:48:29 | 16 | would have been fair for you to do if you were trying to |
| 09:48:33 | 17 | write a balanced letter, that I had mentioned at least |
| 09:48:39 | 18 | three to four times emphatically that I have not made up |
| 09:48:45 | 19 | my mind in this matter; that I indeed might find |
| 09:48:54 | 20 | Judge Willett's opinion precedential. |
| 09:48:56 | 21 | In fact, it is my fallback, and always has been |
| 09:49:02 | 22 | for the over 30 years I've been on the bench, that when a |
| 09:49:07 | 23 | majority opinion comes out, even if there are strong |
| 09:49:10 | 24 | dissents, to follow that majority opinion.  And my |
| 09:49:14 | 25 | inclination is to do so here. |

```
09:49:16   1              But there is an issue, and that issue needs to
09:49:22   2   be briefed.  Here's the reason:  This case is not going
09:49:26   3   to end with the Fifth Circuit.  If by sending this letter
09:49:32   4   it was your intent to alert Judge Ho that he had not
09:49:38   5   written on this issue and to try to get him to amend his
09:49:41   6   opinion, that might work.  I don't know.  It wouldn't
09:49:47   7   look good, but it might work.  I --
09:49:55   8              You'll get a chance.
09:49:58   9              So that's number one.  What you should have
09:50:03  10   said in this letter, if you were trying to be, as you
09:50:08  11   say, just informing the Fifth Circuit, is that, oh, by
09:50:12  12   the way, Judge Ezra did say on multiple occasions that he
09:50:17  13   did not have his mind made up and that he might indeed
09:50:22  14   rule for Judge -- that Judge Willett's opinion was
09:50:26  15   precedential.  But you didn't do that.
09:50:27  16              This is a -- this isn't a letter informing
09:50:31  17   them.  It wasn't a 28(j) letter.  This was an argument.
09:50:35  18   This is an argument trying to get the Fifth Circuit,
09:50:38  19   either Judge Willett to rewrite his opinion or to get
09:50:46  20   Judge Ho to change his opinion or to get judge -- Chief
09:50:49  21   Judge Richman to somehow change her opinion.  That's
09:50:54  22   what -- I mean, it's pretty obvious.
09:50:56  23              So let's go on.
09:50:57  24              You say:  Although undersigned was not present,
09:51:07  25   the District Court reportedly opined that we have a
```

09:51:10  1  nine-nine split.

09:51:11  2          What I said is it appears that there's a

09:51:14  3  nine-nine split.  It could be a nine-nine split.  I don't

09:51:18  4  know.  And even if there were, what's the effect of it?

09:51:25  5  I don't know that either.

09:51:26  6          What I do know is that Judge Ho did not opine

09:51:34  7  at all on the issue.  He took a totally different tack.

09:51:40  8  He felt that the case should be dismissed out of hand for

09:51:47  9  jurisdictional reasons.  So he partially dissented,

09:51:50  10  actually.  And we do know that Chief Judge Richman did

09:51:57  11  not agree with the majority, in part.  She joined in

09:52:00  12  judgment, but she did not agree with the majority's

09:52:03  13  reasoning that the way you -- on the way that you judge

09:52:11  14  navigation, which was a hallmark of Judge Willett's

09:52:16  15  opinion.  We know she didn't agree with that.

09:52:18  16          So that leaves -- that leaves us with some

09:52:23  17  uncertainty.  I mean, you're a lawyer, right?

09:52:27  18          MS. PETTIT:  Yes, Your Honor.

09:52:28  19          THE COURT:  And you're a good one --

09:52:30  20          MS. PETTIT:  Thank you, Your Honor.

09:52:31  21          THE COURT:  -- or you wouldn't be in your

09:52:32  22  position.  So you have to understand that.

09:52:37  23          Now, you say, we have -- and then you say, and

09:52:42  24  in quotes, as if this was all I said:  Because

09:52:47  25  Judge Richman did not agree with the majority --

09:52:50  1          I didn't say that.  I didn't say she didn't

09:52:52  2  agree with the majority.  I said she didn't agree with

09:52:54  3  the majority on the navigation issue only, which she

09:52:59  4  didn't.

09:53:01  5          -- and the separate opinion by Judge Ho.  And

09:53:06  6  here you put this in quotes, "did not say anything at

09:53:09  7  all," as if I was criticizing Judge Ho.

09:53:13  8          So let me make it very clear.  I said

09:53:16  9  specifically that I was not criticizing Judge Ho.  I said

09:53:22  10  that specifically.  And I didn't say he didn't say

09:53:26  11  anything at all.  I said he didn't say anything at all on

09:53:30  12  this issue, which he didn't.  Not that he didn't say

09:53:36  13  anything at all, as if he wrote a bunch of nonsense.  I

09:53:39  14  didn't say that.  So why you left that out, I don't know.

09:53:47  15          Now, you say:  Accordingly, the District Court

09:53:51  16  ordered the parties to file additional briefs no later

09:53:54  17  than September 20th -- that's true -- addressing the

09:53:58  18  impact of the Court's *en banc* decision.  That's also

09:54:02  19  true.  In the process the District Court provided

09:54:06  20  citations to decisions that neither party had previously

09:54:11  21  raised.

09:54:13  22          That's true: Supreme Court cases.  I have every

09:54:19  23  responsibility to draw the parties' attention to

09:54:23  24  precedent.  I believe that the Fifth Circuit is bound by

09:54:28  25  the Supreme Court.  I certainly am.

| | | |
|---|---|---|
| 09:54:32 | 1 | MS. PETTIT: Certainly, Your Honor. |
| 09:54:33 | 2 | THE COURT: Either party -- and then you say: |
| 09:54:35 | 3 | Either party might consider citing in support of an |
| 09:54:40 | 4 | argument the District Court need not follow |
| 09:54:43 | 5 | Judge Willett's opinion. |
| 09:54:44 | 6 | That is absolutely false. I did -- I dare you |
| 09:54:49 | 7 | to find, or any of your lawyers, anywhere in the |
| 09:54:55 | 8 | transcript where I said that, or even implied, these are |
| 09:55:05 | 9 | the cases that support an argument and I wanted them -- I |
| 09:55:13 | 10 | wanted the parties to follow that argument. |
| 09:55:16 | 11 | I said the opposite, the exact opposite. I |
| 09:55:22 | 12 | said these are cases that are out there. They do show |
| 09:55:28 | 13 | situations where there has been a split. I even gave as |
| 09:55:40 | 14 | support a case in which I handled as a member of the |
| 09:55:42 | 15 | Ninth Circuit Panel where there was a four-four split |
| 09:55:47 | 16 | because Justice Kagan could not participate because she |
| 09:55:51 | 17 | had been Solicitor General. And, on top of that, I said |
| 09:56:03 | 18 | that that was just an example. |
| 09:56:05 | 19 | But guess what? Where there is a four-four |
| 09:56:08 | 20 | split in the Supreme Court, it gets remanded to the |
| 09:56:14 | 21 | Circuit Court, the decision is upheld, but it isn't |
| 09:56:17 | 22 | precedential. You know that, right? You're a good |
| 09:56:19 | 23 | lawyer. |
| 09:56:20 | 24 | MS. PETTIT: It is precedential only to the |
| 09:56:22 | 25 | extent of what the issue was decided, but it is not |

09:56:24  1  precedent for any arguments that were presented.

09:56:27  2          THE COURT:  You're right, and you are correct.

09:56:30  3  It is only precedential in the Ninth Circuit.  It isn't

09:56:33  4  nationwide precedent.

09:56:34  5          MS. PETTIT:  Yes, Your Honor.

09:56:35  6          THE COURT:  Because the Supreme Court did not

09:56:36  7  make a decision.

09:56:38  8          MS. PETTIT:  Correct, Your Honor.

09:56:39  9          THE COURT:  So I did not under any

09:56:44  10  circumstances tell the parties to look at these cases for

09:56:47  11  the purpose of finding Judge Willett's opinion to be

09:56:52  12  nonprecedential, as you say in this letter.  I didn't do

09:56:55  13  that.  You won't find it in the record.  I looked again

09:56:59  14  to make sure.  My law clerks looked again to be sure.

09:57:06  15  It's not there, because I didn't do it.  It is

09:57:12  16  misleading.

09:57:20  17          Now, the District Court also ordered the party

09:57:22  18  to refile any pretrial filings and motions in limine on

09:57:27  19  October 28th, with objections to follow on October 30th.

09:57:31  20          That was at the request of your own lawyers.

09:57:39  21          Meanwhile, the District Court opined a lot of

09:57:41  22  people are shaking their heads at why the -- why Texas

09:57:45  23  demand for a jury trial.

09:57:46  24          It's true.  I can't -- I personally, as I sit

09:57:55  25  here, don't know why Texas would want a jury trial in

09:57:58   1   this case.  You see, I presumed you would want a jury

09:58:02   2   trial if you thought that you had a sympathetic plaintiff

09:58:11   3   or you had an issue which was somehow primed for a jury.

09:58:23   4   This is on equitable case.

09:58:27   5           Would you like some water.

09:58:29   6           MS. PETTIT:  No, thank you, Your Honor.

09:58:30   7           THE COURT:  Okay.  An equitable case.  That was

09:58:32   8   just an offhand comment.  It wasn't anything more than an

09:58:36   9   offhand comment.  It had no precedential value.  Who

09:58:45  10   cares?  You've asked for a jury.  The Fifth Circuit is

09:58:49  11   looking at it, and they will rule.  And whatever they

09:58:51  12   rule, I will abide by.  It doesn't matter to me.

09:58:56  13           But let's not forget something.  It appears the

09:59:00  14   State of Texas has some idea in its head -- from where, I

09:59:04  15   don't know -- that I am not the right judge for this case

09:59:09  16   because I've already made up my mind.  I haven't.  Or

09:59:14  17   that I am prejudiced against the State of Texas.  I am

09:59:17  18   not.

09:59:18  19           Let's look at a little history.  Not that long

09:59:25  20   ago there was a law passed by the Texas State

09:59:31  21   Legislature, a very popular law by some and unpopular by

09:59:37  22   others, called the fetal burial law.  Are you familiar

09:59:41  23   with that?

09:59:41  24           MS. PETTIT:  Yes, Your Honor.

09:59:42  25           THE COURT:  Okay.  Guess who handled that case?

| | | |
|---|---|---|
| 09:59:44 | 1 | MS. PETTIT: I believe you did, Your Honor. |
| 09:59:46 | 2 | THE COURT: I did. Now, the only decision that |
| 09:59:49 | 3 | had been rendered on that exact law was rendered by the |
| 09:59:55 | 4 | Tenth Circuit. They had ruled that that statute -- not |
| 10:00:03 | 5 | the Texas one, but the one that they were dealing with, |
| 10:00:06 | 6 | which is exactly the same -- was flat-out |
| 10:00:11 | 7 | unconstitutional, and they struck it down. |
| 10:00:15 | 8 | And then there was an appeal by the State to |
| 10:00:17 | 9 | the United States Supreme Court which was pending at the |
| 10:00:21 | 10 | time I made my ruling. So the only decision out there on |
| 10:00:26 | 11 | the fetal burial law was that it was unconstitutional, |
| 10:00:30 | 12 | and that was by a circuit court of appeals, not a |
| 10:00:33 | 13 | district court. |
| 10:00:33 | 14 | I looked at it very carefully, and my view was |
| 10:00:41 | 15 | that the Tenth Circuit was wrong, that Texas was right, |
| 10:00:43 | 16 | and I ruled for the State of Texas that the law was in |
| 10:00:46 | 17 | fact constitutional. Subsequently, the Supreme Court |
| 10:00:55 | 18 | reversed the Tenth Circuit and found the law |
| 10:00:59 | 19 | constitutional. |
| 10:01:02 | 20 | Now, we didn't get a full ruling on that case |
| 10:01:04 | 21 | because that case basically mooted the issue. It went |
| 10:01:12 | 22 | away. So Judge Costa and the rest of that panel end up |
| 10:01:18 | 23 | dismissing the case. That was a big ruling, it was a |
| 10:01:23 | 24 | tough ruling, and I ruled for the State, as I have in |
| 10:01:26 | 25 | many other cases, including this one. |

```
10:01:30   1              In this case the United States had two causes
10:01:33   2   of action.  After very thorough briefing, and it was a
10:01:40   3   very tough issue, I ruled for the State of Texas in this
10:01:43   4   case and dismissed that cause of action.
10:01:47   5              Are you aware of that?
10:01:49   6              MS. PETTIT:  Yes, Your Honor.
10:01:50   7              THE COURT:  All right.  Now, finally, let's get
10:01:57   8   to the last part of it, because this is what really kind
10:02:01   9   of made me -- really got me puzzled.
10:02:09  10              You say:  Texas' demand for a jury trial, and
10:02:18  11   indicated that I may reopen discovery, but only if the
10:02:24  12   Fifth Circuit holds Texas is entitled to a jury.  Okay.
10:02:32  13   Because the circumstances would have changed, in my view.
10:02:39  14              This was put in here, for whatever reason, I
10:02:43  15   presume to indicate that somehow I was favoring the
10:02:47  16   federal government by reopening discovery.  Let me read
10:02:51  17   you, if I may, from the transcript of what Mr. Walters --
10:02:59  18              Help me find this, will you, Rose?
10:03:01  19              -- what Mr. Walters said, because I thought
10:03:03  20   Mr. Walters made an excellent point.  Okay?  Can you help
10:03:09  21   me find -- right here on my papers somewhere.  Where is
10:03:14  22   it?  Because I don't want to keep them here unnecessarily
10:03:19  23   for a long time while I'm searching for this.  You had
10:03:25  24   highlighted what Mr. Walters had said somewhere.
10:03:35  25              Come up here.  Help me find it.
```

| 10:04:01 | 1 | I want to quote you correctly, Mr. Walters. |
| 10:04:03 | 2 | MR. WALTERS:  I appreciate it, Your Honor. |
| 10:04:12 | 3 | THE COURT:  Okay.  Here's the discussion that |
| 10:04:15 | 4 | you were so concerned about, all right?  It started with |
| 10:04:17 | 5 | Mr. Lynk.  This is where I said I may reopen discovery. |
| 10:04:23 | 6 | "MR. LYNK:  Understood.  On August the 2nd, on |
| 10:04:27 | 7 | Friday, obviously, there were a number of things that |
| 10:04:30 | 8 | originally were due, and we understood that those were |
| 10:04:34 | 9 | suspended as of last week under the -- in the |
| 10:04:37 | 10 | circumstances. |
| 10:04:39 | 11 | "THE COURT:  What were those? |
| 10:04:41 | 12 | "Generally, the response to July 26th pretrial |
| 10:04:44 | 13 | filing: objections to witnesses, objections to things |
| 10:04:47 | 14 | like, that."  That's Mr. Lynk. |
| 10:04:50 | 15 | "THE COURT:  Those I think probably should |
| 10:04:53 | 16 | wait.  And the reason for this is that we're still |
| 10:04:59 | 17 | waiting to figure out whether we have a jury or we don't |
| 10:05:02 | 18 | have a jury.  And you may decide to go with certain |
| 10:05:07 | 19 | witnesses if you have a jury.  I may even allow, because |
| 10:05:13 | 20 | if -- if it stays the way it is, if the Fifth Circuit |
| 10:05:16 | 21 | rules there is no jury in this case, because it's |
| 10:05:19 | 22 | equitable, then I won't reopen. |
| 10:05:21 | 23 | "But if we -- if we have a change in the |
| 10:05:24 | 24 | landscape and say, well, you're going to have a jury now |
| 10:05:30 | 25 | out of the blue, then I may allow the parties to add |

```
10:05:33   1   additional witnesses.  And that may impact our trial
10:05:36   2   date."
10:05:36   3            In fairness to both parties, by the way.
10:05:42   4            "MR. WALTERS:  We would suggest that if the
10:05:47   5   Court is considering reopening discovery -- so we don't
10:05:51   6   know that yet, whether the Department of Justice wants
10:05:53   7   that -- when the Fifth Circuit rules on our right to a
10:05:56   8   jury trial --
10:05:58   9            "THE COURT," here's what I say:  "I can assure
10:06:00  10   you that will not happen if they deny the request for a
10:06:05  11   jury trial, only because then that -- that means that the
10:06:08  12   tenor of the case has been the same since its inception."
10:06:11  13            It was only recently that Texas really asked
10:06:15  14   for a jury.
10:06:17  15            All right.
10:06:17  16            "MR. WALTERS:  Right.  What we're saying --"
10:06:22  17            And this is the Court, but -- this is me, now.
10:06:25  18            "But if they -- if they say the State gets a
10:06:29  19   jury or gets a partial jury trial on some issues but not
10:06:34  20   others, then I would consider it.  I'm not saying I would
10:06:37  21   grant it, but I would certainly consider it."
10:06:40  22            Now, here's the critical part.  This is
10:06:45  23   Mr. Walters, your lawyer.
10:06:47  24            "But, Your Honor, I guess our position is that,
10:06:51  25   if the Fifth Circuit were to find we are entitled to a
```

10:06:55   1   jury trial, the Court would have to resolve these motions

10:06:58   2   again because the standard would be different.  So we

10:07:07   3   would suggest not wasting the Court's time in resolving

10:07:10   4   these motions before we get a ruling from the

10:07:12   5   Fifth Circuit on --"

10:07:15   6           Then I say:  "I don't know that the legal

10:07:16   7   standard would be different."

10:07:19   8           And here's Mr. Walters:

10:07:22   9           "Well, the standard for considering, like,

10:07:25   10  experts" -- which is what I was concerned about --

10:07:28   11  "whether they're going to be excluded or not, would be

10:07:30   12  different."

10:07:31   13          And here's what I say to Mr. Walters:

10:07:34   14          "Oh, I see what you're saying, in a practical

10:07:37   15  sense.  Yeah.  I would agree with you.  I told you I will

10:07:42   16  take a look at it.  I haven't made up my mind on that,

10:07:46   17  yet.  I'll take a good look at it, okay?

10:07:49   18          "MR. WALTERS:  Thank you."

10:07:52   19          That's what that was all about.  Your side

10:08:00   20  appropriately, because they're trial lawyers and they're

10:08:05   21  good ones, is concerned that if the tenor of the case

10:08:08   22  changes from a nonjury trial to a jury trial, they may

10:08:12   23  need or may ask me to add an additional witness or two

10:08:16   24  because they've got to prove the case to the jury.

10:08:18   25          I have been involved in this case for a very

10:08:22  1  long time, and I understand the landscape.  I know what's

10:08:29  2  there.  I've heard lots and lots of testimony in this

10:08:32  3  case.  So they would not have to educate me on the facts

10:08:39  4  or on the expert opinions, because I've heard it, or at

10:08:46  5  least part of it.

10:08:49  6          But a jury is different.  They come in with a

10:08:54  7  clean slate.  They have not heard it.  They have not seen

10:08:57  8  it.  They don't know what it's all about.  So they need

10:09:02  9  to be carefully educated.  That was my concern.

10:09:11  10          You can be seated.  Thank you very much.

10:09:13  11          MS. PETTIT:  Thank you.

10:09:17  12          MR. WALTERS:  Your Honor, if I could just ask a

10:09:19  13  brief question.  In our -- in the letter that was filed

10:09:21  14  in the Fifth Circuit, the last line references this:

10:09:24  15  When transcripts became available, we would submit them

10:09:29  16  to the Fifth Circuit.  I understand Your Honor has

10:09:32  17  expressed a lot of concern about the Fifth Circuit not

10:09:35  18  getting the full context of what occurred in yesterday's

10:09:38  19  hearing.  So we would ask for your direction as to

10:09:41  20  whether you would like the rough transcripts of both

10:09:44  21  yesterday --

10:09:44  22          THE COURT:  The final transcript is done, is it

10:09:47  23  not?  The final transcript is done.  I'm not trying to

10:09:53  24  hide anything from the Fifth Circuit.  Believe me.  First

10:09:57  25  of all, I've spent 35-plus years of my life having

10:10:01  1  everything I said put down in writing.  I'm not running

10:10:09  2  away from yesterday.

10:10:11  3      What worries me and gave me concern is that

10:10:15  4  this letter -- I'm not saying that Ms. Pettit did this

10:10:22  5  intentionally.  I -- to be honest with you, I've heard

10:10:26  6  nothing but good things about Ms. Pettit, to be honest

10:10:30  7  with you.  I've heard that she's a good lawyer, and I

10:10:34  8  heard that she does her job well.  And I have no personal

10:10:40  9  animus whatsoever against Ms. Pettit.

10:10:45  10      But my concern is this.  My concern is this:

10:10:51  11  Somebody -- and I don't think it's really Ms. Pettit.

10:10:54  12  But somebody seems to think that by sending a letter like

10:10:59  13  this in to the Fifth Circuit, they are in a position to

10:11:07  14  influence the Fifth Circuit to do something they might

10:11:10  15  not otherwise do.  Why else would the letter be sent?

10:11:17  16      And I don't even know whether she actually

10:11:20  17  drafted the letter.  My -- maybe, but maybe not.  The

10:11:25  18  point is that it contains some flat-out inaccuracies, but

10:11:32  19  more important than that, half-truths.  Things are taken

10:11:36  20  out of context.  And that -- that's a shame.  The Fifth

10:11:42  21  Circuit deserves better than that.  You can be seated,

10:11:45  22  Counsel.

10:11:45  23      MR. WALTERS:  Thank You, Your Honor.

10:11:50  24      MR. STONE:  I just wanted to add one thing.

10:11:50  25  I'm sorry you feel that way.  I want to add something

10:11:52  1  that -- just a point of correction for the last point

10:11:53  2  that you were making with Ms. Pettit, specifically about

10:11:56  3  reopening discovery.

10:11:57  4        At no point did Texas indicate that we were

10:12:00  5  open to reopening discovery or that that was even on the

10:12:03  6  table.  That discussion that you quoted from Mr. Walters

10:12:06  7  was specifically in reference to deciding motions like

10:12:08  8  motions in limine.

10:12:09  9        THE COURT:  Well, first of all, Mr. Walters can

10:12:11  10  speak for himself.  But, in any event, go ahead.

10:12:14  11        MR. STONE:  It was specifically in reference

10:12:16  12  things like motions in limine.

10:12:17  13        THE COURT:  Yeah.  I don't see anything here

10:12:19  14  that says anything about motions in limine.

10:12:22  15        MR. STONE:  As well as experts, Your Honor.  We

10:12:23  16  filed motions to exclude.

10:12:24  17        THE COURT:  It doesn't -- but, Counsel, it

10:12:25  18  doesn't matter.  It doesn't matter.  I said clearly that

10:12:31  19  I had not made up my mind as to whether I would reopen

10:12:36  20  discovery.  I would hear argument on that.  It just means

10:12:41  21  that I had not made a decision, and the tenor of the

10:12:46  22  letter that was sent indicated that I had.  And I hadn't.

10:12:50  23  And I made that very clear to Mr. Walters.

10:12:53  24        I said I would agree with you there.  I agree

10:12:58  25  with Mr. Walters.  I frequently agree with Mr. Walters.

```
10:13:02  1   I agree with you there.  I told you I will take a look at
10:13:05  2   it.  I haven't made up my mind on that yet.  I will take
10:13:10  3   a very good look at it.
10:13:13  4            That's what I said.  So you can be seated.
10:13:17  5            MR. STONE:  Your Honor, although I will add
10:13:18  6   just for the record that I don't think that that final
10:13:19  7   sentence in the letter doesn't -- I think it says exactly
10:13:22  8   that, that you were open to the possibility of reopening
10:13:25  9   discovery depending on whether or not -- depending on the
10:13:27  10  outcome of that jury issue.  That's what the letter said,
10:13:32  11  Your Honor, just so the record reflects that.  Thank you.
10:13:32  12           THE COURT:  Let me look at it.  I don't have it
10:13:32  13  right in front of me.  What did I do with it?
10:13:48  14           MR. STONE:  I can read the sentence.
10:13:50  15           THE COURT:  No.  It's okay.  I'm looking for
10:13:51  16  it.  I'll find it.  It's here somewhere.  Here it is.  We
10:14:15  17  found it.  It got buried.
10:14:38  18           Okay I don't know why this sentence was put in
10:14:40  19  the letter.  I mean, it just doesn't make sense to me.  I
10:14:44  20  mean, why is it here?
10:14:45  21           MR. STONE:  Because Texas will be materially
10:14:48  22  prejudiced if you reopen discovery, in our opinion.
10:14:50  23           THE COURT:  That's something we will decide.
10:14:52  24           MR. STONE:  Agreed, Your Honor.
10:14:53  25           THE COURT:  And I said that.
```

| | | |
|---|---|---|
| 10:14:55 | 1 | MR. STONE: Yeah. |
| 10:14:55 | 2 | THE COURT: But why is it here? Why is it in |
| 10:14:59 | 3 | this letter? What does it have to do with anything? It |
| 10:15:02 | 4 | doesn't have to do with anything. |
| 10:15:05 | 5 | The real key to this letter is Texas was trying |
| 10:15:09 | 6 | to leave the impression with the *en banc* court that I had |
| 10:15:15 | 7 | made a decision or that I had somehow indicated, God |
| 10:15:26 | 8 | forbid, that there was an issue with respect to which was |
| 10:15:33 | 9 | the controlling opinion, if any. And that is a terrible |
| 10:15:39 | 10 | thing to do. |
| 10:15:41 | 11 | You know, I'll tell you what the worst part of |
| 10:15:44 | 12 | this is. And I don't think it's true. I really don't |
| 10:15:49 | 13 | think it's true. It could leave somebody with the |
| 10:15:54 | 14 | impression that the State of Texas thinks they've got the |
| 10:15:57 | 15 | Fifth Circuit in their back pocket. |
| 10:15:59 | 16 | Now, I don't think you believe that. I really |
| 10:16:04 | 17 | don't think the Attorney General's Office believes that |
| 10:16:08 | 18 | they have the State of Texas in their back pocket and |
| 10:16:12 | 19 | they can just file anything they want, prejudice the |
| 10:16:17 | 20 | Court against this Court, and get a successful ruling. I |
| 10:16:21 | 21 | do not believe the Attorney General's Office believes |
| 10:16:24 | 22 | that. If I did, you would know it. |
| 10:16:31 | 23 | MS. PETTIT: Your Honor, for the record, we |
| 10:16:33 | 24 | definitely do not. |
| 10:16:34 | 25 | THE COURT: You don't have to tell me that. I |

| | | |
|---|---|---|
| 10:16:36 | 1 | already said I don't believe that you do.  But somebody |
| 10:16:40 | 2 | who just read this and would say why did they send this |
| 10:16:43 | 3 | in?  What was purpose of it?  What is the big, important |
| 10:16:49 | 4 | issue here?  I don't know.  I don't know why it was sent |
| 10:17:00 | 5 | in.  It was ill-advised. |
| 10:17:03 | 6 | It really shouldn't have been sent, because |
| 10:17:06 | 7 | it's neither a Rule 28(j) letter -- and if it's not a |
| 10:17:10 | 8 | 28(j) letter, what is it?  It's just a notice to the |
| 10:17:15 | 9 | Fifth Circuit that, gosh, you know that Judge David Ezra |
| 10:17:19 | 10 | actually said that, with this big split court, there |
| 10:17:27 | 11 | might be an issue as to whether Judge Willett's opinion |
| 10:17:32 | 12 | is precedential.  Heaven forbid. |
| 10:17:41 | 13 | Do you think Judge Willett, who I know well and |
| 10:17:44 | 14 | who is a fine United States Circuit Judge of the highest |
| 10:17:49 | 15 | integrity, is going to read this and not sleep at night |
| 10:17:54 | 16 | and just say, oh, my God?  He's going to read the |
| 10:17:58 | 17 | transcript, and he's going to see that David Ezra said in |
| 10:18:02 | 18 | multiple places that I have no opinion on that at all. |
| 10:18:10 | 19 | And I will say it again.  My fallback position |
| 10:18:15 | 20 | is that Judge Willett's opinion is precedential, and I'm |
| 10:18:21 | 21 | inclined to find that it is.  And I'll say that. |
| 10:18:26 | 22 | But there is an issue.  We have a deeply |
| 10:18:32 | 23 | divided opinion.  And it is in Judge -- and it's a fact |
| 10:18:40 | 24 | that Judge Ho did not weigh in on this issue.  Maybe he |
| 10:18:44 | 25 | will now.  Maybe he'll file some sort of an amended |

10:18:48  1   opinion now that he's gotten your letter.  I don't know.
10:18:51  2   But he could do that at any time.  Maybe that was the
10:18:55  3   purpose of it.  I don't know.  I hope not.  Or maybe
10:19:00  4   Judge Willett will file -- I have no idea.

10:19:07  5            But I surely don't understand, and have never
10:19:12  6   in my entire career -- and I've handled big cases all
10:19:21  7   across the country, big ones, much bigger than this.  And
10:19:29  8   I've handled big cases sitting on the Court of Appeals.
10:19:31  9   I have never seen a letter like this filed, ever.

10:19:39  10           And maybe I'm just naive.  No judge that I've
10:19:48  11  raised this with and talked to about this, just asked
10:19:54  12  them if this is a policy or if they've ever seen it,
10:19:57  13  nobody had ever seen it.  And we're talking about
10:20:00  14  conservative judges now that I talked to.  Nobody had
10:20:03  15  ever seen it or heard of it.

10:20:09  16           And at the time we thought it was a rule, as
10:20:16  17  you put it originally, a Rule 28(j) letter.  They said,
10:20:22  18  Well, that's obviously not a 28(j) letter.

10:20:28  19           And if it's not a 28(j) letter, then what is
10:20:33  20  it?  It's just telling them that I had a status
10:20:36  21  conference with the parties, I raised an issue which I
10:20:39  22  had heard -- I actually hadn't thought about it myself
10:20:43  23  initially.  I just read Judge Willett's opinion, I read
10:20:46  24  all the other opinions and I just let it go at that and
10:20:50  25  set the status conference.

| | | |
|---|---|---|
| 10:20:51 | 1 | But then I heard some chatter.  And then I |
| 10:20:59 | 2 | looked at it more carefully, and I thought this is |
| 10:21:02 | 3 | probably an issue that should be briefed, that we should |
| 10:21:07 | 4 | look at carefully, because this case may well not end |
| 10:21:14 | 5 | with the Fifth Circuit, regardless of what they do.  It |
| 10:21:18 | 6 | could go to the Supreme Court. |
| 10:21:21 | 7 | And if I just take one position or another |
| 10:21:27 | 8 | without getting the full briefing of both sides and |
| 10:21:30 | 9 | carefully considering it, and it goes up to the Supreme |
| 10:21:35 | 10 | Court and they say, Wow, Ezra was wrong, that wasn't a |
| 10:21:39 | 11 | precedential opinion, he shouldn't have treated it as |
| 10:21:42 | 12 | such, or it was a precedential opinion and he didn't |
| 10:21:46 | 13 | treat it as such, the other way, it comes all the way |
| 10:21:51 | 14 | back down and we start all over again. |
| 10:21:54 | 15 | That doesn't make any sense.  I have great |
| 10:21:58 | 16 | faith in the quality of the lawyers in this case.  I've |
| 10:22:04 | 17 | read your briefing.  Your briefing is good.  And I am |
| 10:22:10 | 18 | looking to you to help me make the right decision here. |
| 10:22:16 | 19 | That's what this is all about.  Just like I did, in my |
| 10:22:22 | 20 | view -- the United States doesn't agree -- when I |
| 10:22:25 | 21 | dismissed their cause of action in involving Mexico |
| 10:22:35 | 22 | international law.  I got very good briefing on that, and |
| 10:22:38 | 23 | I ruled for the State because I think, looking at it |
| 10:22:42 | 24 | carefully, Texas is right.  It's not a cause of action |
| 10:22:48 | 25 | here.  Political question. |

| | | |
|---|---|---|
| 10:22:55 | 1 | So, again, Ms. Pettit, I want to emphasize to |
| 10:23:01 | 2 | you that, first of all, I want to thank you for showing |
| 10:23:05 | 3 | up.  I didn't order you here, you didn't have to come |
| 10:23:09 | 4 | here, and you didn't have to subject yourself to being |
| 10:23:14 | 5 | questioned by me on this letter.  And your willingness to |
| 10:23:22 | 6 | do so says a lot, not only about you personally but about |
| 10:23:29 | 7 | your belief in your office.  And that I think is |
| 10:23:34 | 8 | important.  So I thank you very much for coming.  You |
| 10:23:39 | 9 | didn't have to do it.  I didn't order -- I could have |
| 10:23:43 | 10 | ordered you here, but I didn't.  I simply requested that |
| 10:23:46 | 11 | you come.  And you could have said, ah, I'm not coming. |
| 10:23:50 | 12 | We've got lawyers. |
| 10:23:52 | 13 | I want to thank counsel for her.  You did the |
| 10:23:55 | 14 | best job you could.  You didn't -- I didn't attack her in |
| 10:23:58 | 15 | any way, shape, or form.  I'm not attacking her.  I don't |
| 10:24:03 | 16 | know whether she even actually wrote the letter.  She's |
| 10:24:06 | 17 | at a level where frequently other people write letters. |
| 10:24:11 | 18 | And so the errors in the letter may not even be hers. |
| 10:24:18 | 19 | But it doesn't matter.  I'm not mad.  I don't |
| 10:24:25 | 20 | hold grudges.  In my entire career as a federal judge, |
| 10:24:33 | 21 | all the cases I've handled, all the circuits that have |
| 10:24:37 | 22 | heard my appeals, I have never to my knowledge been |
| 10:24:44 | 23 | removed -- or my recollection -- from a case for bias or |
| 10:24:50 | 24 | for any other reason. |
| 10:24:51 | 25 | Now I've recused myself because I had a |

| 10:24:53 | 1 | conflict.  But I don't have a bias against the State of |
| 10:24:59 | 2 | Texas, and my record here proves it.  By the way, I |
| 10:25:04 | 3 | handle a lot of State of Texas cases.  They have nothing |
| 10:25:08 | 4 | to do with big issues like we have here, and I rule for |
| 10:25:12 | 5 | the State of Texas frequently.  Nothing against the State |
| 10:25:17 | 6 | of Texas. |
| 10:25:20 | 7 |            I love the State of Texas, actually.  I didn't |
| 10:25:23 | 8 | have to become a member of the Texas Bar, but I did. |
| 10:25:29 | 9 | Why?  Because I'm proud to be a member of the Texas Bar. |
| 10:25:38 | 10 | That's why.  And my good friend, the Chief Justice, swore |
| 10:25:42 | 11 | me in his office.  And I'm very proud of that, too. |
| 10:25:47 | 12 |            And let me say again:  I have no animus or any |
| 10:25:52 | 13 | concern about the Fifth Circuit Court of Appeals.  They |
| 10:25:56 | 14 | will do whatever they need to do.  Now, am I always happy |
| 10:25:59 | 15 | about every ruling they -- they hand down?  No. |
| 10:26:04 | 16 | Absolutely not. |
| 10:26:06 | 17 |            Look.  I am very good friends with many of the |
| 10:26:12 | 18 | those judges.  I don't know all of them well, but I know |
| 10:26:15 | 19 | most of them.  And I have a wonderful relationship |
| 10:26:19 | 20 | with -- even like Judge Willett and I have a good |
| 10:26:24 | 21 | relationship.  He's a great judge.  Judge Elrod and I are |
| 10:26:29 | 22 | very good friends, very good friends.  Judge -- Chief |
| 10:26:36 | 23 | Judge Richman and I are very good friends.  Judge Oldham |
| 10:26:41 | 24 | and I are friends. |
| 10:26:43 | 25 |            Now, Judge Elrod was in the majority that |

| | | |
|---|---|---|
| 10:26:47 | 1 | reversed me in this.  You think that makes any difference |
| 10:26:49 | 2 | to me?  Absolutely not.  She was doing her job the way |
| 10:26:54 | 3 | she thought she needed to do it.  Judge Willett wrote the |
| 10:26:58 | 4 | opinion.  Do I agree with him?  No.  But I don't think |
| 10:27:03 | 5 | that makes me a nut.  There's a lot of Fifth Circuit |
| 10:27:09 | 6 | judges that didn't agree with them.  So I don't think I'm |
| 10:27:13 | 7 | some sort of wild outlier here. |
| 10:27:17 | 8 | And President Ronald Reagan wasn't known for |
| 10:27:26 | 9 | appointing left-wing radical jurists, and I don't think |
| 10:27:35 | 10 | I've ever proven to be one.  So I am going to ask that |
| 10:27:44 | 11 | when you send the transcript up to the Fifth Circuit, you |
| 10:27:48 | 12 | send this transcript with it, today's transcript. |
| 10:27:55 | 13 | MS. PETTIT:  Certainly, Your Honor. |
| 10:27:56 | 14 | THE COURT:  Okay? |
| 10:27:58 | 15 | MR. WALTERS:  Absolutely, Your Honor. |
| 10:27:59 | 16 | THE COURT:  Okay.  Let them have both |
| 10:28:01 | 17 | transcripts.  If they're going to read a transcript, let |
| 10:28:03 | 18 | them read it all. |
| 10:28:05 | 19 | MS. PETTIT:  Absolutely. |
| 10:28:06 | 20 | THE COURT:  They may be mad at me for calling |
| 10:28:09 | 21 | this hearing.  I don't know.  But I don't think so.  I |
| 10:28:11 | 22 | mean, I don't think when I -- when we left yesterday, I |
| 10:28:16 | 23 | thought we were on solid ground as to what we were doing. |
| 10:28:22 | 24 | I thought we understood what we were doing, and we were |
| 10:28:25 | 25 | going forward. |

```
10:28:26   1              I don't think -- I really don't think either
10:28:30   2   party, when they left -- tell me, please, if you will.
10:28:34   3   Did any party feel that the process that I set forth was
10:28:38   4   prejudicial or in some way did not follow what you would
10:28:45   5   like to have been done?  I don't think so.  I certainly
10:28:50   6   would have heard -- we don't have any shrinking flowers
10:28:53   7   here.
10:28:55   8              In fact, I agreed with the State of Texas more
10:28:59   9   than I agreed with the government -- the federal
10:29:01  10   government.  You're the government, too.  You're a
10:29:06  11   sovereign government, to use Governor Abbott's words,
10:29:14  12   which I agree with, by the way.  Texas is a sovereign
10:29:17  13   state.  It's a government, and it needs to be treated as
10:29:21  14   such.
10:29:21  15              So that's where we are.  I intend to follow
10:29:35  16   through with the plan we worked out, and I hope when we
10:29:41  17   hear from the Fifth Circuit -- which it's a legal
10:29:47  18   question.  You know, if the Fifth Circuit says, look,
10:29:50  19   they're entitled to a jury trial, that will be an issue
10:29:53  20   the Supreme Court will have to decide, ultimately.  But
10:29:56  21   you're going to get a jury trial.
10:29:57  22              I mean, I think it's an equitable cause of
10:30:01  23   action.  They're not seeking money damages.  They're
10:30:04  24   seeking to have you remove the buoy.  And with respect to
10:30:08  25   the potential of a fine, the government has not ever
```

10:30:13  1    indicated they're looking to recover a fine in this case.

10:30:19  2    They're not pursuing that remedy.  They just want

10:30:23  3    equitable remedy.  And, even if they were pursuing it, we

10:30:26  4    could handle that at a later time, and it would be a jury

10:30:28  5    trial.

10:30:28  6            But that's not -- I mean, are we even going to

10:30:34  7    get that far?  I don't know.  As I said the other day,

10:30:39  8    the United States may look at this and say, look, there's

10:30:42  9    no really -- there's no way, given the Fifth Circuit's

10:30:46  10   ruling, that we can adequately proceed.  And that we may

10:30:52  11   have a trial on the record and have me enter judgment,

10:31:01  12   and then they can take their appeal, as for a *writ of*

10:31:08  13   *certiorari*.

10:31:08  14           I guess they would have to appeal to the Fifth

10:31:11  15   Circuit first, because that would be a trial on the

10:31:14  16   merits, the other -- we keep forgetting that that *en banc*

10:31:18  17   ruling was not on the merits of the case, it was on the

10:31:22  18   preliminary injunction.  This thing is so complicated,

10:31:27  19   even I lose track of it half the time.

10:31:29  20           All right.  Again, I want to thank all of you

10:31:33  21   for being here.  And, by the way, if you don't think --

10:31:37  22   this is the really odd part of it.  There's a reporter

10:31:44  23   for *The Statesman* who I've never personally met, who

10:31:50  24   happens to be an excellent reporter.  What is his name

10:31:54  25   again?  He's already got an article out on this.

10:32:03  1            Is it Jeremy?

10:32:06  2            THE CLERK:  I don't think so.  I don't have

10:32:07  3  Internet.

10:32:08  4            THE COURT:  What is his name?  Are you out

10:32:10  5  here?  What is your name, sir.

10:32:12  6            MR. MORITZ:  Your Honor, I'm John Moritz with

10:32:13  7  the *Austin American-Statesman.*

10:32:14  8            THE COURT:  There you go.  Mr. Moritz.

10:32:16  9            Mr. Moritz is an excellent reporter.  I read

10:32:20  10  his articles many times.  He generally gets it absolutely

10:32:24  11  right, which is not something that happens often.  And

10:32:30  12  he's already written an article on this, and he has

10:32:33  13  brought out the facts in that article.

10:32:36  14            Do you think that these Fifth Circuit judges

10:32:39  15  live in some sort of a bubble and they don't read the

10:32:42  16  newspaper?  They do.  We don't all live in a bubble.

10:32:52  17  They read the newspapers.  They go to Baylor games like

10:32:53  18  me.  Judge Willett's a big Baylor fan, as is Judge Elrod

10:33:00  19  and I.  That's our connection.  And Judge Richman, by the

10:33:05  20  way, Chief Judge Richman.

10:33:10  21            Okay.  And he'll write another article today

10:33:12  22  maybe.  I don't know.  But he is a good reporter.

10:33:17  23            All right.  Anything else you would like to put

10:33:20  24  on the record?

10:33:23  25            MR. WALTERS:  We're always happy to meet with

| | | |
|---|---|---|
| 10:33:25 | 1 | you, Your Honor. |
| 10:33:27 | 2 | THE COURT:  Not always.  You're about as always |
| 10:33:32 | 3 | happy to meet with me as I am to always read Fifth |
| 10:33:36 | 4 | Circuit opinions.  Most of the time I get affirmed.  You |
| 10:33:39 | 5 | know, I have a really good record in front of the Fifth |
| 10:33:41 | 6 | Circuit, I'm proud to say.  Unfortunately, sometimes, |
| 10:33:46 | 7 | when I don't get affirmed, it's the ones that you read |
| 10:33:48 | 8 | about.  What can you say? |
| 10:33:54 | 9 | Okay.  Thank you.  Anything else, Counsel? |
| 10:33:57 | 10 | MR. WADE:  No, Your Honor.  Thank you. |
| 10:33:58 | 11 | THE COURT:  Anything from the people on the |
| 10:34:02 | 12 | phone?  Hello?  Are you there?  Did we lose them? |
| 10:34:11 | 13 | MR. LYNK:  Sorry.  I was muted.  But nothing |
| 10:34:14 | 14 | from the United States, Your Honor. |
| 10:34:14 | 15 | THE COURT:  You may -- and I'm not telling you |
| 10:34:16 | 16 | to do so.  But you may want to respond to Texas's letter, |
| 10:34:23 | 17 | if you wish, because it's now kind of *ex parte*.  But you |
| 10:34:29 | 18 | also may want to wait and see if they request it. |
| 10:34:34 | 19 | Generally -- but that's up to you.  I'm not |
| 10:34:41 | 20 | telling you to do it or not to do it. |
| 10:34:45 | 21 | MR. LYNK:  Understood, Your Honor. |
| 10:34:45 | 22 | THE COURT:  Okay.  You do whatever you want to |
| 10:34:47 | 23 | do.  But I want this transcript to go up.  And if Texas |
| 10:34:53 | 24 | for some reason is unable to do it or didn't do it or |
| 10:34:56 | 25 | doesn't do it, I want the United States to send this |

10:34:59 1   transcript up.  Somebody send the transcript up to the

10:35:04 2   Fifth Circuit.

10:35:04 3           MR. WALTERS:  We'd be happy to do it,

10:35:06 4   Your Honor.

10:35:07 5           THE COURT:  If you say you will, you will.  I

10:35:09 6   don't have any concerns about that.

10:35:12 7           MR. WALTERS:  And, Your Honor, would you like

10:35:16 8   us to file the -- once we get a rough transcript, or

10:35:19 9   would you like to wait until you get a final transcript.

10:35:22 10          THE COURT:  She'll get a finalized transcript

10:35:25 11  to you today.

10:35:26 12          MR. WALTERS:  For today's hearing?

10:35:27 13          THE COURT:  She's really good.  She's an

10:35:29 14  excellent reporter.

10:35:30 15          MR. WALTERS:  That is what I've heard.  Thank

10:35:32 16  you very much.  That's been our experience.

10:35:38 17          THE COURT:  Anything else?  You're chatting

10:35:39 18  among yourselves.

10:35:40 19          MR. WALTERS:  No, Your Honor.  We're good.

10:35:42 20          THE COURT:  This is the kind of chatter we get,

10:35:44 21  you know.  For all we know, somebody in the Fifth

10:35:47 22  Circuit -- in the Attorney General's Office, some

10:35:50 23  appellate lawyer, might have looked at this and said,

10:35:53 24  Whoops.  We have an issue here.  I think we've got a

10:35:56 25  winner, but we need to address it when it comes down to

10:36:01  1   the opinions.  Some appellate lawyer might have said

10:36:05  2   that.  And, if they did, they're smart.

10:36:07  3          Okay.  Thank you very much.  Court stands in

10:36:09  4   recess.

10:36:10  5       (End of transcript)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **UNITED STATES DISTRICT COURT        )**

2    **WESTERN DISTRICT OF TEXAS           )**

3         I, Arlinda Rodriguez, Official Court Reporter, United

4    States District Court, Western District of Texas, do certify

5    that the foregoing is a correct transcript from the record of

6    proceedings in the above-entitled matter.

7         I certify that the transcript fees and format comply with

8    those prescribed by the Court and Judicial Conference of the

9    United States.

10        WITNESS MY OFFICIAL HAND this the 7th day of August 2024.

11

12                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
13                              Expiration Date:  10/31/2025
                                Official Court Reporter
14                              United States District Court
                                Austin Division
15                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
16                              (512) 391-8791

17

18

19

20

21

22

23

24

25