
RECEIVED
September 20, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY:_____pg_____
                    DEPUTY

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 20, 2024
Lyle W. Cayce
Clerk

No. 24-50620

IN RE: GREG ABBOTT, *in his capacity as Governor of the State of Texas*; STATE OF TEXAS,

*Petitioners*.

Petition for Writ of Mandamus
to the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-853

ORDER

Before STEWART, HAYNES, and HIGGINSON, *Circuit Judges*.[1]

CARL E. STEWART, *Circuit Judge*:

In this action brought by the United States against the State of Texas and its governor Greg Abbott (collectively, "Texas"), Texas filed a motion before the district court to place the case on a jury docket, invoking its Seventh Amendment right to "trial by jury" in "Suits at common law." U.S. CONST. amend. VII. The district court denied its demand, and Texas now petitions this court for a writ of mandamus. We DENY the petition.

---

[1] Judge Haynes concurs in the conclusion that denies the petition for writ of mandamus.

No. 24-50620

## I. Factual & Procedural Background

In July 2023, Texas installed a 1,000-foot floating barrier in the Rio Grande near Eagle Pass, along the United States' border with Mexico. The United States then sued, alleging that Texas's installation of the barrier violated the Rivers and Harbors Act of 1899 (the "RHA").[2] In its complaint, the United States requested various forms of injunctive relief. Namely, it asked the district court to "[e]njoin" Texas "from further constructing, installing, placing, or maintaining structures in waters of the United States" and "from creating or maintaining obstructions in or affecting the navigable waters of the United States" that do not comply with the RHA and other applicable law. It also asked that the court "[c]ompel" Texas "to promptly remove the unauthorized obstruction to the navigable capacity of navigable waters of the United States pursuant to the RHA" and other applicable law.

---

[2] In its amended complaint, the United States added an additional claim that Texas's installation of the barrier impeded the United States' ability to meet its treaty obligations to Mexico under the Treaty of Guadalupe Hidalgo. The treaty requires that navigation in the Rio Grande "be free and common to vessels and citizens of both countries; and neither shall, without the consent of the other, construct any work that may impede or interrupt, in whole or in part, the exercise of this right." Treaty of Peace, Friendship, Limits, and Settlement between the United States of America and the Mexican Republic, Mex.-U.S., art. VII, Feb. 2, 1848, 9 Stat. 922, 928. The district court, however, dismissed this claim. It concluded that the treaty was not self-executing and that Congress had not provided a remedy in federal court. Because the treaty claim is no longer at issue, we do not consider whether it would have provided Texas a right to trial by jury under the Seventh Amendment.

The United States then requested that the district court "[g]rant such other relief as the [c]ourt may deem just and proper."[3]

After filing its complaint, the United States moved for a preliminary injunction. The district court granted that motion, "enjoin[ing]" Texas "from building new or placing additional buoys, blockades, or structures of any kind in the Rio Grande River pending final judgement in this matter," and required Texas to "reposition, at [its] expense, . . . all buoys, anchors, and other related materials composing the floating barrier placed by Texas in the Rio Grande in the vicinity of Eagle Pass, Texas to the bank of the Rio Grande on the Texas side of the river."

Seeking relief from that order, Texas filed its first petition with this court for a writ of mandamus. Ultimately, this court sitting en banc applied the "traditional equitable rules" to reverse the district court's preliminary injunction. *United States v. Abbott*, 110 F.4th 700, 719, 722 (5th Cir. 2024) (en banc) (quoting *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1577 (2024)).[4]

While litigating their appeal of the preliminary injunction, the parties continued to progress toward trial in the district court. Texas filed a motion to dismiss, which the district court denied in April with respect to the United States' RHA claim.[5] Texas then filed its answer to the United States'

---

[3] The United States also asked the district court to "[a]ward" it "costs and disbursements." Because Texas does not claim that this request entitles it to a jury trial under the Seventh Amendment, we do not consider that possibility any further. We do note, however, that we have held that a claim for attorneys' fees does not generate a right to a jury trial under the Seventh Amendment. *See Swofford v. B&W, Inc.*, 336 F.2d 406, 413 (5th Cir. 1964).

[4] By contrast, this appeal concerns a trial to determine whether to issue a permanent injunction.

[5] As already mentioned, the order granted Texas's motion to dismiss the United States' treaty claim.

complaint. In its answer, Texas "demand[ed] trial by jury on all issues so triable." It reiterated that "demand" one month later, when it moved to place the case on the district court's "jury docket." The district court denied Texas's motion, reasoning that it had no Seventh Amendment right to a jury trial because the United States' suit is "a purely equitable action" that would not have been entitled to a jury at common law.

Texas then filed its second petition for mandamus with this court, requesting that we "direct[] the district court to grant Texas a jury trial in accordance with [its] Seventh Amendment rights."[6] We now consider that petition.

## II. Discussion

Ordinarily, courts only issue writs of mandamus when petitioners show that they (1) have a "clear and indisputable" right, (2) that satisfies the court "that the writ is appropriate under the circumstances," and (3) they have "no other adequate means to attain [] relief." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc). That changes in at least some courts, however, when the right at issue is the Seventh Amendment right to a jury trial. Under these circumstances, the *Cheney* analysis is sometimes relaxed in order to "grant mandamus to require [a] jury trial where it has been improperly denied." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511 (1959); *see also Dairy Queen v. Wood*, 369 U.S. 469, 472 (1962) (observing that *Beacon Theatres* "emphasizes the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional

---

[6] The same day, Texas also filed an emergency motion with this court to stay the trial pending our resolution of its mandamus petition. The district court, however, has since issued a 90-day continuance of the trial until November 7, 2024, resulting in our denial of Texas's emergency motion as moot.

right to trial by jury"); *In re Simons*, 247 U.S. 231, 239–40 (1918) (granting a petition for mandamus only because the district court's order denying a jury trial "was wrong and deprived the plaintiff of her right to a trial by jury"). For our part, Fifth Circuit case law states that "a writ of mandamus is an appropriate remedy to protect the valued right of trial by jury and to avoid costly, multiple trials." *In re Jensen*, 946 F.2d 369, 371 (5th Cir. 1991); *see also United States v. Denson*, 603 F.2d 1143, 1146 (5th Cir. 1979) (en banc) (interpreting *Beacon Theatres* to reflect a "narrowly constrained" mandamus inquiry in the Seventh Amendment context). We conclude that this statement indicates some level of solicitude for the jury trial right. But we need not decide how much, for even under the "essentially de novo" review Texas has proposed, it has not satisfied the first prong of the *Cheney* analysis. A litigant with no demonstrated right to a jury trial cannot be entitled to mandamus in vindication of that right. *See* 542 U.S. at 380–81. For that reason, we pretermit analysis of the second and third *Cheney* prongs and deny Texas's petition on prong one.

\* \* \*

Turning to our analysis under *Cheney*'s first prong, although a petitioner must normally establish a "clear and indisputable" right to relief, some courts apply a relaxed standard in the Seventh Amendment context. *See* 542 U.S. at 380–81; *Beacon Theatres*, 359 U.S. at 511. The United States contests this relaxed standard, stating that this court "has never expressly held that a petitioner need not meet its burden of demonstrating clear entitlement to the writ, even in the Seventh Amendment context." *See In re Fibreboard Corp.*, 893 F.2d 706, 708 (5th Cir. 1990) (stating that a petitioner must show its "right to the issuance of the writ is clear and indisputable" (internal quotations omitted)). Texas, however, urges us to apply an "essentially de novo review" on this prong. We need not decide definitively which standard applies, however, because Texas fails to establish that it is

entitled to a jury trial under any standard of review. Thus, for the purposes of our analysis herein, we consider Texas's claim de novo.

The Seventh Amendment only "extends to a particular statutory claim if the claim is 'legal in nature.'" *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). To determine whether a claim is legal in nature, courts "must examine both the nature of the action and of the remedy sought." *Tull v. U.S.*, 481 U.S. 412, 417 (1987); *Jarkesy*, 144 S. Ct. at 2129 (same); *Curtis v. Loether*, 415 U.S. 189, 196 & n.11 (1974) (same). Although "the nature of the cause of action and the remedy" are "two important factors" that courts must consider independently, *Tull*, 481 U.S. at 421 n.6, "the remedy [i]s the 'more important' consideration." *Jarkesy*, 144 S. Ct. at 2129 (quoting *Tull*, 481 U.S. at 421); *Granfinanciera*, 492 U.S. at 42 (agreeing that the remedy stage of the analysis is "more important" than the cause-of-action stage); *Curtis*, 415 U.S. at 196 (agreeing that "the relief sought" was "more important" than whether the "cause of action [wa]s analogous" to a suit at common law); *Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F.4th 278, 291 (5th Cir. 2023) (reasoning that the remedy stage is more important and noting that the cause-of-action stage's inquiry can be "abstruse" and "difficult to apply" (quoting *Ross v. Bernhard*, 396 U.S. 531, 538 n.10 (1970))).[7]

---

[7] There is also a question of whether the Seventh Amendment's jury-trial right extends to state litigants like Texas or just to individuals. Texas has cited district court and out-of-circuit authority holding that the states do in fact have a Seventh Amendment right to a trial by jury. *See In re Oil Spill by the Oil Rig Deepwater Horizon*, 98 F. Supp. 3d 872, 883 (E.D. La. 2015); *Standard Oil Co. of Cal. v. Arizona*, 738 F.2d 1021, 1028 (9th Cir. 1984). Because the United States does not contest this point, we do not address it. Nor do we address it for Governor Abbott, acting in his official capacity. *Cf. Austin v. Shalala*, 994 F.2d 1170, 1175 (5th Cir. 1994) (treating the United States and the Secretary of Health and Human Services, acting in her official capacity, as interchangeable for purposes of the Seventh Amendment analysis at issue).

For the following reasons, we conclude that Texas has neither demonstrated that the United States' RHA claim is a legal cause of action, nor that it seeks a legal remedy. Accordingly, we hold that Texas has no Seventh Amendment right to a jury trial in this case.

A.     *The RHA claim's purportedly "close relationship" to ejectment*

Texas asserts that the United States' cause of action under the RHA bears a "close relationship" to the common law claim of ejectment. *See Jarkesy*, 144 S. Ct. at 2131. To determine whether a "statutory action" is sufficiently "analogous to 'Suits at common law'" for the jury-trial right to attach, courts "compare the . . . action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Tull*, 481 U.S. at 417. In making that comparison, courts analyze whether the cause of action at issue and the historical common law claim "target the same basic conduct." *Jarkesy*, 144 S. Ct. at 2130. More specifically, a cause of action is sufficiently analogous to "the common-law action of ejectment" when the two "serve[] the same essential function," which is "to permit the plaintiff to evict one who is wrongfully detaining possession and to regain possession himself." *Pernell v. Southall Realty*, 416 U.S. 363, 375 (1974); *see also id.* at 376 ("[E]very action recognized in 1791 for the recovery of possession of property carried with it the right to jury trial.").

Texas contends that the United States' RHA claim "serves the same essential function" as a historical claim for ejectment at common law. *Id.* at 375. An RHA claim, according to Texas, permits the United States to "regain possession" of the portion of the Rio Grande where Texas has placed the barrier. But Texas contends that United States has no right to do so because the Rio Grande is not a "water *of the United States*" under the RHA. It therefore claims the right to possess (and to exclude the United States from) the Rio Grande. Texas bases that claim in "its sovereign power over its

7

waterways within and along its territory" that it retained upon admission into the Union. *Pollard v. Hagan*, 44 U.S. (3 How.) 212, 230 (1845). Texas states that it follows from those principles that in order to take control over the contested stretch of the Rio Grande, "a waterway[] within and along [Texas's] territory," "the United States necessarily asserts a superior possessory interest . . . by virtue of 'rights surrendered and powers granted by the Constitution to the Federal Government.'" *See id.*

In opposition, the United States contends that its RHA claim does not "serve the same essential function" because, unlike historical suits for ejectment, its claim is not "premised on claims of ownership or possession." According to the United States, its RHA claim "does not seek to clarify title or any possessory interest," but instead seeks to ensure "navigation and commerce safe and free of obstruction" for all. The United States thus asserts that the appropriate historical analogue is a public nuisance claim.

We are unconvinced by Texas's analogy to ejectment. Although an exact analogy is not required, Texas's falters enough that it does not demonstrate entitlement to a jury trial. For example, one "essential function" of an action for ejectment is recovery of possession of land, which is to say that a plaintiff in ejectment must be out of possession. *Pernell*, 416 U.S. at 375. Unlike the tenant in *Pernell* occupying the apartment owned by his landlord, we do not think that Texas has effectively disseised the United States of this section of its border. *See id.* at 364. It has instead simply installed an impediment to free navigation. Nor is the "essential function" of this suit to put the United States back into possession; rather, the point is to compel Texas to remove its allegedly unlawful fixtures. *See Fixtures*, BLACK'S LAW DICTIONARY (12th ed. 2024). Neither the existence of such fixtures, nor the decision of the United States to invoke judicial process to remove them says much one way or the other about either party's possession of the relevant portions of the Rio Grande. Texas is therefore incorrect that the

8

United States must "regain possession" in order for a federal court to restrain Texas from obstructing the public's right of way.

Even if we did agree that this suit concerns competing claims over the rights to "possess" and "exclude" from the Rio Grande, it is no mere garden-variety dispute about "sticks in the bundle of rights that are commonly characterized as property." *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 150 (2021) (internal quotations omitted). Instead, it concerns the constitutional allocation of sovereign prerogatives. *See PPL Montana, LLC v. Montana*, 565 U.S. 576, 590 (2012) (recognizing that states' otherwise "absolute right to all their navigable waters" is subject to the "rights surrendered and powers granted by the Constitution to the Federal Government" (internal quotations omitted)). It is far from clear that the first can be analogized to the second. *Cf. United States v. Lee*, 106 U.S. 196, 233–34 (1882) (Gray, J., dissenting) (stating that ejectment would not lie against the Crown); *United States v. Percheman*, 32 U.S. (7 Pet.) 51, 87 (1833) (holding that a change in sovereignty over a piece of land does not disturb "the rights of property" within that land). Texas has not addressed this distinction, and we are hesitant to make such a significant jump ourselves. Without resolving the question, we are unpersuaded that Texas has met its burden to show that ejectment can provide an appropriate analogy for such cases.

The only appropriate analogy for an RHA claim that has been presented by the parties is abatement of a public nuisance or purpresture. As the United States points out, there is a long tradition of equitable suits to clear obstructions upon public highways. *See Mugler v. Kansas*, 123 U.S. 623, 672 (1887) ("The jurisdiction [of equity] is applicable, not only to public nuisances, . . . but also to purprestures upon public rights and property."); *United Steelworkers of Am. v. United States*, 361 U.S. 39, 60 (1959) (Frankfurter, J., concurring) (noting that it was "old, settled law" that "a court of equity[] has a well established jurisdiction . . . to prevent nuisances

No. 24-50620

to public harbours and public roads; and, in short, generally to prevent public nuisances" (citation omitted)); *see also id.* (collecting cases).[8] The "essential function," *Pernell*, 416 U.S. at 375, of such suits is protection of the public's right to use the public ways free of obstructions, *see United Steelworkers of Am.*, 361 U.S. at 60. That same function is served by suits for injunctive relief under the RHA, which is why the United States has specifically asked that Texas be restrained from impeding navigation. *See United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 405 (1940) ("We are dealing here with the sovereign powers of the Union, the Nation's right that its waterways be utilized for the interests of the commerce of the whole country.").

In sum, the cause-of-action stage of our analysis weighs against Texas's entitlement to a jury trial under the Seventh Amendment. *See Pernell*, 416 U.S. at 375; *Tull*, 481 U.S. at 420.

B.      *"The remedy sought" by the United States*

In analyzing whether the "the remedy sought" is of a legal nature," *Tull*, 481 U.S. at 422, courts ask whether it "is the traditional form of relief offered in the courts of law" when the Seventh Amendment was ratified in 1791, *Curtis*, 415 U.S. at 196. With respect to monetary damages, "[r]emedies intended to punish culpable individuals" were offered in courts of law. *Tull*, 481 U.S. at 422. For that reason, "[a] civil penalty" in particular "was a type of remedy at common law that could only be enforced in courts of law." *Id.* By contrast, "[a] suit for injunctive relief" was "not one at common law," meaning that "there was no right to a jury trial." *United States v. Reddoch*, 467 F.2d 897, 899 (5th Cir. 1972) (citing *United States v. Louisiana*, 339 U.S.

---

[8] Apart from ejectment, Texas has not attempted to analogize to a cause of action at law for abatement of public nuisances, conceding the United States' argument that such proceedings are best viewed as characteristically equitable.

699, 701 (1950)); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999) ("It is settled law that the Seventh Amendment does not apply" to "suits seeking only injunctive relief.").

Here, the United States seeks to "enjoin" Texas under § 406 of the RHA[9] from creating barriers in waters of the United States and to "compel" Texas to remove the barrier it has already installed. The United States "disclaims . . . that it seeks any monetary penalty," and confirms that it is seeking "only an injunction." Texas responds that (1) the United States does in fact seek punitive fines, and (2) the injunctive remedy that the United States seeks is actually of a legal nature, thereby triggering Texas's Seventh Amendment right to a jury trial. Both of Texas's arguments fail.

We note at the outset that we are not writing on a blank slate. In *Tull*, the United States sought civil penalties and injunctive relief under the Clean Water Act ("CWA"), as well as injunctive relief under the RHA. *Tull*, 481 U.S. at 414 & n.1. Although the Supreme Court ultimately based its conclusions on the civil penalties sought under the CWA, the Court noted that Tull's Seventh Amendment claim was not based "on the Government's

---

[9] Section 406 states that an entity that violates the RHA:

> shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court. And further, the removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States.

33 U.S.C. § 406.

11

prosecution under [the RHA], which provides for injunctive relief *but not for civil penalties*." *Id.* at 414 n.1 (emphasis added). Sitting en banc, this court has followed up that "the RHA fairly 'invokes the discretion that courts have traditionally exercised when faced with requests for equitable relief'" by "stating that the court 'may' issue an injunction." *Abbott*, 110 F.4th at 719–20 (quoting *Starbucks*, 144 S. Ct. at 1576). Texas now asks us to adopt the opposite reading of the same provision.

      *i.*    *Punitive Fines*

Notwithstanding the United States' disclaimer to the contrary, Texas contends that United States requests "punitive fines." To support its contention, Texas points to the United States' request in its complaint that the district court "[g]rant such other relief as [it] may deem just and proper." Texas also points to the jurisdictional statement in the complaint, which mentions a statute that provides federal jurisdiction over "any action or

proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise."[10]

Texas's arguments are meritless for three reasons. First, when the United States requested all "just and proper" relief, it was merely using a "standard prayer for relief" that "Texas elsewhere acknowledges as referring to equitable relief." As the United States points out, such relief may encompass "lesser" forms of "equitable relief" than completely removing a structure. Two examples the parties discuss are removal of a part of an unauthorized structure and ordering that the buoys be moved to the riverbank rather than removed from the river. And although Texas is correct that the RHA already authorizes courts to order "the removal of . . . parts of structures erected in violation of the" Act, nowhere else in the complaint does the United States request such partial relief.[11] Indeed, the district court ordered that exact partial relief in its order granting a preliminary injunction.

---

[10] Separately, Texas contends that the United States does not "acknowledge statements suggesting the district court might impose fines with a jury trial later," thereby "inviting the *res judicata* problems" that the Supreme Court held in *Dairy Queen* "a proper application of the Seventh Amendment guards against." Texas, however, misreads *Dairy Queen*. It is true that the quoted passage concerned a then-common preclusion problem that stemmed from judges presiding over cases involving claims in both law and equity. In those instances, many judges would schedule bench trials to resolve the equity claims first. Doing so would preclude resolution of common issues in the ensuing jury trial over legal claims. *See Dairy Queen*, 369 U.S. at 472. But that problem is why the Supreme Court in *Dairy Queen* reaffirmed its prior holding in *Beacon Theatres* that "only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Id.* at 472–73 (quoting *Beacon Theatres*, 359 U.S. at 510–11). Neither the United States, nor the district court has claimed that the present case presents "the most imperative circumstances" that would merit such issue preclusion. *See id.*

[11] Notwithstanding Texas's apparent assertion to the contrary, it would be an overly literalist construction of § 406 to conclude that it grants the district court discretion to order complete "removal" of a structure from navigable waters but not to order it to be moved to the riverbank and out of the water's navigable portion. *See* 33 U.S.C. § 406.

No. 24-50620

True, the en banc court overturned that injunction because it was "unclear how the injunction alleviate[d]" the United States' "concerns" about the barrier's effect on "international affairs." *Abbott*, 110 F.4th at 720. But that does not refute the United States' more modest point that it recognized the possibility that the district court might grant it only partial relief. Accordingly, it tacked on its request for all "just and proper" relief to provide the district court that opportunity. That language therefore is not an indirect attempt by the United States to request civil penalties.[12]

Second, Texas makes a feeble argument when it contends that the United States' complaint betrayed its true intention to seek civil penalties when it invoked jurisdiction under 28 U.S.C. § 1355. That statute provides jurisdiction of "recovery or enforcement of any fine, penalty, or forfeiture, pecuniary *or otherwise*." 28 U.S.C. § 1355 (emphasis added). And even if § 1355 only granted jurisdiction for actions seeking pecuniary relief, it is merely one of four jurisdictional statutes the United States cites in its complaint. For those reasons, this court is not "blind[ing] itself" to an unambiguous request for punitive fines as Texas claims. We simply disagree with its speculation as to why the United States cites § 1355.

Third, and most importantly, Texas's entire argument regarding monetary penalties is based on a false premise. Such penalties are only available in a criminal proceeding under the RHA. *See Tull*, 481 U.S. at 414 n.1 (stating that the RHA "provides for injunctive relief but not for civil penalties"). The United States, however, has brought a civil proceeding. Moreover, a plain reading of § 406 confirms that the RHA does not provide for civil penalties. It states that one who violates the RHA "shall be deemed

---

[12] If the United States were to request civil penalties, *Tull* and *Jarkesy* would require that the district court provide Texas the jury trial it seeks. *See* 481 U.S. at 427; 144 S. Ct. at 2128–31.

guilty of a misdemeanor, *and on conviction thereof shall be punished by a fine*," imprisonment, or both. 33 U.S.C. § 406 (emphasis added). This is the only reference to a "fine" in § 406. It only applies in the context of a criminal proceeding, not a civil proceeding like the United States brought here.

In sum, we have determined that the United States does not seek monetary penalties from Texas as a remedy in this action. *See Tull*, 481 U.S. at 417.

  *ii.*  *Injunction*

Notwithstanding "settled law that the Seventh Amendment does not apply" to "suits seeking only injunctive relief," *City of Monterey*, 528 U.S. at 719, Texas argues that injunctive relief under the RHA is not a "traditional form of relief offered in the courts of law." *Curtis*, 415 U.S. at 196. It bases its argument on the fact that § 406 only authorizes "one narrow form of injunctive relief": removing structures or parts of structures that violate the RHA. Texas contends that such a "specific form of injunctive relief reflects none of the '[f]lexibility' of equity," which is "often triggered by language empowering the district court to award all relief 'just and proper.'" *See Starbucks*, 144 S. Ct. at 1576. As further support, Texas asserts that "[h]istorically, [common] law courts could also issue injunctions."[13] According to Texas, § 406 is therefore not akin to the injunctive relief historically available in courts of equity, but instead more closely resembles relief offered in courts of law.

---

[13] Texas separately contends that "there have always been nonmonetary remedies outside of equity—not only mandamus but also relief in replevin, ejectment, and habeas, as well as declaratory judgment actions." That much is true. But, as discussed, Texas has not shown that injunctive relief under the RHA is sufficiently analogous to a historical action in ejectment for the Seventh Amendment jury trial right to attach.

Texas's argument fails. First, this court sitting en banc last month recently held that "the RHA fairly 'invokes the discretion that courts have traditionally exercised when faced with requests for *equitable* relief'" by "stating that the court 'may' issue an injunction." *Abbott*, 110 F.4th at 719–20 (emphasis added). Texas attempts to explain this sentence away by positing that, because we only used this language to conclude that the traditional four-part test for issuing preliminary injunctions applied, we did not *really* mean that the RHA's injunctive relief is equitable in character. But we did not cabin our statement in that way. Instead, we meant what we said. Injunctive relief under the RHA invokes the discretion traditionally associated with equitable relief. *See id.*

Second, this past April, in a separate border-related dispute with the United States, Texas acknowledged that § 406 provided "equitable remedies" in suits by the United States. *See United States v. Texas*, No. 24-50149, ECF 179 at 2 n.4, Ex.A at 37 (April 12, 2024) (letter responding to a directive from this court).

Third, "Congress need not use magic words like 'just and proper' to confer equitable authority." Despite Texas's contention that § 406's lack of a phrase like "just and proper" is evidence that it does not provide equitable relief, an "injunction is an inherently equitable remedy." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211 n.1 (2002); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) ("It goes without saying that an injunction is an equitable remedy."); *City of Monterey*, 526 U.S. at 726 n.1 (Scalia, J., concurring in part and concurring in the judgment) ("I can file a tort action seeking only an injunction against a nuisance. If I should do so, the fact that I seek only equitable relief would disentitle me to a jury . . . ."). In any event, the RHA provides district courts with substantial discretion and flexibility over crafting injunctive relief. They must, for example, determine how and when to remove any unlawful structure that is at issue. *See Tull*, 481

U.S. at 414 n.1 (distinguishing monetary claims—under which the petitioner had a Seventh Amendment right to a jury—from a separate RHA claim "for injunctive relief," upon which the Supreme Court was careful to clarify that "[p]etitioner d[id] not base his Seventh Amendment claim").[14]

Fourth, Texas provides inadequate support for its claim that "[h]istorically, law courts could also issue injunctions." It cites nothing discussing common law remedies available in the United States when the Seventh Amendment was ratified in 1791. Instead, it directs our attention to a book passage discussing "reforming statutes" that "recast" procedure in both law and equity in 19th-century England to "pave[] the way for the fusion of the two procedures." F.W. MAITLAND, EQUITY AND THE FORMS OF ACTION AT COMMON LAW 14 (1929). Namely, the statute at issue that allowed common law courts to "in certain cases grant injunctions" was The Common Law Procedure Act *of 1854*. *Id.* at 15 & n.2. "[T]he thrust of the [Seventh] Amendment," however, "was to preserve the right to jury trial *as it existed in 1791*." *Curtis*, 415 U.S. at 193 (emphasis added). And although "the right extends beyond the common-law forms of action recognized at that time," *id.*, it does not extend to suits where only "equitable remedies were administered," *id.* (quoting *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433, 447 (1830)).

Texas has failed to establish that the injunctive relief that the United States seeks under § 406 of the RHA is legal in nature such that it affords a right to a jury trial. *See City of Monterey*, 528 U.S. at 719. That, and because it

---

[14] Indeed, the 1890 RHA, a precursor to the current RHA that is still codified, confirms that Congress drafted the RHA to provide broad equitable relief. *See* 33 U.S.C. § 403a. The precursor statute authorizes a district court to enjoin "the creating or continuing of any unlawful obstruction" and permits the Department of Justice to institute "proper proceedings *in equity*" to obtain such an injunction. *See id.* (emphasis added).

No. 24-50620

does not seek any other form of relief, means that the only "remedy sought" by the United States is equitable in nature. *See Tull*, 481 U.S. at 422.

\* \* \*

In sum, we hold that Texas has satisfied neither the cause-of-action stage, nor the remedy stage of the *Tull* analysis. Accordingly, it has not established a Seventh Amendment right to a jury trial for the United States' RHA claim for injunctive relief. *See Tull*, 481 U.S. at 420. Because Texas has not established a right—"clear and indisputable" or otherwise—under which we can grant a writ of mandamus, it has failed to make the requisite showing under *Cheney*'s first prong. *See Cheney*, 542 U.S. at 380–81. As discussed, we therefore deny Texas's petition on prong one and pretermit discussion of prongs two and three.

### III. Conclusion

For the foregoing reasons Texas's petition for a writ of mandamus is DENIED.