**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br><br>    v.<br><br>GREG ABBOTT, in his capacity as<br>GOVERNOR OF THE STATE OF TEXAS,<br>and THE STATE OF TEXAS,<br><br>        *Defendants*. | Case No. 1:23-cv-00853-DAE |

**PLAINTIFF UNITED STATES' BRIEF REGARDING EN BANC OPINIONS IN
RESPONSE TO THE COURT'S ORDER AT AUGUST 6, 2024 STATUS CONFERENCE**

JAIME ESPARZA
UNITED STATES ATTORNEY

LANDON A. WADE
  Assistant United States Attorney
  Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

BRIAN H. LYNK
  Senior Trial Counsel
  DC Bar No. 459525
BRYAN HARRISON
  Trial Attorney
  FL Bar No. 106379
KIMERE J. KIMBALL
  Trial Attorney
  CA Bar No. 260660
ANDREW D. KNUDSEN
  Trial Attorney
  DC Bar No. 1019697
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov

Dated:  September 27, 2024

*Counsel for the United States of America*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

    I.       BACKGROUND ................................................................................ 1

          A.      The Rivers and Harbors Act and navigability .............................. 1

          B.      Factual background ................................................................... 3

          C.      This Court's preliminary injunction ........................................... 4

          D.      Proceedings on appeal ............................................................... 7

          E.      Schedule for further proceedings in this Court ........................... 9

    II.      STANDARD FOR DETERMINING THE EXTENT TO WHICH
          A SPLIT DECISION IS PRECEDENTIAL ........................................ 10

    III.    THE EN BANC DECISION IS CONTROLLING ON TWO
          SPECIFIC LEGAL ISSUES BUT OTHERWISE IS NOT
          BINDING ON THIS COURT'S TRIAL DETERMINATIONS ......................... 13

          A.      Judge Willett's opinion is precedential in its holdings that
                the United States can show susceptibility to future
                navigation only through evidence that hypothetical river
                improvements would be "reasonable," and that the
                preliminary injunction record evidence did not establish
                reasonableness .......................................................................... 14

          B.      Judge Willett's opinion is precedential in how it addresses
                the legal question of what river segment is relevant for
                purposes of determining navigability, but does not
                determine the scope of the factual dispute at trial ...................... 15

          C.      Judge Willett's opinion is not a majority and thus not
                controlling with respect to the relevance of cross-river
                navigation ................................................................................. 18

          D.      Judge Willett's opinion does not address any other liability
                issues ........................................................................................ 18

E.      Judge Willett's opinion does not resolve whether trial
        evidence will show that equitable factors support a
        permanent injunction .................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General,*
  383 U.S. 413 (1966)..........................................................................................10, 11

*Byrum v. Landreth,*
  566 F.3d 442 (5th Cir. 2009) .........................................................................4

*Economy Light & Power v. United States,*
  256 U.S. 113 (1921)......................................................................................2, 3

*Ex parte Young,*
  209 U.S. 123 (1908)......................................................................................12, 13

*Gregg v. Georgia,*
  428 U.S. 153 (1976).......................................................................................11

*K.P. v. LeBlanc,*
  627 F.3d 115 (5th Cir. 2010) .........................................................................12

*Marks v. United States,*
  520 F.2d 913 (6th Cir. 1975), *rev'd*, 430 U.S. 188 (1977) ............................11

*Miller v. California,*
  413 U.S. 15 (1973).......................................................................................10, 11

*Nevius v. Sumner,*
  105 F.3d 453 (9th Cir. 1996) .........................................................................13

*Newbold v. Kinder Morgan SNG Operator, L.L.C.,*
  65 F.4th 175 (5th Cir. 2023) ..........................................................................2

*Okpalobi v. Foster,*
  244 F.3d 405 (5th Cir. 2001) .........................................................................12, 13

*Starbucks Corp. v. McKinney,*
  144 S. Ct. 1570 (2024)...................................................................................20

*Tex. All. for Retired Ams. v. Scott,*
  28 F.4th 669 (5th Cir. 2022) ..........................................................................12

*United States v. Abbott,*
  690 F. Supp. 3d 708 (W.D. Tex. 2003),
  *rev'd & remanded by* 110 F.4th 700 (5th Cir. 2024).......................1, 3, 4, 5, 6, 7, 16

iii

*United States v. Abbott,*
  87 F.4th 616 (5th Cir. 2023)
  *rehearing en banc granted and vacated by* 90 F.4th 870 (5th Cir. 2024) ............................ 7, 8

*United States v. Abbott,*
  110 F.4th 700 (5th Cir. 2024) ................................... 1, 8, 9, 13, 14, 15, 16, 18, 19, 20

*United States v. Appalachian Elec. Power Co.,*
  311 U.S. 377 (1940) ................................................................................................ 2

*United States v. Duron-Caldera,*
  737 F.3d 988 (5th Cir. 2013) .............................................................................. 11, 12

*United States v. FDIC,*
  881 F.2d 207 (5th Cir. 1989) .................................................................................... 19

*United States v. Ferguson,*
  211 F.3d 878 (5th Cir. 2000) .................................................................................... 12

*United States v. Johnson,*
  467 F.3d 56 (1st Cir. 2006) ...................................................................................... 11

*United States v. Marine Shale Processors,*
  81 F.3d 1329 (5th Cir. 1996) .................................................................................... 19

*United States v. Marks,*
  430 U.S. 188 (1977) ............................................................................................ 10, 11

*United States v. Oakland Cannabis Buyers' Coop.,*
  532 U.S. 483 (2001) .................................................................................................. 6

*United States v. Rio Grande Dam & Irrigation Co.,*
  174 U.S. 690 (1899) .................................................................................................. 7

*Varhol v. Nat'l R.R. Passenger Corp.,*
  909 F.2d 1557 (7th Cir. 1990) .................................................................................. 13

*Whole Women's Health v. Paxton,*
  10 F.4th 430 (5th Cir. 2021) ............................................................................ 11, 12, 13

*Winter v. Nat. Res. Def. Council,*
  555 U.S. 7 (2008) ...................................................................................................... 19

*Wyandotte Transp. Co. v. United States,*
  389 U.S. 191 (1967) .................................................................................................... 1

**Statutes**

33 U.S.C. § 403 ................................................................................................................ 1

33 U.S.C. § 406 ................................................................................................................ 2

33 U.S.C. § 413 ................................................................................................................ 2

**Code of Federal Regulations**

33 C.F.R. § 322.3(a) ......................................................................................................... 2

**Rules**

5th Cir. R. 35.6 ................................................................................................................ 8

**Other Materials**

Black's Law Dictionary (12th ed. 2024) ......................................................................... 10

## INTRODUCTION

The United States submits this brief pursuant to the Court's direction given at a status conference held on August 6, 2024, one week after the Fifth Circuit's issuance of an en banc decision on Texas's interlocutory appeal from this Court's September 6, 2023 preliminary injunction order (ECF 50).  *See United States v. Abbott*, 690 F. Supp. 3d 708 (W.D. Tex. 2023)*, rev'd & remanded by* 110 F.4th 700 (5th Cir. 2024).  Of the 18 judges that participated in the en banc proceedings, exactly half joined a plurality opinion by Judge Willett.  *See infra* at 8-9.  Thus, at the status conference, the Court noted the possibility that the en banc proceedings yielded a "nine-nine split," and asked each party to submit a brief by September 20, 2024, addressing the en banc decision and its effect on further proceedings in this Court.  Aug. 6, 2024 Tr. at 4 (ECF 217); *see also id.* at 5, 7-9, 12-17.  The Court subsequently granted Texas's unopposed motion to extend the filing deadline to September 27, 2024.  ECF 223.  The United States sets forth below its response to the Court's request.

## I.       BACKGROUND

### A.       The Rivers and Harbors Act and navigability

The Rivers and Harbors Act (RHA), 33 U.S.C. § 403, was enacted "to prevent obstructions in the Nation's waterways," and the Supreme Court has "consistently found its coverage to be broad."  *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967).  Section 10 of the RHA independently prohibits "creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States," and "build[ing] . . . any . . . boom . . . or other structures in any . . . navigable river, or other water of the United States . . . except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army."  33 U.S.C. § 403.  A Section 10 permit issued by the United States Army Corps of Engineers ("Corps") is required to build structures or perform work in or affecting such waters.

33 C.F.R. § 322.3(a).  Section 12 provides that "the removal of any structures . . . erected in violation of [Section 10] may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the [U.S.] Attorney General."  33 U.S.C. § 406; *see also id.* § 413.

Determining the navigability of a waterway is a question of fact.  *United States v. Appalachian Elec. Power Co*., 311 U.S. 377, 405 (1940).  It is well-established in Supreme Court caselaw that whether a water is "navigable" under Section 10 is not determined solely by considering any *current* use in interstate or foreign commerce.  *Economy Light & Power v. United States*, 256 U.S. 113, 124 (1921) (emphasizing that the Court could not, "without doing violence to [the] manifest purpose" of the RHA, "limit [the statute's] prohibition to such navigable waters as were, at the time of its passage, or now are, actually open for use"); *see also Newbold v. Kinder Morgan SNG Operator*, L.L.C., 65 F.4th 175, 181 (5th Cir. 2023) ("'[T]he extent of existing commerce is not the test' for navigability.").  Rather, navigability may be established based on evidence of a water's historic use in commerce, or its susceptibility to future use if reasonable improvements were made to the river to facilitate such commerce.  *See, e.g.*, *Economy Light & Power*, 256 U.S. at 124; *Appalachian Elec. Power*, 311 U.S. at 407-09.  Furthermore, the Supreme Court has held that a river historically used in commercial navigation does not lose its status as a navigable water merely because alternative uses in commerce for its flows—e.g., hydropower development—become economically favored over commercial navigation.  *See Appalachian Elec. Power*, 311 U.S. at 426.  Such uses are "from the public's standpoint a by-product of the general use of the rivers for commerce."  *Id.*  If historically navigable waters "are to be abandoned" due to

changes in use or economic need, "it is for Congress, not the courts, so to declare." *Economy Light & Power*, 256 U.S. at 124.

### B.     Factual background

In early June 2023, Governor Abbott announced Texas's intent, as part of a broader initiative called "Operation Lone Star," to deploy "marine floating barriers" in the Rio Grande intended to "mak[e] it more difficult to cross the Rio Grande and reach the Texas side of the southern border."  Press Release, "Governor Abbott Signs Sweeping Package Of Border Security Legislation" (June 8, 2023), https://gov.texas.gov/news/post/governor-abbott-signs-sweeping-package-of-border-security-legislation; *see also* 690 F. Supp. 3d at 714-15.  The announcement indicated that the "first 1,000 feet" of such barriers would be deployed near Eagle Pass, Texas.  *Id*. at 715.  On or before July 10, 2023, Texas began building a Floating Barrier in the Rio Grande roughly two miles downstream of the International Bridge II in Eagle Pass.  *Id*.  Texas completed the barrier's initial installment over the following week.  *Id*.  Roughly ten days later, after first notifying the Governor regarding Texas's violation of the RHA and requesting voluntary removal of the barrier—which the Governor refused—the United States filed its complaint, followed within 48 hours by a motion for preliminary injunction.  *Id*.

Evidence introduced at the preliminary injunction hearing established that the Floating Barrier is "comprised of about 1,000 feet of large four-foot spherical orange buoys fastened together with heavy metal cables and anchored in place with heavy concrete blocks placed systematically on the bed of the Rio Grande River."  *Id*.  (internal quotation marks and citations omitted).  The buoys are surrounded by 68 anchors weighing about 3,000 pounds each and 75 anchors weighing about 1,000 pounds each.  *Id*.  A stainless-steel mesh "anti-dive net" extending two feet into the water is attached to a large portion of the barrier.  *Id*.

In August 2023, Texas moved the Floating Barrier from its original location in the Rio Grande to one closer to the United States' bank, after the United States reported to this Court that the barrier's original placement was at least partly in Mexican waters. *See id.* at 718 n.8, 731 n.32. Texas has not subsequently moved the barrier again, to the United States' knowledge.

Texas never disputed that it installed the Floating Barrier in the Rio Grande, and that it did so without a Corps permit or other federal authorization for the project. Texas does, however, dispute the following elements of RHA liability: (1) that the relevant portion of the Rio Grande is navigable; (2) that the barrier obstructs the navigable capacity of the Rio Grande within the meaning of the first clause of Section 10; and (3) that the barrier is a "structure" within the meaning of the second clause of Section 10. Texas also asserts a constitutional argument against liability.

### C.     This Court's preliminary injunction

This Court entered a preliminary injunction on September 6, 2023, after first allowing limited, expedited discovery, and then holding an evidentiary hearing. The Court's order correctly identified the standard for a preliminary injunction, i.e., that a plaintiff must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest, with the third and fourth factors merging when the United States is a party. ECF 50 at 5. Although it is the plaintiff's burden to establish these factors, a "*likelihood* of success on the merits" is not the same as "*success* on the merits" following trial. *See Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009) ("A plaintiff is not required to prove its entitlement to summary judgment in order to establish 'a substantial likelihood of success on the merits' for preliminary injunction purposes."); *compare with* 690 F. Supp. 3d at 731 n.32 (noting "this is a Preliminary Injunction and not a final disposition of this case on the full merits").

4

The Court found that the United States was likely to succeed in establishing that the relevant Rio Grande segment was historically navigable, and alternatively that it was susceptible to commercial navigation with reasonable improvements.  With respect to historic use, the Court principally relied on: (1) the evidence of historic commercial ferry activity in Eagle Pass, a couple of miles upstream from where the Floating Barrier is now placed[1]; (2) evidence of historic up-and-down river boat usage recounted in the Corps' 1975 navigability determination; (3) 19th and early 20th century statutes specifically declaring the river's navigability at Eagle Pass, coupled with the absence of any Congressional de-listing of the river as navigable; and (4) treaties between the United States and Mexico dating back to 1848 requiring the countries to maintain "free and common" "navigation of" the Rio Grande at all points below New Mexico.  690 F. Supp. 3d at 718-20 & nn.11-12.

With respect to susceptibility to future use in commercial navigation, the Court credited the 1975 determination's discussion of historic sources indicating that the river stretch including the Floating Barrier and Eagle Pass was once considered capable of "steam navigation . . . all the way up to Babbitt's Falls (probably RM 750)," "if the channel were improved in certain passages." *Id.* at 720-21.  It further noted the 1975 determination's statement that the "[t]he natural and ordinary condition of the Rio Grande River, its volume of water, gradient, and regularity of flow," remain such that "future improvement for smaller commercial craft" is possible.  *Id.* at 721.  In addition, the Court found there was evidence establishing the present-day use of the river by boats, including the use of airboats and a barge to assist in installing the barrier—which "itself constitutes commercial activity, albeit not that necessarily contemplated by Congress."  *Id.* at 721 n.15.  The

---

[1] *See* 690 F. Supp. 3d at 720; *see also id*. at 718 n.8 (noting the precise location of the barrier as then determined by a joint survey of the Mexican and U.S. Sections of the International Boundary Water Commission).

Court found that this evidence independently indicates the river's potential susceptibility to commercial navigation if additional measures were taken to improve the river. *Id.* The Court made clear that its findings of likelihood of success as to navigability were not based solely on the Corps' 1975 determination. *Id.* at 722 n.16.

Having thus found that the United States likely would succeed in establishing navigability under the RHA, the Court turned to the remaining issues. It determined that the United States was likely to prove that the Floating Barrier is an unauthorized "obstruction" of the Rio Grande's navigable capacity within the meaning of the first clause of Section 10, and an unpermitted "structure" within the meaning of second clause. *Id.* at 722-26. It declined to reach the merits of Texas's arguments that its actions related to the barrier implicate a constitutional right of the State to "defend" itself against "invasion," noting that "[u]nder [Texas's] logic, once Texas decides, in its sole discretion, that it has been invaded, it is subject to no oversight of its 'chosen means of waging war.' (Dkt. # 33 at 7-8.) Such a claim is breathtaking." *Id.* at 728-29; *see also id.* at 729 n.29.

Finally, the Court considered whether equitable factors supported entry of a preliminary injunction. The Court initially noted that in a case brought by the United States in its civil enforcement capacity, once the first factor is established "the Court's traditional equitable discretion is narrowed to evaluating how equitable considerations 'are affected by the selection of an injunction over other enforcement mechanisms' authorized by statute." *Id.* at 729 (quoting *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 498 (2001)). Nonetheless, the Court then conducted a full balancing of the equities and found that "the barrier's threat to human life, its impairment to free and safe navigation, and its contraindication to the balance of priorities Congress struck in the RHA outweigh Texas's interest in implementing its buoy barrier in the Rio

6

Grande River." 690 F. Supp. 3d at 731. Thus, it found, "the balance of hardships tips clearly in favor of the United States." *Id.* The Court then entered a preliminary injunction prohibiting Texas "from building new or placing additional buoys, blockades, or structures of any kind in the Rio Grande River pending final judgement in this matter," and requiring Texas to reposition the existing Floating Barrier to the bank on the U.S. side of the river. *Id.* at 731-32.

### D. Proceedings on appeal

The appellate proceedings in this case have involved an extraordinary number of interlocutory and often emergency filings, too many to neatly summarize. A panel of the Fifth Circuit affirmed this Court's preliminary injunction order on December 1, 2023, by a 2-1 vote. *United States v. Abbott*, 87 F.4th 616 (5th Cir. 2023), *rehearing en banc granted and vacated by* 90 F.4th 870 (5th Cir. 2024). Senior Judge King joined Judge Douglas in the majority, with Judge Willett dissenting. With respect to navigability, the panel majority found "no clear error in the district court's historical navigability finding" and thus affirmed without deciding whether the district court had erred in its analysis of "susceptibility" to future navigation with reasonable improvements. 87 F.4th at 627-28.

The panel majority mostly tracked this Court's identification and weighting of relevant evidence on the historic navigability issue, except that the panel majority appeared to attach greater significance than had this Court to the Supreme Court's decision in *United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690 (1899). The majority noted that the Supreme Court had expressly found the Rio Grande's status as, "speaking generally, . . . a navigable river" to be so self-evident that the Fifth Circuit could take judicial notice of the fact. 87 F.4th at 627 (quoting 174 U.S. at 698).

In addition, the panel majority held that "[t]o succeed under the RHA, the United States need not prove that the Rio Grande was, in fact, historically used for commerce. It need only show

that it was historically susceptible of use for commerce." 87 F.4th at 628. It found that the evidence before the district court at the preliminary injunction stage "overwhelmingly supports, at least, the conclusion that the at-issue segment of the Rio Grande was historically susceptible of use for commerce." *Id.* Thus, the majority concluded, "[o]n these facts, we are not left with a 'definite and firm conviction' that the district court erred." *Id.* (internal citations omitted).

The Fifth Circuit granted rehearing en banc and vacated the panel opinion. 90 F.4th 870. With Senior Judge King having sat on the original panel for the appeal, she also took part in the en banc proceedings, increasing the number of participating judges to 18. *See* 5th Cir. R. 35.6. After a second round of briefing and oral argument, as well as supplemental briefing on constitutional issues raised by Texas, the Fifth Circuit issued its en banc decision on July 30, 2024, one week before trial was scheduled to begin.

Judge Willett authored the lead opinion, which was joined by eight other judges (Jones, Smith, Elrod, Haynes, Duncan, Engelhardt, Oldham, and Wilson). That opinion stated that this Court's order granting a preliminary injunction was reversed and remanded with instructions to vacate the order. 110 F.4th at 722.

Judge Ho concurred in the judgment and dissented in part. Judge Ho "agree[d] that the preliminary injunction . . . must be reversed" but "g[o]t to that place through a different path" entirely; he would have told this Court "to dismiss this case for lack of jurisdiction" because, in his view, Texas's argument that the State War Clause of the Constitution permits it to erect the barrier is a nonjusticiable political question. *Id.* at 727. In response, Judge Oldham, while "join[ing] the majority opinion in full" as noted above, also authored a separate concurrence that criticized Judge Ho for "dodging the merits." *Id.* at 723.

Chief Judge Richman concurred in the judgment only, reasoning that "[t]he United States has not demonstrated a likelihood of success on the merits." *Id.* at 724. As to that factor of the preliminary-injunction test, Chief Judge Richman "largely agree[d]" with the analysis in Judge Willett's opinion but "disagree[d] . . . that the United States cannot establish this section of the Rio Grande is navigable through evidence of bank-to-bank ferry traffic." *Id.*

Judges Higginson and Douglas authored dissents. Each joined the dissent of the other, and five judges (King, Stewart, Southwick, Graves, and Ramirez) joined both dissents. All seven dissenters "would [have] affirm[ed] the district court in full." *Id.* at 748 (Douglas, J., dissenting).

These opinions are discussed in more detail in Part III below.

On September 23, 2024, the Fifth Circuit issued its mandate, which states:

> IT IS ORDERED and ADJUDGED that the district court's order granting a preliminary injunction is REVERSED, and the case is REMANDED with instructions to vacate the preliminary injunction and for further proceedings consistent with the majority opinion of the court. The stay pending appeal is DISSOLVED.

Doc. 274-1 in *United States v. Abbott*, No. 23-50632 (5th Cir. Sept. 23, 2024). This Court subsequently issued an order vacating the preliminary injunction and ordering that the case will proceed to a trial on the merits. ECF 226 (Order dated Sept. 26, 2024).

### E. Schedule for further proceedings in this Court

The Court has reset the bench trial in this case to on commence Thursday, November 7, 2024. "Order Resetting Bench Trial and Related Deadlines" dated Aug. 6, 2024 (ECF 214).[2] Each party's proposed findings of fact and conclusions of law are due October 24, 2024. All other

---

[2] The Court denied Texas's motion to place the case on the jury docket and granted the United States' motion to strike Texas's jury demand and its alternate request for an advisory jury. ECF 190. Texas then petitioned the Fifth Circuit for a writ of mandamus to compel a jury trial. The Fifth Circuit denied the petition. Doc. 66-1 in *In re Abbott*, No. 24-50620 (5th Cir. Sept. 20, 2024); *see also* ECF 225.

pre-trial submissions are due October 28, 2024, with responses and objections to the opposing party's submissions due October 30, 2024; and each party's proposed exhibits must be uploaded to the Court's JERS system by 3PM CT on October 31, 2024.  *See* ECF 214, ECF 219, and text order dated Aug. 20, 2024 (granting ECF 219).

## II.  STANDARD FOR DETERMINING THE EXTENT TO WHICH A SPLIT DECISION IS PRECEDENTIAL

Notwithstanding the remaining opinions' and the mandate's shorthand references to Judge Willett's opinion as a "majority opinion," only half of the judges on the en banc panel agreed with its analysis in full.  *See* Black's Law Dictionary (12th ed. 2024) (defining a "majority opinion" as "[a]n opinion joined in by more than half the judges considering a given case").  Both the Supreme Court and the Fifth Circuit have considered what precedent is established by a judicial decision in which there is no majority opinion.

The leading Supreme Court case is *United States v. Marks*, 430 U.S. 188 (1977).  *Marks* involved a due process challenge to the petitioners' criminal obscenity convictions.  The petitioners contended that their convictions were based on the retroactive application of a restrictive First Amendment standard that the Supreme Court had articulated only after their allegedly criminal conduct had occurred.  *Id.* at 189-91.  At the time of the petitioners' alleged crimes, the prevailing Supreme Court case on the constitutionality of criminal obscenity statutes was *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General*, 383 U.S. 413 (1966), a plurality decision in which the Justices had divided over the appropriate First Amendment standard.  But prior to their convictions, in *Miller v. California*, 413 U.S. 15 (1973), a clear majority of the Supreme Court had overruled *Memoirs*, rejected each of the proposed constitutionality standards that various Justices in *Memoirs* had endorsed, and adopted an approach similar to what had prevailed under pre-*Memoirs* caselaw.  *See Miller*, 413 U.S. at 27-29.  The

trial court instructed the jury under the newly articulated *Miller* standard, and the jury convicted. *Marks*, 430 U.S. at 190-91.  The court of appeals affirmed, noting that the three-part test endorsed by the *Memoirs* plurality "had never been approved by a plurality of more than three Justices at any one time."  *Marks*, 520 F.2d 913, 919-20 (6th Cir. 1975), *rev'd*, 430 U.S. 188 (1977).

      The Supreme Court reversed, concluding that *Memoirs* had, in fact, changed the applicable First Amendment standard and that retroactively applying the later-announced *Miller* standard to the defendants' conduct was therefore impermissible.  In so deciding, the *Marks* Court instructed that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"  *Marks,* 430 U.S. at 193 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).  Applying this test, the *Marks* Court concluded that Justice Brennan's three-justice plurality opinion constituted the holding of *Memoirs*.  *Marks*, 430 U.S. at 193-94.

      While *Marks*' "narrowest grounds" test provides some guidance on how to apply judicial decisions that lack a clear majority, that guidance has limits.  As the Fifth Circuit has explained: "We have clarified that this principle 'is only workable where there is some common denominator upon which all of the justices of the majority can agree.'"  *Whole Women's Health v. Paxton*, 10 F.4th 430, 440 (5th Cir. 2021) (quoting *United States v. Duron-Caldera*, 737 F.3d 988, 994 n.4 (5th Cir. 2013)) (other internal quotation and citation omitted).  In other words, one opinion can be "meaningfully be regarded as 'narrower' than another"—thus making it possible to identify the "narrowest grounds," under *Marks*' test—*only* when that opinion is in substance "a logical subset of other, broader opinions."  *United States v. Johnson*, 467 F.3d 56, 63-64 (1st Cir. 2006).  Thus, the Fifth Circuit has held that when a Justice's concurrence does not share a common denominator

with, or cannot be viewed as a logical subset of, a plurality's opinion, it "does not provide a controlling rule" that establishes or overrules precedent. *Duron-Caldera*, 737 F.3d at 994 n.4.

The Fifth Circuit appears to take a similar approach in determining the extent to which its own splintered en banc opinions have, or lack, precedential effect. For example, in *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc), 14 judges participated in an en banc decision, of which exactly half joined the lead opinion in full. *See id.* at 409. Those seven judges held that the case should be dismissed for lack of standing and that, in the alternative, the suit was not subject to the exception to Eleventh Amendment immunity provided by *Ex parte Young*, 209 U.S. 123 (1908), and was barred by the Eleventh Amendment. *See Okpalobi*, 244 F.3d at 429. Two other judges wrote separate opinions concurring in the dismissal on standing grounds and thus forming a nine-judge majority with respect to that holding. However, each concurring judge expressly disagreed with the plurality's analysis of *Ex parte Young*. *Id.* at 429-41. A Fifth Circuit panel subsequently held that, because the portion of the *Okpalobi* lead opinion addressing *Ex parte Young* "did not garner majority support, the Eleventh Amendment analysis is not binding precedent." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *United States v. Ferguson*, 211 F.3d 878, 885 (5th Cir. 2000)). More recent Fifth Circuit decisions have maintained this treatment of *Oklalobi*. *See Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 n.5 (5th Cir. 2022) (citing cases).

In a different en banc Fifth Circuit case, *Whole Woman's Health*, there were likewise 14 participating judges, of which seven judges joined the lead opinion, two concurred in the judgment only, and five judges dissented. 10 F.4th at 430, 434. One of the dissents noted that the lead

opinion "lacks fully binding precedential effect."  *Id.* at 471.  This is consistent with the Fifth

Circuit's treatment of the *Oklalobi* plurality's *Ex parte Young* analysis.[3]

## III.    THE EN BANC DECISION IS CONTROLLING ON TWO SPECIFIC LEGAL ISSUES BUT OTHERWISE IS NOT BINDING ON THIS COURT'S TRIAL DETERMINATIONS.

Applying the above guidance to evaluate the Fifth Circuit's en banc decision in this case,

only a subset of the rulings in Judge Willett's opinion should be considered controlling as a matter

of law in any further proceedings in this Court.[4]  Judge Willett's opinion was one vote short of a

majority, so the agreement of at least one non-joining judge with a particular ruling of Judge

Willett's opinion would yield a majority for that ruling and, thus, would create a controlling

holding of the en banc court on that issue.  Absent that agreement, however, a given ruling of

Judge Willett's opinion is not precedential.

To begin, here is no overlap between the opinions of Judges Willett and Ho.  Although

Judge Ho concurred in the en banc court's judgment, he did not pass upon the merits and partially

dissented because he would instead have dismissed the case for lack of jurisdiction based on the

political question doctrine.  *Supra* at 8.  Conversely, Judge Willett expressly "d[id] not reach"

Texas's argument under the political question doctrine, which is the exclusive subject of Judge

Ho's opinion.  110 F.4th at 718 n.86.  Judge Ho's opinion thus is irrelevant to determining whether

---

[3] Other circuits have similarly held that plurality en banc opinions lack binding precedential effect. *See Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1560 (7th Cir. 1990); *Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996).

[4] The boilerplate recitation at the conclusion of Judge Willett's opinion instructing that further proceedings in this Court should be "consistent with this opinion," 110 F.4th at 722, cannot be read to pretermit the usual analysis to decide which Judge Willett's rulings are precedential holdings of the en banc court.  Such a reading would be circular, as only half of the participating judges signed onto *that* recitation.

and to what extent any of Judge Willett's rulings constituted a majority holding of the en banc court.

Accordingly, we consider below which rulings in Judge Willett's opinion were agreed upon by either Chief Judge Richman or the dissenting judges.  In summary, some but not all of the likelihood-of-success-on-the-merits rulings in Judge Willett's opinion are precedential.  Judge Willett's other rulings either do not reach the factual issues this Court will determine at trial, or are not controlling because only nine judges joined those parts of Judge Willett's opinion.

> **A.    Judge Willett's opinion is precedential in its holdings that the United States can show susceptibility to future navigation only through evidence that hypothetical river improvements would be "reasonable," and that the preliminary injunction record evidence did not establish reasonableness.**

As part of its analysis of the legal test for navigability based on future susceptibility to commercial navigation, Judge Willett's opinion considered "whether the United States has cited sufficient evidence of costs and benefits to assess whether it can likely prove that [] hypothetical improvements" to the Rio Grande are "reasonable."  110 F.4th at 717.  Judge Willett's opinion found that the United States principally relied, at the preliminary injunction stage, upon the Corps' 1975 navigability determination and an 1850 Rio Grande expedition report.  *Id.*  The opinion concluded that although these sources identify potential means of improving the river to facilitate commercial navigation, they "say nothing about the costs and benefits of those improvements today or in the future, whenever those improvements would be useful."  *Id.*  The opinion acknowledged evidence that the river is currently used by watercraft and the contention that the river "could facilitate commercial traffic involving bigger watercraft if its flows were increased by water from nearby reservoirs."  *Id.* at 718.  However, Judge Willett found this showing inadequate to establish a likelihood of success on the merits because the United States did not "explain why

repurposing water from the dams would be cost-effective *for this river*." *Id.* (emphasis in original); *see also id.* at 716-17 (examining prior caselaw including *Appalachian Electric Power*).

Chief Judge Richman's separate opinion concurring in the judgment noted that she "largely agreed with" the analysis in Judge Willett's opinion and Judge Willett's conclusion that "[t]he United States has not demonstrated a likelihood of success on the merits." *Id.* at 724.  The Chief Judge did not specify in which respects she agreed, other than to explain that "[t]he United States has not presented evidence that commercial traffic has navigated or with reasonable modifications could navigate along, or across, the 1,000-foot stretch of the Rio Grande that contains the floating barrier." *Id.*  She thus agreed with Judge Willett's rulings that the United States had to establish that navigation improvements would be "reasonable" to establish susceptibility to future navigation (though she did not specifically discuss or endorse Judge Willett's method for determining reasonableness), and that the United States at the preliminary injunction stage "ha[d] not presented" adequate evidence to do so. *Id.*  Because those rulings garnered agreement of a majority of the en banc court, they have precedential effect in the Fifth Circuit and are controlling in any further proceedings in this Court.

> **B.    Judge Willett's opinion is precedential in how it addresses the legal question of what river segment is relevant for purposes of determining navigability, but does not determine the scope of the factual dispute at trial.**

On the separate issue of determining historic navigability, Judge Willett's opinion articulated the same test as had the panel majority—that it may be shown by evidence that the relevant river segment "was historically used or susceptible of use" in interstate or foreign commerce in its natural condition.  110 F.4th at 710-11.  Judge Willett further reasoned that "regardless of whether we ask if th[e] 1,000-foot stretch [of the Rio Grande in which the buoys are present] *only* is navigable or whether this 1,000-foot stretch sits within some longer navigable stretch," what matters is whether that 1,000-foot stretch (not some longer or otherwise different

15

stretch) of the river is navigable. *Id.* at 710. Chief Judge Richman appeared to agree that the relevant area for navigability analysis is the area for which the United States seeks relief. She indicated that the United States had not met its burden to show a likelihood of success on the merits in the absence of "evidence that commercial traffic has navigated or with reasonable modifications could navigate along, or across, *the 1,000-foot stretch of the Rio Grande that contains the floating barrier*." *Id.* at 724 (emphasis added).

But Judge Willett's opinion (including Chief Judge Richman's concurrence in the above point of law) does not resolve the *factual* issue of which river segment or segments will be relevant at trial. Judge Willett premised his conclusion that only the 1,000-foot stretch (whether alone or subsumed into a longer reach) matters on the view that "[h]ere, only the 1,000-foot segment in which the barrier sits is disputed." *Id.* at 710. There was, however, no *ruling* on this point in the opinion that would bind this Court on a different factual record at trial.

Moreover, the opinion cited nothing in the preliminary injunction evidentiary record or the parties' briefs to support that the parties' "dispute" over navigability was, in fact, limited to "the 1,000-foot segment." *Id.* Judge Willett's focus may have been on Paragraph 2 of this Court's preliminary injunction order, the provision that ordered mandatory injunctive relief as to the existing Floating Barrier: "Defendants shall, by September 15, 2023, reposition, at Defendants' expense, and in coordination with the United States Army Corps of Engineers, all buoys, anchors, and other related materials composing the floating barrier placed by Texas in the Rio Grande in the vicinity of Eagle Pass, Texas to the bank of the Rio Grande on the Texas side of the river." 690 F. Supp. 3d at 731; *see* 110 F.4th at 707 and n.12 (describing only this portion of the preliminary injunction order and citing 690 F. Supp. 3d at 731). But at trial, this Court will need to also consider the United States' request for *prohibitory* injunctive relief, which Judge Willett's

opinion did not discuss.  The United States seeks prohibitory injunctive relief that would apply to a much longer stretch of the river than just "the 1,000-foot segment."  *See* ECF 60 ¶ 46 a., b (United States' prayers for prohibitory injunctive relief under the RHA); *see also* ECF 221 (denying Texas's motion to exclude prohibitory injunctive relief from the pre-trial order).

In addition, the discovery that was taken following this Court's preliminary injunction order and prior to the en banc decision confirmed that the parties' factual dispute over navigability covers a much longer stretch of the Rio Grande than that referred to by Judge Willett's opinion.  Specifically, the United States responded as follows to Texas's interrogatory seeking identification of the disputed river segment:

> For purposes of this case, the United States contends that the segment of the Rio Grande described in the Corps' 1975 finding, i.e., from river mile 275.5 to river mile 610.0, including the stretch of the river in the vicinity of Eagle Pass, Texas, and the location where Texas installed the Floating Barrier, is navigable.

Attachment 1 at 2 (United States' Response to Texas's Interrogatory 2).[5]  This interrogatory response establishes that the parties' dispute over navigability pertains to the entire stretch of the Rio Grande that the Corps administratively determined to be navigable for RHA section 10 purposes in 1975, not just the 1,000-feet stretch where the Floating Barrier currently is placed.

Thus, the point of law on which Judge Willett's opinion establishes precedent is that when a court examines navigability in an enforcement action brought under the RHA, its focus is on whether the area for which the United States seeks relief is navigable within the statute's meaning.  But the *factual* issue for trial on which the opinion does *not* bind this Court is the question of what

---

[5] The cited portion of Attachment 1 is an excerpt from the United States' Fourth Amended Response to Texas's interrogatories, served on August 1, 2024.  The United States previously included the same answer identifying the disputed river segment as part of its Second and Third Amended Responses, which were served on May 3, 2024, and July 22, 2024, respectively.  *See* Attachment 1 at 6 (July answer), 10-11 (May answer), 13-16 (federal agencies' verification of the answer).

river segment is relevant to the United States' request for relief, since both the United States' prayer for relief and discovery have made clear that that segment is much longer than just the "1,000 feet."

        **C.**    **Judge Willett's opinion is not a majority and thus not controlling with respect to the relevance of cross-river navigation.**

Judge Willett's opinion held that evidence of bank-to-bank ferry traffic is categorically insufficient to establish navigability because it "does not supply the necessary evidence that the stretch of the river can sustain trade or travel *along its length*." 110 F.4th at 714. But both Chief Judge Richman's opinion and the two dissenting opinions openly disagreed with Judge Willett's reasoning and conclusion. *See id.* at 724 (Richman, C.J., concurring in the judgment); *id.* at 745-48 (Higginson, J., dissenting); *id.* at 752-53 (Douglas, J., dissenting). Thus, nine judges took the position of Judge Willett, eight judges took the polar opposite position, and the eighteenth judge (Judge Ho) did not pass on the issue. The en banc decision did not yield a majority opinion on this point.

        **D.**    **Judge Willett's opinion does not address any other liability issues.**

Judge Willett's opinion concludes its analysis of the merits as follows: "Having reviewed the district court's factual findings for clear error and conclusions of law de novo, we hold that the barrier is not in a navigable stretch of the Rio Grande and thus that the RHA likely does not apply." 110 F.4th at 718-19. Having thus determined that the preliminary injunction order should be reversed on the threshold ground of navigability, the opinion did not reach any of the remaining issues that would otherwise bear on Texas's liability: (1) whether the floating barrier is an unauthorized "obstruction" within the meaning of the first clause of section 10; (2) whether it is an unpermitted "structure" within the meaning of the second clause; or (3) whether Texas's constitutional arguments against liability have merit. *See, e.g.*, 110 F.4th at 718 n.86 ("Because

we conclude that the United States has not shown that the RHA likely applies, we need not and do not reach Texas's argument that Article 1, § 10, clause 3 of the U.S. Constitution authorizes it to erect the barrier in defense of a border 'invasion' even if the barrier violates the RHA.").  Nor was there agreement between either of the dissents and any of the non-dissenting judges on any of these three liability-related issues.  Therefore, the en banc decision includes no ruling—majority or otherwise—on any of these issues.  *See also supra* at 6-7; ECF 114 at 19-23 (denying motion to dismiss RHA claim).

    **E.**    **Judge Willett's opinion does not resolve whether trial evidence will show that equitable factors support a permanent injunction.**

Although its conclusion that the United States was unlikely to prove the relevant river segment's navigability was dispositive of the appeal, Judge Willett's opinion also considered the other preliminary injunction factors:  irreparable harm and the balance of equities.  110 F.4th at 719 (agreeing with this Court that the public's interest and the government's interest merge in an enforcement case brought by the United States).  The opinion acknowledged the government's argument that an equitable showing was unnecessary "because [the United States] seeks to enforce a public-interest statute and has shown that it is likely to succeed on the merits."  *Id.*  Judge Willett questioned if this position remains tenable after the Supreme Court's decision in *Winters v. Natural Resources Def. Council*, 555 U.S. 7 (2008).  110 F.4th at 719.  However, the opinion found it unnecessary to resolve that question.  Because it had already concluded that the United States was unlikely to succeed on the merits of its RHA claim, the opinion reasoned that the pre-*Winter* Fifth Circuit cases on which the government relied[6] were not controlling here.  110 F.4th at 719.  Instead, Judge Willett examined the text of the RHA, and found nothing in it to overcome a presumption

---

[6] *See United States v. Marine Shale Processors*, 81 F.3d 1329, 1358-59 (5th Cir. 1996); *United States v. FDIC*, 881 F.2d 207, 210 (5th Cir. 1989).

that the traditional four factors governing preliminary injunction requests apply in this context. *Id.* at 719-20; *see also Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024). Finally, the opinion assessed the evidentiary record and found that it failed to establish that those equitable factors support a preliminary injunction. 110 F.4th at 720-22. In its analysis of the equitable factors, Judge Willett's opinion did not consider and reached no conclusion with respect to any dispute between the parties on the appropriate geographic scope of injunctive relief on the Rio Grande,[7] but it found that preliminary injunctive relief was not justified by the available evidence for other reasons. *Id.*

No judge outside of the nine-member plurality indicated agreement with this part of the lead opinion. Chief Judge Richman confirmed her partial agreement with Judge Willett's navigability analysis and specified a certain aspect of her disagreement with that analysis, but did not comment on the equities. *See supra* at 15, 16.

If the Court finds that the evidence at trial establishes the navigability of the relevant river segment and that Texas is liable, Judge Willett's opinion will not be controlling with respect to whether *Winters* overrules the earlier Fifth Circuit caselaw noted above, as the opinion expressly did not decide that question.

And, if the Court holds that a full equitable showing is required, it will base its determination on the trial record, which obviously was not before the en banc court. Thus, the opinion establishes no binding precedent or law of the case with respect to equitable issues.[8]

---

[7] As shown above, the parties' factual dispute over navigability covers a much longer segment of the Rio Grande than the 1,000-foot stretch where the Floating Barrier is currently placed. *Supra* at 15-18. Likewise, the United States' complaint seeks prohibitory injunctive relief well beyond that 1,000-foot stretch of the river. ECF 60 ¶ 46 a., b.

[8] Even if this Court were to disagree with the United States' position on which aspects of Judge Willett's opinion are precedential, judicial economy counsels that the Court should limit the

Respectfully submitted,

Dated:  September 27, 2024

JAIME ESPARZA                                          TODD KIM
UNITED STATES ATTORNEY                   ASSISTANT ATTORNEY GENERAL
                                                              Environment & Natural Resources Division


*/s/ Landon A. Wade*                                  */s/ Brian H. Lynk*
LANDON A. WADE                                      BRIAN H. LYNK
  Assistant United States Attorney                Senior Trial Counsel
  Texas Bar No. 24098560                           DC Bar No. 459525
United States Attorney's Office                    BRYAN HARRISON
Western District of Texas                            Trial Attorney
903 San Jacinto Blvd., Suite 334                  FL Bar No. 106379
Austin, TX 78701                                        KIMERE J. KIMBALL
(512) 370-1255 (tel)                                    Trial Attorney
(512) 916-5854 (fax)                                   CA Bar No. 260660
Landon.wade@usdoj.gov                          ANDREW D. KNUDSEN
                                                              Trial Attorney
                                                              DC Bar No. 1019697
                                                          U.S. Department of Justice
                                                          Environmental Defense Section
                                                          P.O. Box 7611
                                                          Washington, DC 20044
                                                          (202) 514-6187 (Lynk)
                                                          (202) 514-8865 (fax)
                                                          Brian.lynk@usdoj.gov

                                                          *Counsel for the United States of America*

---

possibility of a future remand by allowing the United States to present evidence at trial and making factual findings on the assumption the Fifth Circuit might agree with the United States' position.

**CERTIFICATE OF SERVICE**

I certify that on September 27, 2024, a copy of this filing was served on counsel of record through the Court's electronic filing system.

/s/  Brian H. Lynk
Brian Lynk