# Exhibit B

## Redacted "Omnibus Expert Reports Outline"

## Omnibus Expert Reports Outline



iii.   Terms Sheet and Assumptions (definitions, unless specified otherwise in reports)
[Lawyers]

1.  "**Rio Grande River**" means Mile Markers 275.5 to 610.

2.  "**Cost Benefit Analysis**" or "**CBA**" means "a structured methodology that determines the costs and benefits of one or more alternatives and compares them in order to identify the best alternative to achieve a stated goal/objective." https://www.asafm.army.mil/Portals/72/Documents/Offices/CE/US%20Army%20Cost%20Benefit%20Analysis.pdf

3.  "**Navigable**" or "**navigable waters**" mean that a waterway "must (1) be or have been (2) used or susceptible of use (3) in the customary modes of trade and travel on water (4) as a highway for interstate commerce." *Miami Valley Conservancy District v. Alexander*, 692 F.2d 447, 450 (1982). Thus, a waterway is navigable if (1) the "natural condition" of the waterway (2) could permit "customary modes" of trade and travel (3) such that it constitutes a "highway of commerce" (4) for "through navigation" along the waterway (5) with only

1

STATE_017061

practically "reasonable improvements." *United States v. Appalachian Power Co.*, 311 U.S. 377, 407, 411, 413-17 (1940); 33 C.F.R. § 329.4 ("Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commence. A determination of navigability, once made, applies laterally over the entire surface of the waterbody, and is not extinguished by later actions or events which impede or destroy navigable capacity."); *The Daniel Ball*, 77 U.S. 557, 560 (1870) ("navigable" refers to "every stream or body of water, susceptible of being made, in its natural condition, a highway for commerce, even though that trade be nothing more than the floating of lumber in rafts or logs.").

a.  Navigable does not include sporadic use, one-off exceptional uses, military expeditions, or showing that the river may be forded on foot or that small craft can ferry bank-to-bank.

b.  "Commercial activity" and "navigable" do *not* include the illegal transfer of persons, guns, drugs, and goods. Generally, all lawful international commercial activity must take place at ports of entry.

c.  Recreational fishing is neither commerce nor navigation. *Parm v. Shumate*, 513 F.3d 135, 141 (5th Cir. 2007).

d.  Navigability does not include bank-to-bank commercial traffic, rather it applies solely to navigation along, up, down, and from one point to another on a waterway. *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 414-16 (1940).

e.  While "[t]he evidence of the actual use of streams, and especially of extensive and continued use for commercial purposes may be most persuasive, ... where conditions ... explain the infrequency or limited nature of such use, the susceptibility to use as a highway of commerce may still be satisfactorily proved." *United States v. Utah*, 283 U.S. 64, 82 (1931).

f.  A "lack of commercial traffic [is not] a bar to a conclusion of navigability where personal or private use by boats demonstrates the availability of the stream for the simpler types of commercial navigation." *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 416 (1940) (citing *Utah*, 283 U.S. at 82).

g.  "Navigability, in the sense of the law, is not destroyed because the water course is interrupted by occasional natural obstructions or portages; nor need the navigation be open at all seasons of the year, or at all stages of the water." *Econ. Light & Power Co. v. United States*, 256 U.S. 113, 122 (1921). "Indeed, there are but few of our fresh-water rivers which did not originally present serious obstructions to an uninterrupted navigation. ... the vital and essential point is whether the natural navigation of the river is such that it affords a channel for useful commerce. If this be so the river is navigable in fact." *The Montello*, 87 U.S. 430, 443 (1874).

2

h. The Fifth Circuit has noted that the Supreme Court has found navigability in fact on the basis of: (1) accounts of "large interstate commerce" involving "vessels from seventy to one hundred feet in length, with twelve feet beam, [which] drew when loaded two to two and one-half feet of water," *The Montello*, 87 U.S. at 441, (2) evidence that a channel had previously been used to support the fur trade, *Econ. Light & Power Co.*, 256 U.S. at 117, (3) evidence that a relevant section of the Colorado river had been used for "a large number of enterprises, with boats of various sorts, including rowboats, flatboats, steamboats, motorboats, barges and scows, some being used for exploration, some for pleasure, some to carry passengers and supplies, and others in connection with prospecting, surveying, and mining operations," *Utah*, 283 U.S. at 82, and (4) evidence of "two keelboats operating in 1881, eight in 1882, and eight together with a small steamboat in 1883 .... [which] carried iron ore and pig iron, as well as produce and merchandise," *Appalachian Electric Power Co.*, 311 U.S. at 411–12. *Newbold v. Kinder Morgan SNG Operator, L.L.C.*, 65 F.4th 175, 182 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 186 (2023).

i. **However, federal law and regulations, and US Army Corp. of Engineer policies and procedures, prevent the construction of any improvements on the Rio Grande River for the purposes of navigation absent a cost-benefit analysis showing that the projected benefits outweigh the costs. Add Cite. So, as a practical matter, the projected commercial benefit *must* be sufficiently large enough to outweigh the costs of the proposed improvement necessary to make the Rio Grande River navigable.**

4. "**Commercial navigation**" means that "the act of sailing vessels on water" for the purpose of engaging in commercial activity, such as trade or transportation. *See* NAVIGATION, Black's Law Dictionary (11th ed. 2019).

5. "**Obstruction**" means an object that must "adversely affect[]" navigation such that it "tends to destroy the navigable capacity of one of the navigable waters of the United States*." United States v. Republic Steel Corp.*, 362 U.S. 482, 487-88 (1960). An object that "may only deter movements in commerce" is not enough, it must "adversely affect[]" navigation. *Id*. Because this requires proof that the object "substantially diminish[es] the navigability of that stream within the limits of present navigability," it "always" presents a question "of fact[.]" *United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690, 709-10 (1899).

6. "**Boom**" means "a chain cable or line of spars extended across a river or the mouth of a harbor to obstruct passage." Webster's New International Dictionary 254 (1930); *Lindsay & Phelps Co. v. Mullen*, 176 U.S. 126, 154 (1900) ("constructed" boom "extend[ed] across the main channel of the Mississippi river and into the territory of Wisconsin"); *United States v. Bellingham Bay Boom Co.*, 176 U.S. 211, 211 (1900) ("boom . . . constructed across the

STATE_017063

Nooksack river"); *Susquehanna Boom Co. v. West Branch Boom Co.*, 110 U.S. 57, 57-58 (1884) (similar).

7. "**Pier**" means "a breakwater, groin, or mole extending into navigable water for use as a landing place…hence, a structure built out into the water with piles." Webster's New International Dictionary 1633 (1930); *Pound v. Turck*, 95 U.S. 459, 461 (1877) ("piers…across the stream"); *Bates v. Illinois Central R.R. Co.*, 66 U.S. 204, 207 (1861) ("constructed" pier "was run across" the river).

8. "**Wharf**" means "a structure of timber, masonry, iron, earth, or other material, built on the shore of a harbor, river, canal, or the like, and usually extending from the shore to deep water." Webster's New International Dictionary 2322 (1930); *Greenleaf-Johnson Lumber Co. v. Garrison*, 237 U.S. 251, 256 (1915) ("continuous wharf of three sides" "made extension into the river from two points on the shore"); *Heckman v. Sutter*, 119 F. 83, 87 (9th Cir. 1902) (attempt "to construct a wharf . . . across the tide flats to the deep water").

9. "**Breakwater**" means "a structure for breaking the force of waves, as a mole or sea wall." Webster's New International Dictionary 272 (1930); *Rio Grande*, 184 U.S. at 419 ("breakwater . . . across the Rio Grande or the waters thereof").

10. "**Weir**" means "a dam in a river to stop and raise the water." Webster's New International Dictionary 2318-19 (1930); *Holyoke Co. v. Lyman*, 82 U.S. 500, 513 (1872) (statute prohibiting "any weir" "in or across rivers or streams").

11. "**Bulkhead**" means "a structure of wood or stone to resist the pressure of earth or water; a partition wall or structure, as in a mine." Webster's New International Dictionary 289 (1930) *Appleby v. City of New York*, 271 U.S. 364, 386 (1926) ("city erected a bulkhead outshore from such westerly line and filled up the space between it and the old bulkhead and destroyed the use of the wharf").

12. "**Jetty**" means "a structure, as a pier or mole of wood or stone, extended into a sea, lake or river, to influence the current or tide." Webster's New International Dictionary 1162 (1930); *Zeller v. American International Corp.*, 292 F. 822, 823 (3d Cir. 1923) (US "built a stone jetty . . . diagonally down the river . . . to deflect the current").

13. "**Dolphin**" means "a mooring post or posts on a wharf or beach." Webster's New International Dictionary 659 (1930); *Philadelphia v. Standard Oil Co. of Pennsylvania*, 12 F. Supp. 647, 648 (E.D. Pa. 1934) ("a line of dolphins" together with a wharf "extend into the river"); *Petro United Terminals, Inc. v. J.O. Odfjell Chem. Carriers*, 756 F. Supp. 269, 271 (E.D. La. 1991) (describing a "facility" of "seven dolphin platforms connected by a catwalk" jutting into the Mississippi River).

14. "**Structures**" means "any pier, boat dock, boat ramp, wharf, dolphin, weir, boom, breakwater, bulkhead, revetment, riprap, jetty, artificial island, artificial reef, permanent mooring structure, power transmission line, permanently moored floating vessel, piling, aid to navigation, or any other obstacle or obstruction." 33 C.F.R. § 322.2(b); *United States v. Hall*, 63 F.472, 474 (1st Cir.

4

STATE_017064

1894) (describing "structures" as "all obstructions of a permanent nature."). Structures must affect the course, location, or condition of a waterway in such a manner as to impact on its navigable capacity. 33 C.F.R. § 322.3(a); 33 U.S.C. § 403.



5

STATE_017065



4. **Current/Future Navigation Rio Grande River**
   a. *Treaty, Water Rights, and Obstruction*
      i. <u>Herman Settemeyer and Carlos Rubinstein Expert Report</u>

STATE_017066

The USA has two penstocks operation with a maximum capacity of 3400/cfs, per Mr. Cortez.

If the USA and Mexico ran all penstocks at maximum capacity they could release 8400/cfs, per Mr. Cortez.

7

STATE_017067



iii.    Thomas Ciarametaro Expert Report

STATE_017068



The USA has two penstocks operation with a maximum capacity of 3400/cfs, per Mr. Cortez.

If the USA and Mexico ran all penstocks at maximum capacity they could release 8400/cfs, per Mr. Cortez.

9



b. *Reasonableness of Improvements to Make the Rio Grande River Navigable*

    i.   <u>Eleftherios Iakovou Expert Report</u>

STATE_017070

The USA has two penstocks operation with a maximum capacity of 3400/cfs, per Mr. Cortez.

If the USA and Mexico ran all penstocks at maximum capacity they could release 8400/cfs, per Mr. Cortez.

STATE_017071

ii.   Doug Shields Expert Report

The USA has two penstocks operation with a maximum capacity of 3400/cfs, per Mr. Cortez.

If the USA and Mexico ran all penstocks at maximum capacity they could release 8400/cfs, per Mr. Cortez.

12



13

STATE_017073

iv.   Tong Zhao Expert Report

The USA has two penstocks operation with a maximum capacity of 3400/cfs, per Mr. Cortez.

If the USA and Mexico ran all penstocks at maximum capacity they could release 8400/cfs, per Mr. Cortez.

STATE_017074



v.   Christine Magers and Cassandra Hart Expert Report

The USA has two penstocks operation with a maximum capacity of 3400/cfs, per Mr. Cortez.

If the USA and Mexico ran all penstocks at maximum capacity they could release 8400/cfs, per Mr. Cortez.

STATE_017075



STATE_017076



STATE_017077