UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **United States of America**, *Plaintiff*, <br><br> v. <br><br> **Greg Abbott**, in his capacity as Governor of the State of Texas, and **the State of Texas**, *Defendants*. | No. 1:23-cv-00853-DAE |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO PRECLUDE REBUTTAL EXPERT WITNESS CHAPMAN FROM TESTIFYING OTHER THAN IN REBUTTAL

Defendants Greg Abbott, in his capacity as Governor of the State of Texas, and the State of Texas (collectively "Texas"), file this Reply in support of their motion to preclude Michael Chapman from testifying in Plaintiff's case-in-chief and other than in rebuttal of testimony at trial of Texas's witnesses. Permitting Plaintiff to re-purpose its rebuttal expert witness as an expert witness in its case-in-chief would violate the Scheduling Order in this case, unfairly prejudice Texas, and violate Rule 26(a)(2)(D).

### SUMMARY

The Court's Agreed Scheduling Order drew a bright-line distinction between "case-in-chief experts" and "experts offered solely for rebuttal purposes," ECF 97 at 1–2, that the United States seeks to circumvent. Although the United States identified Mr. Chapman as an expert witness "solely for rebuttal purposes," ECF 235-4 at 2, and did so more than two months after the deadline to identify case-in-chief experts had elapsed, it now wishes to present testimony from him to bolster its argument that the Rio Grande River, between river miles 610 and 275.5, was historically navigable. Contrary to Plaintiff, Mr. Chapman's testimony is novel; originally, he

1

opined that the River's conditions made it ripe for navigational improvements, whereas now he is set to testify that it was historically navigable. Texas never supposed that Mr. Chapman's solitary visit to a 10-mile stretch of the Rio Grande during June 2023 could be counted on to establish the River's suitability for navigation in the distant past—and then, along the entire 335 river miles that Plaintiff contends is a federal water.

The United States has not acted forthrightly. It has not moved for leave to amend the Court's Scheduling Order nor otherwise moved for permission to add a new affirmative expert witness. Nor did Plaintiff ever directly notify Texas of its plans to repurpose Mr. Chapman. Instead, Texas filed its Motion to Preclude after it surmised that Mr. Chapman would be recycled to testify on historic navigability based on revealing passages in the United States' Proposed Findings of Fact and Conclusions of Law. ECF 236 at 22-24. Accordingly, Texas became aware of Mr. Chapman's new role and new testimony on or about October 24 when the parties filed their proposed findings. This sudden addition to Plaintiff's case has unfairly surprised Texas on the eve of trial.

The United States does not dispute that by redesignating Mr. Chapman it violates the Court's Scheduling Order. Instead, Plaintiff treats its Response as an opportunity to show good cause for an exception to the Scheduling Order, despite failing to file for leave. While Plaintiff may view the need to formally ask the Court for permission as a mere technicality, Texas feels that this unfairly places the onus of spotting and resisting attempts to modify the Court's case management decisions on it. Plaintiff should be required to request changes to the Court's orders openly before the Court. *Cf. Shepherd v. City of Shreveport*, 920 F.3d 278, 288 (5th Cir. 2019) (stating "[d]istrict courts must have the power to control their dockets by holding litigants to a schedule").

Procedural irregularities aside, Plaintiffs do not have good cause to augment their affirmative expert witness list so close to trial. To show good cause here, the movant party must demonstrate (a) the party's explanation for failing to designate the case-in-chief expert in time; (b) the demonstration of the importance of presenting the testimony in the case-in-chief; (c) the potential prejudice to the opposing party from allowing the testimony in the case-in-chief; and the

availability of a continuance to cure such prejudice. *Culberson v. Clay County*, 98 F.4th 281, 284-86 (5th Cir. 2024) (affirming exclusion of late-designated expert); *Stewart v. Gruber*, 2023 U. S. App. LEXIS 33127, 2023 WL 8643633 (5th Cir. 2023) (affirming exclusion of expert reports and testimony); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1993). Plaintiff has not made that showing and cannot do so.

Plaintiff should be required to abide by the Agreed Scheduling Order that Plaintiff joined in proposing to the Court. Mr. Chapman cannot fairly be repurposed long after the close of discovery as an expert witness in Plaintiff's reconfigured case-in-chief. The Court should grant Texas's motion and permit Mr. Chapman to testify only as Plaintiff designated him, *a rebuttal expert witness to rebut testimony by Texas's expert witnesses*.

I. **PLAINTIFF FAILED TO ADEQUATELY EXPLAIN ITS FAILURE TO TIMELY DESIGNATE MR. CHAPMAN AS AN EXPERT IN ITS CASE-IN-CHIEF.**

The United States does not contest that by redesignating Mr. Chapman as an affirmative witness it has flouted the Court's Scheduling Order. That Order required identification of case-in-chief expert witnesses by May 3, ECF 97 at 1, meaning that Mr. Chapman's re-identification is nearly six months belated.

Plaintiff's only attempt to explain its abrupt redesignation of Mr. Chapman is that "the circumstances of this litigation have changed following the Fifth Circuit's en banc opinion" Pl. Response, ECF 242 at 4. However, that offers a misleading description of the en banc opinion's effect. The Fifth Circuit clarified the law of navigability that applies to Plaintiff's claim, while leaving Plaintiff's claim intact. Thus, the United States cause of action against Texas remains the same even if in light of the Fifth Circuit's opinion its chances of success on that claim are dubious. While courts have allowed parties to add new witnesses late to address unforeseen factual developments, allowing a party to retool its case in response to an unfavorable ruling appears to be unprecedented.

Moreover, the en banc ruling does not give rise to any reason why the United States should

be allowed to sneak in additional testimony on the particular issue that Mr. Chapman is now supposed to address, the historic navigability of the Rio Grande. ECF 242 at 5. This issue has been disputed from the beginning of this case, and Plaintiff timely designated Dr. Ben Johnson to present evidence on historic navigability in Plaintiff's case-in-chief on May 3, 2024. If Plaintiff believed that Mr. Chapman can present relevant testimony concerning historic navigability, then it should have designated him alongside Dr. Johnson.

Indeed, nothing in the Fifth Circuit's en banc opinion suddenly made Mr. Chapman's testimony about "physical characteristics of the river" relevant to "historic navigability" when it had not been before. If that testimony is relevant to "historical navigability" now, it was also relevant then.

Accordingly, the United States has not offered a cogent explanation of its failure to timely designate Mr. Chapman.

## II. PLAINTIFF FAILED TO SHOW THAT MR. CHAPMAN'S TESTIMONY IS IMPORTANT IN ITS CASE-IN-CHIEF.

Plaintiff claims that Mr. Chapman's testimony would "go directly" to the issue of the historic navigability of the Rio Grande River, and that it is "particularly important" for assessing the historic navigability of the River at the 1,000-foot stretch where Texas placed the Floating Barrier. ECF 242 at 5. These assertions are not credible on their face for several reasons.

First, Mr. Chapman is not qualified to provide even rebuttal expert testimony about "historical navigation" on the Rio Grande River.  Mr. Chapman is a recently retired career employee of the Army Corps of Engineers. He has a bachelor's degree in agriculture/horticulture and in civil engineering. He is not a geologist; he consulted no geologists in connection with his work in this case; he has never participated in any studies relating to the Rio Grande, or even any Texas rivers.  Mr. Chapman Dep. at 185-86. He is not a hydrologist, or a limnologist, and he certainly is no historian.

Moreover, Mr. Chapman is no expert on the Rio Grande River. He has visited the River

4

once in his life, on June 4, 2024. Nearly his entire career experience pertains to the Missouri River, which originates in Montana and terminates at St. Louis. On Mr. Chapman's one brief visit to the Rio Grande, he saw (from a Border Patrol airboat) about ten miles of the 335.5 mile stretch of the Rio Grande that Plaintiff wants him to testify about. From this observation of approximately 3% of that 335.5-mile stretch, Mr. Chapman testified that he "assumes" the other 97% of that segment of the Rio Grande is the same.

Second, there is no way even a scientist with deep knowledge of rivers—which Mr. Chapman assuredly is not—could briefly view three percent of a river in 2024 and opine as to whether it was "suitable" for commercial navigation in the 1800s or before. Plaintiff's history expert, Dr. Ben Johnson, testified that the Rio Grande River changed dramatically beginning with the end of the Mexican War in 1848 and the ensuing influx of farmers and ranchers who took water from the Rio Grande for irrigation. By the end of the 1850s, Dr. Johnson noted that water levels at Roma, Texas, had dropped well over a foot. And that was only the beginning, as irrigation takes from the Rio Grande grew with the Western population throughout the remainder of the 19th century and into the 20th century. Thus, the current condition of the Rio Grande that Mr. Chapman briefly observed says nothing about the historic navigability of the River.

By 1930, the American Section of the International Water Commission reported to Congress: "There has never been any practical commercial navigation on the 1,044 miles of the [Rio Grande] river from El Paso to Roma [Texas]." But the changes to the River were only beginning by 1930. By agreement with Mexico, a major dam was constructed in 1969 on the Rio Grande near Del Rio, upriver from the spot that Mr. Chapman briefly visited in June 2024. This dam, the Amistad Dam, dramatically affects the flows in the Rio Grande in the area that Mr. Chapman visited, causing significant fluctuations in water levels within hours when water is released from Amistad Dam to generate hydroelectric power or for other reasons.

The Rio Grande today is also dramatically different from the historic River because of another major dam built by international agreement in 1954. Falcon Dam is upstream from Laredo and created a huge reservoir, appropriately named the Falcon Reservoir. Falcon Reservoir contains

and holds back the flow of the Rio Grande from the portion of the river that Mr. Chapman briefly visited. Nothing like this Dam or Reservoir existed historically, and it is yet another reason why the condition of Rio Grande as Mr. Chapman observed it in June says nothing reliable about the River's historic suitability for commercial navigation.

Third, Mr. Chapman's opinions, as set forth in his Rebuttal Expert Report and his deposition testimony, have nothing to say about the suitability of the Rio Grande for commercial navigation historically. Mr. Chapman made a few observations about the physical characteristics of the soils in the short stretch he observed, but said nothing at all about the implications, if any, of those observations on the historic navigability of the Rio Grande – even in the 1,000 foot stretch where the Floating Barrier is located. As a result, Mr. Chapman's testimony would not only be *unimportant* to Plaintiff's "historic navigability" claim, but *irrelevant* to that claim.

Finally, if expert testimony about the physical characteristics of the River were really important to Plaintiff as a means of proving historic navigability in its case-in-chief, why didn't Plaintiff designate anyone as a case-in-chief expert for that purpose? Plaintiff offers no explanation. And if this were so important, why did Plaintiff choose Mr. Chapman to testify about it, rather than a river scientist or historian with special knowledge of rivers? Plaintiff again offers no explanation. And if Mr. Chapman's testimony were so important to Plaintiff's "historic navigability" case-in-chief, why does Mr. Chapman's Rebuttal Expert Report include no opinions that discuss or even mention the historic navigability of the Rio Grande? Plaintiff's silence speaks volumes.

Thus, Mr. Chapman's testimony does not, as Plaintiff claims, "go directly" to the issue of the historic navigability of the Rio Grande. Nor are those opinions "particularly important" to assessing the historic navigability of the River. This factor weighs strongly in Texas's favor.

### III.   ALLOWING MR. CHAPMAN TO TESTIFY OTHER THAN AS THE REBUTTAL WITNESS PLAINTIFF DESIGNATED HIM TO BE WOULD PREJUDICE TEXAS.

As Texas's Motion explained, because Plaintiff has surprised Texas with Mr. Chapman's repurposing days before trial, Texas has not had the opportunity either to question Mr. Chapman

concerning his opinions related to historic navigability or to prepare its experts to rebut these opinions. Indeed, has Plaintiff timely designated Mr. Chapman, Texas could have designated a witness to rebut Mr. Chapman's case-in-chief testimony.[1]

Ironically, this is precisely the type of prejudice acknowledged by Plaintiff in quoting from *Charalambopoulos,* the principal case it cites in its favor.[2] *See* ECF 242 at 7-8: "[t]he timing of the disclosure results in prejudice when, for instance, . . . the party is prejudiced under the scheduling order from developing and presenting rebuttal evidence." *Id.*, quoting from *Charalambopoulos v. Grammer*, No. 3:14-cv-2424-D, 2017 WL 930819 at *4 (N. D. 2017).

To that obvious prejudice must be added the fact that Mr. Chapman was not designated as an expert witness on anything related to historic navigation, the subject on which Plaintiff now claims Mr. Chapman's testimony is so important. The supposed connection of Mr. Chapman's testimony about physical conditions of the River in June 2024, to historical navigability of the River is a new invention. It was purportedly spurred by the adverse ruling of the en banc Fifth Circuit against Plaintiff's claims as they existed on the date of that July 30 decision. Simply put, Plaintiff concluded after the en banc decision that reinvention of its claims was necessary, and Mr. Chapman's testimony therefore was reinvented as testimony related to "historic navigability." That reinvention, after the close of discovery, underscores the prejudice that Texas would suffer if Mr. Chapman were allowed to testify in Plaintiff's case-in-chief.

Add to this the lack of notice that Texas has had of Mr. Chapman's new role. Plaintiff never directly communicated its intent to call Mr. Chapman as an affirmative expert, letting Texas infer

---

[1] Texas did just that in response to Plaintiff's timely designation of historian Dr. Ben Johnson as a witness on the historical navigation of the Rio Grande. Texas timely designated Dr. Heather Miller to testify on historical navigation of the Rio Grade River.

[2] *Charalambopoulos* does not support Plaintiff's argument. There, the expert witness was made available for a deposition after his re-designation and there was ample time before trial to accommodate such a deposition. Thus, it is easily distinguishable from the facts in this case as to Mr. Chapman.

this plan from its pretrial filings. Plaintiff only offered definite indications of Mr. Chapman's new testimony when they included a description of testimony they hoped to elicit from him in their Proposed Findings of Fact and Conclusions of Law. ECF 236 at 22-24.

Plaintiff in its Response ignores that Texas had no opportunity to designate experts to rebut Mr. Chapman's opinions, as the Agreed Scheduling Order was designed to provide. Plaintiff claims that there was no prejudice because (a) Texas was able to depose Mr. Chapman on the last day of discovery, a week after Plaintiff produced his "Rebuttal Expert Report" to Texas; and (b) months have passed since Plaintiff first improperly listed Mr. Chapman as an expert witness in its case-in-chief. ECF 242 at 7-8. These arguments are specious. Texas had neither an opportunity to obtain experts to rebut Mr. Chapman's testimony nor a chance to depose Mr. Chapman about his reinvented expertise on "historic navigability." The months that have passed since Plaintiff's re-purposing of Mr. Chapman as a case-in-chief expert have transpired long after the discovery period in this case closes, so Texas could neither name new experts nor depose Mr. Chapman about the subject Plaintiff now claims his testimony is so "important" to proving.

Plaintiff argues that prejudice from the "timing" of disclosure must be analyzed separately from prejudice from the "content" of disclosure. ECF 242 at 7-8. Here, Texas would suffer prejudice from *both* the timing and content of Plaintiff's disclosure of Mr. Chapman as an expert relating to Plaintiff's historic navigability claim. Plaintiff's late disclosure (timing) precluded Texas from designating rebuttal experts to counter Mr. Chapman's testimony. And the fact that Mr. Chapman's Rebuttal Expert Report did not include any opinions relating to "historic navigability" (content) made it unrealistic for Texas to question Mr. Chapman on that subject in the brief rebuttal deposition Texas was allowed on the last day of discovery.

This factor further favors Texas.

IV.   **NO CONTINUANCE IS POSSIBLE TO REDUCE THE PREJUDICE TO TEXAS FROM PLAINIIFF'S ATTEMPTED RE-PURPOSING OF MR. CHAPMAN AS A WITNESS IN ITS CASE-IN-CHIEF.**

The Court set this case for trial on November 7, 2024, less than a week from today. The

Court, both parties, and all their witnesses have prepared and made travel arrangements to go forward to trial on that date. As a practical matter, no continuance is possible to ameliorate the serious prejudice to Texas from Plaintiff's gambit. Plaintiff does not suggest otherwise. This factor obviously favors Texas.

## CONCLUSION

Thus, every one of the four factors specified by the Fifth Circuit in *Culberson v. Clay County*, 98 F.4th 281, 284-86 (5th Cir. 2024); (*Stewart v. Gruber*, 2023 U. S. App. LEXIS 33127, 2023 WL 8643633 (5th Cir. 2023)); and *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1993), leads to the same conclusion. Plaintiff has not made a sufficient showing to justify its request to allow Chapman to testify in its case in chief in violation of the Agreed Scheduling Order.

Accordingly, Texas asks that Plaintiff be required to follow the Agreed Scheduling Order and its designation of Mr. Chapman as a rebuttal witness only.

Date: November 1, 2024                             Respectfully submitted.

| | |
|---|---|
| Ken Paxton<br>Attorney General of the State of Texas<br><br>Brent Webster<br>First Assistant Attorney General<br><br>Ralph Molina<br>Deputy First Assistant Attorney General<br><br>Austin Kinghorn<br>Attorney General for Legal Strategy<br><br>Ryan D. Walters<br>Chief, Special Litigation Division<br><br>Office of the Attorney General<br>P. O. Box 12548, MC-009<br>Austin, TX 78711-2548<br>(512) 936-2172 | /s/ *David Bryant*<br>David Bryant<br>Senior Special Counsel<br>Tex. State Bar No. 03281500<br>david.bryant@oag.texas.gov<br><br>Johnathan Stone<br>Chief, Consumer Protection Division<br>Tex. State Bar No. 24071779<br>Johnathan.stone@oag.texas.gov<br><br>Munera Al-Fuhaid<br>Special Counsel<br>Tex. State Bar No. 24094501<br>munera.al-fuhaid@oag.texas.gov<br><br>Kyle S. Tebo<br>Special Counsel<br>Tex. State Bar No. 24137691<br>kyle.tebo@oag.texas.gov<br><br>Zachary Berg<br>Special Counsel<br>Tex. State Bar. 24107706<br>Zachary.Berg@oag.texas.gov<br><br>**Counsel for Defendants** |

### CERTIFICATE OF SERVICE

On November 1, 2024, this document was served on all counsel of record via email.

/s/ *David Bryant*
David Bryant
Senior Special Counsel